DEFENSE LOGISTICS AGENCY
DEFENSE PERSONNEL SUPPORT CENTER
2800 SOUTH 20TH STREET
PHILADELPHIA, PENNSYLVANIA 19145-5099

IN REPLY
REFER TO

OH [initials]

MSA

July 10, 1997

MEMORANDUM FOR ALL DPSC DAPA HOLDERS

SUBJECT: Growth of DPSC's Prime Vendor Program

I would like to take this opportunity, as I have from time to time in the past to discuss some areas of concern currently being experienced by our customers and PV contractor's as the sales volume of DPSC's Med/Surg PV program increases dramatically.

<u>FOB Destination</u> <u>vs</u> ''Prepay and Add'' for transportation costs

Several incidents over the course of the last few months have lead DPSC to the conclusion that many of our DAPA holders don't realize that the prices in the DAPA are or should have been priced on an FOB Destination basis rather than what we believe is the normal commercial practice of prepaying and adding of the transportation costs at the time of invoicing to the PV contractor. I respectfully request you review your DAPA pricing to insure that it is an FOB Destination price. The DPSC selected PV contractor has a contractual requirement to show the DOD customer a ''total delivered'' price which is all inclusive of transportation costs and distribution fees. If DAPA holders are charging ''prepay and add'' transportation costs, this causes the PV to either violate the contractual requirement or absorb the transportation costs at their expense. DPSC realizes that the FOB Destination pricing as part of the DAPA deviates from normal practice but the DOD customer needs to know the ''total delivered'' price at order confirmation time for obligation purposes.

<u>Extended</u> <u>Delivery</u> <u>Orders</u>(EDO'S)

The recent awards and re-awards of the Med/Surg program has significantly different technical and performance requirements than the original Med/Surg PV contracts. One of these new features as well as a contract requirement deals with the issuance, confirmation, delivery and receipting of orders known as ''Extended Delivery'' order option. In essence, this ordering feature allows the DOD customer to place with the PV an order for

delivery up to 10 calendar days after placement. However, the PV contractor must confirm within 24 hours or by close of business the next working day (excludes Saturdays & Sundays) whether the item order will be shipped and received within the 10 calendar days. What the DPSC and PV contractor's are experiencing from the DAPA holders is confirmation of the required delivery but a failure of the DAPA holder to deliver as confirmed. This practice is hurting the PV distribution community and is recorded against their ''fill-rate'' and performance parameters of their contract. This is a practice that needs to stop if the EDO can become a viable tool in the Med/Surg PV arena. More often than not, the DAPA holder will confirm delivery to the PV. Unfortunately, the product either never shows up or arrives later than the contract delivery time of 10 calendar days. EDO's will only work if there is a commitment from the DAPA community to make them work. Normally, if the item never shows or shows late, the facility has either generated a credit purchase card or local purchase request, and buys the item outside the PV program thus violating the requirements nature of the DPSC contract which could have serious consequences if this practice is allowed to continue. Unfortunately, the sale never returns to the PV program, and all parties lose in that arrangement. Please insure you cooperate with the DPSC selected PV contractor in the areas of EDO's to make them work for the customer.

## Drop Shipments

DPSC has completed the contract awards of the 22 geographic regions. All these contract's contain a ''drop shipment'' feature for the customer. DPSC allows great flexibility between the PV contractor and the ordering facility in using the ''drop shipment'' feature. However, when the ''drop ship'' feature is employed there have been various complaints that manufacturing/distribution community is applying additional transportation costs to the PV contractors. Again, your DAPA pricing is based on FOB Destination pricing, and additional transportation costs for ''drop shipments'' should not be applied. I encourage you to work with the selected DPSC PV contractor to resolve any issues concerning this.

## ''Return Goods'' Policy

DPSC has allowed the commercial practices to dictate the agreement on ''return goods'' policies between the DAPA community

and PV contractors. We realize that there is no one uniform policy that governs ''return goods'' policy. Lately, it has come to our attention that some of the manufacturer's & distributor's ''return goods'' policies are becoming overly restrictive. The nature of DPSC's Prime Vendor contract has two aspects that the DAPA community needs to be aware of: One, once an item has been identified for use under the Prime Vendor program, the PV contractor has 30 days to bring the item into its distribution facility before ordering of the product can begin. Normally, the order or reorder quantity issued by the PV to the DAPA community is greater than the daily, weekly or monthly ordering pattern of the DOD facility. Our experience indicates that ''return goods'' policies of 60 days or less are restrictive in nature, and could force the Prime Vendor contractor to carry ''dead'' stock or ''excess'' inventory. DPSC does not allow by contract any ''restocking charges or costs'' to be imposed by the Prime Vendor. Two, the DPSC selected Prime Vendor is contractually obligated to accept returns under any circumstance, including customer ordering error. This creates a burden on the PV contractor. Therefore, I suggest you work with the PV contractor community to allow the maximum number of days your organization can afford to accommodate these features in your ''return goods'' policy.

