DEFENSE LOGISTICS AGENCY
DEFENSE SUPPLY CENTER PHILADELPHIA
700 ROBBINS AVENUE
PHILADELPHIA, PENNSYLVANIA 19111-5092

IN REPLY REFER TO DSCP-MSAB

18 June, 1999

SUBJECT: Medical/Surgical DAPA Initiatives

TO: All Medical/Surgical DAPA Holders

This letter is intended to serve three distinct but related purposes. Part I discusses DSCP's ongoing efforts to incorporate commercial GPO pricing into the existing Medical/Surgical Prime Vendor program. Part II addresses our solution for managing the size and efficiency of the DAPA database, and Part III solicits recommendations of how the DAPA Management System should be reprogrammed to accept, display, and propagate tiered pricing. We encourage you to express your views on these issues. Our staff of DAPA contracting officers and administrators is available to answer any questions or concerns you may have and to receive your comments.

**Part I:**

On Feb 24, 1999, the Defense Supply Center Philadelphia issued solicitation SP0200-99-R-5003 for the purpose of contracting with a voluntary commercial Group Purchasing Organization (GPO) and integrating selected segments of its portfolio pricing into the existing Medical/Surgical Prime Vendor Program.

This effort is part of our agenda to continually improve and refine all of the medical logistic support strategies managed by DSCP. The goals of this project to enter into GPO membership are relatively straightforward – obtain the most favorable uncommitted pricing available to the government, improve product coverage, access all services and benefits customarily provided at the basic membership level, and secure additional opportunities to qualify for incentive pricing.

If, after thorough evaluation, it is determined that it is clearly in the government's best interest to enter into a contractual relationship with a commercial GPO, DSCP would expect to proceed with an award in the September 1999 timeframe. In this event, GPO pricing records would be processed to the DAPA Management System for initial dissemination to DSCP customers in the National Capitol Region. After a successful trial period it is anticipated that DSCP will expand coverage program wide.

**GPO pricing is not intended to supplant DAPAs.** DAPA holders, whose products are fully represented in the awarded GPO portfolio may, of course, choose to withdraw their DAPAs so as to eliminate the cost of duplicative data maintenance. All DAPA holders will continue to have the opportunity to

market their products through the DAPA program. The same principles that presently guide customer source selection decisions will pertain. While our military clients will have an additional means of pursuing incentive pricing, the invitation that DSCP extended to all DAPA holders in July of 1997 still stands. **All** DAPA holders are encouraged to offer incentive pricing to their customers. Currently the mechanics of doing so are predicated on DAPA system capabilities for designating "regional" DAPAs, but changes presently under development will enable the assignment of price points down to the individual activity level. Additionally, in conducting evaluations for the purpose of product standardization, DOD facilities, regional commands, or other duly constituted purchasing groups are expected to extend fair consideration to all DAPA sources of the articles under review.

**Part II:**

The evolution of DAPA and the required system modifications will entail greater obligations on the part of DSCP, its Prime Vendors, its GPO, and DAPA holders with respect to information management and data integrity. DSCP has recently embarked on an intensive review of historical sales data pertaining to the Medical Surgical DAPA database. In spite of the continuing increase in prime vendor sales and the number of items available through DAPA, only 12% of the items marketed under this program garner sales. An increasing amount of time and effort in DAPA maintenance is expended for no discernible gain to either the vendor or customers.

Consequently, DSCP intends to impose a 12-month retention limit on items that have failed to demonstrate sales. In the absence of sales, it is therefore possible that DSCP may exercise its right to cancel a DAPA in its entirety. We believe that it is equitable to all parties and in keeping with good commercial practice to adopt this policy. Impacted DAPA holders will receive appropriate notification of all cancellation actions taken.

**Part III:**

The DAPA Management System needs to fully support negotiated incentive pricing between DAPA holder and customer. The present reliance on "regional" DAPAs to accommodate incentive pricing is inefficient and unwieldy. DSCP is currently pursuing systems changes that will enable the maintenance of pricing tiers definable by customer or customer group; thus obviating regionalization for the sole purpose of restricting access to pricing based on customer commitment. We are very much interested in obtaining feedback pertaining to three changes we are currently investigating. They are:

a. How many pricing tiers should the DAPA management system accommodate in order to ensure that DAPA holders are not artificially constrained in offering incentives to customers of the DOD prime vendor program?

b. How do DAPA holders manage the various pricing levels that they offer to preferred customers? Are specific agreement or reference numbers assigned to individual tiers? What do these tier identifiers look like and what does DSCP need to do to ensure that the DMS will accept the possible permutations of tier identifier?

c. How do vendors normally pass tiered pricing to contract distributors? Is the tier identifier part of the price record?

Your recommendations/insights will be of value in ensuring that incentive pricing is properly implemented in DAPA. Please feel free to contact me at 215-737-7124 if you desire to address these matters directly.

Greg Wentzel
Chief, Med/Surg PV Customer Support Section
Medical Surgical Products CBU
Directorate of Medical Materiel
Defense Supply Center, Philadelphia