IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-289C |
| v. | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States respectfully replies, pursuant to Rules 5.2(a)(3) and 56 of the Court's Rules, to the opposition filed on January 5, 2004 by plaintiff, United Medical Supply Company, Inc., to our cross-motion for summary judgment.

## INTRODUCTION

Our cross-motion raises principally issues of law, and the operative facts, which are few, are not genuinely in dispute. Whereas - contrary to United Medical's assertions - as the party opposing summary judgment, the Government "need not produce evidence in a form admissible at trial," Kanehl v. United States, 38 Fed. Cl. 89, 98 (1997) (emphasis added) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)), our cross-motion for partial summary judgment is supported by competent and substantially unrebutted affidavit testimony, and by United Medical's own statements to the Court. See Pl. Resp. Def. PFF 9, 20-21. United Medical's general and conclusory claims that our proposed facts are "obviously controverted," Pl. Resp. Def. PFF

at 1, without specific citations to the record, do not create genuine disputes of fact. E.g., Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984).

We demonstrated that, even if United Medical's factual allegations were adequately supported and uncontroverted (which they are not), plaintiff is entitled to no relief, as a legal matter, (1) simply because it achieved less than 90 percent of the potential sales volume estimated in the solicitation or (2) for lost "goodwill." The former theory, we showed, fails upon contractual grounds, and the latter fails because the asserted quantum consists of speculative, future profits from wholly unrelated contracts. Def. X-Moving Br. 15-19.

United Medical's arguments with regard to its "90 percent" claim disregard entirely, among other things, the appellate precedents we cited concerning the patent ambiguity, fatal to United Medical's claim, that arises if the contract is deemed to include the renegotiation provision that United Medical surreptitiously typed into its proposal. United Medical cites only an inapplicable trial court decision, which involved no similar contractual ambiguity. Pl. Opp. 18.

Meanwhile, by United Medical's own description, and notwithstanding its conclusory denials, id. at 20, the "reputation damages" sought by United Medical consist entirely of speculative profits under future contracts and general "going

concern" damages. "The speculative alleged loss of future contracts and other work" is non-compensable in damages, pursuant to controlling precedent, as is the alleged loss of "general company worth[.]" Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 744 (1980).

## THE GOVERNMENT IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

### I. A Contract Containing Both FAR 56.216-21, "Requirements (Apr 1986)," And The Renegotiation Language Typed In By United Medical Would Be Patently Ambiguous And Would Impose A Duty To Seek Clarification

Requirements contracts are defined in section 16.503 of the Federal Acquisition Regulations ("FAR"). See Travel Centre v. Barram, 236 F.3d 1316, 1318-19 (Fed. Cir. 2001). That regulation provides that an estimate of requirements provided in a solicitation "is not a representation to an offeror or contractor that the estimated quantity will be required or ordered, or that conditions affecting requirements will be stable or normal." 48 C.F.R. § 16.503(a)(1). The FAR further advises that requirement contracts are most appropriate when the Government "cannot predetermine the precise quantities of supplies or services" it may need. Id. § 16.503(b).

United Medical acknowledges, furthermore, that its contract contained the standard FAR clause expressly providing that United Medical would not receive a price adjustment upon the grounds that sales to the Government were lower than estimated. Def. PFF 9 and Pl. Resp. Despite all of this, United Medical argues that,

simply by typing in language stating that its distribution fee was subject to renegotiation if sales did not equal or exceed 90 percent of the estimated quantity, United Medical unambiguously negated the standard FAR clause and obtained the right to an equitable price adjustment. Pl. Br. 18.

To state the argument is to refute it. Assuming without conceding that the typed-in language should be considered part of the contract, which we dispute, see Def. X-Moving Br. 16, the contract contains two mutually incompatible provisions: one indicating the contractor will receive no price increase if the estimate is not met, and one suggesting the opposite. As in Dalton v. Cessna Aircraft Co., 98 F.3d 1298 (Fed. Cir. 1996), where the solicitation referred both to an "annual rate" of flight training services and a lower, "approximate[]" rate expressed in hours per trainee, the apparent contradiction would have imposed upon a knowledgeable bidder, such as United Medical, a duty to obtain clarification, "regardless of the reasonableness of the contractor's [preferred] interpretation." Id. at 1305-06 (quoting Fortec Constrs. v. United States, 760 F.2d 1288, 1291 (Fed. Cir. 1985)). Having failed to clarify the evident ambiguity it created, United Medical is bound by the Government's consistently-expressed position that this is an ordinary requirements contract with no minimum purchase requirement. Id.

