**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, *Defendant* | CASE NO: 03-CV-289<br><br>Judge Allegra |

**PLAINTIFF'S FIRST MOTION TO COMPEL DISCOVERY**

**TO THE HONORABLE UNITED STATES COURT OF FEDERAL CLAIMS:**

This Motion arises out of a dispute between the Government and Plaintiff regarding the Government's obligations to respond to discovery. This motion, which may be the first of several, deals with the Government's answers to certain of Plaintiff's First Set of Written Discovery Requests, specifically, Interrogatories 4, 5, 6, 7, 19 and 20. The Government did not serve objections to any of these six (6) interrogatories.

This motion is supported by a separately filed brief and appendix to the brief.

**SUMMARY**

While this case was pending in the United States Bankruptcy Court, Plaintiff served its first set of written requests for discovery on the Government, including interrogatories and requests for production. The Government served objections to some of the requests, but not to the six (6) interrogatories at issue. Plaintiff did not believe the Government's interrogatory responses or verification complied with the Rules, so Plaintiff promptly served detailed objections to the responses and verification. Before the matter could be addressed by the bankruptcy court, the bankruptcy court transferred the case to this Court. Plaintiff's discovery was abated pending the filing and rulings on cross-motions for summary judgment.

James Jennings, as a contract officer, "answered" Plaintiff's interrogatories and certified those answers with the following statement,

> "The undersigned certifies, under penalty of perjury, that, to the best of her [sic] knowledge and belief, the factual information in the foregoing responses is true."

On March 8, 2005, approximately one-month after discovery was reopened, Plaintiff deposed Mr. Jennings in order to determine his bases for the various answers and to help Plaintiff focus its discovery. As it turned out, the deposition of Mr. Jennings was almost meaningless. He had not conducted any investigation to determine the accuracy of the answers and he claimed his interrogatory answers were limited to what he knew, not what the Government knew. One of his specific interrogatory answers to a key interrogatory was, "the defendant [*i.e.*, Government] has no knowledge of diverted purchases." He testified in his deposition that meant he did not have any knowledge and that he could only answer for himself.

The Government's methodology used to answer Plaintiff's interrogatories is obviously seriously deficient. The interrogatories should have been answered by an individual that had the required basis for the answers. With respect to a given interrogatory, the Government had a duty to either answer the interrogatory or timely serve a detailed objection if an unreasonable effort would be required in order to answer the interrogatory. It did neither. Its answers are evasive and amount to a refusal to answer. The Government[1] knew that Plaintiff had objected to Mr. Jennings's verification as inadequate, but it refused to amend the verification or its answers. It forced Plaintiff to incur the expense of a trip to Philadelphia and deposition expenses to establish

[1] Mr. Chadwick is the 3rd DOJ attorney on the case. The only attorney who has been involved since the beginning of the lawsuit is Ms. Hallum, a DSCP agency attorney.

Mr. Jennings lack of knowledge. More importantly, the deposition effort chewed up a significant portion of the six months the Court has allowed for Plaintiff's discovery.

## EFFORTS TO RESOLVE THESE DISCOVERY ISSUES

**Plaintiff first requested the Government, thru K. Shahan, then DOJ attorney, to correct the deficiencies by letter of December 16, 2002. Plaintiff requested the Government to supplement its discovery while the summary judgment motions were pending. The Government responded that Plaintiff's discovery rights had been abated. Most recently, Plaintiff asked current DOJ counsel if the Government was willing to agree to any of the discovery relief Plaintiff set forth below. The Government's response was that there was nothing to agree to or to disagree to and that the Government had no obligation to investigate to Plaintiff's case.**

The Court limited Plaintiff's fact discovery in this complex case to six months.[2] This short discovery period, coupled with the unresolved discovery issues, mandates that Plaintiff seek immediate relief from the Court.

Plaintiff seeks an order compelling the Government to conduct such investigation as is necessary to fully answer the interrogatories identified below and to answer the interrogatory with a description of the investigation conducted and the results obtained.

It is apparent what has happened. Someone other than Mr. Jennings prepared the responses and simply presented them to him to sign, which he naively did without further ado or the required inquiry. The case is Mr. Jennings first experience with the legal system, and he was totally unfamiliar with the legal process.

---

[2] During most of the first two years this case was pending in this Court, Plaintiff's discovery rights were abated and discovery was limited to discovery needed by Defendant to respond to Plaintiff's summary judgment motion. When discovery was resumed, the Court limited fact discovery to six months.

