**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, *Defendant* | CASE NO: 03-CV-289<br><br>Judge Allegra |

**<u>BRIEF IN SUPPORT OF PLAINTIFF'S FIRST MOTION TO COMPEL DISCOVERY</u>**

To the Honorable United States Court of Federal Claims:

The primary issue before this Court is the right of the Government to avoid answering interrogatories based on its claim that it has no duty to investigate and analyze its own information.

The issue is raised in the following relevant contexts:

> The Government did not serve any objections to the interrogatories at issue; and
>
> The Government, through its designated agent, contract officer James Jennings, unequivocally answered a certified "no" to interrogatory 31,[1] which inquired if the Government had diverted orders in breach of the prime vendor contract. Mr. Jennings had no basis for making that answer.

An appendix is provided. That appendix contains Plaintiff's First Set of Interrogatories (Appdx 001-0013); the Government's responses to the interrogatories at

[1] Plaintiff's initial set of interrogatories number 1 thru 33, however 10 of these were inadvertent duplications. Only 23 interrogatories were served.

issue (Appdx 014-023); the referenced deposition transcript pages from Mr. Jennings oral deposition (Appdx 024-032); one page from the CDs produced by the Government on May 25, 2005 (Appdx 0033); and Plaintiff's 2002 initial objections to the Government's responses (Appdx 0034-0037).

**Procedural History of the Case**

This case was filed in the United States Bankruptcy Court for the Northern District of Texas in September 2002. In February 2003 the case was transferred to this Court. Plaintiff filed an amended complaint on March 24, 2003. Plaintiff alleged in its complaints that two of the primary methods used to divert purchases in breach of Plaintiff's prime vendor contract were the use of Government credit cards and direct purchases from manufacturers. (Complaint - para 90). Plaintiff further referenced the former director of the prime vendor program as one of the sources of this allegation. *Id.*

The transactions at issue are numerous and small. The price of each med surg item ordered from United Medical under the Prime Vendor contract averaged about $25.00. The Lone Star Regions MTFs actually ordered over $30 million of these items from United Medical, *i.e.,* approximately 120 million items. Yet, the number of items these MTFs actually purchased from the various sources other than the prime vendor were many times that number, and form the basis for Plaintiff's allegations of breach of contract by diversion.

Defendant filed its answer on June 23, 2003, and an amended answer on July 21, 2003.

The parties filed a preliminary status report on July 31, 2003. The discovery plan limited discovery to by the Government relative to the summary judgment issues until such time as the Court ruled on the summary judgment motions and a new discovery plan was established.

Plaintiff filed its motion for summary judgment in August 2003; Defendant filed its cross-motion in December 2003. The Court heard oral arguments in July 2004 and filed its summary judgment order in January 2005. On January 31, 2005 the Court filed an order closing fact discovery in July 2005.

**Discovery History in the Case**

Prior to the filing of the case, Plaintiff filed a request to take the deposition of Mr. William Bandy, Plaintiff's then president, to preserve his testimony. The request was filed in the United States Bankruptcy Court where Plaintiff's Chapter 11 case was pending. The Government opposed the request, and it was denied.

Following denial of its certified claim by the contract officer, Plaintiff initiated this case by filing an adversary proceeding against the Government in the United States Bankruptcy Court for the Northern District of Texas. The Government answered and sought dismissal based on lack of jurisdiction. While the dismissal motion was pending, Plaintiff served its first set of discovery requests. The date of that was October 25, 2002. The Government, through James Jennings, served its responses on November 25, 2002. Those responses include the responses at issue. Mr. Jennings certified the answers with the following,

> "The undersigned certifies, under penalty of perjury, that, to the best of her [sic] knowledge and belief, the factual information in the foregoing responses is true." [Appdx 0022].

On December 16, 2002, Plaintiff served a 4-page letter on the Government detailing the significant deficiencies in response to Plaintiff's discovery requests, including the verification by Mr. Jennings to Plaintiff's interrogatories. [Appdx 034].

