Frank L. Broyles
1201 Elm St.
Suite 4800
Dallas, TX 75270
214-969-5454
214-969-5902 Telecopy
frankb@gucl.com email
Special Counsel to Reorganized Debtor

Appendix - IT's Mtn to compel
03-289

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re: UNITED MEDICAL SUPPLY COMPANY, INC., Reorganized Debtor | CASE NO.01 - 41911-bjh-11<br>Chapter 11 |
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br>v.<br>United States of America, Defendant | Adversary: 02-4230 |

**PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO DEFENDANT UNITED STATES**

TO DEFENDANT UNITED STATES OF AMERICA
By and through its attorney of record:

Ms. E. Kathleen Shahan
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875

Pursuant to Bankruptcy Rules 7033 and 7034, Plaintiff serves the following discovery requests. Documents requested are to be produced at the offices of counsel for Plaintiff by December 1, 2002. Responses to the discovery requests are to be served in accordance with rules 7033 and 7034.

**APPDX 00001**

These discovery requests incorporate the following defined terms:

1. "Award"

   This means the prime vendor contract between Plaintiff and Defense Supply Center Philadelphia (and its predecessor), as that contract was amended from time to time. It is the contract for which a claim was submitted to the DSCP under the Contract Disputes Act. It generally was identified as Award SP0200-97-D-7133.

2. "Solicitation"

   This means the solicitation seeking proposals for a prime vendor in the Lone Star Region. It generally was identified as Solicitation DLA120-93-R-0587.

3. "Participating Medical Treatment Facility" or "Participating MTF"

   This means each medical treatment facility in the Lone Star Region, including Fort Huachuca, AZ, that participated in the Prime Vendor Program under the contract with United Medical Supply.

4. "Prime Vendor Program"

   This means the Program for purchase and distribution of medical supplies and equipment to DoD MTFs in various regions, one of which was the Lone Star Region.

5. "Scheduled Medical Equipment and Supplies"

   This means the equipment and supplies purchased by the Participating MTFs that the Participating MTFs could have ordered from United Medical Supply. It refers to equipment and supplies purchased from United Medical Supply or other sources; the only criteria is that they were purchased and at the time they were purchased, the MTF could have ordered them from United Medical Supply at the time. Generally, DAPA products is synonymous with this term, unless used in the context of regions other than the Lone Star Region

6. "Contract Year"

   This means June 1 to June 1 beginning in 1997, except that the last Contract Year includes only those months prior to termination of United

Medical as the Prime Vendor as part of the implementation of the Prime Vendor II Program.

7. "Supply Center"

This means the DPSC or the DSCP.

INTERROGATORIES

1. This interrogatory requests information pertaining to the representations made by the Defendant in the Award SP0200-97-D-7133 and Modification Number 006 to that Award. For each Participating MTF, please provide the following information (The dollar amount provided for each Participating MTF is expected to total the amount stated in the Award and Modifications. If an exact dollar amount is not known, however, a best estimate may be used):

a. The dollar amount attributable to the Participating MTF for that MTF's share of the estimated dollar value for the base year as represented by the DPSC in the Solicitation.

b. The dollar amount attributable to the Participating MFT for that MTF's share of the estimated total dollar value for the contract as represented by the DPSC in the Solicitation.

c. If the totals provided under a and b above do not equal the amounts represented in the referenced Award and Modification, state why they do not.

2. What was the process used by Defendant to estimate the contract value over the projected five annual contract periods, including the process used to identify those MTFs expected to participate in the program.

3. Identify the persons with the Supply Center who prepared the estimates of contract value.

4. For each Participating MTF, identify the MTF and state, by contract year, the total dollar amount of Scheduled Medical Products and Supplies purchased by that particular MTF for each Contract Year during the term of the Contract between Plaintiff and Defendant, and, for each MTF, state the dollar amount of the Scheduled Medical Products and Supplies purchased from United Medical and the dollar amount of the Scheduled Medical Products and Supplies purchased from third parties.

5. For each Participating MTF, identify the MTF and state the total dollar amount of products for each contract year that the particular MTF ordered from United Medical but which was not supplied by United Medical.

6. For each Participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States.

7. For each Participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not.

8. Prior to awarding the contract to United Medical, did the Government make any estimate of profits or profit margins it anticipated United Medical receiving under the Contract, either by dollar or percent of revenues?

