**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, *Defendant* | CASE NO: 03-CV-289<br><br>Judge Allegra |

**PLAINTIFF'S MOTION FOR ORDER NUNC PRO TUNC GRANTING LEAVE TO SERVE ADDITIONAL INTERROGATORIES; OR ALTERNATIVELY FOR LEAVE TO RE-SERVE ADDITIONAL INTERROGATORIES AND SHORTEN RESPONSE TIME**

**TO THE HONORABLE UNITED STATES COURT OF FEDERAL CLAIMS:**

On June 1, 2005, Plaintiff served counsel for the Government with a set of interrogatories directed to individual Medical Treatment Facilities ("MTFs"). Plaintiff previously served the Government with a first set of interrogatories. Consequently, the recently served sets clearly exceed 25 total interrogatories served by Plaintiff. For the reasons shown below and in its supporting brief, Plaintiff seeks an order nunc pro tunc granting leave as of June 1, 2005 to serve the interrogatories. Alternatively, Plaintiff seeks an order granting it leave to re-serve the interrogatories and shortening time for response.[1]

Prior to serving the interrogatories, Plaintiff's counsel recalls conferring with Government counsel to determine if the Government would consent to service of additional interrogatories or if Plaintiff should seek leave. The existence of this issue appears in Plaintiff's proposed discovery plan sent to the Government last year, a copy of which is attached to

[1] The Court has ordered close of fact discovery on July 26, 2005.

Plaintiff's Second Motion to Compel. Plaintiff's counsel further recalls Government counsel indicating in response that he would not oppose full discovery. Based on that recollection, Plaintiff's counsel served the interrogatories and requested written confirmation from the Government that leave would not be required.

Counsel for the Government responded on June 9, 2005 by letter that he did not recall any discussion on the issue of additional interrogatories, that he did not represent the individual MTFs, only the United States, that Plaintiff had already exceeded its 25 interrogatory limit, and that he would not be responding to the additional interrogatories absent a court order or negotiated stipulation. Government counsel further advised that he was going on leave from June 13 thru June 17, 2005. Finally, Government counsel stated, "I am, in fact, willing to consider stipulating that you may serve upon the Government a reasonable number of additional interrogatories concerning issues that are not addressed in your first 33.[2] Your recent interrogatories do not fit that description, however." The Government did not further enlighten Plaintiff's counsel as to why its interrogatories did not fit that description.

The interrogatories served on June 1, 2005 were one set of 22 on most of the MTFs, virtually identical to the set attached as Exhibit A. The interrogatories were organized based on Plaintiff's individual claims and addressed what Plaintiff's counsel considers to be evasive discovery by DSCP.

The first 7 interrogatories concerned the estimation process used by the Government to determine contract value as published in the Solicitation. In its first set directed to the United States, the Government responded to interrogatory 1 asking how it determined its estimates, "If

---

[2] Plaintiff inadvertently duplicated several interrogatories in its first set, a duplication recognized by the Government. Accordingly, Plaintiff does not believe the duplicated interrogatories should count against

this information was provided to DSCP, it is no longer available." (See, Government's responses to interrogatories attached to Plaintiff's First Motion to Compel). This illustrates one of the fundamental problems Plaintiff has faced in this case, getting discovery outside of DSCP, *i.e.*, getting discovery from the United States, not just DSCP. So far, Plaintiff has been almost 100% unsuccessful in that effort. Consequently, Plaintiff created and served a few interrogatories on this particular issue, as shown on Exhibit A, numbers 1 through 7.

The next 11 interrogatories were directed to the issue of diversion and estimation. The next interrogatory (No. 19) seeks identification of the records custodian of relevant records. The final 3 interrogatories are miscellaneous interrogatories concerning payment issues, estimation of diversion issues, and identification of persons with knowledge of facts.

