**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | CASE NO: 03-CV-289<br><br>Judge Allegra |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO BROOKS AIR FORCE BASE MEDICAL TREATMENT FACILITY**

**TO BROOKS AIR FORCE BASE MEDICAL TREATMENT FACILITY, by and through its attorney, Mr. Kyle Chadwick**
U. S. Department of Justice
1100 L. St., NW
8th Floor
Washington, DC 20530

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff United Medical Supply Company, Inc. serves the following interrogatories on Brooks Air Force Base Medical Treatment Facility, to be answered and verified in accordance with Rule 33. The purpose of these interrogatories is to obtain information from each MTF, not from DSCP.

**A. Definitions**

**a.** DSCP means Defense Supply Center Philadelphia and its predecessor Defense Personnel Support Center ("DPSC").
**b.** Prime Vendor Contract means that requirements medical supply contract awarded United Medical effective June 1, 1997 by DSCP for the Lone Star Region.
**c.** United Medical means United Medical Supply Company, Inc., a corporation organized under the laws of the State of Texas and headquartered in Fort Worth Texas.
**d.** Contact information with respect to a person means to provide that person's name and last known business address and home address, last known business phone number, and last known employer.
**e.** DAPA Items means items subject to a Distribution and Pricing Agreement between the DAPA holder and DSCP for consumable and disposable medical/surgical products and hand-held surgical instruments.
**f.** "You" or "Your" means Brooks Air Force Base Medical Treatment Facility and persons working at its medical treatment facilities. It does not include DSCP.

**B. Interrogatories Concerning Estimates**

DSCP has provided a list of estimated purchases of medical and surgical products of the type contemplated by the Prime Vendor Contract. The stated date of the list is November 6, 1995. A copy of that list is attached for your reference as page number X-1. DSCP represented to United Medical that the estimates were based on a 12-month reporting period. DSCP further represented to United Medical that these estimates were for consumable and disposable

medical/surgical products and hand-held surgical instruments. United Medical seeks to discover from Brooks Air Force Base Medical Treatment Facility the methodology, if any, used by Brooks Air Force Base Medical Treatment Facility to prepare any estimates or historical summaries Brooks Air Force Base Medical Treatment Facility provided to DSCP and accuracy of those estimates. Accordingly, please provide the following information.

1. The identity or identities (including contact information) of those persons with (or formerly with) Brooks Air Force Base Medical Treatment Facility who prepared either any estimates of purchases, or any historical summary of purchases, of consumable and disposable medical/surgical products and hand-held surgical instruments for during any time between July 1, 1995 and May 31, 2000.

2. The dollar amount of such estimates or summaries and the period or periods covered by such estimates or summaries.

3. The methodology used by Brooks Air Force Base Medical Treatment Facility to prepare the estimates or summaries. In response to this question, state how Brooks Air Force Base Medical Treatment Facility segregated estimates of consumable and disposable medical/surgical products and hand-held surgical instruments (i.e., products covered or potentially covered under the Prime Vendor Contract) from other types of medical/surgical products and equipment. If estimates or summaries were made on a per operational hospital bed basis, state how this information was obtained and summarized.

4. Actual usage (by dollar amount) for such consumable and disposable medical/surgical products and hand-held surgical instruments during the period beginning with January 1, 1995 and ending April 30, 2001. Provide this information on a monthly or quarterly basis. If precise dollar usage is not known or reasonably available, provide your best estimate of actual usage.

5. Describe how Brooks Air Force Base Medical Treatment Facility obtained and provided to United Medical, Brooks Air Force Base Medical Treatment Facility's usage data for DAPA Items, whether such data was prior to or after the June 1, 1997.

6. The identity (including contact information) of the custodian or custodians of records evidencing the responses to the previous 5 interrogatories.

7. The identity (including contact information) of the custodian or custodians of records used to prepare the responses to the previous 6 interrogatories.

**C. Interrogatories Concerning Purchases of Consumable and Disposable Medical/Surgical Products and Hand-held surgical instruments and Purchase Methods**

The purpose of the following interrogatories is to determine what purchase methods were used to purchase consumable and disposable medical/surgical products and hand-held surgical instruments if such supplies and instruments were possibly covered by the Prime Vendor Contract. Accordingly, provide the following information:

8. Did Brooks Air Force Base Medical Treatment Facility order and subsequently purchase any DAPA Items from third parties without first attempting to order such items from United Medical between June 1, 1997 and April 30, 2001? If yes, state Brooks Air Force Base Medical Treatment Facility's estimated dollar amount of such purchases during that period and how such estimated dollar amount was determined.

9. If Brooks Air Force Base Medical Treatment Facility purchased DAPA Items from third parties instead of United Medical, how frequently, if at all, does Brooks Air Force Base Medical Treatment Facility estimate that it paid more than the DAPA price. Answer on a 1 to 10 with 1 being never, 2 being rarely, 5 being occasionally, etc, with 10 being Brooks Air Force Base Medical Treatment Facility's estimate that it almost always paid more than the DAPA price and state, in percent of DAPA price, Brooks Air Force Base Medical Treatment Facility's best estimate how much more it paid than the DAPA price. For example, if the average DAPA price for items occasionally purchased from third parties is estimated to have been $100 and Brooks Air Force Base Medical Treatment Facility estimates that it paid an average of $110 to third parties for such purchases, the answer would be 5 for the frequency and 10% for the pricing portions of the answer.

