IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., | ) | |
| Plaintiff, | ) | No. 03-289C |
| v. | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Pursuant to Rule 7.2(a) of the Court's Rules ("RCFC") and the Court's order dated June 14, 2005, defendant, the United States, respectfully opposes the June 10, 2005 motion of plaintiff, United Medical Supply Company, Inc., to compel the Government to supplement its responses to six interrogatories that were served and answered in 2002, before this matter was transferred here from the bankruptcy court.[1]

Plaintiff is essentially pounding on an open door. The Government has not refused to answer any interrogatories, nor have we answered evasively. As United Medical notes, "the Government did not serve any objections to the interrogatories at issue . . . ." Pl. Br. 1. We responded in good faith, based upon the information that could be obtained during the 30 days allotted for response. We have repeatedly acknowledged our obligation under the RCFC to supplement our discovery responses

[1] Plaintiff filed both a "motion" and a "brief" on June 10, although the distinction is unclear.

if we obtain new pertinent information - which, as discussed below, we have not obtained. And we have stated our willingness to agree to an extension of discovery and/or to answer a reasonable number of additional discovery requests, beyond the 25 presumptively allowed by the RCFC, which the parties did not propose to change in our joint status report.[2] Thus, there is no basis to find that the Government has been uncooperative.

More generally, United Medical seems to describe a different lawsuit from the one in which undersigned counsel for the Government has been participating. First, we have no record - nor do we believe it is true - that United Medical "requested the Government to supplement its discovery [responses] while the summary judgment motions were pending [in late 2003 and 2004]." Pl. Br. 3. More tellingly, United Medical omits from its attack the inconvenient fact that the Government entered into a contract in January 2005 with a "neutral expert" selected by United Medical, and funded that contract to the extent of $35,000, with the expectation that the expert (Greg Bingham of Navigant Consulting) would facilitate settlement discussions by working

[2] Out of caution, we served an interrogatory specifically asking United Medical to supplement its own interrogatory responses from the bankruptcy case. United Medical "object[ed] on the grounds that this interrogatory is overly broad," but it promised to "comply with its obligations to supplement . . . ." (Attached.) United Medical has not supplemented any of its responses, apart from serving a summary of claims that was readily available from the bankruptcy court through PACER.

with both parties in a joint review of billing and payment information obtained by Navigant from a sample of the medical treatment facilities ("MTFs"). (A copy of the Navigant contract, which remains in force, is attached.)

The parties began discussing Navigant's retention as early as October 2004, several months before discovery resumed. United Medical clearly knew, and acknowledged, throughout these discussions that discoverable documents of interest might exist at some MTFs. The parties' discussions concerned how, when, and by whom the MTFs' records would be searched. However, United Medical unilaterally halted Navigant's planned work before it began, for reasons that remain unclear to us.

Given the confusing signals sent by United Medical in January and February of 2005 regarding the status of the Navigant contract (which undersigned counsel invested considerable effort in arranging), plaintiff's assertions that the Government somehow "forced" plaintiff to depose contracting officer James Jennings in Philadelphia on March 8, 2005, and that the arrangements for that one-day deposition are responsible for "chew[ing] up a significant portion" of the discovery period, are especially galling. Pl. Mot. 2-3. United Medical unilaterally selected Mr. Jennings to depose. We made him available promptly.

United Medical did not ask us to identify or make available someone from the agency with the particular information that – as

we ultimately learned – plaintiff wanted, regarding how the Government answered plaintiff's first interrogatories, more than two years earlier. Indeed, when counsel for United Medical first requested (prematurely) to depose Mr. Jennings, in an e-mail dated August 3, 2004 (attached), counsel stated only that he wished to depose Mr. Jennings concerning "the two large military bases (San Antonio and El Paso) and some of their routine, large quantity items, such as suture." United Medical never advised that it wished to revisit our 2002 discovery responses. Had plaintiff done so, we could have suggested a better deponent. In short, if it is true that "the deposition of Mr. Jennings was almost meaningless," Pl. Mot. 2, the Government is not to blame.

United Medical now asserts that it selected Mr. Jennings for deposition solely because he signed the 2002 discovery responses (although that is not the reason we were given), and asks, "How can a Government contract[ing] officer certify under penalty of perjury that the Government has not diverted purchases and then testify that he has no information one way or the other on the issue[?]" Id. at 9. The answer is obvious: RCFC 33 allows "a representative of a . . . party to verify the [party's] answers without personal knowledge of every response," by supplying information, known generally to the party, that the signer has learned "through whatever internal processes the [entity] has chosen, including discussions with counsel." Shepherd v.

