## LIST OF ATTACHMENTS

Plaintiff's Responses To Defendant's Interrogatories And Requests For Production, November 10, 2003 (excerpt)

Electronic mail traffic between counsel, August 2004

U.S. Department of Justice Contract No. 5N-CIV01-0273 with Navigant Consulting, February 2, 2005

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff | CASE NO: 03-CV-289 |
| v. | Judge Allegra |
| THE UNITED STATES, Defendant | |

## PLAINTIFF'S ANSWERS AND RESPONSES TO DEFENDANT'S INTERROGATORIES AND REQUEST FOR PRODUCTION

Objections to Number of Interrogatories: Plaintiff objects that the Government's position that this is a new case and entitles it to "start-over" with interrogatories is incorrect. This case was transferred from the United States Bankruptcy Court. Plaintiff contends that interrogatories served and answered in that case may be used in this case and the number of interrogatories served counts as interrogatories served in this case in calculating the 25 interrogatories permitted by Rule 33(a). Subject to this objection, Plaintiff otherwise answers and responds as follows:

Specific objection to interrogatories 10 through 15: Plaintiff objects to these interrogatories as misleading to the extent that the interrogatories assume or imply that these contract issues were in any way material breaches by Plaintiff or not waived by the Government and Plaintiff's answers are subject to such objections.

**INTERROGATORY NO. 1:** Identify each specific item (including each specific brand of similar or identical products) that is alleged in paragraphs 23 and 24 of the amended complaint to be a DAPA item, and for which United Medical, at any time during contract performance, did not have an executed agreement with a DAPA holder authorizing United Medical to sell the item, and for each item identified, state the exact time period(s) during which no agreement was in effect.

**ANSWER:**

Plaintiff objects that this interrogatory is overlybroad and answering it would impose an undue burden on Plaintiff. Subject to objection, Plaintiff states that DAPA agreements were supplier specific, not DAPA item specific. To the extent United Medical can provide information with respect to each DAPA supplier, United Medical



154-03-289-05

Plaintiff objects to the extent that this interrogatory requires Plaintiff to identify, as defined, documents as imposing an undue burden and expense on Plaintiff. The documents responsive include all of Plaintiffs' financial information, sales information to third parties, especially if such sales were made under a prime vendor contract, and and pricing discount information with the various DAPA holders.

The profit information was determined by Mr. William Bandy (UMS CEO), Joe Smith (UMS EVP at the time) and Gloria Salgado. The proforma determinations were made throughout the solicitation and bid process as additional information was provided. United Medical reviewed its financial statements and its pricing agreements with various DAPA holders and then calculated its bid price needed to make a minimum 4% net profit on average for sales under the Contract. The calculations were later confirmed by Don Condor, a CFO for Plaintiff.

United Medical also compared its proposals to known prime vendor contracts with the DoD to assure itself that its bid was reasonable to both itself and the Government.

United Medical had substantial experience as a prime vendor to hospitals and was quite familiar with the pricing it needed to make a minimum 3% net profit. It expected to make at least a 4% net profit on the DoD contract.

Plaintiff further directs the United States to the affidavit of Robert Imel filed in support of Plaintiff's pending motion for summary judgment and the Claim submitted to the Contracting Officer.

To the extent that documents exist and are in the custody and control of United Medical they will be produced.

**INTERROGATORY NO. 17:** Supplement or amend any of United Medical's responses to the Government's interrogatories in the bankruptcy proceeding to the extent you would be obligated to supplement or amend those responses, pursuant to RCFC 26 (e), had those interrogatory responses been provided in this action.

**ANSWER:**

Plaintiff objects on the grounds that this interrogatory is overlybroad and assumes that this action is different than the bankruptcy court case that was transferred to this Court. Plaintiff will comply with its obligations to supplement and this response is subject to all previously served objections.

**REQUEST NO. 1:** All documents not previously produced to the Government that are responsive to the Government's document requests in United Medical's bankruptcy proceeding.

