**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC.,<br>Plaintiff<br><br>v.<br><br>THE UNITED STATES, *Defendant* | CASE NO: 03-CV-289<br><br>Judge Allegra |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE RE:**
**"FIRST MOTION TO COMPEL DISCOVERY"**

**TO THE HONORABLE UNITED STATES COURT OF FEDERAL CLAIMS:**

The Government contends that Plaintiff is "pounding on an open door" and that the Government recognizes it obligations to supplement. Plaintiff's contention is that the Government has done a wholly inadequate job of investigation in connection with answering Plaintiff's discovery and that it will continue to do so without Court intervention.

The Government's duty is to conduct a detailed investigation, supervised by the attorney in charge. The investigation cannot be superficial and it must be described in detail when an interrogatory cannot be answered for lack of information. *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees*, 212 F.R.D. 178 (S.D.N.Y. 2003); *Hansel v. Shell Oil Corp.*, 169 F.R.D 303, 305 (E.D. Pa. 1996); *Jackson v. Kroblin Refrigerated Services Xpress, Inc.*, 49 F.R.D. 134, 137 (N.D. W. Va. 1970). If the Government makes a Rule 33(d) election with respect to an interrogatory, the documents must be identified with specificity or attached to the interrogatory response. *Herdlein Technologies, Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 107 (W.D.N.C. 1993). The general reference made by the Government to "the contract officer's files" fails to meet the specificity required by Rule 33(d).

Plaintiff's attempts to resolve the pending discovery disputes by agreement have been, and will continue to be, futile. A typical response to Plaintiff's complaints about the Government's defective interrogatory responses was Government's counsel response on June 8, 2005 in which he wrote, "…you seem to be under the misimpression that your interrogatories require us to investigate your claim and prove your claim for you." The impending discovery deadlines and the importance of the information make Plaintiff's need for information immediate and urgent. Accordingly, Plaintiff has sought Court intervention.

The Government's response raises several substantive issues and are addressed in the following order:

1) the fill rate reports,

2) the Fort Hood and Fort Sam Houston CDs,

3) the "no duty" to answer interrogatories claim, and

4) the Navigant contract.

The partial response of Ethicon, Inc., one of the DAPA vendors, to Plaintiff's subpoena evidences a serious deficiency in the Government's investigation and responses to discovery. It also is discussed in detail below.

**The Fill Rate Reports [Re: Interrogatory #5].**

Plaintiff seeks an order directing the Government to fully answer Interrogatory #5. The calculations are important and relevant to Plaintiff's diversion claim. The Government, with rare and immaterial exception, breached the contract if it purchased a DAPA item carried by United from another source without first attempting to order that item from United. Total orders placed with United is an important factor in determining the quantity of DAPA items that were purchased from third parties without an attempt to first order them from United.

The Government did not answer interrogatory #5. Rather, it appeared to make a Rule 33(d) election directing Plaintiff to its records and putting the burden on Plaintiff to make the calculation. Plaintiff made that calculation in connection with its summary judgment proof. The Government then claimed in opposing Plaintiff's summary judgment that the calculation could not be made, notwithstanding its interrogatory answer, because the fill rate reports did not reflect "killed" orders. The Government did not provide any summary judgment evidence that the "kill" volume, which United contends is *de minimus*, had any material impact on the calculation. Indeed, in another interrogatory response the Government claims it has no evidence from which to estimate the "kills."

Since the summary judgment hearing the Government not only has not amended its responses to conform to its summary judgment position, but has reaffirmed the interrogatory answers with sworn deposition testimony.

Plaintiff's counsel devoted a substantial amount of time to the answer to interrogatory #5 during the oral deposition of Contract Officer James Jennings taken in March 2005. Under oath, Mr. Jennings confirmed that the interrogatory answer was correct and explained, in three pages of deposition testimony, how the total dollar value of orders placed by the MTFs to United Medical could reasonably be derived from fill rate reports. During the entire deposition Mr. Jennings never suggested that the interrogatory could not be answered using the fill rate reports. Present Government counsel, and DSCP counsel, attended that entire deposition and did not examine Mr. Jennings on the issue. The Government did not supplement this sworn deposition testimony by having Mr. Jennings amend his responses. [A copy of that portion of Mr. Jennings' deposition testimony is attached].

