COURT OF FEDERAL CLAIMS

UNITED MEDICAL SUPPLY COMPANY, INC.,
Plaintiff,

Case No. 03-CV-289

v.

Judge Allegra

THE UNITED STATES,
Defendant.

---

AFFIDAVIT OF WILLIAM MARCHAND

1. My name is William Marchand. I am over the age of 21 years and fully competent to make this affidavit. Unless otherwise stated, all statements made herein are based on my personal knowledge.

2. I am the Noncommissioned Officer in Charge (NCOIC) of Acquisition and Inventory Management working in the Medical Logistics flight at the medical clinic at Laughlin Air Force Base (LAFB), Texas. I have been in this position since February 2004. TSgt Patricia Wilson is the NCOIC of the Medical Logistics flight. To the best of my knowledge Stephan Wynn was NCOIC in this section from 2003 until March 2005, and Eliseo Cabalu held the position from September 1995 until January 2003.

3. I became aware of the claim filed by United Medical in late May 2006. I was shown copies of emails that appear to have been sent to Eliseo Cabalu, from Anthony Amedolia, DSCP, on 6 November 2002. That email referred to an email sent on 1 October 2002 and was copied into the 6 November email. The 1 October email requested that "all records and correspondence be saved with respect to United Medical." The 6 November email stated that DSCP would "make arrangements to acquire copies of any United Medical correspondence" at LAFB. An email on 20 November 2002, again from Mr. Amendolia, was apparently sent to Mr. Cabalu. That email asked whether LAFB had "any records of NON PV purchases from June of 1997 to March of 2001." The email also stated that arrangements would be made to have "someone" review and copy archived records or folders.

4. Mr. Cabalu told our office that completed purchase orders or procurement documents, to include IMPAC card receipts and statements, from June 1997 to March 2001, were all boxed, sealed, tagged and stored in the medical logistics warehouses. He stated that no records were sent anywhere else to be stored and none of the documents were destroyed while he was at LAFB.

5. To the best of my knowledge, other than the 1 October 2002 email pasted into the 6 November 2002 email, apparently sent to Mr. Cabalu, which referred generally to current litigation proceedings, LAFB was not formally notified of the pendency of the subject suit.

6. In response to becoming aware of the suit in May 2006, we have discovered boxes containing IMPAC card receipts from on or about October 1999 to on or about October 2001, and Prime Vendor receipts from on or about October 2000 to on or about October 2001. When discovered these boxes were not marked in any way to keep them from being destroyed at the appropriate time based on our regulations. In order to preserve this potentially relevant evidence in May 2006 we isolated and conspicuously marked the boxes "NOT TO BE DESTROYED PENDING FURTHER GUIDANCE FROM DSCP."

7. At the time of the 6 November 2002 email to Mr. Cabalu, the Medical Logistics flight may

have been in possession of documents illustrating orders placed under the PV contract, orders placed outside the contract, billing information including credit card records, emails, internal memos from the period between June 1997 and March 2001, but I have no personal knowledge relating to this.

8. The Medical Logistics flight at LAFB currently has the following records: (1) IMPAC card receipts from on or about October 1999 to on or about October 2001; and (2) Prime vendor receipts from on or about October 2000 to on or about October 2001.

9. In October 2005, TSgt Wilson and I destroyed records stored in the Medical Logistics warehouse that were scheduled to be destroyed. I do not recall the subject matter of those documents. The destroyed records were not marked in any way that would have led us to believe that they should not be destroyed. I was not aware of a requirement to save IMPAC card receipts and statements until May 2006. Mr. Cabalu and Mr. Wynn both deny destroying any documents while at LAFB, so I am uncertain as to the disposition of any other potentially relevant records from June 1997 to March 2001. Additionally, if the requested records were boxed, sealed, tagged and stored in the warehouses like Mr. Cabalu said they were, I don't know why the rest of the IMPAC receipts and statements from June 1997 to March 2001 are missing.

10. The destruction of the documents referenced in paragraph 9 were identified and placed into a recycle bin here at LAFB.

11. Under current Air Force regulations, IMPAC card receipts and statements are to be retained for three years after final payment. (AFI 64-117). Additionally, any records pertinent to a dispute, investigation or similar matter must be destroyed six months after final clearance or settlement or three years from the final payment whichever is later. Data residing in the database is saved for six years. A previous edition in effect between June 1997 and March 2001, however, was different. Up until 6 December 2000 IMPAC receipts were to be retained for only one year, there was no guidance on how to handle records pertinent to a dispute or other matter and the records were not entered into a database. So, if this regulation were followed, IMPAC card receipts from 1997 to at least 1999 were likely destroyed before the implementation of the current regulation. This regulatory change coupled with the turnover in our flight most likely explains why the other IMPAC card receipts from June 1997 until March 2001 are gone.

Will Marchand

William Marchand
Medical Logistics Flight

STATE OF TEXAS

COUNTY OF VAL VERDE

Subscribed and Sworn to before me this 23 day of June 2006.

TERRA M WADE
Notary Public
State of Texas
My Commission Expires
December 2, 2006

NOTARY PUBLIC STATE OF TEXAS

Terra M Wade

Terra Wade
Notary Public