COURT OF FEDERAL CLAIMS

UNITED MEDICAL SUPPLY COMPANY, INC.,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

Case No. 03-CV-289

Judge Allegra

---

AFFIDAVIT OF

MASTER SERGEANT TERRY D. STEELE

1. My name is Terry D. Steele. I am a Master Sergeant (E-7) in the United States Air Force. I am over the age of 21 years and fully competent to make this affidavit. Unless otherwise stated, all statements made herein are based on my personal knowledge.

2. I am the Superintendent of Medical Logistics Flight at the 82d Medical Group (82 MDG), located at Sheppard Air Force Base, Texas. I have been Superintendent of Medical Logistics Flight since 1 February 2003. However, I have been assigned to the 82 MDG since 4 July 2000.

3. To my knowledge, the 82 MDG was never notified of a contract claim filed by United Medical.

4. Since the 82 MDG was not notified of the contract claim, the 82 MDG took no steps to preserve potentially relevant evidence until the 82 MDG was notified of the pendency of the suit filed by United Medical.

5. To my knowledge, the 82 MDG was notified of the pendency of the suit filed by United Medical on or about 6 November 2002. The notification was received via an e-mail from Anthony Amendolia, Defense Supply Center Philadelphia. I remember receiving the 6 November 2002 e-mail as I was one of the addressees, on that e-mail. The e-mail that I received contained the contents of an earlier e-mail from Anthony Amendolia which he had sent on or about 1 October 2002 and made reference to litigation involving by United Medical. I do not recall receiving the e-mail dated 1 October 2002. I subsequently received another e-mail from Mr. Anthony Amendolia at DSCP dated 20 November 2002 regarding non PV purchases made from June of 1997 to March of 2001.

6. In response to the 6 November 2002 and 20 November 2002 e-mails regarding the litigation involving United Medical, individuals assigned to the Medical Logistics Flight (MLF) at the 82 MDG (including myself) in an attempt to preserve potentially relevant evidence searched our files and or records of NON PV purchases using government-wide purchase cards for the dates requested (June 1997 to March 2001). The search of the files and or records occurred in November 2002. However, prior to the notification of the suit and the request to preserve the records of NON PV purchases, all such records maintained by the MLF had been destroyed in accordance with AFI 64-117. At that time, all supporting documentations/records for NON PV purchases were only required to be maintained for a period of 12 months. Accordingly, our efforts to preserve potentially relevant evidence were not successful due to the destruction of the files in accordance with AFI 64-117. All records were destroyed on the 5th day of each month, dated one year prior to current year.

7. Subsequent to the original notification of the litigation which the 82 MDG received via email from Mr. Anthony Amendolia at DSCP dated 6 November 2002, the 82 MDG received another e-

mail, from Mr. Anthony Amendolia, at DSCP dated 20 November 2002 regarding the United Medical litigation and the preservation of evidence.

8. At the time the 82 MDG became aware of the litigation, the 82 MDG was in possession of the following potentially relevant records:

> None. At the time the 82 MDG became aware of the litigation, the 82 MDG had no potentially relevant Non PV records in its possession.

9. The 82 MDG currently has the following potentially relevant records:

> None. The 82 MDG currently has no potentially relevant Non PV records in its possession.

10. The following potentially relevant records are known to have been destroyed:

> NON PV Purchase Records, that is, orders placed outside of the United Medical contract using government purchase cards for the period 1 June of 1997 to 31 May 2001.

11. The destruction of the above documents occurred in the following manner:

> NON PV Purchase Records, that is, orders placed outside of the United Medical contract using government purchase cards for the period 1 June of 1997 to 31 May 2001 were destroyed by shredding after one year in accordance with the AFI 64-117, dated 6 December 2000, the record retention/destruction policy that was in effect when the 82 MDG was notified of the litigation regarding United Medical on 6 November 2002. Because the retention period was only one year, the 82 MDG had already destroyed the potentially relevant NON PV purchase records regarding the United Medical contract before receiving notification of the pending litigation on 6 November 2002.

12. The current 82 MDG record retention/destruction policy for NON PV Purchase Records made using the GPC is established by *AFI 64-117, Acquisition, AIR FORCE GOVERNMENT-WIDE PURCHASE CARD (GPC) PROGRAM*, dated 31 January 2006, and is as follows:

4.3.5.5. Documentation and Retention: The following documentation shall be maintained:

4.3.5.5.1. Documents received and /or generated by the cardholder to support transactions shall be retained for three years after final payment. Data residing in the Bank's electronic access system is maintained by the Bank for six years and three months. Reports may be retrieved from the Bank's electronic access system for up to the previous two years. Reports covering data fro periods beyond the previous two years are available from the Bank upon request (AFMAN 37 -139).

4.3.5.5.4. Any record pertinent to a dispute, investigation or similar matter must be destroyed six months after final clearance or settlement (including time allotted for appeals) destroy after the retention period specified for credit cards under Rule 26, whichever is later (AFMAN 37-139, Table 64-4, Rules 26 and 26.2).

The record retention/destruction policy in effect immediately prior to 31 January 2006 was established by *AFI 64-117, Acquisition, AIR FORCE GOVERNMENT-WIDE PURCHASE CARD (GPC) PROGRAM,* dated 6 December 2002, and was as follows:

4.3.5.4. Documentation and Retention: The following documentation shall be maintained:

4.3.5.4.1. Documents received and/or generated by the cardholder to support transactions, retain for three years after final payment. Data residing in the Bank's electronic access system is maintained by the Bank for six years and three months. Reports may be retrieved from the Bank's electronic access system for up to the previous two year. Reports covering data for periods beyond the previous two years are available from the Bank upon request (AFMAN 37-139).

4.3.5.4.4. Any record pertinent to a dispute, investigation or similar matter must be destroyed six months after final clearance or settlement (including time allotted for appeals) destroy after the retention period specified for credit cards under Rule 26, whichever is later (AFMAN 37-139, Table 64-4, Rules 26 and 26.2).

The record retention/destruction policy in effect on or about 6 November 2002, the date on which the 82 MDG was notified of the pending litigation, was established by *AFI 64-117, Acquisition, AIR FORCE GOVERNMENT-WIDE PURCHASE CARD) PROGRAM*, dated 6 December 2000, and was as follows:

4.3.5.4. Documentation and Retention: For each purchase card transaction, the following documentation shall be maintained:

4.3.5.4.1. Documents received and/or generated by the cardholder to support purchase transactions (statements of account, receipts, approvals, etc.). One year after final payment of statement IAW AFMAN 37-139, Table 64-4, R26 and FAR 4.805(b) (10).

Air Force Manual 37-139, Table 64-4, Rule 26 dated 1 March 1996 directed that IMPAC records be destroyed one year after final payment.

FAR 4.805(b) (10) directed that for investigations, cases pending or in litigation (including protests), or similar matters documents until final clearance or settlement, or, if related to a document identified in (b) (1)-(9), for the retention period specified for the related document, whichever is later.

TERRY D. STEELE, MSgt, USAF
Superintendent, Medical Logistics

Subscribed and Sworn to before me this 29 day of Jun 2006.

NOTARY PUBLIC

DEBRA J. CAHILL
MY COMMISSION EXPIRES
March 16, 2009