**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., *Plaintiff* | CASE NO: 03-CV-289 |
| v. | Judge Allegra |
| THE UNITED STATES, *Defendant* | |

**PLAINTIFF'S EXPEDITED MOTION TO COMPEL COMPLIANCE WITH COURT'S ORDER OF APRIL 26, 2006 AND FOR SANCTIONS**

**TO THE HONORABLE UNITED STATES COURT OF FEDERAL CLAIMS:**

On April 26, 2006 this Court entered an order directing the Government to take three types of actions: file detailed affidavits, produce data to Plaintiff and answer interrogatories. By amended order, those actions were required to be completed by July 5, 2006. The Government failed to comply. Plaintiff also has duties and deadlines under the April 26, 2006 order that have been impaired by the Government's failures to comply. Accordingly, Plaintiff files this expedited motion to compel.

**SUMMARY**

In the order at issue the Court directed the Government to produce all remaining documents concerning sales transactions pertinent to the case and to provide affidavits detailing, at a minimum, nine specific areas.

The objectives of the Court were clear. It wanted to establish baselines of evidence that once, but no longer, existed, and the efforts that had been made to prevent destruction of evidence. Further, it wanted the Government to diligently and

promptly produce the remaining records to Plaintiff so that the case could be moved along.

The affidavits are shocking. They paint an undeniable picture of egregious spoliation through wanton neglect. Over half of the MTFs were totally unaware of Plaintiff's claims and discovery requests until May 2006, months after this Court emphasized on December 5, 2005 that it wanted to make sure that steps had been taken to ensure that no additional documents would be destroyed. [Hearing Tr. pp. 3 and 4].[1] The affidavits strongly suggest that even today the MTFs are unaware of Plaintiff's claims for unpaid invoices, failure to provide usage data and negligent estimation of requirements and have not taken any steps to preserve evidence on those issues.

William Beaumont medical facility claims it destroyed documents because DOJ advised them the documents were useless and William Beaumont was not instructed to preserve evidence.[2] Such revelations highlight the need for affidavits in full compliance

---

[1] In response, the Government counsel advised the Court, "We have contacted, and on many occasions visited, all of the MTFs." [Tr. p. 4, lines 12 and 13].

[2] Affiant Lynn Nelson of William Beaumont testified in her affidavit as follows:

> [In 2003] the Department of Justice representative asked to see our United Medical records. She did not ask to see any credit card records or other documents related to non-Prime Vendor purchases. We did not have many contract records because United Medical stopped doing business with us in the September - October 2000 time frame and we destroy our records after two years.
>
> The woman from Justice reviewed the United Medical records we had and stated that they were "useless". Because our United Medical records were useless and we were not advised by Justice to keep them, they were destroyed in accordance with our two year retention policy.
>
> At the time the Department of Justice representative visited us, we had credit card records available. We no longer have those records. Justice did not

with the Court's order. Nevertheless, the affidavits are materially incomplete with respect to many of the areas as detailed in Plaintiff's previously filed objections to the affidavits.

The Court's order further directed the Government to produce all remaining data concerning sales transactions pertinent to the case by July 5, 2006. The affidavits indicate that some MTFs possess substantial responsive data that has not been produced.

Bottom-line, the Government has again deflected Plaintiff's efforts to obtain reasonably complete discovery from the MTFs and delayed proceedings. It dribbles out information and contends good faith compliance. Documents have been destroyed and witnesses have become unavailable. The Government's response is that the situation is regrettable. Plaintiff's response is that it is sanctionable.

## I. THE AFFIDAVITS ARE INCOMPLETE

The affidavits do not comply with paragraphs 2, 4, 5, 6, 7, and 8. Those paragraphs required the affiants to <u>detail</u> specific types of information pertaining to <u>all</u> potential evidence relevant to the case.

**The affidavits do not detail any Item 5 communications the MTFs received from DoD or DOJ.**

---

express any interest in seeing them in March 2003, did not ask us about them in March 2003 and did not advise us to retain them in 2003. Therefore, the credit card records were destroyed in accordance with our two year retention policy.

Paragraph number 5 requires the Government to detail how the MTFs were notified what potential evidence they were to identify and preserve. Not a single affidavit describes any communications it received from either DoD or DOJ that pertained to methodology for identifying potentially relevant evidence as required by numbered paragraph 5. The issue down the road that may face the Court and the parties will be allocation of blame for destruction of evidence, that is, did DOJ do its job. If the MTFs received clear and concise instructions, but ignored those instructions that is one thing. If they received simply a general statement that United Medical had filed a claim or lawsuit that is another. The affidavits suggest, albeit cryptically, that the latter occurred, in May 2006 for most of the MTFs. Plaintiff expected, and believes the Court expected, significantly more detail on this issue than the MTFs provided, particularly in view of the representations made to the Court that DOJ had taken adequate steps to insure that no additional evidence was destroyed.

**The affidavits, in the main, do not address any potential evidence relevant to Plaintiff's claims except credit card purchases.**

The numbered paragraphs of the Court's order require disclosures pertaining to all potential evidence, not just credit card evidence. Instead of providing that information, the affiants limited their disclosures to purchases by credit card. Not discussed was evidence relevant to issues of negligent estimation of requirements, accounts payable to United Medical, and failures to provide usage data. Instead they

responded only with respect to diverted purchases, primarily diverted purchases by the use of credit cards.[3]

The restriction of the affidavits to credit card data is a significant deficiency in the information. In its April 2006 order the Court required the Government to Plaintiff's interrogatories requesting the Government to provide its best estimate of diverted purchases for each of the MTFs. The Government stated that the maximum amount of potentially diverted purchases was $44.2 million. It based its estimate solely on selected credit card data. Of the $44.2 million, it claimed that Fort Hood's share of "maximum diverted purchases" was $2.9 million dollars during the entire four-year contract period. Previously produced information from Fort Hood, however indicates this estimate of maximum diversion is unbelievably low.

