Appendix J – Defendants Amended Interrogatory Responses dated October 26, 2005

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff, | |
| v. | No. 03-289C (Judge Allegra) |
| THE UNITED STATES, Defendant. | |

DEFENDANT'S AMENDED RESPONSES TO
PLAINTIFF'S NOVEMBER 2002 INTERROGATORIES NO. 4-7

Pursuant to Rule 34 of the Court's Rules, defendant, the United States, amends as follows its responses to the interrogatories below, originally served by plaintiff in November 2002 in case number 01-41911-bjh-11 (Bankr. N.D. Tex.).

AMENDED INTERROGATORY RESPONSES

4. For each Participating MTF, identify the MTF and state, by contract year, the total dollar amount of Scheduled Medical Products and Supplies purchased by that particular MTF during each Contract Year during the term of the Contract between Plaintiff and Defendant, and for each MTF, state the dollar amount of the Scheduled Medical Products and Supplies purchased from United Medical and the dollar amount of the Scheduled Medical Products and Supplies purchased from third parties.

Amended Response:

The Government lacks sufficient documentation to develop a reliable response for any MTF. Rough estimates of the annual dollar values of DAPA items that were ordered from United Medical, but were not ultimately purchased from United Medical, might be developed by comparing the thousands of MTF orders for each contract month with United Medical's confirmation reports, and United Medical's reported monthly fill rates, in order to estimate an average "dollar value" for each percentage point that the fill rate fell below 100 percent. (Because fill rates measured line items, rather than dollars, a 90 percent fill rate does not necessarily mean that unfilled and killed orders represented 10 percent of the total dollar value of orders. The dollar value percentage could be higher or lower, depending upon whether unfilled orders tended to be high-value or low-value

items. For example, if one order consisted of 10 line items worth a total of $50,000, but one of these 10 line items was worth $10,000, and if United Medical did not deliver the $10,000 line item, the fill rate for the order would be 90 percent, but United Medical would have delivered only 25 percent of the dollar value of the order.)

The estimate described above, however, in addition to being rough and time-consuming, would have little probative value in this litigation, as there is no reason to assume that, when United Medical did not fill a part of an order, an MTF necessarily purchased the undelivered item or items from a third party. This means that one cannot determine the dollar value of purchases of DAPA items from parties other than United Medical without access to detailed MTF purchasing records, including but not limited to credit card records. As discussed in defendant's status report dated October 24, 2005, we believe those records currently do not exist for any MTF. Even assuming all the records still existed, moreover, it would be an enormous task, and unduly burdensome upon defendant, which does not bear the burden of proof, to comb through the records to eliminate third-party purchases that related to (i) unfilled and killed orders, (ii) items not stocked by United Medical, and (iii) third-party purchases made for socioeconomic reasons permissible under the prime vendor contract.

5. For each participating MTF, identify the MTF and state the total dollar amount of products for each contract year that the particular MTF ordered from United Medical but which was not supplied by United Medical.

Amended Response:

It may be possible to derive very rough estimates for the MTFs, as described in our preceding amended response. The Government has not completed its efforts to make the estimates. We will seasonably update this response as appropriate.

6. For each participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States.

Amended Response:

The Government lacks sufficient documentation to respond, for the reasons noted in the amended response above to interrogatory number 4. Furthermore, the dollar figures sought by this interrogatory would have little probative value in this litigation. Because the MTFs could order DAPA items from third parties for various reasons consistent with the contract, evidence of third-party purchases is not prima facie evidence of diversion of requirements purchases.

7. For each participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not.

Amended Response:

The Government lacks sufficient documentation to respond, for the reasons noted in the amended response above to interrogatory number 4. Furthermore, defendant's interrogatory number 8, served in September 2003, requests essentially this same information from United Medical, and we have received no updated response since the court rejected plaintiff's original quantification methodology in December 2004. Whatever reasons plaintiff may have for providing no updated response apply equally to the Government, which is working with the same universe of documentation.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

OF COUNSEL:
KATHLEEN HALLAM
Chief Trial Attorney
Defense Supply Center
Philadelphia

October 26, 2005

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 26th day of October 2005, I caused the attached discovery responses to be served by first class mail and facsimile courtesy copy upon:

Frank L. Broyles
Goins, Underkofler, Crawford & Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, TX 75270

[signature]