**Appendix S - Plaintiff's Response to Initial Gov't Interrogatories served in 2002.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| In re: UNITED MEDICAL SUPPLY COMPANY, INC., Reorganized Debtor | CASE NO.01 - 41911-bjh-11<br>Chapter 11 |
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br>v.<br>UNITED STATES OF AMERICA, Defendant | Adversary: 02-4230 |

**PLAINTIFF'S RESPONSE TO UNITED STATES' INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF**

Plaintiff objects to the requested location for production of documents and to the time for production of documents. Production at 1100 L Street, N.W., Room 10026, Washington, D.C. 20005 imposes an undue burden on Plaintiff and is not reasonable. One of the categories of documents that Plaintiff is producing is its computer files as they are maintained on a computer system no longer being used by Plaintiff. That system will be made available for inspection to the United States at the former offices of United Medical in Fort Worth Texas. The remaining documents will be made available for inspection in compliance with Rule 34(b) either at the offices of the particular counsel for Plaintiff where such documents are maintained or, for those documents maintained at by Mr. William Bandy, at his offices or at counsel's offices, or for documents maintained by Plaintiff, at its former offices in Fort Worth Texas. Such documents will be made available for inspection upon reasonable advance request made to counsel for Plaintiff.

Plaintiff reserves the right to move for a protective order after this case has been docketed with the Court of Federal Claims.

DEFENDANT'S DEFINITIONS AND INSTRUCTIONS AND PLAINTIFF'S OBJECTIONS TO THEM

A. The term "Plaintiff" United Medical," or "Debtor" means United Medical Supply Company, Inc. and, unless otherwise stated, includes all present and past employees, agents, or representatives of the Plaintiff, including counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request.

B. The term "DSCP" means the Defense Supply Center Philadelphia (formerly known as Defense Personnel Support Center "DPSC"), United States Department of Defense, its present and past employees, agents, representatives and counsel.

C. The term "Solicitation" means Solicitation DLA 120-93-R-0587.

D. The term "Contract" means Contract No. SP0200-97-D-7133 between United Medical and DSCP.

E. The term "MTF" means the Medical Treatment Facilities as defined under the Contract.

F. The term "Participating MTF" means the Medical Treatment Facilities in the Lone Star Region covered by the Contract.

G. The term "DAPA" means the Distribution and Pricing Agreement as specified by the Contract.

H. The term "Complaint" means the complaint filed by Plaintiff in the above-captioned case.

I. The term "Claim" means the claim filed by United Medical with the DSCP Contracting Officer on or about June 28, 2002.

J. The term "document" means any document in the possession, custody, or control of the Plaintiff or its counsel, or known to the Plaintiff, or its counsel, and is used in its customary and broad sense to include without limitations the following items, whether printed, recorded, microfilmed, or reproduced by any process, or written or produced by hand, by word processor, or by computer and whether or not claimed to be privileged or confidential or personal: letters; memoranda; reports; agreements; working papers; communications (including intra-departmental communications, inter-departmental communications and inter-company communications); correspondence; summaries of records of personal conversations; diaries; forecasts; statistical statements; graphs; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigation opinions or reports of consultants; opinions of counsel; reports of or summaries of either negotiations within or without the Plaintiff or preparation of such; circulars; drafts of any documents; books; instruments; accounts; tapes and all other material of any tangible medium of expression and original or preliminary notes.

K. The terms "person" and "individual" include a corporation, partnership, other business association or entity, any natural person, and any domestic or foreign governmental body, commission, board, agency, branch, department, or component or element thereof.

L. The term "communications" means the expression of any statement, question, command, idea, knowledge, information, or other matter, whether by speech, writing, signs, e-mails, or otherwise.