**Pricing Issues**

You are well aware the DAPA is only an agreement not a contract. However, as sales under the Prime Vendor program continue to increase, many of our DOD customers aren't realizing the economies of volume pricing. The DAPA price operates as a ''maximum ceiling'' price. In essence, the DAPA holder can offer a <u>lower</u> price via the PV program to our customers at any time. Only price increases need to be approved by DPSC prior to be changed in the DAPA database. For your benefit, all price increases require approximately 30-45 days to be approved and uploaded into the DAPA system. One aspect of showing our DOD customers any advantages in decreased pricing might be a tiered pricing approach retroactive for the past year. DPSC's Prime Vendor Business Management Application (PVBMA) is now tracking sales. In the near future, DPSC will be able to track sales by facility & Prime Vendor on a line item basis. This information will be used in the future to discuss potential quantity volume discount pricing with our DAPA holders. Another aspect I wish our DAPA holders would consider using to recognize price discounts is through an incentive agreement with our customers.

Some of major DAPA holders are using individual incentive agreements with our customers to recognize sales growth potential through pricing incentives. Although I applaud these efforts, individual DOD facility incentive agreements are usually highly labor intensive to manage, record & track sales of incentive targets for the DOD facility not to mention some systems changes on the part of the Prime Vendor contractor in showing the customer any incentive pricing as part of the ''total delivered'' price requirement of the contract. If you are considering offering any of our DOD customers an incentive agreement, please consider the highly manual administrative effort & cost associated with monitoring such an agreement. Wouldn't it be more prudent to reduce the DAPA price or develop tiered pricing approaches to this problem? Another aspect of pricing that continues to concern DPSC is the fact that many manufacturer's sales representatives are offering many of our larger MTF's lower pricing or ''sweetheart'' deals that differs from the DAPA pricing, and encouraging our customers to purchase or buy around the PV contractor. Once this occurs, the MTF has ''breached'' the requirements nature of the DPSC. Continuation of this practice may result in claims against DPSC, and potentially the DAPA holders who knowingly helped the MTF to ''breach'' the contract. I encourage all DAPA holders, especially the manufacturing DAPA holders, to either lower DAPA pricing to all our customers or utilize either national or local incentive programs rather than violating the contract.

<u>Catalog Part-Number Changes</u>

As you are well aware, DPSC is trying to facilitate the DAPA process through its electronic application, and for the most part, it's working. However, one thing remains a problem, and that is when the DAPA holder changes a part-number or catalog number and fails to notify the <u>customer, DPSC or the Prime Vendor</u>. The proper procedure should be to notify DPSC since the DAPA database is the source file for all downstream information passed to our customers and PV contractors. Furthermore, the DPSC Prime Vendor contract <u>does not</u> allow any product substitution for any reason. The premise behind this was to preclude automatic product substitution at the customer's expense. However, failure to notify either customer, DPSC or the PV contractor results in either a ''kill'' order from the PV to the customer or a ''return'' to the PV at the receiving dock because the PV's packing slip doesn't match the original order confirmation from the PV. The ramifications of failing to notify

all interested parties of part-number or catalog number changes impacts any DAPA holders ''return goods'' policy. In addition, if the part-number has been changed without notification and the PV contractor ''kills'' the order, that sale leaves the PV program usually not to return to the program. In the case of rejects at the receiving dock, credits need to be established for returned products which results in additional administration costs for the DOD facility and PV contract. I implore you to notify DPSC of any part-number changes, catalog number changes, deletion of items when they occur. This way we can use the notification to inform both the DOD customer and the PV contractor.

Universal Product Number (UPN)

DPSC and the DAPA community of manufacturers & distributors have made great progress in establishing this initiative in the health care arena. Of the 130,000 items in the DAPA database, DPSC has approximately 80,000+ UPN's. But, two major problems still exist. Some of our DAPA holders are starting to drag their feet with regard to completing submitted & approved Plan of Actions (POA's) for the UPN conversion. In many cases, the approved submission dates have slipped considerably. This is hurting our initiative and our intent to have 90% UPN population by July 1, 1997. I encourage you to revisit your POA's and contact us. I have a UPN team willing to help you complete this initiative. Come July 1, 1997, DPSC will be revisiting the areas of compliance again. Secondly, if any of our DAPA distributors are having problems with the manufacturer's they represent, please advise us. Again, we are willing to help you to UPN status.

The following notice is provided for your information and applies to all Defense Personnel Support Center Distribution and Pricing Agreement (DAPA) holders and proposed DAPA holders.

The Federal Acquisition Streamlining Act (FASA) of 1994 (Public Law 103-355) established new and innovative policies, procedures, and regulations governing the acquisition of commercial items, components, and services. One major change resulting from the enactment of FASA makes certain laws inapplicable to subcontracts at any tier for the acquisition of commercial items and commercial components. Two such laws which

fall into this category are the Trade Agreements and Buy American Act. DOD Federal Acquisition Regulation Supplement(DFARS) paragraphs 212.504(a)(xxiii) and (xxiv) specifically cite these laws as inapplicable at the subcontract level.

Accordingly, the Buy American Act and Trade Agreements restrictions would apply only to those DAPA applicants/holders who are also DPSC Medical/Surgical Prime Vendors and the actual manufacturer of any items covered in your DAPA. Please note, however, that this does not relieve any DAPA applicants/holders from completing the inquiries on the Foreign Acquisition screens within your DAPA application.

In conclusion, I realize this is a lengthy letter and I hope you bear with me. It's important to DPSC to make the Med/Surg PV program work. This letter is only one of many I have sent to keep you abreast of what is happening in the program. If you have any questions, please contact your DAPA buyer or me at (215) 737-2665. Thank you.

M.I. SCHMITT
Program Manager
Med/Surg Prime Vendor
Directorate of Medical Materiel