United Medical's exclusive reliance upon Biener GmbH v. United States, 17 Cl. Ct. 802 (1989), to support its argument that there is no ambiguity only proves our point. Pl. Opp. 18. The requirements contract in Biener did not contain the standard FAR clause used here, FAR 56.216-21, "Requirements (Apr 1986)." Instead, it contained a "cancellation clause" entitling the contractor to compensation - subject to a specific, negotiated "cancellation ceiling" - for certain, enumerated start-up and fixed costs, should the Government not order the estimated quantity. 17 Cl. Ct. at 806, 809. In effect, United Medical attempted unilaterally to amend the prime vendor contract, as solicited, to resemble the contract in Biener, except without the ceiling. In so doing, United Medical achieved, at most, only contractual ambiguity, from which it cannot now benefit.

## II. Precedent Precludes Recovery Of General Reputation Damages And Goodwill

We do not understand United Medical's basis for asserting that it "has not based its claims for lost goodwill and lost reputation on lost profits from other contracts." Pl. Opp. 20. At page 26 of its moving brief, plaintiff explains that it values its goodwill claim at $10 million because it received an offer in January 1999 to acquire the company for "an amount approximately equal to the book value of the hard assets plus $10,500,000.00." That would represent fair market value only if the premium over

book value equaled approximately the present value of United Medical's <u>expected</u> <u>future</u> <u>income</u> at the time of the offer.

The alleged difference between the value of United Medical's assets and what an allegedly rational investor would have been willing to pay for the company is what plaintiff calls "goodwill." Another name for goodwill is "going concern value." <u>Lake Medical Center v. Thompson</u>, 243 F.3d 568, 571 (D.C. Cir. 2001) (quoting J. Downs & J.E. Goodman, <u>Dictionary of Finance and Investment Terms</u> 239 (5th ed. 1998)). In economic terms, it represents the amount by which an existing business's future revenues are expected to exceed its future variable costs. <u>New Haven Inclusion Cases</u>, 399 U.S. 392, 482 & n.80 (1970); <u>Lehrman v. Gulf Oil Corp.</u>, 500 F.2d 659, 664 n.14 (5th Cir. 1974) ("We of course realize that because future profit potential is a principal element of a firms' going concern value[,] an [antitrust] award should not include both [going concern value and lost profits]."). Goodwill and going concern value are, in short, based upon forecasts of profitability.

That is precisely why "damages for harm to business reputation and loss of future profits" are treated as sides of the same coin, and neither is recoverable, "because they are too remote, consequential, and speculative." <u>Lucas v. United States</u>, 25 Cl. Ct. 298, 310 (1992) (citing numerous cases). United Medical argues that its reputation damages were "foreseeable" at

the time of the Government's alleged breaches. Pl. Opp. 20-21. First, that is irrelevant, because foreseeability is determined at the time of contract formation, not the time of breach. Globe Ref. Co. v. Landa Cotton Oil Co., 190 U.S. 540, 545-47 (1901).

Equally important, plaintiff's foreseeability argument is misplaced because reputation damages and goodwill do not represent actual, out-of-pocket losses that can be specifically foreseen. They are, instead, only theoretical "losses" of predicted business. Controlling precedent holds that plaintiffs in this Court may recover neither damages for "loss of future contracts and other work" unrelated to the Government contract, nor damages representing "general company worth . . . ." Olin Jones, 225 Ct. Cl. at 744; accord Wells Fargo Bank, NA v. United States, 88 F.3d 1012, 1020 (Fed. Cir 1996) ("Of course, not every injury resulting from a breach of contract is remediable in damages.") (citing Globe Ref., 190 U.S. 540).

United Medical is mistaken in asserting that Olin Jones allows for recovery of general reputation damages. Pl. Opp. 22. The Court of Claims in Olin Jones permitted plaintiff to attempt to prove at trial only "damages of [a] direct type," arising from circumstances that allegedly had "a direct impact on the performance of the present contract." 225 Ct. Cl. at 743. United Medical's claim for goodwill as reputation damages has no direct connection to performance of the prime vendor contract.

The goodwill quantum is, instead, explicitly a measure of plaintiff's supposed "general company worth," see id., premised upon predicted profits from other contracts. The precedents cited above and in our earlier brief preclude recovery of damages of that kind.

CONCLUSION

For the reasons given above, we respectfully renew our request for partial summary judgment.[1]

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

January 12, 2004

[1] We regret our error in stating that the bankruptcy court dismissed this matter for lack of jurisdiction. As United Medical notes, in transferring the case in response to the Government's motion to dismiss, the court acknowledged but did not decide the jurisdictional issue.

CERTIFICATE OF FILING

I certify that on January 12, 2004, the foregoing "Defendant's Reply In Support Of Cross-Motion For Partial Summary Judgment" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kyle Chadwick