Plaintiff seeks an order compelling the Government to investigate its files, including electronic files, and fully answer each of the following interrogatories. These interrogatories have not been answered and no objection was served.

**SPECIFIC INTERROGATORIES AT ISSUE[3]**

**Interrogatory No. 4.**

For each Participating MTF, identify the MTF and state, by contract year, the total dollar amount of Scheduled Medical Products and Supplies[4] purchased by that particular MTF for each Contract Year during the term of the Contract between Plaintiff and Defendant, and, for each MTF, state the dollar amount of the Scheduled Medical Products and Supplies purchased from United Medical and the dollar amount of the Scheduled Medical Products and Supplies purchased from third parties.

**Government Response.**

Individual MTFs do not capture their information in this manner. However, to the extent that information concerning the dollar amount of Scheduled Medical Products purchased from United Medical is available, it is contained in the Contracting Officer's files for United Medical and will be made available as set forth in response to Request No. 7. With respect to third parties, DSCP is attempting to determine what records are available and will supplement this response if relevant information or documents are located. [No objection was served].

**Why the requested information is relevant.**

The Government claims that its estimates of purchases and contract value cannot be used as a baseline for diverted purchases because that estimate included both DAPA items and non-DAPA items. Only DAPA items were potentially subject to the prime vendor contract. An open question is whether there is a material difference between the total purchases and DAPA purchases.

---

[3] There are other interrogatories that have deficient answers, however, those may get resolved without Court intervention. Plaintiff is not intending to waive any rights with respect to those other interrogatories.

[4] "Scheduled Medical Equipment and Supplies" means the equipment and supplies purchased by the Participating MTFs that the Participating MTFs could have ordered from United Medical Supply. It refers to equipment and supplies purchased from United Medical Supply or other sources; the only criteria is that they were purchased and at the time they were purchased, the MTF could have ordered them from United Medical Supply at the time.

The Government then claims that the universe of DAPA items cannot be used as a baseline for diverted purchases, because United Medical did not have distribution agreements with all DAPA holders. Therefore, contends the Government, purchases by the Government from DAPA holders with whom United Medical did not have a distribution agreement did not breach the contract. United claims that this dollar amount is insignificant and that the DAPA holders with whom United Medical did not have distribution agreements were small distributors or manufacturers that did not carry the required product liability insurance.

**Why the response is deficient**

The fact that the MTFs do not capture their information in this manner is not determinative. The Government maintained and periodically updated a list of DAPA holders with whom United Medical had distribution agreements and those with whom it did not. The Government has to have maintained payable records that show what it paid to what DAPA holders for products sold to the various MTFs.

The Government did not indicate in any manner what efforts it made to answer the interrogatory. The interrogatory has not been supplemented. Merely pointing Plaintiff to the Contract Officer's files does not satisfy the Government's discovery burden. Moreover, the contract officers' files did not contain payable records by individual vendors.

Plaintiff has attempted to meet with the Government to identify a methodology that would enable the parties to reasonably estimate an answer, but the Government is not willing to do that. The Government can determine what DAPA items it purchased, which of these DAPA items were available through United Medical ["Scheduled Medical Equipment and Supplies"], and which DAPA items it purchased from United Medical.

Accordingly, Plaintiff seeks an order compelling the Government to identify and analyze its data and answer fully answer the interrogatory.

**Interrogatory No. 5.**

For each Participating MTF, identify the MTF and state the total dollar amount of products for each contract year that the particular MTF ordered from United Medical but which was not supplied by United Medical.

**Government Answer**

The answer can be extrapolated from the reports of fill rates by MTF and will be made available as set forth in Response to Request No. 4. [No objection was served].

**Why the requested information is relevant.**

The Government is liable for purchases it made from third parties if it should have made those from United Medical under the terms of the prime vendor contract. One of the reasons that the Government claims it made purchases from third parties was that United Medical could not fill orders so the Government was entitled to go to third parties. The dollar volume of unfilled

orders is a simple subtraction – total orders minus filled orders. So, the dollar volume of total orders that were placed with United Medical is relevant.

**Why the response is deficient.**

The Government's response to Interrogatory No. 4 does not deal with fill rate reports and the reference to Interrogatory 4 is not useful to Plaintiff.