Before the discovery dispute could be resolved by the Bankruptcy Court, the case was transferred to the Court of Federal Claims and Plaintiff's discovery rights abated as described above.

On August 3, 2004, Plaintiff requested an opportunity to take Mr. Jennings' deposition. On August 17, 2004, the Government advised Plaintiff that first phase of discovery (*i.e.,* the Government's discovery related to Plaintiff's MSJ) closed December 15, 2003 and it was not willing to permit Plaintiff to resume discovery, including the deposition of Mr. Jennings, until there was an agreed discovery plan pursuant to a revised scheduling order.

On September 13, 2004, Plaintiff stated it wanted to resume discovery immediately in order to obtain the previously promised documents from the individual MTFs and proposed a discovery plan. The Government responded September 21, 2004 and stated it would not agree to Plaintiff's proposal and that it anticipated making documents available at the individual MTFs during the next discovery phase. **[Note: As yet, June 10, 2005, no documents have been made available by the Government at any MTF].**

On March 8, 2005, Plaintiff took the oral deposition of Mr. Jennings in Philadelphia by agreement. Plaintiff received the transcript approximately one-month later. As yet, no changes have been made by Mr. Jennings to his testimony.

On April 14, 2005, Plaintiff served a document request on Ethicon, Inc., a company which Plaintiff believes was a major supplier to the Lone Star Region's MTFs of diverted purchases of suture and related supplies. As yet, Ethicon has not produced any documents, but advises Plaintiff that it is assembling them for inspection.

On May 25, 2005 the Government took a one-hour deposition of Mr. Bandy, United's former president. Plaintiff followed up with its own deposition until it became obvious that Mr. Bandy, a 78 year old gentlemen, was tiring. Following this deposition, the Government produced two compact diskettes (CDs) with unidentified files for Fort Hood for BAMC. The contained thousands of pages, including lists of names and social security numbers. None of the documents were identified as to specific discovery requests of Plaintiff, and with the exception of just a handful of pages, do not appear to be responsive to any discovery request of Plaintiff. Also, the Government indicated files for a third MTF would be produced. As of June 10, 2005, that third set of files has not been produced.

**Duty of the Government in Answering Interrogatories**

The Government's duty in responding to interrogatories is to provide true, explicit, responsive, complete and candid answers to the interrogatories. *Chubb Integrated Systems Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52, 61 (D.C. Dist. 1984). It must appoint an individual to respond who can furnish the requested information on

behalf of the Government. *United States v. Kordel,* 90 S.Ct. 763, 767 (1970). The answers must be signed by the person who made them and who can attest to their accuracy. If the person signing signs on behalf of an organization, that person must have a basis for stating that the responses are accurate. *Shepherd v. American Broadcasting Co.,* 62 F.3d 1469, 1482 (D.C. Cir. 1995). An agent's duty to answer interrogatories is not delimited by his own personal knowledge. *General Dynamics Corp. v. Selb Manufacturing Company,* 481 F.2d 1204, 1210 (11th cir. 1973). A party is under a severe duty to make an adequate effort to answer interrogatories, and if it is unsuccessful it should recite in detail the efforts made to acquire the information. *Hansel v. Shell Oil Corp.,* 169 F.R.D 303, 305 (E.D. Pa. 1996); *Jackson v. Kroblin Refrigerated Services Xpress, Inc.,* 49 F.R.D. 134, 137 (N.D. W. Va. 1970). A party cannot avoid answering an interrogatory simply by claiming ignorance. *Jackson.* at 138.

Under Rule 33(d), an interrogatory may be answered by reference to documents, but the reference must be specific. Generic references to documents that have been or will be produced is not an adequate response to an interrogatory. *Pulsecard, Inc. v. Discover Card Services, Inc.,* 168 F.R.D. 295, 304-305 (D. Kan. 1996).