9. Did the Government ever determine during the term of the Contract that its original requirements estimates were too high? If "yes," state when such a determination was made, the individuals involved in making that determination, the dollar amount by which the Government's estimates were too high, and if the Government considered giving the Prime Vendors and adjustment to the contract price.

10. State all reasons, as you understand it, that Scheduled Medical Equipment and Supplies were, from time to time, ordered by a Participating MTF from United Medical under the Prime Vendor Contract, but not supplied by United Medical, specifically including: the MTF failed to properly order, the order was killed by United Medical, United Medical failed to provide timely confirmation, and United Medical failed to provide timely delivery.

11. With respect to each reason provided above, if you have an estimated dollar volume for of Scheduled Medical Equipment and Supplies ordered but not supplied, state the dollar amount you estimate was not supplied with respect to each reason for which you have such an estimate.

12. What is your estimate of the dollar volume of Scheduled Medical Equipment and Supplies not sold by United Medical due to the eleven alleged contractual violations you identify in your written denial of United Medical's claim dated August 22, 2002.

13. Identify each person involved in denying United Medical's request to mediate its claims against the Department of Defense. Identify means to provide the persons name, title, and business address. A person is involved if he or she provided information used in preparing the denial or reviewed the denial before it was sent to Plaintiff.

14. State, with respect to each Participating MTF, the dollar volume of Scheduled Medical Equipment and Supplies shipped by United Medical after the confirmation indicated the order had been killed. If you do not know exactly, answer with a best estimate.

15. With respect to every other region in the Prime Vendor Program for which a requirements contract was established, identify the: (1) region by name, (2) prime vendor or vendors (name and address) that were awarded a requirements contract (3) date of the initial award (4) represented value of the contract on the DoD solicitation (5) the actual dollar volume of products purchased from each of the other prime vendors under the contract, and whether or not a claim for equitable adjustment or breach of contract was filed by that prime vendor.

16. For each claim for equitable adjustment or breach of contract filed by another prime vendor under the Prime Vendor Program, state the prime vendor filing the claim, the amount of the claim, the resolution of the claim; and summarize the basis for the claim.

17. If you contend that the requirements of the Participating MTFs for Scheduled Medical Equipment and Supplies decreased from the Supply Center estimate after the Solicitation was provided to United Medical, state the reasons for such decrease and identify the date or dates such reasons became known to the United States.

18. For each Participating MTF, identify the MTF and state the total dollar amount of products for each contract year that the particular MTF ordered from United Medical but which was not supplied by United Medical. If you are unable to answer the dollar amount exactly, provide your best estimate.

19. For each Participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States. If you are unable to answer the dollar amount exactly, provide your best estimate.

20. For each Participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not. If you are unable to provide an exact dollar amount, provide your best estimate.

21. Prior to awarding the contract to United Medical, did the Government make any estimate of profits or profit margins it anticipated United Medical receiving under the Contract, either by dollar or percent of revenues?

22. Did the Government ever determine during the term of the Contract that its original requirements estimates were too high? If "yes," state when such a determination was made, the individuals involved in making that determination, the dollar amount by which the Government's estimates were too high, and if the Government considered giving the Prime Vendors and adjustment to the contract price. If you are unable to provide a dollar amount exactly, provide your best estimate.

23. State all reasons, as you understand it, that products were, from time to time, ordered by an MTF from United Medical under the Prime Vendor Contract, but not supplied by United Medical, specifically including the failure, if any, of the MTF to properly order, the order was killed by United Medical, United Medical failed to provide timely confirmation, and United Medical failed to provide timely delivery.

24. With respect to each reason provided above, if you have an estimated dollar volume for of products ordered but not supplied for individual reasons, state the dollar amount you estimate was not supplied with respect to each reason for which you have such an estimate.

25. What is your best estimate of the dollar volume of supplies not sold by United Medical due to the eleven alleged contractual violations you identify in your written denial of United Medical's claim dated August 22, 2002.

26. Identify each person involved in denying United Medical's request to mediate its claims against the Department of Defense. Identify means to provide the persons name, title, and business address.

27. State, with respect to each MTF, your best estimate of the dollar volume of items shipped by United Medical after the confirmation indicated the order had been killed.