Plaintiff has made numerous attempts to obtain discovery from the individual MTFs. In every instance DSCP has thwarted that effort. First, Plaintiff served interrogatories on the United States. DSCP had a contract officer sign those interrogatories who had not done any investigation in connection with answering the interrogatories, and did not know of any investigation. [See, Plaintiff's First Motion to Compel, which is pending in this Court]. Plaintiff sought documents from the United States, and only received documents from DSCP. [See Plaintiff's Second Motion to Compel, also pending]. On several occasions, Plaintiff has indicated in wanted to take the 30(b)(6) deposition of the various agencies, but first needed to take Mr. Jennings deposition. In May 2005, Plaintiff specifically requested dates in June for a 30(b)(6) deposition of Fort Hood. No dates for any 30(b)(6) deposition have been provided, and counsel

---

the 25 limit. This is not much of an issue, since the Government responded without objection to the number of interrogatories.

for the Government left on leave with notice that dates would be provided when he returned, which return will be June 20, 2005, thus making a June deposition unlikely.

The United States had opportunity to obtain discovery during the first phase of discovery. Plaintiff did not have that opportunity. Its requests (and complaints) to the Government during that period to supplement the discovery the Government provided in the bankruptcy proceedings were opposed. When Plaintiff's discovery period began in February 2005, Plaintiff had less than six months to complete its fact discovery in what the Court recognized is a complex case, a discovery deadline which is now about six weeks away.

The necessity for interrogatories to each individual MTF resulted from the failure of the Government to provide Government wide answers and documents and to limit its responses and documents to DSCP. Even the DSCP representative who signed the interrogatories did not have any knowledge to support several of his answers. [*See*, Plaintiff's First and Second Motions to Compel Discovery].

Mr. Chadwick's contention that he does not represent the individual MTFs is clearly a form over substance argument. Plaintiff has the right to take 30(b)(6) depositions of each MTF, entities that undoubtedly would be represented by Mr. Chadwick at such depositions. *Sanyo Laser Products, Inc. v. Arista Records, Inc.,* 214 F.R.D 496 (S.D. Indiana 2003).

Plaintiff believes the Government can reasonably estimate the dollar quantity of diversion. Of the 700+ manufacturers who were DAPA holders, United believes, based on considerable experience as a medical supply distributor, that the majority, if not the vast majority, of diverted purchases were purchased from less than 100 manufacturers, possibly as few as 25. Initially, Plaintiff believed that "Government" would provide that information. The "Government," however, turned out to be DSCP, an agency that has not provided that

information. Plaintiff has not obtained "Government-wide" information on any issue and there is not any indication that such information will be obtained without a tooth and nail discovery fight.

There are a number of factors supporting Plaintiff's Motion. (1) The interrogatories are targeted to specific issues in the case. (2) Plaintiff has previously attempted to obtain the information by other means and has been unsuccessful. (3) The fact discovery deadline of July 26, 2005 is imminent. (4) The Government has failed to provide Government wide discovery in its interrogatories and instead provided evasive, unsupportable answers to those interrogatories by designating a person with wholly insufficient knowledge. (5) The Government has failed to make good on its promises to produce documents at the individual MTFs. And (6) The Government has not provided any dates for the 30(b)(6) depositions of any MTF.

For the reasons set forth above, Plaintiff requests that the Court enter an order nunc pro tunc granting it leave to serve interrogatories on each MTF shown on Exhibit B as of June 1, 2005. Alternatively, Plaintiff seeks an order granting it leave to re-serve interrogatories on each MTF as shown on Exhibit B an order that the Government serve its answers and other responses no later than July 8, 2005.

**Signed June 14, 2005.**

Respectfully submitted,

/s/ Frank L. Broyles

Frank L. Broyles
State Bar No. 03230500
Goins, Underkofler, Crawford
& Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff

CERTIFICATE OF CONFERENCE

Counsel for the Government, by letter of June 9, 2005, stated that the Government opposes the requested relief.

/s/Frank L. Broyles

CERTIFICATE OF SERVICE

On June 14, 2005 the foregoing motion was served on the persons shown below by the method shown below in accordance with rule 5.1.