10. For each calendar quarter beginning with July 1, 1997 and ending with March 30, 2001, what, in Brooks Air Force Base Medical Treatment Facility's best estimate, is the percentage of Brooks Air Force Base Medical Treatment Facility's total purchases of DAPA Items by each of the following purchase methods: (Except for rounding errors, the total should equal 100%)[1]:

    a. Purchases from United Medical under the Prime Vendor Contract:

    b. Purchases Using Government Impact Cards (i.e. government credit cards):

    c. Purchases using local purchase methods:

    d. Purchases using DBP Agreements:

    e. Other purchase methods:

[1] Attached as Page X-2 is a chart that may be used for your convenience.

11. For each calendar quarter beginning with July 1, 1997 and ending with March 30, 2001 state[2]:

a. Brooks Air Force Base Medical Treatment Facility's best estimate (by dollar volume) of total actual purchases for DAPA Items manufactured by Ethicon, Inc. and Ethicon – Endo-Surgery, Inc. ("Ethicon") (this will be primarily suture and related products and will include purchases from United Medical);

b. All reasons that such Ethicon purchases by Brooks Air Force Base Medical Treatment Facility were made from sources other than United Medical; and

c. For each reason stated in subparagraph b above, Brooks Air Force Base Medical Treatment Facility's best estimate (by dollar volume) of actual purchases for consumable and disposable medical/surgical products and hand held surgical instruments manufactured by Ethicon, Inc. (this will be primarily suture and related products) purchased from sources other than United Medical.

12. If, during any calendar quarter during the period beginning June 1, 1007 and ending March 30, 2001, Brooks Air Force Base Medical Treatment Facility purchased more than $10,000 during the quarter of consumable and disposable medical/surgical products and hand held surgical instruments that were not subject to Distribution and Pricing Agreements with the Government (i.e., non-DAPA Items) at the time of purchase, state Brooks Air Force Base

[2] Attached as Page X-3 is a chart that may be used for your convenience.

Medical Treatment Facility's best estimate of the dollar volume of such purchases of non-DAPA Items for each such quarter.

13. For each of the six fiscal years prior to January 1, 2002, state the dollar amount budgeted by Brooks Air Force Base Medical Treatment Facility for the purchase of consumable and disposable medical/surgical products and hand-held surgical instruments by ending date of the fiscal year of Brooks Air Force Base Medical Treatment Facility.

14. For the period June 1, 1997 through April 30, 2001, (a) what policies and procedures did Brooks Air Force Base Medical Treatment Facility maintain to prevent purchases of DAPA Items from third parties in breach of the Prime Vendor Contract; (b) identify each person at Brooks Air Force Base Medical Treatment Facility who was responsible for preventing purchases of DAPA Items from third parties in breach of the Prime Vendor Contract and the dates such persons had that responsibility; and (c) what complaints or suggestions were made to Brooks Air Force Base Medical Treatment Facility by DSCP concerning prevention of contract breach of the Prime Vendor Contract.

15. Describe in detail what attempts, if any, has Brooks Air Force Base Medical Treatment Facility made to determine if any DAPA Items were probably purchased in breach of the Prime Vendor Contract. Include in the description Brooks Air Force Base Medical Treatment Facility's best estimate the dollar volume, if any, of DAPA Items Brooks Air Force Base Medical Treatment Facility determined were probably purchased in breach of the Prime Vendor Contract.

16. What are the top five (5) DAPA Items (in terms of dollar volume), if any, that Brooks Air Force Base Medical Treatment Facility reasonably believes it attempted to order from United Medical during the period June 1, 1997 through April 30, 2001, but was required to order from a third party because of United Medical's inability to supply the items:

17. Describe each item by description and manufacturer;

    a. Estimate the total dollar volume of each such items you were required to order from third parties; and

    b. Identify the third parties from whom you made such orders.

18. For the period July 1, 1997 through March 30, 2001, what is Brooks Air Force Base Medical Treatment Facility's best estimate of the number of DAPA Items, if any, Brooks Air Force Base Medical Treatment Facility purchased in material quantities and Brooks Air Force Base Medical Treatment Facility's best estimate of the number of the number of DAPA Items, if any, Brooks Air Force Base Medical Treatment Facility had to purchase in material quantities because of United Medical's failure to obtain a distribution agreement with one or more DAPA holders.

19. Identify the custodian or custodians of records of all records you reviewed to answer Interrogatories 8 thru 18.

**D. Miscellaneous Interrogatories**

20. Beginning with the January 1, 1997 and ending April 30, 2001, state the number of operational hospital beds at Brooks Air Force Base Medical Treatment Facility's medical treatment facilities, any changes to that number, the magnitude of such changes (plus or minus) and the dates of such changes.

21. Attached beginning at page X-4 is a series of internal emails of DSCP. State:

    a. what date, if any, Brooks Air Force Base Medical Treatment Facility learned of the translator problem described in those emails;

    b. whether Brooks Air Force Base Medical Treatment Facility continued to order medical and surgical supplies and equipment from United Medical with knowledge of any on-going translator problems;

    c. whether Brooks Air Force Base Medical Treatment Facility disclosed to United Medical the translator problems and how such disclosure, if any, was made; and

    d. if you answered "yes" to subpart b, why you continued to order medical supplies and equipment from United Medical with knowledge of the translator problems.

22. Except for attorneys, identify each person who provided answers or portions of answers to any of the above interrogatories and state each interrogatory number or sub-interrogatory to which such person provided answers or portions of answers.

**Signed May 31, 2005.**

Respectfully submitted,

____________________________

Frank L. Broyles
State Bar No. 03230500
Goins, Underkofler, Crawford
& Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff

CERTIFICATE OF SERVICE

On May 31, 2005 the foregoing interrogatories with referenced attachments was served on the persons shown below by the method shown below.

__________________________

**PERSONS SERVED:**

Kyle Chadwick
Department of Justice
Method Served: overnight courier for hand delivery on June 1, 2005.