American Broadcasting Cos., Inc., 62 F.3d 1469, 1482 (D.C. Cir. 1995) (emphasis added) (discussing Fed. R. Civ. P. 33), cited in Pl. Br. 6. Mr. Jennings was entitled to affirm his reasonable, personal understanding that the discovery responses researched and presented to him by Government counsel were accurate.[3] If United Medical truly expected that Mr. Jennings, appearing as an individual deponent, and not as an RCFC 30(b)(6) witness, would be able to cite from memory the evidentiary grounds for our discovery responses more than two years after the fact (and we doubt that counsel actually expected this), there was no reasonable basis for that expectation.

It was during the Jennings deposition, however, that undersigned counsel for defendant recognized that counsel for United Medical appeared to believe that the Government should already have examined and produced records from the MTFs, pursuant to outstanding interrogatories and document requests. To our knowledge and recollection, plaintiff's counsel had never before taken that position during months of communications with undersigned counsel. (We do not deny that it is at least arguable that undersigned counsel for defendant should have

[3] United Medical cites United States v. Kordel, 397 U.S. 1 (1970), for the proposition that a party "must appoint an individual to respond who can furnish the requested information . . . ." Pl. Br. 5-6. Kordel, however, deals with a claim of Fifth Amendment privilege and has nothing to do with whether the verifying person must possess personal or independent knowledge. There is no such requirement.

undertaken, prior to March 2005, his own review of the status of the discovery requests and responses served in the bankruptcy case. However, (i) counsel for United Medical never raised this issue or asked to visit to an MTF, (ii) plaintiff did not serve any new discovery requests in 2005, and (iii) as noted above, the parties jointly assumed, in late 2004 and early 2005, that Navigant would soon be independently investigating the MTFs' records. In these circumstances, it was reasonable for undersigned counsel to be looking forward, rather than backward, at prior discovery.)

A renewed search of all of the MTFs, conducted by a senior Department of Justice paralegal at the direction of undersigned counsel in March and April 2005, disclosed some responsive documents at three MTFs. We promptly began transferring these records to compact disk and producing them to plaintiff. United Medical complains that "[n]one of the documents [produced on CD on May 25, 2005] were identified as to specific discovery requests . . . and with the exception of just a handful of pages, [they] do not appear to be responsive to any discovery request of Plaintiff." Pl. Br. 5. That is, plaintiff complains that, after locating documents, we produced too many, in too great a hurry. Not surprisingly, United Medical did not broach with us these trivial issues (or its complaint that we copied documents at Government expense rather than producing them "at [each]

individual MTF," see Pl. Br. 4) prior to filing this motion. The responsive documents being produced on CD are all that exist, to the best of our knowledge.

Which brings us, finally, to the six interrogatories that are the ostensible basis for the motion. At least pending our own expert's review of the documents that are being produced to plaintiff, the Government possesses no basis to revise or augment its answers to these interrogatories, with the possible exception of interrogatory number 5, which asks for "the total dollar amount of products for each contract year that [each] MTF ordered from United Medical but which was not supplied by United Medical." As United Medical notes, we responded that these numbers could be derived from the fill rate reports. We now believe that the fill rate reports do not capture these dollar values, because the fill rates do not include killed orders. It thus appears that there may, in fact, be no solid basis to estimate the dollar amounts in question.

The other five interrogatories at issue ask us, in various ways, to quantify the allegedly diverted requirements purchases. We remain unable to do so. As the Court noted in its merits order approximately six months ago, "plaintiff ha[d] not provided evidence of a single specific transaction in which the product purchased from a third party was explicitly" subject to the prime vendor contract. United Medical Supply Co., Inc. v. United

States, 63 Fed. Cl. 430, 437 (2005). We still know of no such evidence - and thus we lack any basis to state that any requirements purchases were diverted, much less to quantify such diversion. We repeat, however, that we have never disputed the relevance of the interrogatories at issue and we will timely supplement our responses if that becomes possible.

At the same time, it should be obvious to the Court from the above that United Medical (a bankrupt debtor) has consciously chosen to allow most of the discovery period to pass without taking the expected steps - including cooperating with the Navigant effort, which the Government would have half funded - to obtain evidence to support its diversion claim, and that plaintiff is now banking on a strategy of "compelling" us to make guesses in response to the November 2002 interrogatories, which responses would then presumably constitute the entirety of United Medical's probative "evidence" of diversion and damages at trial. The Government acknowledges its responsibility to respond to plaintiff's interrogatories to the extent reasonably possible. We are under no obligation, however, to provide estimates that are "useful to Plaintiff," see Pl. Br. 6, 7, if such answers cannot be supported by available evidence, as is the case now.

## CONCLUSION

For the reasons given above, the Court should deny plaintiff's motion to compel.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s
by Patricia McCarthy
DAVID M. COHEN
Director

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

June 20, 2005

CERTIFICATE OF FILING

I certify that on June 20, 2005, the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kyle Chadwick