**RESPONSE:**

Subject to previously served objections, to the extent that these documents are in the custody or control of United Medical, Plaintiff will produce either at the offices of Plaintiff's counsel or the United Medical storage facility during normal business hours upon reasonable notice.

**REQUEST NO. 2:** Packing slips for all invoices alleged to be outstanding.

**RESPONSE:**

To the extent that these documents are in the custody or control of United Medical, Plaintiff will produce either at the offices of Plaintiff's counsel or the United Medical storage facility during normal business hours upon reasonable notice.

**REQUEST NO. 3:** All documents not previously produced that are identified in your responses to defendant's interrogatories above.

**RESPONSE:**

To the extent that these documents are in the custody or control of United Medical, Plaintiff will produce either at the offices of Plaintiff's counsel or the United Medical storage facility during normal business hours upon reasonable notice.

**REQUEST NO. 4:** All documents relating in any way to United Medical or this case, including without limitation proposals, statements of work, bills, and substantive materials, including financial data, draft reports, and comments on drafts, communicated at any time between United Medical (including counsel) and Robert Imel, plaintiff's designated expert.

**RESPONSE:**

Plaintiff will produce at the offices of Plaintiff's counsel during normal business hours upon reasonable notice.

Signed November 10th, 2003

William Bandy
Former President and CEO of Plaintiff

- Settlement communications redacted -

Broyles email 8.3.041

From: flbroyles@gucl.com
Sent: Tuesday, August 03, 2004 9:30 AM
To: Chadwick, Kyle (CIV)
Subject: RE: United Medical

I think we have three issues: The A/R issue; diversion and consequential damages.

The outstandingMatching up invoices with call numbers I think would be digging a ditch with a teaspoon effort. [redacted].

On diversion. I doubt the two sides can agree on a methodology that could be extrapolated into a damage number, but I think we can show substantial damages by looking at the two large military bases (San Antonio and El Paso)and some of their routine, large quantity items, such as suture. Armed with that type of information, we might be able to mediate a settlement of this issue. In connection with this, I would like to take the deposition of James Jennings asap as a starting point.

As to consequential damages, we might be able to [redacted] It sounds like the Government wants to make a point, but I am surprised it would pick this case to make that point. I would think you could find better facts.

Let me know your thoughts when you can come up for air.

Frank

-----Original Message-----
From: Kyle.Chadwick@usdoj.gov [mailto:Kyle.Chadwick@usdoj.gov]
Sent: Monday, August 02, 2004 7:59 PM
To: 'flbroyles@gucl.com'
Subject: RE: United Medical

Thanks for the good wishes. As I recall, the "proposal" to which I was referring at the oral argument was a detailed accounting relating to the unpaid invoices claim -- which would link the invoice numbers to the call numbers. I believe the attached letter was our last communication on that issue: You took the position, essentially, that the government was welcome to look at whatever records we wanted and should propose a number; I took the position, to which I was referring at oral argument, that we don't have the burden of proof and decline to try to recreate the paper trail in the first instance absent the invoice number/call number information.

[redacted]

Would it be possible for you to write me a letter suggesting some concrete ideas about some targeted or "sampling" discovery, which I could then share and discuss with the agency? If not, I'll return your call after the trial.

-----Original Message-----
From: flbroyles@gucl.com [mailto:flbroyles@gucl.com]
Sent: Monday, August 02, 2004 12:35 PM
To: Chadwick, Kyle (CIV)
Subject: United Medical

Kyle, you indicated during the hearing that the government was expecting a proposal from united medical. My recollection was that we gave you a proposal and that the people who could respond to it (other than flatley) were not available for some reason. You also specifically asked me not to make a settlement offer because it imposed red tape issues on you.

Also, want to discuss some sort of discovery plan per the Court's instruction.

Hope your West Coast trial is proceeding well, unless of course you are wearing the black hat.