Mr. Jennings testified the interrogatory can be answered using the fill rate reports. Accordingly, Plaintiff is seeking an order compelling the Government to fully and immediately answer this interrogatory.

**The Fort Hood and Fort Sam Houston CDs**

Based on the Government's response, it appears that the Government is contending that the production of the two CDs is an acceptable alternative to answering some unspecified interrogatories. Such an option would be governed by Rule 33(d). Rule 33(d) requires the producing party to specify in sufficient detail the records from which the answer can be derived so that the recipient can locate the records as readily as the party served.[1] The production of the two CDs does not satisfy that requirement. Indeed, Plaintiff does not know which interrogatories are being addressed by the information on the CDs.

The Government mischaracterizes Plaintiff's complaint with respect to the CD production. [Gov't Response p. 6]. Plaintiff is not complaining that the CDs contain too much information as the Government alleges, or that the documents cannot be produced by CD in lieu of physical production of original documents at the individual MTFs.

Plaintiff's complaint is that the documents have been produced in a seriously incomplete and useless manner.[2] They obviously have not been produced as they are kept in the ordinary course of business, they are not organized to correspond to the document categories or interrogatories requested by Plaintiff as required by COFC Rules 33(d) and 34(b), they do not

[1] The producing party must described the documents in detail or attach a copy to the interrogatory response. *Herdlein Technologies, Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 107 (W.D.N.C. 1993).

[2] Plaintiff's 2nd Motion to Compel deals with this issue in more detail.

contain financial, vendor and product purchase and usage information, they do not contain credit card information and they do not include information from all MTFs, of which there are at least 15 MTFs of significance. The document organization, or lack of it, coupled with the format problems described below, and the lack of vendor, credit card and MTF information renders the discovery almost useless.

On May 25, 2005, Government counsel handed Plaintiff's counsel two CDs during Mr. Bandy's deposition along with an as yet unfilled promise that more was coming from one other MTF. One CD was labeled "Fort Hood," the other, "Ft Sam Houston." No index or other descriptive document was provided. The CDs themselves do not contain any description of the documents or names for any of the documents. The Fort Hood CD is simply a random collection of 74 megabytes of documents, including documents from Fort Carson, an unrelated MTF. The Ft. Sam Houston CD is a random collection of 461 megabytes of documents stored in various formats. It too does not contain any index or descriptive documentation. No indication of how these documents correlated to Plaintiff's requests for production or interrogatories was provided.

If the CDs were complete, they would have contained financial (including credit card), vendor and DAPA product purchase and usage information. That information, even for the two MTFs identified on the CD labels, does not appear to be on the CDs. These medical treatment facilities include large hospitals that routinely maintain product usage data and deal with patient histories and product recalls. The Government's contention that the MTFs do not have this type of information defies common sense.

Plaintiff's counsel formally and promptly notified present Government counsel of the file format problems of the Sam Houston CD, that the supporting data behind a Fort Hood six month product purchase summary (Bates DAMC 690) appeared to be relevant and missing, that it

appeared that the Government was not being forthcoming with discovery and that Plaintiff intended to file a motion to compel discovery unless something could be worked out. Plaintiff then provided the Government with a draft of its motion and asked if the Government would agree to any of it.

The Government's response to Plaintiff's complaint was not responsive. It simply claimed that no purpose would be served by filing a motion to compel and that Plaintiff now had or soon would receive all responsive documents.[3] Instead of supplementing its interrogatory responses with investigation efforts the Government made to answer the interrogatories, as required, the Government wrote Plaintiff's counsel that if he wanted to pursue what the Government described as the "immaterial details" about how the Government prepared its responses to interrogatories he could serve an interrogatory requesting names of participants and then decide who to depose and if he wanted to waste his time looking at documents at the MTFs he could, but there were not any documents to look at.[4]

Plaintiff has made it quite clear to the Government that it wants information on the each MTF's purchases by vendor and item description. Such documents would be responsive several of Plaintiff's outstanding discovery requests, specifically including Requests No. 3 and 4 to Plaintiff's discovery requests served in 2002.