The Government provided a Fort Hood report titled "Regional Tri-Service Medical Logistics Data Collection." It covered the six-month period from October 1, 1999 through March 31, 2000. That document evidences Fort Hood purchased total medical supplies during the six-month period of $5.6 million. Purchases from United Medical during that period are documented in the report at $0.58 million, while credit card purchases are documented at $1.9 million, two to three times the monthly average claimed by the Government as a "maximum" diversion. Importantly, direct purchases via blanket purchase agreements were listed in the data study at $1.6 million.

---

[3] Plaintiff contends the Government used other methods to divert significant purchases from United Medical, primarily blanket purchase agreements. The Government has not provided any data with respect to any purchase methods other than Government credit cards. This data would be relevant to both the issue of diverted purchases and negligent estimation.

Extrapolation from this data evidences that maximum diverted purchases at Fort Hood alone well exceeds $20 million. In view of this ten-fold discrepancy between the interrogatory response and the data collection report, limiting "potentially relevant evidence" to credit card sales evidence is unjustifiable. Plaintiff's conclusion is buttressed by documents produced in this case by Ethicon, Inc., a supplier of suture and one of the major DAPA holders. Those documents evidence significant sales of DAPA items directly to MTFs that are not evidenced by any of the credit card data produced by the Government.

**The affidavits do not describe the evidence that the MTF originally possessed.**

Paragraph 6 requires disclosures of records that the MTF originally possessed potentially relevant to the case. The affidavits do not comply with this requirement. To the extent that any effort was made to comply, the disclosure was limited to "after notification," which is not a limitation permitted in the Court's order.

**Other**

Plaintiff also notes that the affidavit of Bill Christie references an attachment that was not attached. On July 12, 2006, Plaintiff's counsel sent a letter to Government counsel requesting the affidavit be refiled with the missing attachment. The Government has not refiled the affidavit. Its position is that counsel for Plaintiff has the attachment, so Plaintiff's request is frivolous.

**II. REMAINING DATA HAS NOT BEEN PRODUCED**

The Government apparently does not contend that it has not complied with this portion of the Court's order. It simply ignored it.

As the Court may recall, one of the bases for establishing the time period between production by the Government and Plaintiff's obligations under the order was to give Plaintiff time to analyze the information as part of its preparation of Mr. Bandy and responding to the Government's damage interrogatory.

The affidavits filed indicate that some of the MTFs have responsive data, data that has not been produced. While Plaintiff is not certain what quantity of data has not been produced, it does note that Fort Hood claims in its affidavit that no potentially relevant evidence has been destroyed, yet no additional data has been received from Fort Hood. Plaintiff is particularly interested in the underlying data that formed the bases for the data collection study referenced above, Fort Hood's budgets for purchases of medical surgical supplies and historical financials detailing such purchases, vendor records, Call records (purchase orders) with respect to the Calls that United Medical contends remain unpaid, usage data for DAPA items, DAPA catalogue disks, and the bases for the original estimates of contract requirements. This information has previously been sought *via* requests for production of documents. The Government generally responded that these documents had been destroyed, which is contradicted by the affidavit of Fort Hood's representative, Judy Tyler.

## III. THE GOVERNMENT'S RESPONSES TO INTERROGATORIES DO NOT COMPLY WITH THE COURT'S ORDER

The Government's responses are incomplete and evasive. Plaintiff, however, cannot adequately deal with this issue until it deposes the person verifying the responses, a right the Government claims Plaintiff does not have since, according to the Government, discovery is closed. However, no person verified the responses. On July 12, 2006, Plaintiff's counsel requested the Government provide a verification. The Government's position is that a verification.

## IV. CERTIFICATE OF CONFERENCE

Counsel for the parties conferenced on the issues and were unable to reach any agreements.

## V. CONCLUSION AND REQUEST FOR RELIEF

Plaintiff previously requested sanctions for spoliation. The merits of that request are now clear. Over half the MTFs were not notified of any claims until May 2006 and, in reasonable likelihood, they still have not been notified of all claims. Plaintiff has been prejudiced by the Government's conduct. Days that should be spent analyzing documents are being spent attempting to obtain documents that should have been produced years ago. The situation is beyond "regrettable."

Plaintiff previously filed motions to compel discovery. Agreements were reached and an order entered reflecting those agreements. The Government failed to comply. The Government's continues to take a position of "we will get to it," but it never does.

Accordingly, Plaintiff requests that the Court sustain Plaintiff's previously filed objections to affidavits, order the Government to comply with the deficiencies set forth above and in its objections to affidavits within the shortest reasonable time limit and that Plaintiff be granted all such other relief to which it justly may be entitled, including sanctions for spoliation and failures to comply with the Court's order of April 26, 2006 as the Court may deem appropriate.

**Signed July 21, 2006.**

Respectfully submitted,

s/ Frank L. Broyles
Frank L. Broyles
Texas State Bar No. 03230500
GOINS, UNDERKOFLER, CRAWFORD
& LANGDON, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff

CERTIFICATE OF SERVICE

A copy as filed will be served on Kyle Chadwick via first class mail on July 21, 2006 in addition to the Clerk's electronic service.

s/ Frank L. Broyles