M. The terms "identification" or "identify" as used herein in reference to:

1) A natural individual means to state, to the extent known, his or her full name, business or residential address, telephone number, present and last known position(s) and business affiliation(s), and position(s) and business affiliation(s) at all times relevant to the interrogatory involved;

(2) A person other than a natural individual means to state, to the extent known, its full name, its present or last known address, its place(s) of business at the present time and at all times relevant to the interrogatory involved, the type(s) of business(es) in which it is engaged at the present time or was engaged in at all times relevant to the interrogatory involved, and its natural or customary business description (for example, corporation, trust, etc.).

(3) A document means to state, to the extent known, the author or originator, the addressee or addressees (if any), the date indicated on the documents as being the date thereof or the date (as exactly as possible) upon which the document was written or executed if no date is shown upon it, a description of the type of

document (for example, letter, handwritten notes, e-mails, etc.), the number of pages, the title (if any), and identification number, or present location and custodian of the original thereof, or, if unknown, the present custodian of any copy thereof and the last known address of each such custodian, and short summary of the contents thereof. The Plaintiff must also state whether it has possession or control of the original or a copy of the document, and state the manner and date of disposition or any document which was, but no longer is, in its possession or subject to its control;

(4) A telephone conversation means to identify the caller and the recipient, and to identify any other person who was party to the conversation, and to state, to the extent known, the location of each at the time the call was made, the date and time of the conversation, and the author or maker and addressee of each statement, question, or remark made during the telephone conversation, and the substance of each such statement, question, or remark;

(5) A communication means to state the nature of the communication (for example, letter, telephone conversation, private meeting, e-mail, advertisement) and, to the extent that the communication was written, to identify the pertinent document or documents and, to the extent that the communication was not written, to identify the person or persons involved in the communication, and to state, to the extent known, the place, date, and method of communication, and the author or maker and addressee of each statement, question, or remark.

N. The term "or" includes and/or.

0. In responding to these requests, you are required to produce all information and documents in your possession, custody or control, or otherwise available to the Plaintiff or the Plaintiffs directors, officers, employees, agents, subcontractors, consultants, attorneys, and accountants, whether past or present, or documents that are otherwise subject to your custody or control. All documents that respond, in whole or part, to any portion of the production requests shall be produced in their entirety, including all attachments and enclosures.

P. With respect to the documents requested, you are to produce all drafts, marked-up versions, preliminary versions, or other nonidentical copies of documents requested.

Q. You are to produce all documents in their original files. Plaintiff objects to this instruction. Many of the documents during the course of business of United Medical have been

R. If any document is withheld under a claim of privilege, for each such document, you are to provide a list with the following information:

(1) Principals. The name and title of the author(s), sender(s), addressee(s), and recipient(s).

(2) Date. The date the document was originated.

(3) Publications. The date and title of each person to whom the contents of the document has been communicated (by copy, exhibition, reading, summarization, or otherwise).

(4) Descriptions. A description of the nature and subject matter of the document.

(5) Privilege. A statement of the privilege and the basis upon which it is asserted.

Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised.

The only documents which are being claimed as privileged are: (1) communications between counsel for United Medical Supply and the following: United Medical Supply Company, Inc. and its representatives (both before and after it filed its Chapter 11); counsel for the Unsecured Creditors Committee; and co-counsels for the Debtor: and (2) attorney notes and research made by counsel for United Medical Supply Company, Inc. Production of a privilege log would impose an undue burden and expense on counsel for the Debtor and be of little or no benefit to the United States. Accordingly, Plaintiff objects to the instruction to produce a privilege log based on undue burden.

S. If you are unable to produce any document requested, state the reason you are unable to produce the document and identify the document with as much accuracy as possible.

T. This discovery request is continuing in nature and Trustee shall provide by way of supplemental responses and documents, whatever information may hereafter be obtained by him on by anyone on his behalf, which will supplement this request. Plaintiff objects to the extent that this instruction purports to require Plaintiff to supplement beyond the duties imposed by federal rules.