The Government has taken inconsistent positions on this issue. In this interrogatory and in Mr. Jennings deposition, the Government's position is that actual dollar purchases from United Medical for a given time period and for a given MTF divided by the average fill rate for that same time period and MTF yields a reasonably accurate answer to the interrogatory. The Government's summary judgment position, however, contends that the answer is not accurate because the fill rates do not take into account "killed orders." Accordingly, Plaintiff requests that the Court enter an order requiring the Government to provide the dollar answers to the interrogatory. If only a best estimate can be provided, the Government should provide that estimate in response to interrogatory 18.

**Interrogatory No. 6 and Interrogatory 19.**

[6]. For each Participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States.

[19]. For each Participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States.

**Government Response.**

[6]. To the extent that "Products" means "Scheduled Equipment and Supplies" see answer to interrogatory No. 4. [No objection was served].

[19]. To the extent that this request is duplicative of Interrogatory No. 6, see response thereto. An estimate cannot be made as there is no basis for such an estimate.

**Why the requested information is relevant.**

The Government stated, correctly, that "Products" meant "Scheduled Equipment and Supplies." This answer does establish the baseline for diverted purchases. All diverted purchases would be a subset of the universe of total purchases of "Products." Plaintiff's beginning baseline number for diverted purchases would be the accurate dollar amount for interrogatory 6 or a reasonably accurate estimate in response to interrogatory 19.

**Why the response is deficient.**

The Government's reference to Interrogatory No. 4 is not useful to Plaintiff. On one hand, the Government claims, under oath, that it absolutely did not divert orders, but then claims, on the other hand, that the MTFs do not capture data in a manner to determine the quantify of diverted orders. The Government cannot have made the blanket statement that it did not divert orders without having analyzed its data on this issue. The Government did not provide any information on its attempts to answer this interrogatory. Plaintiff seeks an order compelling the Government to analyze its data and fully answer the interrogatory. If the Government can only provide a best estimate, then that estimate should be provided in response to Interrogatory 19, which is duplicative of Interrogatory 6 except that it seeks a best estimate in the event an exact dollar figure cannot be determined. The Government also improperly failed to answer Interrogatory 19.

**Interrogatory No. 7 and Interrogatory 20.**

[7]. For each Participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical, but did not.

[20]. For each Participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical, but did not. If you are unable to provide an exact dollar amount, provide your best estimate.

**Government Response.**

[7]. The Defendant has no knowledge of any dollar amounts for "diverted purchases." See answer to interrogatory No. 4 for purchases from third parties. [No objection was served].

[20]. To the extent that this request is duplicative of Interrogatory No 7; see response thereto. An estimate cannot be made as there is no basis for such an estimate.

**Why the requested information is relevant.**

The dollar amount of diverted purchases is one of the factors in the equation to establish damages for diversion.

**Why the response is deficient.**

The Government's reference to Interrogatory No. 4 is not useful to Plaintiff, since Interrogatory No. 4 was not answered. The Government did not describe what efforts it made to answer this interrogatory. Mr. Jennings testified that he verified this answer because he personally did not have any knowledge. He did not make any investigation, and does not know of any investigation made to answer this interrogatory. He did not know what the "Government" knew. On one hand, the Government claims, under oath, that it absolutely did not divert orders, but then claims, on the other hand, that the MTFs do not capture data in a manner to determine the quantify of diverted orders.

The Government cannot have made the blanket statement that it did not divert orders without having analyzed its data on this issue. The Government did not provide any information on its attempts to answer this interrogatory.

Plaintiff seeks an order requiring that: the Government to fully and truthfully answer each of the six interrogatories by July 15, 2005, a person knowledgeable about the truth of those be required to certify them, and that the person who certifies the interrogatories be required to appear for oral deposition, along with all documents used to answer the interrogatories no later than July 22, 2005.

**Signed June 10, 2005.**

Respectfully submitted,

/s/ Frank L. Broyles
Frank L. Broyles
State Bar No. 03230500
Goins, Underkofler, Crawford
& Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff

CERTIFICATE OF CONFERENCE

Counsel for Plaintiff conferred with Counsel for the Government regarding this Motion and was advised that the Government did not believe Plaintiff had set forth anything with which the Government could agree or disagree.

/s/Frank L. Broyles

CERTIFICATE OF SERVICE

On June 10, 2005 the foregoing motion was served on the persons shown below by the method shown below in accordance with rule 5.1.

/s/ Frank L. Broyles

**PERSONS SERVED:**

Kyle Chadwick
Department of Justice
Method Served: telecopy and ECF