If for some reason the interrogatory served was objectionable, the responding party to whom the interrogatory was served (in this case, the Government) has a duty to serve specific objections. Failure to do so waives the objection, and the interrogatory must be answered with "true, explicit, responsive, complete and candid answers." The Government did indeed respond with objections to some of the interrogatories. The Government did not object to any of the interrogatories which are the subject of

Plaintiff's Motion to Compel. Absent good cause shown, the failure of a party to timely object waives the objection. *Pulsecard* at 304; COFC Rule 33(b)(4).

**The Government's Breach of Duty**

When Plaintiff drafted its initial discovery requests, it created and used a defined term, "Scheduled Medical Products and Supplies," also referenced as "Scheduled Medical Equipment and Supplies" or "Products." In the universe of DAPA items, this was a subset that meant those DAPA items for which United Medical had a distribution agreement with the DAPA holder at the time the MTF ordered the particular DAPA item. In this brief, this will be shorted to "Scheduled Supplies."

The Government did not responsively answer any of the 6 interrogatories at issue. It claimed either a lack of knowledge or referenced Plaintiff to the contract officers' files. [Appdx 0016-0020].

One of the most important interrogatory answers was the Government's answer to interrogatory No. 31, "Did the Participating MTFs purchase Scheduled Medical Equipment and Supplies from sources other than United Medical in breach of the Prime Vendor Contract with United Medical?" Mr. Jennings unqualified answer was, "No." The follow-up interrogatory (No. 32) seeking detail was answered, "No response required." [Appdx 021]. This was an important because it implies a thorough investigation and information analysis, something worthy of significant discovery effort.

**Failure to designed a person to answer the interrogatories who was knowledgeable.**

Plaintiff took the deposition of Mr. Jennings in order to focus its discovery based on how Mr. Jennings had determined the accuracy of his answers and his informed opinions, good or bad, including Interrogatory 31. Mr. Jennings was the most likely deponent, because it was Mr. Jennings who had the responsibility for the accuracy of his statements.

In order to determine the basis for Mr. Jennings opinions, Plaintiff made an initial inquiry regarding the time Mr. Jennings spent in answering the interrogatories in 2002 as follows:

Q. Can you tell me approximately how much time you spent on this litigation other than in preparation for this deposition, if any?
A. I don't believe any. [p. 62, line 9 thru 13]. [Appdx 029].

Specific questions were asked of Mr. Jennings regarding his knowledge of the basis for his answers, especially in view of Plaintiff's allegation that Government impact cards had been used to bypass the prime vendor program.

Q. Are you aware of any investigation that was done in connection with this litigation regarding the use of government impact cards to bypass the prime vendor program.
A. No.
**Q. Do you have any information one way or another if MTFs were bypassing the prime vendor program in the Lone Star Region in violation of the requirements of the contract?**
**A. No. [Emphasis added].**
Q. You've never done any investigation?
A. No.
Q. Are you aware if any investigation has been done in connection with this litigation regarding bypassing the prime vendor program?
A. Outside of the case manager investigating, no.
Q. And the case manager investigating, that would have been done prior to the litigation?
A. Correct.
[p. 49, line 18 thru p. 50 line 14]; [Appdx 027-028].

How can a Government contract officer certify under penalty of perjury that the Government has not diverted purchases and then testify that he has no information one way or the other on the issue. Of course, the question is rhetorical. Mr. Jennings simply signed what some other DSCP employee placed in front of him without regard to its accuracy or the prejudice to Plaintiff. Indeed, Mr. Jennings did not even notice that the certification made reference to Mr. Jennings as female. [p. 104, line 12-18]; [Appdx 030].

Perhaps more importantly, how can the person who caused Mr. Jennings to sign, undoubtedly a person much more sophisticated in litigation processes, justify that type of conduct. Apparently Plaintiff's counsel misunderstands the obligations of an entity responding to interrogatories, because Mr. Chadwick sees nothing improper and supports Mr. Jennings certification as truthful.