28. With respect to every other region in the Prime Vendor Program for which a requirements contract was established, identify the: (1) region by name, (2) prime vendor or vendors (name and address) that were awarded a requirements contract (3) date of the initial award (4) represented value of the contract on the DoD

solicitation (5) the actual dollar volume of products purchased from each of the other prime vendors under the contract, and whether or not a claim for equitable adjustment or breach of contract was filed by that prime vendor.

29. For each claim for equitable adjustment or breach of contract filed by another prime vendor under the Prime Vendor Program, state the prime vendor filing the claim, the amount of the claim, the resolution of the claim, and summarize the basis for the claim.

30. If you contend that the requirements of the Participating MTFs for Scheduled Medical Equipment and Supplies decreased from the Supply Center estimate after the Solicitation was provided to United Medical, state the reasons for such decrease and identify the date or dates such reasons became known to the United States.

31. Did the Participating MTF's purchase Scheduled Medical Equipment and Supplies from sources other than United Medical in breach of the Prime Vendor Contract with United Medical?

32. If the answer to the previous question is "yes," state the dollar amount of such diverted purchases in breach of the contract. If you do not know exactly, state your best estimate.

33. Identify each person who claims that United Medical failed to perform its contractual obligations under the Award.

REQUESTS FOR PRODUCTION

Plaintiff requests production for inspection and copying the following:

1. The documents used by the Supply Center to estimate the representations made to United Medical of Base Year Contract Value and the Total Contract Value, including information received from each Participating MTF. This request refers to the estimate of contract value originally made and as amended from time to time by the Department of Defense.

2. All summaries prepared by or for the Supply Center which evidence, for any prime vendor region or Participating MTF any of the following:

a. the dollar volume of Scheduled Medical Equipment and Supplies purchased, including but not limited to summaries of annual or other period purchases and purchases by vendor;

b. percentage summaries pertaining to Scheduled Medical Equipment and Supplies purchases, including but not limited to percentages of annual purchases purchased from the prime vendor and purchases from non-prime vendor sources;

c. summaries of purchases of Scheduled Medical Equipment and Supplies not made from United Medical Supply due to the failure of United Medical Supply to comply with the contract.

3. The records for or with respect to each Participating MTF which evidence the total dollar amount of Scheduled Medical Products and Supplies purchased by that particular MTF for each Contract Year during the term of the Contract between Plaintiff and Defendant.

4. Records from each MTF which evidence the Scheduled Medical Products and Supplies purchased from United Medical and the dollar amount of the Scheduled Medical Products and Supplies purchased from third parties.

5. All correspondence between the Supply Center and Participating MTF's which evidence an effort by the Supply Center to stop the Participating MTF's from purchasing DAPA products from entities other than Prime Vendors. This seeks records related to all regions and MTFs.

6. All investigative reports by the Supply Center to determine why MTF's were purchasing Scheduled Medical Equipment and Supplies from sources other than a Prime Vendor. This request seeks reports submitted internally, to any other agency, or to Congress.

7. All correspondence between the Supply Center and Participating MTFs pertaining to any failure of United Medical Supply to comply with the contract terms.

8. All correspondence between the Supply Center and United Medical pertaining to any failure of United Medical Supply to comply with the contract terms.

9. All investigative reports by the Supply Center to determine the cause or causes of United Medical's failures to comply with the contract terms. This request seeks reports submitted internally, to any other agency, or to Congress.

10. All documents which estimate the profits or losses the Supply Center projected for United Medical under the Award.

11. The ten contract files referenced by the Supply Center in Plaintiff's FOIA requests to the Supply Center. For reference purposes, Mr. Linda Flatley referenced these files in an email to Catherine Kearns dated December 10, 2001.

12. All claims submitted by any prime vendor of medical supplies for breaches of contract or equitable adjustment under the prime vendor program in which United Medical participated as a prime vendor.

13. All correspondence between the Supply Center and any Participating MTF pertaining to the estimate of annual volume of Scheduled Medical Equipment and Supplies for that MTF. This request seeks documents created before and after the Award.

Respectfully submitted,

Frank L. Broyles
Texas State Bar No. 03230500
GOINS, UNDERKOFLER, CRAWFORD
& LANGDON, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for United Medical Supply

CERTIFICATE OF SERVICE

On October 25, 2002 the foregoing notice was served on the persons shown below by the method shown below in accordance with applicable bankruptcy rules.