/s/ Frank L. Broyles

**PERSONS SERVED:**

Kyle Chadwick
Department of Justice
Method Served: telecopy and ECF

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | CASE NO: 03-CV-289<br><br>Judge Allegra |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO BROOKS AIR FORCE BASE MEDICAL TREATMENT FACILITY**

**TO BROOKS AIR FORCE BASE MEDICAL TREATMENT FACILITY, by and through its attorney, Mr. Kyle Chadwick**
U. S. Department of Justice
1100 L. St., NW
8th Floor
Washington, DC 20530

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff United Medical Supply Company, Inc. serves the following interrogatories on Brooks Air Force Base Medical Treatment Facility, to be answered and verified in accordance with Rule 33. The purpose of these interrogatories is to obtain information from each MTF, not from DSCP.

**A. Definitions**

**a.** DSCP means Defense Supply Center Philadelphia and its predecessor Defense Personnel Support Center ("DPSC").
**b.** Prime Vendor Contract means that requirements medical supply contract awarded United Medical effective June 1, 1997 by DSCP for the Lone Star Region.
**c.** United Medical means United Medical Supply Company, Inc., a corporation organized under the laws of the State of Texas and headquartered in Fort Worth Texas.
**d.** Contact information with respect to a person means to provide that person's name and last known business address and home address, last known business phone number, and last known employer.
**e.** DAPA Items means items subject to a Distribution and Pricing Agreement between the DAPA holder and DSCP for consumable and disposable medical/surgical products and hand-held surgical instruments.
**f.** "You" or "Your" means Brooks Air Force Base Medical Treatment Facility and persons working at its medical treatment facilities. It does not include DSCP.

**B. Interrogatories Concerning Estimates**

DSCP has provided a list of estimated purchases of medical and surgical products of the type contemplated by the Prime Vendor Contract. The stated date of the list is November 6, 1995. A copy of that list is attached for your reference as page number X-1. DSCP represented to United Medical that the estimates were based on a 12-month reporting period. DSCP further represented to United Medical that these estimates were for consumable and disposable

medical/surgical products and hand-held surgical instruments. United Medical seeks to discover from Brooks Air Force Base Medical Treatment Facility the methodology, if any, used by Brooks Air Force Base Medical Treatment Facility to prepare any estimates or historical summaries Brooks Air Force Base Medical Treatment Facility provided to DSCP and accuracy of those estimates. Accordingly, please provide the following information.

1. The identity or identities (including contact information) of those persons with (or formerly with) Brooks Air Force Base Medical Treatment Facility who prepared either any estimates of purchases, or any historical summary of purchases, of consumable and disposable medical/surgical products and hand-held surgical instruments for during any time between July 1, 1995 and May 31, 2000.

2. The dollar amount of such estimates or summaries and the period or periods covered by such estimates or summaries.

3. The methodology used by Brooks Air Force Base Medical Treatment Facility to prepare the estimates or summaries. In response to this question, state how Brooks Air Force Base Medical Treatment Facility segregated estimates of consumable and disposable medical/surgical products and hand-held surgical instruments (i.e., products covered or potentially covered under the Prime Vendor Contract) from other types of medical/surgical products and equipment. If estimates or summaries were made on a per operational hospital bed basis, state how this information was obtained and summarized.

4. Actual usage (by dollar amount) for such consumable and disposable medical/surgical products and hand-held surgical instruments during the period beginning with January 1, 1995 and ending April 30, 2001. Provide this information on a monthly or quarterly basis. If precise dollar usage is not known or reasonably available, provide your best estimate of actual usage.

5. Describe how Brooks Air Force Base Medical Treatment Facility obtained and provided to United Medical, Brooks Air Force Base Medical Treatment Facility's usage data for DAPA Items, whether such data was prior to or after the June 1, 1997.

6. The identity (including contact information) of the custodian or custodians of records evidencing the responses to the previous 5 interrogatories.

7. The identity (including contact information) of the custodian or custodians of records used to prepare the responses to the previous 6 interrogatories.