Frank

---

Checked by AVG anti-virus system (http://www.grisoft.com).
Version: 6.0.723 / Virus Database: 479 - Release Date: 7/19/2004

**U.S. Department of Justice**

COPY

**Request, Authorization and Contract for Services of Expert Witness, Litigative Consultant, or ADR Neutral**

**Contract/Purchase Order No. & Effective Date:** SN-CIV01-0273

## Part I – Request for Services

| | | | |
|---|---|---|---|
| 1. Requesting Official (Name & Title)<br>**David M. Cohen, Director** | 2. Signature of Requesting Official<br>[signature] | 3. Point of Contact (Name and Tel.)<br>**Kyle Chadwick**<br>**Telephone: 616-0476** | 4. Date of Request<br>**01/10/05** |
| 5. Originating Office<br>**Commercial Litigation Branch** | 6. Originating Office Address<br>**1100 L Street, N.W., Rm. 7022**<br>**Washington, DC 20005** | 7. Case Name, Court & Docket No.<br>**United Medical Services v. U.S.**<br>**Federal Claims, No. 03-289C** | 8. DJ File No./USAO No.<br>**154-03-289** |
| 9. Contractor (Name and Tel.)<br>**Greg S. Bingham**<br>**Navigant Consulting**<br>**Telephone: 202-326-9202** | 10. Contractor Mailing Address<br>**1501 K Street, NW**<br>**Suite 525**<br>**Washington, DC 20005** | 11. Contractor TIN or SSN (individual)<br>**36-4094854** | 12. Contractor Specialty<br>**Damages** |

13. Reason for Request (Place an "X" in the applicable Box in the Left Column)

| | |
|---|---|
| | 13.a. Expert Testimony on Behalf of U.S. |
| | 13.b. Deposition Conducted by DOJ Attorney |
| | 13.c. Medical Examination of Plaintiff/Witness/Defendant in Contemplation of Testimony on Behalf of U.S. |
| | 13.d. Examination Under 18 USC 4241, Mental Competency to Stand Trial Only |
| | 13.e. Dual Purpose Psychiatric Examination (Time of Offense and Competency to Stand Trial) on the motion of: |
| X | 13.f. ADR Neutral Services |
| | 13.g. Litigative Consultant Services |
| | 13.h. Other (explain below): |

***Attach the Statement of Work to this Form***

14. Negotiated Contractor Rates, Estimated Expenses, and Performance Dates ***(Note: Expenses incurred must be supported by receipts)***

| Service/Expense | Performance Dates (From-To) | Hour/Day | Quantity | Rate | Total |
|---|---|---|---|---|---|
| 14.a. Examine Case | **Award to 01/31/06** | | **See** | **Attachment** | **$0.00** |
| 14.b. Prepare Testimony | | | | | **$0.00** |
| 14.c. Court Testimony | | | | | **$0.00** |
| 14.d. Deposition | | | | | **$0.00** |
| 14.e. Litigative Consultant/Neutral | | | | | **$0.00** |
| 14.f. Per Diem (if not part of fee) | | **Day** | | | **$0.00** |
| 14.g. Privately Owned Vehicle (NTE coach rate) | | **Mile** | | | **$0.00** |
| 14.h. Common Carrier Transportation Via GTA | | | | | |
| 14.i. Common Carrier Transportation Reimbursed | | | | | |
| 14.j. Taxi | | | | | |
| 14.k. Miscellaneous (eg. printing, exhibits, parking) | | | | | |
| 14.l. Total Estimated Expenses | | | | | 35,000.00 |

| | |
|---|---|
| 15. Submit Invoices & EFT Information to:<br>**Kyle Chadwick**<br>**1100 L Street, N.W., Room 7062**<br>**Washington, DC 20005** | 16. Payment will be made by: (Place an "X" in the applicable Box and fill-in if not JMD/Finance)<br>X **U.S. Department of Justice**<br>**Office of Planning, Budget &**<br>**1100 L Street, NW, Room 9043**<br>**Washington, DC 20530** |