The Government's response indicates that some expert is reviewing documents to determine if supplementation is required. Fact discovery cutoff is less than one month away.

---

[3] No additional documents have been received.

[4] The Government had a duty when it responded to an interrogatory with a claim of ignorance, *i.e.*, it could not answer the interrogatory, to describe in detail the investigation it made before deciding the interrogatory could not be answered. *Hansel v. Shell Oil Corp.*, 169 F.R.D 303, 305 (E.D. Pa. 1996); *Jackson v. Kroblin Refrigerated Services Xpress, Inc.*, 49 F.R.D. 134, 137 (N.D. W. Va. 1970). Plaintiff

Plaintiff needs the information immediately. It is needed for several reasons, including use by Plaintiff's experts.

The Government suggests that its failure to organize the documents in accordance with Rule 34 requirements is justified by the delivery on a rush bases as soon as they were scanned. Plaintiff's discovery requests were served in 2002. The production of this incomplete information in this manner prevents Plaintiff from using it to derive the answers to any interrogatories and impairs Plaintiff's preparation of its on-going trial and discovery efforts.

The production of the CDs by the Government does not excuse its obligations to answer the interrogatories as requested by Plaintiff.

**<u>The Government's "No Duty to Answer Interrogatories" Position</u>**

In addition to the problems with the Government's Response to Interrogatory 5 as described above, Plaintiff's Motion and Brief identify specific other deficiencies with the Government's responses. The Government claims it does not have a duty to further answer the interrogatories because it is not required to guess or provide estimates useful to Plaintiff. [Response, p. 8]. That is, in reality, the only substantive defense raised by the Government, and it does so without citation to any authority. The Response ignores the issues raised by Plaintiff (i) pertaining Rule 33(d), and (ii) its duty to fully investigate and then disclose its investigation efforts if it cannot answer based on lack of knowledge. Government counsel has uniformly taken the position that the Government does not have to do an investigation to prove Plaintiff's claim.

---

should not have to serve additional interrogatories and then take a deposition to determine such information.

United Medical references the Jennings deposition and interrogatory verification as evidence of an inadequate investigation. Both United Medical and the Government cite *Shepherd v. American Broadcasting Co.*, 62 F.3d 1469, 1482 (D.C. Cir. 1995), a sanctions case, in support of their respective positions.

United cites the case for the proposition that Mr. Jennings had a duty to base his verification on some knowledge and that his total absence of any basis for his interrogatory answers evidences the Government's inadequate investigation in responding to discovery.

The Government cites *Shepherd* to justify Mr. Jennings lack of knowledge of the bases for his interrogatory answers, suggesting that Mr. Jennings simply forgot what investigation he did to ensure the correctness of his answers. The Government's position is defeated by Mr. Jennings testimony in several places, including his testimony that he only answered based on what he knew and that he could not answer for the Government. [p. 118, lines 8 – 22]; [Appdx 0031].

The *Shepherd* opinion does not stand for the proposition that this approach satisfies a party's verification obligations. The *Shepherd* Court clearly held that the person signing the interrogatories had some level of duty to ensure the correctness of the answers. It stated,

> "Of course, the representative must have a basis for signing the responses and for thereby stating on behalf of the corporation that the responses are accurate, " citing "*Folding Carton,* 76 F.R.D. at 419." 62 F.3d at 1482.