## INTERROGATORIES RESPONSES

**Explanation of Rule 33(d) Option to Produce Business Records Response.**

Rule 33(d) provides that, "Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."

Routinely Plaintiff has made this election by simply stating that Rule 33(d) option is available and is being made. This is a shorthand version of stating the elements of the election. Plaintiff then attempts to identify those records which are applicable to the interrogatory.

### INTERROGATORY NO. 1

Identify all former or current employees of United Medical and/or any other individual who were consulted, commented upon or who provided information for use in any of the Plaintiff s responses to these Interrogatories and Request for Production of Documents, and for each such individual, identify the interrogatory response or portion of a response in which the individual was involved, and describe fully the extent and nature of the involvement.

RESPONSE

Plaintiff objects on the grounds that the phrase "identify" as defined is overlybroad. The definition is ambiguous and any reasonable interpretation imposes an undue time and expense burden on Plaintiff. The

interrogatory also imposes an undue time and expense burden on Plaintiff since it seeks the identification of virtually all persons who ever touched the file at any time in the past, including persons with the Department of Defense. Plaintiff estimates that this list would require hundreds of hours of investigation and provide virtually no meaningful information beyond what is being provided below.

Plaintiff also objects to the term individual as defined based on undue burden and limits its response to "natural individuals."

Subject to objection, the natural individuals contacted with respect to these discovery requests are:

Frank Brown
478 Harris Street, Coppell, Texas 75019
817-654-2022
Mr. Brown is the president of the reorganized debtor and Advanced Medical Supply, a corporation that purchased substantially all of the assets of United Medical. Mr. Brown was contacted about location of records and individuals.

William Bandy
7226 Rustic Valley Drive
Dallas, Texas 75248
(972) 248-0421
Mr. Bandy is the former president of United Medical Supply, the plaintiff.
He was contacted with respect to all of the interrogatories and requests for production.

Robert Imel, CPA
10110 Gaywood Dallas, TX 75229
(214) 763-3058
Mr. Imel provided information relating to damages suffered by United Medical and is a previously disclosed expert.

Megan Edmonds
% Aslung Pharmaceutical
550 Hemphill St.
Fort Worth, TX 76104
817-335-5051

Ms. Jo Contreras
A/R Supervisor
Advanced Medical Supply
5117 Northeast Parkway
Fort Worth, TX 76106
817-654-2022

Chris Moser
QUILLING, SELANDER ET AL
2001 Bryan Street
Suite 1800
Dallas, Texas 75201

214-871-2100
Mr. Moser is an attorney representing United Medical Supply, Inc. in its bankruptcy proceedings.
He was contacted regarding document location and privileged documents.

Frank Broyles, attorney for Plaintiff
1201 Elm St., Suite 4800
Dallas, TX 75270

**INTERROGATORY NO. 2**

Identify all former or current employees of United Medical and/or any other individual who were consulted, commented upon or who provided information for use in preparing the Plaintiffs Claim filed with the DSCP Contracting Officer, and for each such individual, identify the portion of the claim in which the individual was involved, and describe fully the extent and nature of the involvement.

Plaintiff objects on the grounds that the phrase "identify" as defined is overlybroad. The definition is ambiguous and any reasonable interpretation imposes an undue time and expense burden on Plaintiff. The interrogatory also imposes an undue time and expense burden on Plaintiff since it seeks the identification of virtually all persons who ever touched the file at any time in the past, including persons with the Department of Defense. Plaintiff estimates that this list would require hundreds of hours of investigation and provide virtually no meaningful information beyond what is being provided below.

Plaintiff objects to the use of the word individual as defined, and limits its response to natural individuals as defined.

Subject to objection, the persons contacted with respect to the Claim were:

I. Primary Natural Individuals:

Frank Brown
478 Harris Street, Coppell, Texas 75019
817-654-2022
Mr. Brown is the president of the reorganized debtor and Advanced Medical Supply, a corporation that purchased substantially all of the assets of United Medical. Mr. Brown was contacted about location of records and individuals and procedures for pursuing the Claim.