The deposition of Mr. Jennings ended with the following exchange,

> Q. …You've signed an interrogatory answer that says the government has no knowledge of diverted purchases, correct?
> A. Correct
> Q. In signing that interrogatory answer that the government has no knowledge of diverted purchases, what attempts did you make to determine whether or not there were diverted purchases?
> A. I have no knowledge. That's what I signed to.
> Q. So, when you say the government has no knowledge, you mean you had no knowledge?
> A. That's all I can talk to is my knowledge.
> [p. 118, lines 8 – 22]; [Appdx 0031].

**Prejudice to Plaintiff**

For over two years, Plaintiff has been seeking information pertaining to purchases by Lone Star Region MTFs of DAPA products from sources other than Plaintiff. Until May 25, 2005, it has not even been able to get any information from the

Government on any quantity for any period. Buried among the thousands of irrelevant pages produced by the Government on CDs, was page Appdx 0033. That chart is for one Lone Star MTF for one six-month period.

The information shown in that chart is quite revealing, both as to the massive quantities of med surg purchases by this Lone Star MTF outside the PV program, the number of different types of items being purchased, and the data available to the Government. It shows total 6-month purchases med surg purchases during the contract period at the MTF (Fort Hood) of $5.5 million; of which approximately 10% were from the prime vendor (United Medical), 40% by use of credit cards, and 30% by direct purchase. It shows the MTF stocked just over 700 different med/surg items and had 111 operational hospital beds. Analysis of the underlying data, which the Government should have performed, would have provided a reasonable baseline for damage calculations, statistical analyses, interrogatory estimates and settlement discussions. This information should have been provided to United Medical 2-years ago. It could have been used as a road map by the parties to expedite further discovery.

Plaintiff has been prejudiced by delay and expense, and seriously prejudiced by information the Government has, but has failed to disclose and summarize. There are six weeks left for fact discovery and analysis. The Government chose to have an individual provide interrogatory information and certify that information in a manner not even close to what Rule 33 requires. Plaintiff should not have to bear the financial or litigation consequences of that.

Plaintiff served reasonable interrogatories in 2002. Where it wanted dollar amounts, it offered the Government an opportunity to make estimates. Plaintiff has suggested negotiated stipulations to simplify the estimation process. That offer has been refused. The only justification the Government has for not answering the interrogatories (interrogatories to which it did not object) is that it is not required to investigate its own records to prove Plaintiff's case, a statement made without citation to any authority.

The Government's cavalier responses to interrogatories and its equally cavalier refusal to correct them have left Plaintiff dumbfounded. The Government claims it is willing to look at an sampling process, but it wants Plaintiff to bear much of the expense burden of determining what Government records are available and what they show. How can the Government not even know what records it has at the time it stated in a certified interrogatory response that it had not diverted purchases? Again, the question is rhetorical. There are individuals who were involved in answering the interrogatories who have taken lightly the responsibility to provide correct answers.

Had the Government made a genuine effort to answer, Plaintiff would not be six weeks from close of fact discovery wondering what information the Government has and where it is located. Plaintiff could not have been more prejudiced.

**Relief Requested**

Plaintiff requests that the Government be ordered to fully and truthfully answer each interrogatory by July 15, 2005, that a person knowledgeable about the truth of those be required to certify them, an and that the person who certifies the

interrogatories be required to appear for deposition, along with those documents used to answer the interrogatories no later than July 22, 2005.

**Signed June 10, 2005.**

Respectfully submitted,

/s/ Frank L. Broyles
Frank L. Broyles
State Bar No. 03230500
Goins, Underkofler, Crawford
& Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff

CERTIFICATE OF SERVICE

On June 10, 2005 the foregoing brief and referenced appendix was served on the persons shown below by the method shown below in accordance with rule 5.1.

/s/ Frank L. Broyles

**PERSONS SERVED:**

Kyle Chadwick
Department of Justice
Method Served: telecopy and ECF