**PERSONS SERVED:**

Ms. E. Kathleen Shahan
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875

Via Hand Delivery (overnight courier)

APPDX 00013

E. Kathleen Shahan
D.C. Bar # 267872
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875
202 - 307-0249
202 - 307-0494 (telefax)
Kathie.Shahan@usdoj.gov
Attorney for the United States

**IN THE UNITED BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: UNITED MEDICAL SUPPLY COMPANY INC., Debtor-in-Possession | ) | Case No.01 - 41911-bjh-11<br>Chapter 11 |
| United Medical Supply Company, Inc., Plaintiff, | ) | |
| v. | ) | Adversary: 02 - 4230 |
| United States of America, Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO DEFENDANT UNITED STATES**

Defendant, the United States of America, responds to plaintiff's first set of discovery requests as follows:

INTERROGATORY NO. 1

This interrogatory requests information pertaining to the representations made by the Defendant in the Award SP0200-97-D-7133 and Modification Number 006 to the Award. For each Participating MTF, please provide the following information (The dollar amount provided

for each Participating MTF is expected to total the amount stated in the Award and Modifications. If an exact dollar amount is not known, however, a best estimate may be used):

a. The dollar amount attributable to the Participating MTF for that MTF's share of the estimated dollar value for the base year as represented by DPSC in the Solicitation.

b. The dollar amount attributable to the Participating MTF for that MTF's share of the estimated total dollar value for the contract as represented by the DPSC in the Solicitation.

c. If the totals provided under a and b above do not equal the amounts represented in the referenced Award and Modification, state why they do not.

ANSWER NO. 1

a. This information is currently unknown, and therefore, information sufficient to make an estimate is not available. If the information was ever provided to DSCP, it is no longer available. The only information currently available consists of a consolidated list based upon information provided by the Army, the Air Force and the Navy, which list is produced in response to Request No. 1.

b. See response to Interrogatory No. 1a.

c. No response required.

INTERROGATORY NO. 2

What was the process used by Defendant to estimate the contract value over the projected five annual contract periods, including the process used to identify those MTFs expected to

participate in the program.

ANSWER NO. 2

DSCP requested information from the Prime Vendor Service Representatives (one for each branch – the Army, the Air Force and the Navy). They were asked to provide DSCP with the yearly estimates for each of their participating facilities. DSCP consolidated the information to determine the total estimate. Due to the startup time involved, DSCP used 50% of the total yearly estimate provided for the base year contract and 100% of the estimate for the option years. DSCP also requested that they provides a list of the facilities that wanted to participate in th program.

INTERROGATORY NO. 3

Identify the persons with the Supply Center who prepared the estimates of contract value.

ANSWER NO. 3

The identity of the individual at DSCP who collected the estimates provided by the Army, the Air Force and the Navy and collated them to produce the contract estimate is currently unknown. The information was collected from Major Troy Molnar of the Air Force and from Mike David of the Army. The individual from whom the information at the Navy was collected is unknown at this time.

INTERROGATORY NO. 4

For each Participating MTF, identify the MTF and state, by contract year, the total dollar amount of Scheduled Medical Products and Supplies purchased by that particular MTF for each Contract Year during the term of the Contract between Plaintiff and Defendant, and for each

MTF, state the dollar amount of the Scheduled Medical Products and Supplies purchased from United Medical and the dollar amount of the Scheduled Medical Products and Supplies purchased from third parties.

ANSWER NO. 4

Individual MTF's do not capture their information in this manner. However, to the extent that information concerning the dollar amount of Scheduled Medical Products purchased from United Medical is available, it is contained in the Contracting Officer's Files for United Medical and will be made available as set forth in Response to Request No. 7. With respect to purchases from third parties, DSCP is attempting to determine what records are available and will supplement this response if relevant information or documents are located.

INTERROGATORY NO. 5

For each Participating MTF, identify the MTF and state the total dollar amount of products for each contract year that the particular MTF ordered from United Medical but which was not supplied by United Medical.

ANSWER NO. 5

The requested information can be extrapolated from the reports of fill rates by MTF and will be made available as set forth in Response to Request No. 4.

INTERROGATORY NO. 6

For each Participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States.

ANSWER NO. 6

To the extent that "Products" means "Scheduled Medical Equipment and Supplies," see Answer to Interrogatory No. 4.

INTERROGATORY NO. 7

For each Participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not.