**C. Interrogatories Concerning Purchases of Consumable and Disposable Medical/Surgical Products and Hand-held surgical instruments and Purchase Methods**

The purpose of the following interrogatories is to determine what purchase methods were used to purchase consumable and disposable medical/surgical products and hand-held surgical instruments if such supplies and instruments were possibly covered by the Prime Vendor Contract. Accordingly, provide the following information:

8. Did Brooks Air Force Base Medical Treatment Facility order and subsequently purchase any DAPA Items from third parties without first attempting to order such items from United Medical between June 1, 1997 and April 30, 2001? If yes, state Brooks Air Force Base Medical Treatment Facility's estimated dollar amount of such purchases during that period and how such estimated dollar amount was determined.

9. If Brooks Air Force Base Medical Treatment Facility purchased DAPA Items from third parties instead of United Medical, how frequently, if at all, does Brooks Air Force Base Medical Treatment Facility estimate that it paid more than the DAPA price. Answer on a 1 to 10 with 1 being never, 2 being rarely, 5 being occasionally, etc, with 10 being Brooks Air Force Base Medical Treatment Facility's estimate that it almost always paid more than the DAPA price and state, in percent of DAPA price, Brooks Air Force Base Medical Treatment Facility's best estimate how much more it paid than the DAPA price. For example, if the average DAPA price for items occasionally purchased from third parties is estimated to have been $100 and Brooks Air Force Base Medical Treatment Facility estimates that it paid an average of $110 to third parties for such purchases, the answer would be 5 for the frequency and 10% for the pricing portions of the answer.

10. For each calendar quarter beginning with July 1, 1997 and ending with March 30, 2001, what, in Brooks Air Force Base Medical Treatment Facility's best estimate, is the percentage of Brooks Air Force Base Medical Treatment Facility's total purchases of DAPA Items by each of the following purchase methods: (Except for rounding errors, the total should equal 100%)[1]:

   a. Purchases from United Medical under the Prime Vendor Contract:

   b. Purchases Using Government Impact Cards (i.e. government credit cards):

   c. Purchases using local purchase methods:

   d. Purchases using DBP Agreements:

   e. Other purchase methods:

---

[1] Attached as Page X-2 is a chart that may be used for your convenience.

11. For each calendar quarter beginning with July 1, 1997 and ending with March 30, 2001 state[2]:

   a. Brooks Air Force Base Medical Treatment Facility's best estimate (by dollar volume) of total actual purchases for DAPA Items manufactured by Ethicon, Inc. and Ethicon – Endo-Surgery, Inc. ("Ethicon") (this will be primarily suture and related products and will include purchases from United Medical);

   b. All reasons that such Ethicon purchases by Brooks Air Force Base Medical Treatment Facility were made from sources other than United Medical; and

   c. For each reason stated in subparagraph b above, Brooks Air Force Base Medical Treatment Facility's best estimate (by dollar volume) of actual purchases for consumable and disposable medical/surgical products and hand held surgical instruments manufactured by Ethicon, Inc. (this will be primarily suture and related products) purchased from sources other than United Medical.

12. If, during any calendar quarter during the period beginning June 1, 1007 and ending March 30, 2001, Brooks Air Force Base Medical Treatment Facility purchased more than $10,000 during the quarter of consumable and disposable medical/surgical products and hand held surgical instruments that were not subject to Distribution and Pricing Agreements with the Government (i.e., non-DAPA Items) at the time of purchase, state Brooks Air Force Base

[2] Attached as Page X-3 is a chart that may be used for your convenience.

Medical Treatment Facility's best estimate of the dollar volume of such purchases of non-DAPA Items for each such quarter.

13. For each of the six fiscal years prior to January 1, 2002, state the dollar amount budgeted by Brooks Air Force Base Medical Treatment Facility for the purchase of consumable and disposable medical/surgical products and hand-held surgical instruments by ending date of the fiscal year of Brooks Air Force Base Medical Treatment Facility.

14. For the period June 1, 1997 through April 30, 2001, (a) what policies and procedures did Brooks Air Force Base Medical Treatment Facility maintain to prevent purchases of DAPA Items from third parties in breach of the Prime Vendor Contract; (b) identify each person at Brooks Air Force Base Medical Treatment Facility who was responsible for preventing purchases of DAPA Items from third parties in breach of the Prime Vendor Contract and the dates such persons had that responsibility; and (c) what complaints or suggestions were made to Brooks Air Force Base Medical Treatment Facility by DSCP concerning prevention of contract breach of the Prime Vendor Contract.