**U.S. Department of Justice**

**Request, Authori ion and Contract for Services of Expert Witness, Litigative Consultant, or ADR Neutral**

**Contract/Purchase Order No. & Effective Date:** 5N-CIV01-0273

## Part II – Funding Approval

17. Appropriation Data

| 17.a. Authorized Amount | 17.b. YREGDOC | 17.c. Cost Center | 17.d. OBL Month | 17.e. Sub Object Code (SOC) |
|---|---|---|---|---|
| $35,000.00 | 50180556 | 536902 | 0501 | 2537 |

17.f. Remarks

ADR/Cst

*Note: The FEW Appropriation (15X0311) shall ONLY be used to fund Witness Services (i.e., items 13.a through 13.e above)*

18. Funding Amount (Place an "X" in the applicable Box in the Left Column and fill-in the Amount and Performance Period)

| | | | |
|---|---|---|---|
| X | 18.a. Fully Funded<br>This Contract is FULLY FUNDED in the amount specified in Block 18.b to cover the estimated costs of the ENTIRE project whose performance period is specified in Block 18.c. This amount shall NOT be exceeded without authorization and written modification of this contract by the Contracting Officer. | 18.b. Amount<br>**$35,000.00** | 18.c. Period (From - To)<br>**Award to 01/31/06** |
| | 18.d. Incrementally Funded<br>This Contract is INCREMENTALLY FUNDED. The total estimated cost of the project is specified in Block 14.l. Currently, funding is provided only in the amount specified in Block 18.e to cover estimated costs incurred during the performance period specified in Block 18.f. The amount specified in Block 18.e shall NOT be exceeded without authorization and written modification of this contract by the Contracting Officer. | 18.e. Amount | 18.f. Period (From - To) |

***Reminder: Witnesses are not entitled to Advance Payments.***

19. Funding Approval

| 19.a. Signature of Approving Official | 19.b. Name & Title of Approving Official | 19.c. Date Approved |
|---|---|---|
| [signature] | Linda A. Cinciotta, Director, ODR | 01/25/05 |

## Part III – Contract

This contract consists of the documents listed below. In the event of any inconsistency among the following documents, such inconsistency shall be resolved in the order in which said documents are listed.

(1) OBD Form 47, Request, Authorization and Contract for Services of Expert Witness, Litigative Consultant, or ADR Neutral, consisting of 2 pages.
(2) Attachment 1, Contract Terms, Conditions, and Procedures, consisting of 3 pages.
(3) Attachment 2, Statement of Work.
(4) The Contractor's proposal, incorporated herein by reference.
(5) Schedule, Rate and Cost...see blocks 14 or attachment 3

FUNDS AVAILABLE [signature] (Date) JAN 31 2005 (Civil Division)

The Contractor agrees to perform services as described herein in accordance with the terms, conditions, and rates set forth in this contract.

The Contractor also certifies that, to the best of its knowledge, there is nothing derogatory in the background of its employees that could impugn testimony given by these employees or work products delivered by the Contractor.

20. Contractor Signature

| 20.a. Signature of Authorized Person | 20.b. Name and Title of Signer | 20.c. Date Signed |
|---|---|---|
| | | |

21. Contracting Officer Signature

| 21.a. Signature of Contracting Officer | 21.b. Name of Contracting Officer | 21.c. Date Signed |
|---|---|---|
| [signature] | Jeffrey Brodsky<br>Contracting Officer | FEB 2 2005 |