Mr. Jennings did not testify that he could not recall the process he used to determine that the answers were correct or that he relied on anybody else. He never corrected his deposition to state this. He testified he had not had any involvement in the litigation other than in preparing for his deposition [p.16] and that he had no knowledge that any investigation was done on the diversion of purchase issue since the lawsuit was instituted. [p. 49-50]. He testified that he was not aware of any investigation being conducted. [p. 50]. Mr. Jennings did not correct his

deposition testimony to change any of these answers with a "don't recall." This is not a case where Mr. Jennings, as the person verifying the interrogatory, simply could not recall. It appears that Mr. Jennings simply signed a piece of paper that was put in front of him without any further inquiry by him.

The Government's litigation position that it did not divert purchases is not credible. Throughout the four-year term of the contract, encompassing millions of transactions, Plaintiff was advised by various Government personnel that purchases from Plaintiff were exceedingly below Solicitation estimates because credit cards and direct purchase methods were being used by MTFs to bypass the Government's obligations under the prime vendor contract. An internal memo from contract officer Flatley indicated that she had concluded that McGaw IV solutions were being purchased directly from the manufacturer and she further concluded this constituted a violation of United's PV contract. Mr. Michael Schmitt, former director of the Prime Vendor Program, published an article in which he describes the massive use of credit cards to improperly bypass the prime vendor program. Colonel William Riley, head of logistics at one of the MTFs wrote DSCP and advised them that the Government was breaching the prime vendor contract. These items cannot be overlooked by the Government in conducting a thorough investigation and disclosing to Plaintiff and the Court the details of the investigation conducted. *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees*, 212 F.R.D. 178 (S.D.N.Y. 2003).

The Government's response to Plaintiff's First Motion to Compel evidences that the Government never made any appropriate investigation in connection with its interrogatory answer. Government counsel claims on page 5 of its Response that he was unaware prior to Mr. Jennings' deposition that United Medical believed that the Government should already have

examined and produced records from the MTFs, pursuant to outstanding interrogatories and document requests.

That is not a credible argument. Several of Plaintiff's discovery requests were specifically targeted at individual MTFs and they so stated.[5] Why would Plaintiff not have that expectation?

Further, attached to Plaintiff's First Motion to Compel is a detailed letter of December 16, 2002 in which Plaintiff's counsel specifically took issue with the Government's attempts to limit its responses to DSCP. Plaintiff argued that "…each MTF is required to participate in responding to the discovery requests." [1st motion to compel, Appdx 00034]. On November 20, 2003, Plaintiff's counsel complained by letter to present Government counsel that the Government's interrogatory answers did not appear to be correct and specifically requested a 122 page credit card purchases report from Fort Hood referenced in internal Government correspondence, one of the Lone Star MTFs. The Government has never produced the 122-page report.

Plaintiff obviously has expected the Government's discovery responses to include information from the individual MTFs. It would be unreasonable to assume otherwise.

The Government claims, without citation to any authority, that it has no obligation to guess or provide estimates useful to Plaintiff. Certainly Plaintiff does not contend that the Government should guess. It does, however, contend that the Government has a duty to thoroughly investigate its records to determine if it can specifically answer interrogatories 6 and

---

[5] For example, request number 4 requested, "Records from each MTF which evidence the Schedule Medical Products and Supplies purchase from United Medical and the dollar amount of the Scheduled Medical Products and Supplies purchased from third parties." Emphasis added.

7, and if it can, it must do so. If it cannot, it must disclose its opinions of estimates in interrogatories 19 and 20.

In *Carlson Companies, Inc. v. Sperry & Hutchinson Co.,* 374 F. Supp. 1080, 1083-1084 (D.C. Minn 1974) the Court considered the differences in interrogatory response requirements under the "new" 1970 rule amendments. In this case concerning S&H Greenstamps, Sperry & Hutchinson was asked to estimate its market share of trading stamps. It objected on the same grounds urged by the Government, *i.e.*, it was not required to guess. The Court did not accept that argument under the post-1970 rules. It held that where an estimate can be made, it can be required if it is practicable and feasible to answer the inquiry and, if so, whether an answer might expedite the litigation by either narrowing the area of controversy or avoiding unnecessary testimony or providing a lead to evidence.