William Bandy
7226 Rustic Valley Drive
Dallas, Texas 75248
(972) 248-0421
Mr. Bandy is the former president of United Medical Supply, the plaintiff.
He was contacted with respect to all aspects of the Claim.

Robert Imel, CPA
10110 Gaywood Dallas, TX 75229
(214) 763-3058
Mr. Imel provided information relating to damages suffered by United Medical and is a previously disclosed expert. His report was previously provided to the United States.

Chris Moser

QUILLING, SELANDER ET AL
2001 Bryan Street
Suite 1800
Dallas, Texas 75201
214-871-2100
Mr. Moser is an attorney representing United Medical Supply, Inc. in its bankruptcy proceedings. He was contacted as a matter of courtesy since he had primary responsibility for communicating status to the Bankruptcy Court.

Frank Broyles. Mr. Broyles physically drafted the Claim.

The following additional natural individuals provided some input into the Claims process:

II. Employees or "natural individual" contractors of United Medical:

Megan Edmonds
Vicki Bennett
Barbara Wesala
June Woodard
Don Conder – Don provided input into the cash flow estimates used for damage calculations
Cathy Hamblin
Barbra Trammell
Dan Salgado
Gloria Salgado
Mary Eaton
Fred Blackmon
Suzanne Bakouris
Joan McMurray

III. Other

Frank Rapaport
Mark Meagher
Mr. Rapaport and Mr. Meagher, both attorneys, reviewed the Claim and provided drafting input.

Mike Schmitt
1010 N. Plum Grove Rd.
#104
Schaumburg, IL 60173
(847) 885-2661
Mr. Schmitt is a consultant, but formerly was involved as a representative of the United States on the contract at issue. He provided input via published articles, telephone conferences, and written correspondence regarding the Claim of United Medical Supply. Mr. Schmitt has made admissions regarding the problems of the United States with implementing the prime vendor program.

**INTERROGATORY NO. 3**

Identify all former or current employees of United Medical and/or any other individual who were consulted, employed, commented upon or who provided information for use in the preparation of United Medical's bid/offer in response to Solicitation DLA120-93-R-0587, and for each such individual, identify that portion of the bid/offer in which the individual was involved, and describe fully the extent and nature of the involvement.

RESPONSE

Plaintiff objects on the grounds that this request is overlybroad to the extent that it seeks the identity of employees and individuals information and documents provided by persons at any time since the inception of the incorporation of United Medical if such information is used in answering these discovery requests. Plaintiff further objects to the request to fully describe since such term is ambiguous and attempts to impose an undue burden on Plaintiff. Subject to objection, the natural individuals who had material input into the bid preparation, based on recollection and review of documents, are:

Gloria Salgado
Dan Salgado
Joe Smith, Jr.
James Hagemier
Julia Little
Sharon Worrell
Fred Blackmon
Linda Hardy - Director of Information Systems.

Ken Morris
Joan McMurray
Various Department of Defense personnel

**INTERROGATORY NO. 4**

Identify each DAPA holder with whom United Medical had an agreement and state the effective date United Medical entered into each said agreement.

RESPONSE

Plaintiff will produce its DAPA file. That file contains contracts with certain DAPA holders, which were primarily HUBS and minority owned DAPA holders. The effective date for these DAPA holders will be the date of the contract. Agreements with most major manufacturing DAPA holders were not written, but course of business over many years. These DAPA holders can be identified by the calls submitted to Plaintiff by Defendant. Plaintiff was unable to obtain agreements with approximately 2% of the minority owned and HUB DAPA holders. The primary reason for this was the failure of the DAPA holder to provide evidence of adequate (or any) insurance. Plaintiff estimates it had or obtained agreements with 100% of manufacturers who had DAPA agreements.