ANSWER NO. 7

The defendant has no knowledge of any dollar amounts for "diverted purchases." See Answer to Interrogatory No. 4 for purchases from third parties.

INTERROGATORY NO. 8

Prior to awarding the contract to United Medical, did the Government make any estimate of profits or profit margins it anticipated United Medical receiving under the Contract, either by dollar or percent of revenues?

ANSWER NO. 8

No.

INTERROGATORY NO. 9

Did the Government ever determine during the term of the Contract that its original requirement estimates were too high? If "yes, " state when such a determination was made, the

INTERROGATORY NO. 16

For each claim for equitable adjustment or breach of contract filed by another prime vendor under the Prime Vendor Program, state the prime vendor filing the claim, the amount of the claim, the resolution of the claim; and summarize the basis for the claim.

ANSWER NO. 16

There were no claims for equitable adjustments or breach of contract filed by any other prime vendor under the Prime Vendor Program.

INTERROGATORY NO. 17

If you contend that the requirements of the Participating MTF's for Scheduled Medical Equipment and Supplies decreased from the Supply Center estimate after the Solicitation was provided to United Medical, state the reasons for such decrease and identify the date or dates such reasons became known to the United States

ANSWER NO. 17

Defendant does not make such contention.

INTERROGATORY NO. 18

For each Participating MTF, identify the MTF and state the total dollar amount of products for each contract year that the particular MTF ordered from United Medical but which was not supplied by United Medical. If you are unable to answer the dollar amount exactly, provide your best estimate.

ANSWER NO. 18

To the extent that this request is duplicative of Interrogatory No. 5; see response thereto.

An estimate cannot be made as there is no basis for such an estimate.

INTERROGATORY NO. 19

For each Participating MTF, identify the MTF and state the total dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States. If you are unable to answer the dollar amount exactly, provide your best estimate.

ANSWER NO. 19

To the extent that this request is duplicative of Interrogatory No. 6; see response thereto. An estimate cannot be made as there is no basis for such an estimate.

INTERROGATORY NO. 20

For each Participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term" diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not. If you are unable to provide an exact dollar amount, provide your best estimate.

ANSWER NO. 20

To the extent that this request is duplicative of Interrogatory No. 7, see response thereto. An estimate cannot be made as there is no basis for such an estimate.

INTERROGATORY NO. 21

Prior to awarding the contract to United Medical, did the Government make any estimate

INTERROGATORY NO. 30

If you contend that the requirements of the Participating MTF's for Scheduled Medical Equipment and Supplies decreased from the Supply Center estimate after the Solicitation was provided to United Medical, state the reasons for such decrease and identify the date or dates such reasons became known to the United States.

ANSWER NO. 30

This request is duplicative of Interrogatory No. 17; see response thereto.

INTERROGATORY NO. 31

Did the Participating MTF's purchase Scheduled Medical Equipment and Supplies from sources other than United Medical in breach of the Prime Vendor Contract with United Medical?

ANSWER NO. 31

No.

INTERROGATORY NO. 32

If the answer to the previous question is "yes," state the dollar amount of such diverted purchases in breach of the contract. If you do not know exactly, state your best estimate.

ANSWER NO. 32

No response required.

INTERROGATORY NO. 33

Identify each person who claims that United Medical failed to perform its contractual obligations under the Award.

VERIFICATION

The undersigned certifies, under penalty of perjury, that, to the best of her knowledge and belief, the factual information in the foregoing responses is true.

Date: 11/21/02

James Jennings
James Jennings, Contracting Officer

CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2002, I caused a copy of the foregoing Defendant's Response to Plaintiff's Fist Set of Discovery Requests to Defendant United States by Federal Express upon the following:

Frank L. Broyles
Goins, Underkofler, Crawford & Langdon, LLP
1201 Elm Street, Suite 4800
Dallas, Texas 75270

E. Kathleen Shahan

IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN
DISTRICT OF TEXAS, FORT WORTH DIVISION

IN RE: UNITED MEDICAL )NO. 01-41911-BJH-11
SUPPLY COMPANY, INC., )
REORGANIZED DEBTOR )

ORIGINAL

- - - - - - - - - - - - - -

UNITED MEDICAL SUPPLY ) Adversary: 02-4230
COMPANY, INC., )
Plaintiff, )
- vs- )
UNITED STATES OF )
AMERICA, )
Defendant. )

Oral deposition of JAMES JENNINGS, taken at the ESQUIRE DEPOSITION SERVICES, 1880 John F. Kennedy Boulevard, Philadelphia, Pennsylvania, on Tuesday, March 8, 2005, at 9:40 a.m., before Dolores M. Horne, Shorthand reporter and Notary Public, in and for the Commonwealth of Pennsylvania.