15. Describe in detail what attempts, if any, has Brooks Air Force Base Medical Treatment Facility made to determine if any DAPA Items were probably purchased in breach of the Prime Vendor Contract. Include in the description Brooks Air Force Base Medical Treatment Facility's best estimate the dollar volume, if any, of DAPA Items Brooks Air Force Base Medical Treatment Facility determined were probably purchased in breach of the Prime Vendor Contract.

16. What are the top five (5) DAPA Items (in terms of dollar volume), if any, that Brooks Air Force Base Medical Treatment Facility reasonably believes it attempted to order from United Medical during the period June 1, 1997 through April 30, 2001, but was required to order from a third party because of United Medical's inability to supply the items:

17. Describe each item by description and manufacturer;

    a. Estimate the total dollar volume of each such items you were required to order from third parties; and

    b. Identify the third parties from whom you made such orders.

18. For the period July 1, 1997 through March 30, 2001, what is Brooks Air Force Base Medical Treatment Facility's best estimate of the number of DAPA Items, if any, Brooks Air Force Base Medical Treatment Facility purchased in material quantities and Brooks Air Force Base Medical Treatment Facility's best estimate of the number of the number of DAPA Items, if any, Brooks Air Force Base Medical Treatment Facility had to purchase in material quantities because of United Medical's failure to obtain a distribution agreement with one or more DAPA holders.

19. Identify the custodian or custodians of records of all records you reviewed to answer Interrogatories 8 thru 18.

**D. Miscellaneous Interrogatories**

20. Beginning with the January 1, 1997 and ending April 30, 2001, state the number of operational hospital beds at Brooks Air Force Base Medical Treatment Facility's medical treatment facilities, any changes to that number, the magnitude of such changes (plus or minus) and the dates of such changes.

21. Attached beginning at page X-4 is a series of internal emails of DSCP. State:

   a. what date, if any, Brooks Air Force Base Medical Treatment Facility learned of the translator problem described in those emails;

   b. whether Brooks Air Force Base Medical Treatment Facility continued to order medical and surgical supplies and equipment from United Medical with knowledge of any on-going translator problems;

   c. whether Brooks Air Force Base Medical Treatment Facility disclosed to United Medical the translator problems and how such disclosure, if any, was made; and

   d. if you answered "yes" to subpart b, why you continued to order medical supplies and equipment from United Medical with knowledge of the translator problems.

22. Except for attorneys, identify each person who provided answers or portions of answers to any of the above interrogatories and state each interrogatory number or sub-interrogatory to which such person provided answers or portions of answers.

**Signed May 31, 2005.**

Respectfully submitted,

____________________________

Frank L. Broyles
State Bar No. 03230500
Goins, Underkofler, Crawford
& Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff

CERTIFICATE OF SERVICE

On May 31, 2005 the foregoing interrogatories with referenced attachments was served on the persons shown below by the method shown below.

__________________________

**PERSONS SERVED:**

Kyle Chadwick
Department of Justice
Method Served: overnight courier for hand delivery on June 1, 2005.

**MEDICAL/SURGICAL PRIME VENDOR**
**LONE STAR REGION**

11/6/95

| | |
|---|---|
| **ARMY** | |
| Fort Sam Houston | $21,000,000 |
| Fort Hood | $ 4,000,000 |
| Fort Bliss | $18,000,000 |
| Fort Sill | $ 4,000,000 |
| **NAVY** | |
| Corpus Christi | $ 300,000 |
| **AIR FORCE** | |
| Brooks AFB | $ 74,500 |
| Kelly AFB | $ 350,000 |
| Randolph AFB | $ 110,000 |
| Laughlin AFB | $ 420,000 |
| Sheppard AFB | $ 2,500,000 |
| Altus AFB | $ 2,000,000 |
| Tinker AFB | $ 420,000 |
| Reese AFB | $ 60,000 |
| Dyess AFB | $ 1,490,000 |
| Goodfellow AFB | $ 41,000 |
| Holloman AFB | $ 400,000 |
| Cannon AFB | $ 500,000 |
| US Public Health Service | $ 2,000,000 |
| TOTAL | $57,665,500 |