**Contract/Purchase Order Number: 5N-CIV01-0273**

**Attachment 1 – Contract Terms, Conditions and Procedures**

**A. General Contract Terms and Conditions**

| | |
|---|---|
| A.1 | **Inspection and Acceptance.** Inspection and acceptance will be at destination, unless otherwise provided. Until delivery and acceptance, and after any rejection, risk of loss will be on the Contractor unless loss results from negligence of the Government. |
| A.2 | **Invoice Requirements.** After services are rendered, the Contractor shall prepare an invoice and submit it to the individual identified in Block 15 of this Contract (page 1 of Form OBD-47). To constitute a proper invoice, the invoice must contain the following information: (i) The name and Taxpayer Identification Number (TIN) of the business entity or individual (if an individual has no TIN, the Social Security Number may be used); (ii) The date of the invoice; (iii) A description, itemization, and price for all services rendered and miscellaneous expenses incurred; (iv) The date or the period of time over which the services were rendered; and (v) The name, telephone number, and complete mailing address of the responsible official to whom payment is sent.<br><br>The invoice must also be accompanied by any travel receipts or receipts for miscellaneous expenses to substantiate the invoice amount. The Government case attorney will certify on the invoice that the services were received and the date the services were accepted. The Government case attorney will then forward the approved invoice and Form OBD-47 to the appropriate person within the litigating office for further processing. |
| A.3 | **Payment by Electronic Funds Transfer.** The Government reserves the right to make payments to the Contractor via Electronic Funds Transfer (EFT) in accordance with FAR clause 52.232-34, incorporated by reference into this Contract. If payment is to be made via EFT, the Contractor shall prepare and submit to DOJ an "ACH Vendor/Miscellaneous Payment Enrollment Form" (located on page 2 of Form OBD-47A). The form shall be completed by the Contractor and submitted to the address shown in Block 15 of this Contract (page 1 of Form OBD-47) concurrent with submission of the Contractor's first invoice or sooner. |
| A.4 | **Interest on Overdue Payments.** (i) The Prompt Payment Act, Public Law 99-177 (96 Stat. 85, 31 U.S.C. 1801, as amended) is applicable to payments under this Contract and requires the payment of interest on overdue payments and improperly taken discounts; (ii) Determination of interest due will be made in accordance with the Provisions of the Prompt Payment Act and the Office of Management and Budget Circular A-125. |
| A.5 | **Payment Inquiries.** All follow-up invoices shall be marked "Duplicate of Original." Contractor questions regarding payment information or check identification should be directed to the Department of Justice Vendor Assistance Hotline (202) 616-6260. |
| A.6 | **Use of Taxpayer Identification Number.** In accordance with the requirements of the Debt Collection Act of 1996, Public Law 104-134, it is the intent of the Department of Justice to use your Taxpayer Identification Number for purposes of collecting and reporting on any delinquent amounts arising out of your relationship with the Government. |
| A.7 | **Contractor's Proposal.** The Contractor' proposal to furnish the services under this Contract is hereby incorporated by reference into this Contract. In the event of any inconsistency between the Contractor's proposal and this Contract, this Contract shall be considered a superseding document. |

**B. Federal Acquisition Regulation Clauses Incorporated by Reference**

This Contract incorporates the following Federal Acquisition Regulation (FAR) clauses by reference, with the same force and effect as if the clauses were given in full text. Upon request, the litigating component's administrative or procurement office will make the full text available. Also, the full text may be accessed electronically at the following Internet address: http://www.arnet.gov/far/. The effective date of each FAR clause listed below is that which is current at the time this Contract is executed by both parties.

**B.1 The following FAR clauses apply to all contracts (the FAR clause number is in the left column and clause title in the right)**

| | |
|---|---|
| 52.224-1 | Privacy Act Notification |
| 52.224-2 | Privacy Act |
| 52.225-13 | Restrictions on Certain Foreign Purchases |
| 52.232-7 | Payments under Time-and-Materials and Labor-Hour Contracts |
| 52.232-25 | Prompt Payment |
| 52.232-34 | Payment by Electronic Funds Transfer – Other than Central Contractor Registration |
| 52.243-3 | Changes – Time-and-Materials or Labor-Hours |
| 52.246-6 | Inspection – Time-and-Material or Labor-Hour |
| 52.249-6 | Termination (Cost Reimbursement), Alternate IV |

**B.2 The following FAR clause is added to the clauses in Block 18.a for those contracts valued at $100,000 or less**

| | |
|---|---|
| 52.213-4 | Terms and Conditions – Simplified Acquisitions (other than Commercial Items) |