The interrogatories at issues meet all of the criteria. The Government obviously believes that it is practicable and feasible to answer the interrogatory as evidenced by the fact it is willing to pay Navigant to do so. The questions posed by Plaintiff are core questions to the litigation and a good faith estimate would almost certainly expedite the litigation, including settlement. It would narrow the area of controversy and avoid unnecessary testimony.

Accordingly, Plaintiff requests that the Court compel the Government to investigate its records and based on a disclosed investigation answer the interrogatories 6, 7, 19 and 20. The answer to interrogatories 4 and 5 should be similarly compelled for the other reasons stated above.

**The Navigant Contract**

Plaintiff, on several occasions, attempted to spearhead a settlement and/or negotiated stipulations effort. A primary reason for this was to avoid the alternative discovery effort.

Plaintiff remains committed to make a good faith effort to settle this case or to negotiate stipulations that might simplify the case.

Plaintiff believes, however, that if the parties are willing to make a good faith settlement attempt, a settlement judge or mediator will be more effective, and certainly more cost-effective, than the employment of a “neutral” consultant to perform the investigation of the Government’s records that the Government should already have investigated.

The Navigant contract attached to the Government’s response is a bilateral, not trilateral, contract between the Government and Navigant. Plaintiff is not a party to the contract. Although Plaintiff became generally aware during Mr. Jennings deposition that the Government had engaged Navigant, (Government counsel simply announced that the Government had employed Navigant and it would send Plaintiff a copy of the contract), Plaintiff had not seen the contract or its terms until it obtained it from the Court’s ECF system last week.

The Navigant issue is a red herring. Plaintiff never agreed to suspend the Government’s discovery obligations, and the Government acknowledges that on pages 1 and 2 of its Response when it states, “We [the Government] have repeatedly acknowledged our obligation under the RCFC to supplement our discovery responses if we obtain new pertinent information – which, as discussed below, <u>we have not obtained.</u>”

The discovery dispute between Plaintiff and the Government is the duty of the Government to investigate its records in order to “obtain new pertinent information” and to disclose the details of the investigation so that Plaintiff and the Court can determine if an adequate investigation was made.

**Third Party Discovery Evidences an Inadequate Investigation and Discovery Response by the Government**

The Government's constant drumbeat is that it did not divert purchases. Plaintiff has suggested that if the Government would simply investigate its purchases at any major MTF of any one of the large DAPA holders it would know that its position is incorrect and that a more thorough investigation is needed. Plaintiff specifically suggested the Government research its records on Ethicon, Inc. as a representative DAPA holder. The Government's position was that it did not have to investigate to prove Plaintiff's case.

In mid-April 2005 Plaintiff served a subpoena for documents on Ethicon, Inc. and copied Government counsel with the subpoena. On June 27, 2005, Ethicon partially responded to that subpoena with an 86 page listing of product it sold directly to some of the MTFs in the Lone Star Region, primarily the Fort Sill facility, during the contract period. Except for the May 2001 purchases, virtually all of these represent diverted purchases. A 10-page representative portion of Ethicon's list is attached.

The Ethicon production raises a serious question regarding the Government's investigation of Plaintiff's discovery requests. Indeed, it strongly evidences an inadequate investigation. Does the Government really contend that it does not have any record of what these MTFs purchased from Ethicon? How could a thorough investigation miss these purchases, especially when Plaintiff specifically suggested that the Government search its records for purchases directly from Ethicon?

**Signed June 27, 2005.**

Respectfully submitted,

/s/ Frank L. Broyles

Frank L. Broyles
State Bar No. 03230500
Goins, Underkofler, Crawford
& Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff
UNITED MEDICAL SUPPLY COMPANY, INC.

CERTIFICATE OF SERVICE

On June 28, 2005 the foregoing reply with referenced attachments was served on the persons shown below by the method shown below in accordance with rule 5.1.

/s/ Frank L. Broyles

**PERSONS SERVED:**

Kyle Chadwick
Department of Justice
Method Served: telecopy and ECF