**INTERROGATORY NO. 5**

State whether Plaintiff ever requested that DSCP renegotiate an adjustment to the Contract price on the basis that its orders did not equal or exceed 90% of the estimated $270,000,000, and if so state who made the request, to whom it was made, when it was made and how.

RESPONSE

Plaintiff made such a request in its claim submitted to Ms. Flatley in 2002. Plaintiff had made informal inquiries about an adjustment during the contract period. These informal inquiries were made to Anthony Amendolia and Steve Hasting. The issue was also discussed with John Cuorato. Mr. Cuorato and Mr. Amendolia advised United Medical that there were problems with the MTFs, but that the government was going to do better and attempt to catch up. Plaintiff's representative who made the inquiries was Mr. Bill Bandy.

**INTERROGATORY NO. 6**

State the basis for Plaintiff s assertion in paragraph 119 of its Complaint that it's fill rates were in excess of 95% of contract specifications and identify any documents that support that assertion.

RESPONSE

The bases for that assertion are the documents maintained by United Medical and its recollection, independent and refreshed, of reasons orders were not filled. A Rule 33(d) election is available and Plaintiff is making such an election. The documents that support this assertion are the contract files, the fill rate reports, the invoice files and the confirming emails from the government that United Medical was generally meeting its fill rate obligations.

**INTERROGATORY NO. 7**

Identify each instance that Plaintiff was unable to meet the 95% fill rate and the reason for Plaintiff s inability to do so.

RESPONSE

Objection based on incorrect assumption. Plaintiff was not required to meet a 95% fill rate. Plaintiff further objects on the grounds of undue burden and expense. There were tens of thousands of transactions under the contract. It would be virtually impossible, in any reasonable period of time to examine each transaction. To the extent that an audit type of statistical sampling is performed, Plaintiff will provide the results of such an audit if and when it is performed, or the Defendant is welcome to perform its own from the files being provided by Plaintiff for inspection and copying. A Rule 33(d) election is available to determine the percentage of reasons that an order was not filled and Plaintiff is making such an election. Plaintiff believes a statistical sampling can be obtained from email correspondence, orders received from MTFs, invoice files, files containing the orders submitted to DAPA holders by UMS. If a statistical sampling cannot be obtained from such files, the deposition of former employees of Plaintiff involved in the ordering process may be required.

Problem 1 - Product Identification.

Virtually all med/surg items ordered by the MTFs were ordered electronically. The electronic orders included one or more product identification numbers. An extremely large percentage, in some cases - over half, of the orders contained errors in these product identification numbers. Plaintiff observed several reasons for this. Plaintiff input all the identification numbers into its system. Indeed, the government advised Plaintiff that it was the only prime vendor to properly perform this function. These numbers were a key to the efficient ordering by the MTFs. But the product identification numbers created problems. Not infrequently, the MTF would input the number or manufacturer incorrectly. Such errors could be a misplaced dash or space, or the

use of "and" when a "&" was required, but it prevented Plaintiff's system from recognizing the item being ordered. Sometimes the manufacturer would change their catalog number with the Department of Defense, but neither the manufacturer nor the Department of Defenses would notify Plaintiff of the change. Sometimes a merger or acquisition of the DAPA holder would result in a changed product identification number.

Plaintiff constructed what it termed a "DAPA Fix File." That was a software program that would take an unrecognized product identification number submitted by the MTF and attempt to fix any errors by comparing the ordered number with DAPA numbers in the UMS DAPA file. Much of the time that would identify the product being ordered, but not always. When a match could not be obtained, the ordered item would be put into suspension pending identification. Plaintiff typically would make personal contact with the ordering facility and attempt to identify the ordered item. Sometimes the ordering facility would be able to quickly identify the item, sometimes it would have to research the order. Where research was required, delay resulted. Joan McMurray was primarily responsible for maintaining the DAPA Fix File. Depending on the MTF, primary personal contact (when the DAPA Fix File could not identify the DAPA item) was made by Anneke Kirkpatrick, Mary Eaton or Barbara Wesela.