ESQUIRE DEPOSITION SERVICES
1880 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19103

APPDX 00024

APPEARANCES:

GOINS, UNDERKOFLER, CRAWFORD & LANGDON
BY: FRANK L. BROYLES, ESQUIRE
1201 Elm Street
Suite 4800
Dallas, Texas 75270
(214) 969-5454
Attorneys for the Plaintiff

U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION
BY: KYLE CHADWICK, ESQUIRE
1100 L Street N.W.
Room 7062
Washington, DC 20530
(202) 305-7562
Attorneys for the Defendant

ALSO PRESENT:
KATHLEEN HALLAM, ESQUIRE

JAMES JENNINGS, after having been first duly sworn, was examined and testified as follows:

* * *

EXAMINATION

* * *

BY MR. BROYLES:

Q. Tell me your name, sir.

A. James Jennings.

Q. J E N N I N G S; is that correct?

A. Yes.

Q. Mr. Jennings, have you ever been involved in a deposition, given a deposition, sat in a deposition before?

A. No.

Q. Have you ever testified in a courtroom?

A. No.

Q. Have you ever testified in an administrative hearing of any kind?

A. Not that I know about.

Q. So, this is your first experience. So it's kind of a --

A. Yes.

understanding that some case managers did an investigation of that issue?

A. The case managers would investigate any problems that came up. So if that was a problem, then yes the case manager went and talked to the MTF.

Q. Now, have you ever seen any written documents that discuss that issue?

A. The --

Q. Outside of this litigation?

A. If it was a complaint then, yes, I would have read it.

Q. Do you recall any documents that you read that specifically discussed the use of government impact cards to bypass the prime vendor program?

A. No.

Q. Are you aware of any investigation that was done in connection with this litigation regarding the use of government impact cards to bypass the prime vendor program?

A. No.

Q. Do you have any information one way or

another if MTF were bypassing the prime vendor program in the Lone Star region in violation of the requirement terms of the contract?
A. No.
Q. You've never done any investigation?
A. No.
Q. Are you aware if any investigation has been done in connection with this litigation regarding bypassing the prime vendor program?
A. Outside of the case manager investigating, no.
Q. And the case manager investigating that would have been prior to the litigation?
A. Correct.
Q. So is it a fair statement then to say that to the best of your knowledge since this litigation was instituted, you have no knowledge of any investigation regarding diversion of purchases by a given MTF?
A. That is correct.
Q. Do you know a Captain Kreese; does that name ring a bell?
A. No.
Q. Colonel Reilly?

APPDX 00028

contract.
Q. But that was before the litigation. I'm talking about in the litigation.
A. Then what's the question?
Q. As I understand your testimony that your involvement with this litigation has been getting ready for this deposition?
A. Correct.
Q. Can you tell me approximately how much time you've spent on this litigation other than in preparation for this deposition, if any?
A. I don't believe any.
Q. Fair enough.
We've talked about the last specific phase of the process. We've talked about actually the delivery of the stuff. What is your understanding about how the prime vendor knows what to stock, in terms of getting usage data from the MTFs?
A. Each MTF was required to give the prime vendor usage data, which is whatever the product is and how much he was going to use per month. And that's what the prime vendor was

Q. Do you recognize what has been marked as Exhibit 17?
A. Yes.
Q. I'll ask you to turn to page 22 of that. Is that your signature that appears on page 22?
A. Yes.
Q. Now, at the time that you signed this document, what did you do to ensure that it was correct?
A. I don't recall.
Q. You see it says there that the undersigned certifies under penalty of perjury that to the best of her knowledge and belief the factual information in the foregoing responses is true. Why did you not change her to him?
A. I did not see that.
Q. Do you recall who presented you this document?
A. No.
(Document marked Exhibit 18 for identification.)
BY MR. BROYLES:

credit cards without attempting to first order from United Medical; do you understand that?

A. Yes.

Q. You got that understanding from review of documents in preparation for your deposition today?

A. Yes.

Q. And you've signed an interrogatory answer that says that the government has no knowledge of diverted purchases, correct?