Page X-1

A. Purchases from United Medical under the Prime Vendor Contract
B. Purchases Using Government Impact Cards (i.e. government credit cards)
C. Purchases using local purchase methods
D. Purchases using DBP Agreements
E. Other purchase methods

| Method | Q3 1997 (%) | Q4 1997 (%) | Q1 1998 (%) | Q2 1998 (%) | Q3 1998 (%) | Q4 1998 (%) | Q1 1999 (%) | Q2 1999 (%) | Q3 1999 (%) | Q4 1999 (%) | Q1 2000 (%) | Q2 2000 (%) | Q3 2000 (%) | Q4 2000 (%) | Q1 2001 (%) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | | | | | | | | | | | | | | | |
| B | | | | | | | | | | | | | | | |
| C | | | | | | | | | | | | | | | |
| D | | | | | | | | | | | | | | | |
| E | | | | | | | | | | | | | | | |
| Total* | | | | | | | | | | | | | | | |

* should equal 100%

A. Total Purchases of Ethicon Products
B. Total Purchases of Ethicon Products from Sources Other than United Medical
Purchases of Ethicon Products from Sources Other than United Medical by reason for such purchases
List Below (Add rows if needed)
C. ______________________________
D. ______________________________
E. ______________________________
F. ______________________________
G. ______________________________

| Method | Q3 1997 ($) | Q4 1997 ($) | Q1 1998 ($) | Q2 1998 ($) | Q3 1998 ($) | Q4 1998 ($) | Q1 1999 ($) | Q2 1999 ($) | Q3 1999 ($) | Q4 1999 ($) | Q1 2000 ($) | Q2 2000 ($) | Q3 2000 ($) | Q4 2000 ($) | Q1 2001 ($) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | | | | | | | | | | | | | | | |
| B | | | | | | | | | | | | | | | |
| C | | | | | | | | | | | | | | | |
| D | | | | | | | | | | | | | | | |
| E | | | | | | | | | | | | | | | |
| F | | | | | | | | | | | | | | | |
| G | | | | | | | | | | | | | | | |

Page X-4

Subj: **Update Request**
Date: 04/06/2001 2:17:50 PM Central Daylight Time
From: MEGEDMONDS
To: dgalligan@dscp.dla.mil
CC: Wpbandy, jcuorato@dscp.dla.mil

Donna,

In February, I emailed statement information for the following facilities to DSCP via Steve Hasting.

Cannon AFB submitted 2/5/01
Laughlin AFB submitted 2/7/01
Sheppard AFB submitted 2/21/01

I have not received any payments for items included in the statements nor have I received any questions concerning open calls for those facilities. Please inform me of the status of these open calls so that I can report to Mr. Bandy when we can expect payment. Thank you.

Megan Edmonds
Director of Credit and Collections
United Medical Supply Co.

Fri, 6 Apr 2001 10:18:54 -0700 (PDT)
Received: by localhost with Microsoft MAPI; Fri, 6 Apr 2001 13:12:09 -0400
Message-ID: <01C0BE9B.2F73CB20.jeff.summerour@american-depot.com>
From: Jeff Summerour <jeff.summerour@american-depot.com>
Reply-To: "jeff.summerour@american-depot.com"
<jeff.summerour@american-depot.com>
To: "United Medical - Bill Bandy (E-mail)" <Wpbandy@aol.com>
Cc: "United Medical - Vicki Bennett (E-mail)" <vlbums@aol.com>,
"AMD - Akhil Agrawal (E-mail)" <akhil@american-depot.com>
Subject: Small Business Joint Venture (SBJV)
Date: Fri, 6 Apr 2001 13:12:08 -0400
Organization: American Medical Depot
X-Mailer: Microsoft Internet E-mail/MAPI - 8.0.0.4211
MIME-Version: 1.0
Content-Type: text/plain; charset="us-ascii"
Content-Transfer-Encoding: 7bit