**Contract/Purchase Order Number: 5N-CIV01-0273**

| | |
|---|---|
| **B.3 The following FAR clauses are added to the clauses in Blocks B.1 and B.2 for those contracts valued at more than $100,000** | |
| 52.202-1 | Definitions |
| 52.203-3 | Gratuities |
| 52.203-5 | Covenant Against Contingent Fees |
| 52.203-6 | Restrictions on Subcontractor Sales to the Government |
| 52.203-7 | Anti-Kickback Procedures |
| 52.203-8 | Cancellation, Recision, and Recovery of Funds for Illegal or Improper Activity |
| 52.203-10 | Price or Fee Adjustment for Illegal or Improper Activity |
| 52.203-12 | Limitations on Payments to Influence Certain Federal Transactions |
| 52.204-4 | Printing/Copying Double-Sided on Recycled Paper |
| 52.209-6 | Protecting the Government's Interest when Subcontracting with Contractor's Debarred, Suspended, or Proposed for Debarment |
| 52.215-2 | Audit and Records--Negotiation |
| 52.219-8 | Utilization of Small Business Concerns |
| 52.222-3 | Convict Labor |
| 52.222-21 | Prohibition of Segregated Facilities |
| 52.222-26 | Equal Opportunity |
| 52.222-35 | Affirmative Action for Disabled and Veterans of the Vietnam Era |
| 52.222-36 | Affirmative Action for Workers with Disabilities |
| 52.222-37 | Employment Reports on Disabled Veterans and Veterans of the Vietnam Era |
| 52.223-6 | Drug-Free Workplace |
| 52.227-1 | Authorization and Consent |
| 52.227-2 | Notice and Assistance Regarding Patent and Copyright Infringement |
| 52.232-8 | Discounts for Prompt Payment |
| 52.232-17 | Interest |
| 52.232-23 | Assignment of Claims |
| 52.233-1 | Disputes |
| 52.233-3 | Protest After Award |
| 52.242-13 | Bankruptcy |
| 52.244-2 | Subcontracts |
| 52.244-5 | Competition in Subcontracting |
| 52.247-63 | Preference for U.S. Flag Air Carriers |

## C. Other Full Text Clauses

This Contract incorporates one of the following two clauses (C.1 or C.2) depending upon whether the Contract is FULLY FUNDED or INCREMENTALLY FUNDED, as specified in Part II, Block 18 of this Contract (Form OBD-47).

### C.1 Limitation of Cost

**NOTE: This clause applies to FULLY FUNDED contracts.**

(1) The parties to this Contract estimate that performance of this Contract will not cost the Government more than the estimated cost specified elsewhere in this Contract. The Contractor agrees to use its best efforts to perform the work within the estimated cost specified in the Contract.

(2) The Contractor shall notify the Contracting Officer whenever it has reason to believe that – (1) the costs the Contractor expects to incur under this Contract in the next 30 days, when added to all costs previously incurred, will exceed 75 percent of the estimated cost specified in the Contract; or (2) the total cost for the performance of this Contract will be either greater or substantially less than had been previously estimated.

(3) As part of the notification, the Contractor shall provide the Contracting Officer a revised estimate of the total cost of performing this Contract.

(4) Except as required by other provisions of this Contract – (1) the Government is not obligated to reimburse the Contractor for costs incurred in excess of the estimated cost specified in the Contract or (2) the Contractor is not obligated to continue performance under this Contract or

**Contract/Purchase Order Number: 5N-CIV01-0273**

otherwise incur costs in excess of the estimated cost specified in the Contract, until the Contracting Officer (i) notifies the Contractor in writing that the estimated cost has been increased and (ii) provides a revised estimated total cost of performing this Contract.

(5) The Government is not obligated to reimburse the Contractor for any costs in excess of the estimated cost to the Government specified in the Contract, whether those costs were incurred during the course of the Contract or as a result of termination.

(6) If the estimated cost specified in the Contract is increased, any costs the Contractor incurs before the increase that are in excess of the previously estimated cost shall be allowable to the same extent as if incurred afterward, unless the Contracting Officer issues a termination or other notice directing that the increase is solely to cover termination or other specified expenses.