The DAPA Fix File worked reasonably well with established DAPA items. New or recently added DAPA items were not listed in the DAPA Fix File and ordering errors took longer to correct.

On occasion the MTF would attempt to order items that had expired from the DAPA list.

Problem 2 - usage information.

A second key to the efficient operation of the program was usage information, that is, the historical and projected usage for individual DAPA items by each MTF. The primary problem here, according to several people with the DoD, including Steve Hasting and Colonel Riley, was the Legacy Computer System used by the DoD. The Legacy System provided extremely inaccurate and unreliable usage information. During the third year of the contract the DoD began replacing the Legacy System and the reliability of the usage information increased dramatically.

Some MTFs routinely ordered more than their projected usage or historical usage, or ordered DAPA items for which no stock commitment or historical usage information had been provided.

Problem 3 – Premature Ordering.

When a new DAPA item was added, Plaintiff contractually had 30 days to stock it based on usage information provided by the MTF. Routinely, MTFs attempted to order prior to the expiration of that 30 day period. According to DoD personnel, this problem was aggravated by personnel turnover at the MTF.

Problem 4 – Manufacturer Backorders.

On occasion Plaintiff would receive a projected usage from the MTF ("stock commitment") and attempt to order the DAPA item, but would be advised by the manufacturer that the item was not currently available and it would be put on back order.

Problem 5 – Delayed Shipment by Manufacturers.

On a few occasions, Plaintiff would timely order DAPA items from a manufacturer and the manufacturer would delay shipment.

Problem 6 – Inability to contact DAPA holders.

A few of the HUB and minority owned DAPA holders did not maintain regular office hours, which delayed the ordering process.

Problem 7 – Discontinued DAPA items.

Occasionally an MTF would attempt to order a DAPA item that has been discontinued by the manufacturer. Plaintiff could not supply such discontinued items. Plaintiff offered to clean up the DoD DAPA files to correct this problem, as well as several others described in this interrogatory, but the DoD declined that offer.

Problem 7 – Incorrect Shipments.

On a few occasions either the Manufacturer would incorrectly ship a DAPA item ordered by Plaintiff, or Plaintiff would incorrectly ship the wrong item to the MTF. When Plaintiff made an incorrect shipment, it would make a next day exchange of the incorrect item for the correct item.

**INTERROGATORY NO. 8**

State the basis for Plaintiff s assertion in paragraph 120 of its Complaint that lack of accurate and complete usage data prevented a 95% fill rate, and identify each instance where lack of such information prevented Plaintiff from meeting this requirement, and identify the information that was inaccurate or was missing.

RESPONSE

Same response, including objection and Rule 33(b) election, as Response to Interrogatory 7.

**INTERROGATORY NO. 9**

State the basis for Plaintiffs assertion in paragraph 120 of its Complaint that other problems at the ordering facility prevented a 95% fill rate, and identify those other problems and each instance that they occurred.

RESPONSE

Same response, including objection and Rule 33(b) election, as Interrogatory 7.

**INTERROGATORY NO. 10**

State whether Plaintiff ever requested or suggested that DSCP not exercise its option for any of the option years, and if so, state who made the request, to whom it was made, when it was made and how.

RESPONSE

Plaintiff never made such a request. The general discussions between Plaintiff and Defendant concerned Defendant's catching up to the estimates and that it was going to attempt to do so.

**INTERROGATORY NO. 11**

State the basis for Plaintiff's assertion in paragraph 125 of its Complaint that the government periodically admitted that it failed to perform its obligations under the Contract, and identify each and every instance that the government made such as admission, who made the admission, when it was made, to whom and how it was made.