A. Correct.

Q. In signing that interrogatory answer that the government has no knowledge of diverted purchases, what attempts did you make to determine whether or not there were diverted purchases?

A. I have no knowledge. That's what I signed to.

Q. So, when you say the government has no knowledge, you mean you had no knowledge?

A. That's all I can talk to is my knowledge.

MR. BROYLES: Pass the witness.

C E R T I F I C A T E

I hereby certify that the witness was duly sworn by me and that the deposition is a true record of the testimony given by the witness.

------------------------

Dolores M. Horne

Dated: March 13, 2005

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying shorthand reporter.)

**Regional Tri-Service Medical Logistics Data Collection**

| | |
|---|---|
| Enter Name of Activity | Darnall (DACH) |
| Enter Branch of Service | Army |
| Enter Tri-Care Region Number | 6 |
| Enter Number of Operational Hospital Beds | 111 |
| How many services contracts do you have for the following areas: | |
| a) Medical Maintenance (Provide separate listing) | 19 |
| b) Housekeeping (Provide separate listing) | 1 |
| c) Laundry (Provide separate listing) | 1 |
| d) Linen (if rented or leased) (Provide separate listing) | 0 |
| e) Hazardous Material (RMW) (Provide separate listing) | 1 |
| **On-Hand Inventory** | |
| Enter # of Active Lines Stocked & Nonstocked as of 12/31/99. | 763 |
| Enter Dollar Value of Active Lines Stocked & Nonstocked as of 12/31/99 ($). | $266,447 |
| Enter # of Active Lines Stocked & Nonstocked that are PV as of 12/31/99. | |
| Enter # of Active Lines Stocked & Nonstocked as of 5/31/00. | 714 |
| Enter Dollar Value of Active Lines Stocked as of 5/31/00 ($). | $262,873 |
| Enter # of Active Lines Stocked & Nonstocked that are PV as of 5/31/00. | |
| **Sales** | |
| Enter Total Quarterly Medical Surgical Sales ($) from Oct-Dec 99. | $2,550,650 |
| Enter Total Quarterly Medical Surgical Sales ($) from Jan-Mar 00. | $3,063,904 |
| Enter PV Quarterly Medical Surgical Sales ($) from Oct-Dec 99. | $278,027 |
| Enter PV Quarterly Medical Surgical Sales ($) from Jan-Mar 00. | $304,345 |
| Enter Quarterly ECAT LIDS Sales ($) from Oct-Dec 99. | $465 |
| Enter Quarterly ECAT LIDS Sales ($) from Jan-Mar 00. | $0 |
| Enter Quarterly ECAT Optical Sales ($) from Oct-Dec 99. | $0 |
| Enter Quarterly ECAT Optical Sales ($) from Jan-Mar 00. | $0 |
| Enter Total Quarterly DBPA Sales ($) from Oct-Dec 99. | $686,418 |
| Enter Total Quarterly DBPA Sales ($) from Jan-Mar 00. | $907,051 |
| Enter Total Quarterly Local Purchase Sales ($) from Oct-Dec 99. | $191,596 |
| Enter Total Quarterly Local Purchase Sales ($) from Jan-Mar 00. | $391,128 |
| Enter Total Quarterly Credit Card Sales ($) from Oct-Dec 99. | $773,198 |
| Enter Total Quarterly Credit Card Sales ($) from Jan-Mar 00. | $1,160,285 |
| **Product Line Standardization** | |

LAW OFFICES
GOINS, UNDERKOFLER, CRAWFORD & LANGDON
A REGISTERED LIMITED LIABILITY PARTNERSHIP
RENAISSANCE TOWER
1201 ELM STREET, SUITE 4800
DALLAS, TEXAS 75270

FRANK L. BROYLES
BOARD CERTIFIED – BUSINESS BANKRUPTCY
TEXAS BOARD OF LEGAL SPECIALIZATION

(214) 969-5454
FAX (214) 969-5902
E-mail: frankb@gucl.com

December 16, 2002

Ms. E. Kathleen Shahan
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875

Via Certified Mail RRR 7002 2030 0002 2126 2630

**RE: Case No. 01-41911-bjh-11;** ***In re: United Medical Supply Company, Inc.***
**Adversary No. 02-4230;** ***United Medical Supply Co., Inc.*** **v. United States**

Dear Ms. Shahan:

I have reviewed your client's discovery responses and find them to be significantly deficient. Accordingly, I am requesting supplementation as described below.