(7) If this Contract is terminated or the estimated cost is not increased, the Government and the Contractor shall negotiate an equitable distribution of all property produced or purchased under the Contract, based upon the share of costs incurred by each.

## C.2 Limitation of Funds

**NOTE: This clause applies to INCREMENTALLY FUNDED contracts.**

(1) The parties to this Contract estimate that performance of this Contract will not cost the Government more than the estimated cost specified on Page 2, Part II of this Contract (Form OBD-47) hereof. The Contractor agrees to use its best efforts to perform the work specified in the Contract.

(2) Page 2 of the Contract (Form OBD-47) specifies the amount presently available for payment by the Government and allotted to this Contract and the period of performance it is estimated the allotted amount will cover. The parties contemplate that the Government will allot additional funds incrementally to the Contract up to the full estimated cost to the Government specified in the Contract. The Contractor agrees to perform, or have performed, work on the Contract up to the point at which the total amount paid and payable by the Government under the Contract approximates but does not exceed the total amount actually allotted by the Government to the Contract.

(3) The Contractor shall notify the Contracting Officer whenever it has reason to believe that the costs it expects to incur under this Contract in the next 30 days, when added to all costs previously incurred, will exceed 75 percent of the total amount so far allotted to the Contract by the Government. The notice shall state the estimated amount of additional funds required to continue performance for the period specified in the Contract.

(4) Thirty (30) days before the end of the period specified on Page 2 of this Contract (Form OBD-47) , the Contractor shall notify the Contracting Officer in writing of the estimated amount of additional funds, if any, required to continue timely performance under the Contract or for any further period specified in the Contract and when the funds will be required.

(5) If, after notification, additional funds are not allotted by the end of the period specified on Page 2 of this Contract or another agreed-upon date, upon the Contractor's written request, the Contracting Officer will terminate this Contract on that date in accordance with the provisions of the Termination clause of this Contract. If the Contractor estimates that the funds available will allow it to continue to discharge its obligations beyond that date, it may specify a later date in its request, and the Contracting Officer may terminate this Contract on that later date.

(6) Except as required by other provisions of this Contract – (1) the Government is not obligated to reimburse the Contractor for costs incurred in excess of the total amount allotted by the Government to this Contract; and (2) the Contractor is not obligated to continue performance under this Contract (including actions under the Termination clause of this Contract) or otherwise incur costs in excess of the amount then allotted to the Contract by the Government until the Contracting Officer notifies the Contractor in writing that the amount allotted by the Government has been increased and specifies an increased amount, which shall then constitute the total amount allotted by the Government to this Contract.

(7) The estimated cost shall be increased to the extent that the amount allotted by the Government exceeds the estimated cost specified in the Contract.

(8) Nothing in this clause shall affect the right of the Government to terminate this Contract. If this Contract is terminated, the Government and the Contractor shall negotiate an equitable distribution of all property produced or purchased under the Contract, based upon the share of costs incurred by each.

(9) If the Government does not allot sufficient funds to allow completion of the work, the Contractor is entitled to a percentage of the fee specified in the Contract equaling the percentage of completion of the work contemplated by this Contract.

# Navigant Consulting, Inc. Statement Of Work

The work of Navigant Consulting, Inc. ("NCI") will be performed in phases. Provided in this Statement of Work ("SOW") is an outline of Phase I. It is not the intent of this Agreement to bind the Parties to a Phase II.

Although it may ultimately be necessary to conduct a series of meetings with management information systems and purchasing personnel from each of the medical treatment facilities ("MTF") or ordering facilities in the Lone Star Region, during Phase I we will only perform these tasks at one or two of the MTFs or ordering facilities.

1. Select and prioritize the MTFs or ordering facilities for Phase I Pilot Study

2. Interview Personnel at the priority 1 MTF or Ordering Facility

   A. Obtain a point of contact at the selected site.

   B. Call the point of contact and discuss the site's organization structure and determine the personnel that we will need to interview in person.