RESPONSE

Plaintiff cannot recall each and every instance. Steve Hasting, Anthony Amendolia, Mike Schmitt and Colonel Riley all admitted that the MTFs were purchasing a substantial amount of products outside the prime vendor program that should have been purchased inside the program. Use of credit cards was identified as a method by which a substantial amount of product was being purchased outside the prime vendor program. All were involved in attempting to get the MTFs to adhere to the terms of the contract. Substantial documentation exists on this subject, as well as the late payment issue. These documents are being produced. A Rule 33(d) election is available and Plaintiff is making such an election. The answer with respect to the documentary admissions can be found in the claim file, the correspondence files, and the evaluation files.

**INTERROGATORY NO. 12**

State the basis for Plaintiff 's assertion in paragraph 127 of its Complaint that Plaintiff performed all of its material obligations under the contract, or such obligations were excused or waived, and identify each obligation that was excused or waived, when it was excused or waived, who excused or waived it, when it was excused or waived and how that excusion or waiver was made.

RESPONSE

Plaintiff incorporates its response to interrogatory 7, including objections and Rule 33(d) election. Mr. Bandy also recalls that the issue of order confirmation was discussed with representatives of various MTFs and he learned that one of the primary reasons that some MTFs were claiming delay in order confirmation was that the confirmations were not being retrieved by the MTF representatives from their computers until hours after the confirmation had been sent.

**INTERROGATORY NO. 13**

With respect to Plaintiff s assertion in paragraph 129 of its Complaint, identify each and every instance where the government failed to pay for medical supplies and equipment purchased and received, what item[s] was purchased, by whom, when it was purchased and when it was received.

RESPONSE

A Rule 33(d) election is available and Plaintiff is making such an election. Hard copies of invoice files, signed delivery receipts, statements, correspondence and excel spreadsheets were sent to DSCP on this issue. United Medical's copies of these will be produced for inspection and copying.

**INTERROGATORY NO. 14**

With respect to Plaintiff s assertion in paragraph 129 of its Complaint, identify each and every instance that the government failed to honor the prompt payment provisions of the Contract upon receipt of a valid invoice, and state whether the government indicated that there was a problem with that invoice and if so, what the problem was.

RESPONSE

Same Response as Interrogatory 13.

Additionally, Maggie Reese advised United Medical verbally that the Legacy System had translator problems that delayed payment of UMS invoices.

Occasionally the Government did indicate a problem with an invoice. Plaintiff does not have specific recollection about the nature of the problem in connection with a specific invoice, but does recall that the number of problems identified by the Government was small, probably less than 1/10th of 1 percent of the total invoices submitted. Two specific problems recalled by Plaintiff were invoices that contained an incorrect number or symbol, either through an input or transmission error, and multiple invoices for an individual shipment.

**INTERROGATORY NO. 15**

With respect to Plaintiff s assertion in paragraph 132 of its Complaint, identify each of the government's performance problems under the contract about which plaintiff asserts the government failed to advise United Medical.

RESPONSE

Plaintiff does not understand the question and objects to the question as being vague and misrepresents the allegation of paragraph 132.

Plaintiff's representatives (or former representatives) have personal knowledge of the following issues:

Plaintiff never received reasonably accurate usage reports from any MTF prior to Plaintiff's initial deliveries. Plaintiff experienced personnel turnover at MTF and the new personnel almost universally were not familiar the process for providing usage information and ordering DAPA items from Plaintiff.

Various DoD representatives have advised plaintiff that the Legacy System caused significant problems in the implementation and operation of the contract; that MTF personnel routinely ordered outside the prime vendor contract, that DSCP did not have the authority to enforce the contract with the MTFs.

**INTERROGATORY NO. 16**

With respect to Plaintiff s assertion in paragraph 147 of its Complaint, identify each and every alleged misrepresentation about the basis for calculating the estimated contract value and the estimates themselves that Plaintiff asserts that the government made.

RESPONSE

Plaintiff does not understand the question and objects. Plaintiff claims that the government did not exercise due care in making the representations concerning the contract value and the source of information used to