The Defendant's Response to Interrogatory Number 1 indicates that the responding entity is the DSCP. The party is the United States and each individual MTF is required to participate in responding to the discovery requests. The information requested is probably available for some, if not all, MTFs. Accordingly, United Medical requests that this question be answered to the fullest extent possible. United Medical recognizes that this may impose quite a burden on the Defendant, however, it was the United States, not United Medical, that elected to proceed down the litigation path prior to or instead of mediation.

Interrogatory 2 requests a description of the process used to estimate the contract value. The response states, "DSCP requested information…." The response does not state the information requested. Without a specific description of the information requested the response is not meaningful. Please supplement to provide the specific information requested, or provide the documents used to solicit the information.

Interrogatory 3 requests the identity of the individuals who collected the information. The response indicates that the information is unknown. Unknown to whom? The United States? Somebody in the government has to know the identity, but I recognize that locating such persons may be quite a task. The response identifies the persons who provided the information from the Air Force and Army. I find it unlikely that the Air Force and Army individuals cannot either identify the persons who requested the information or provide documents that would provide the identification. Please supplement to clarify the names of the persons who do not know the identity so that I can decide if a reasonable effort has been made to answer this question.

Interrogatory 4 has been answered by directing United Medical to its contract files held by the DSCP. Rule 33(d) requires more specification than that when the response is a reference to documents. That election is only available where the burden on the government is not substantially less than the burden on United Medical. First, the burden on United Medical is substantially greater since it must incur substantial travel costs to review the records. Ignoring that issue for the time being, the government cannot simply make a reference to some file that it is going to produce, which, by its own admission, is quite a voluminous file. The government must specify the documents within the file and their location within the file in order to comply with Rule 33(d). Accordingly, United Medical requests that this response be supplemented to comply with Rule 33(d).

The first sentence of Interrogatory Number 4 does not make any sense. Somehow each branch of the Department of Defense was able to come up with an estimate of their purchasing needs in order for the contract value to be estimated. That could not have been done in a vacuum. United Medical requests that the Defendant revisit the issue and make any appropriate supplements to this answer.

I am reserving comment on interrogatory number 5 until I see the fill rate reports.

Interrogatory Numbers 6 and 7 reference the answer to Interrogatory Number 4. They suffer from the same deficiencies and a supplement is requested.

Interrogatory number 10 is a contention interrogatory and answering it by an Rule 33(d) election is not available. Moreover, the interrogatory is not overlybroad and the objection is not responsive to the request. United Medical requests that this interrogatory be fully answered and that the objection be withdrawn.

The response to Interrogatory number 13 is not made in good faith. United Medical made two requests to mediate. The first was specifically denied. The second was constructively denied. The bankruptcy court made a finding that the government denied United Medicals two requests for mediation. Accordingly, United Medical requests that the government fully answer this interrogatory.

The response to Interrogatory number 31 is inconsistent with other responses. In order to answer "no" to whether the government made purchases from third parties in breach of the requirements contract, there would have to be a determination made of what purchases were made and the reasons for such purchases. Prior answers to interrogatories, e.g., number 4, indicate that this information was not available at the time that Interrogatory 31 was answered. Accordingly, United Medical requests that the Interrogatory 31 answer be changed or the other information requested necessary to support a "no" answer be provided.

The government's response to interrogatory number 33 is not responsive. The request asked for the identity of those persons who claim United Medical failed to perform its obligations under the contract. The response identifies persons who have knowledge of such claims and does not limit the identities to persons who are making such claims. United Medical requests that this interrogatory be supplemented to limit the answer only to those persons who claim that United Medical failed to perform its obligations.

Some answers to the interrogatories contradict correspondence previously received from DSCP and MTFs. Therefore, the verification is quite important and the verification provided by Mr. Jennings is based on "the best of his knowledge" is entirely insufficient and not a proper verification. There are several proper procedures Mr. Jennings can follow to verify the answers to interrogatories. A simple "best of my knowledge" procedure is not one of them. Accordingly, United Medical requests that the verification by Mr. Jennings be amended, and to the extent that the amended verification requires amendment of answers, those answers be amended as well.

Very truly yours,

Frank L. Broyles