   C. Set up and conduct meetings and invite counsel for the parties to attend.

3. Evaluate electronic data repository from United Medical Supply company

   A. Review affidavit of and interview William Bandy, President of United Medical Supply Company.

   B. Interview personnel from United Medical Supply who were familiar with the various DAPA usage records maintained in electronic format.

   C. With assistance from knowledgeable personnel from United Medical Supply, review the electronic records still available in the offices of Mr. Frank Broyles, counsel for United Medical Supply.

4. Goals of meetings will be to determine the availability of relevant electronic purchasing and usage records.

   A. Investigate the availability of purchasing records (both electronic and paper) for the period covered by United Medical Supply's Prime Vendor contract (i.e., January 1997 to May 2001) as well as the years covered by the Owens & Minor Prime Vendor contract and the years subsequent to UMS's contract. Information from earlier and later time periods could help in the detection of historical trends and in the investigation of the cause and effect relationship between "external" events and purchases of DAPA items.

   B. Learn more about the computer hardware and software currently and historically used by the MTF to process, analyze, and store purchasing information and utilization data.

   C. Investigate the volume of electronic purchasing records, period covered by available purchasing records, and nature of information retained in electronic files. This may involve Navigant

Consulting systems personnel interacting with MTF systems personnel to obtain file layouts, data dictionaries, and encryption protocols (if any).

D. Investigate the most efficient file retrieval procedures for paper records (in paper or electronic image format).

E. Investigate what other reports or data may be available from the Government or others that likely would be helpful in analyzing the MTF's records

F. Throughout the investigation, inform the litigating parties of modifications to the scope of work that might make the continuing process more efficient and/or useful, including the estimated impact on professional fees to be incurred.

5. Formalize meeting notes into a memorandum and provide to Clients Frank L. Broyles representing United Medical Supply Company, Inc. and Kyle Chadwick representing the United States. Memorandum to include the information obtained to date and recommendations regarding the most efficient way to obtain and analyze purchasing data from the site.

6. Subject to approval by Clients, repeat the process for the second priority site, with any modifications to which the parties to this contract agree.

<u>Phase I Professional Fees And Out-of-Pocket Expenses</u>

Phase I is anticipated to take approximately seven to ten weeks, depending primarily on the availability of Client personnel to provide us with information and meet with us. Based on the information currently available to us, our fees for Phase I are estimated to range from approximately $40,000 to $80,000. This does not include out-of-pocket expenses such as for traveling to MTFs or ordering facilities in the Lone Star Region.

**Contract/Purchase Order Number:** **5N-CIV01-0273**

**Attachment #3**
**Schedule, Rate and Cost**

3.1 Schedule and Cost

CONTRACT CEILING AMOUNT **$35,000.00**

Addition of other labor categories requires a modification of the contract and can be approved only by a contracting officer.

**Variation in Quantity**

The estimated quantities/amounts on this contrat reflect the government's current best faith estimated of the quantities/amounts required for performance of the services on this contract. As judicial action obviates the need to increase/decrease workload, a modification will be issued to increase or decrease the level of effort.

Expert Witness Services as described in SOW, attachment 2.
Time and Materials (T&M) Basis.

| ITEM NO | SUPPLIES/SERVICES | QTY | UNIT | AMOUNT |
|---|---|---|---|---|
| 0001 | Labor (see labor rate table below) | | hours | **$35,000.00** |
| 0002 | per diem & travel | | | **$0.00** |
| | TOTAL CONTRACT CEILING | | | **$35,000.00** |

**3.2 Labor Rate Table**

The following Labor Rate Table represents fully loaded hourly rates for each labor skill classification. The Contractor shall provide personnel in the labor categories and at the hourly rates set forth below. The quantity of labor-hours are estimated amounts and may vary during the period of performance. Addition of other labor categories requires a modification of the contract and can be approved only by a contracting officer.

| Labor Category | Daily Rate |
|---|---|
| **Litigative Consultant services** | **$130 - $385** |

CERTIFICATE OF FILING

I certify that on June 20, 2005, the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kyle Chadwick