IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., | ) | |
| Plaintiff, | ) | No. 03-289C |
| v. | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION OF KYLE CHADWICK

1. I, Kyle Chadwick, am the attorney of record for defendant, the United States, in this case. This declaration is made upon the basis of personal knowledge, in response to ordering paragraph 1 of the Court's order dated August 14, 2006.

2. In approximately late March 2005 (I have no record of the date), I sent an e-mail to the paralegal supervisor and the chief paralegal in my office, requesting assistance on a very large project, i.e., collecting responsive documents from all ordering facilities under the contract in this matter. I recall requesting someone with sufficient experience to work independently, because, given my caseload, I did not have time to monitor the task on a daily basis. Office policy encourages the use of paralegals for, among other things, tasks relating to document production.

3. The paralegal who was assigned in response to my request was Peter Brown. This is the same Peter Brown whose affidavit was filed in this case on October 24, 2005. As best I can recall, I had seen Mr. Brown, but had not met him, prior to his beginning to work on this matter. I did not know this at that time, but I have since learned that Mr. Brown possesses a law degree and had worked on complex litigation in this office for more than a decade.

4. My office (the National Courts Section of the Commercial Litigation Branch of the Civil Division) has approximately 10 paralegals and more than 100 attorneys. (There are also approximately 10 legal assistants, a lower grade position.) Paralegals are not directly supervised or rated by line attorneys. At the time I began working with Mr. Brown, attorneys relied upon paralegals to volunteer for tasks in response to requests made to the paralegal supervisor and the chief paralegal. (We have since adopted a team structure, in which a paralegal assists a defined

group of attorneys.) Accordingly, I was not in a direct supervisory relationship with Mr. Brown and I viewed him more as a colleague with respect to this case.

5. I met personally with Mr. Brown in my office in approximately early April 2005. I recall explaining that we needed to gather and produce all available records of the medical treatment facilities relating to alleged diverted purchases of medical and surgical supplies; that the Defense Supply Center Philadelphia had not, to my knowledge, collected documents from the MTFs in a systematic fashion and possessed the resources to provide only limited assistance; and that time was of the essence because discovery was scheduled to close in July 2005. I recall providing Mr. Brown with copies of the complaint; an excerpt from the contract listing ordering locations; plaintiff's November 2002 document requests from the bankruptcy case; notes taken by Kathie Shahan, an attorney in the General Financial Section of the Commercial Litigation Branch, who handled the claim in the bankruptcy court; and the Court's December 2004 opinion.

6. I recall that, in my initial dealings with Mr. Brown, I especially emphasized the need to locate and produce credit card records relevant to the case. I emphasized credit card records because (i) counsel for United Medical and I had agreed in late 2004 to retain a "neutral expert," Greg Bingham of Navigant Consulting, Inc., with whom we had specifically discussed the need to obtain credit card records; (ii) plaintiff's diversion arguments, in its claim and during the summary judgment briefing, had focused upon credit card purchases; and (iii) I believed credit card records might be difficult to locate. However, I did not instruct Mr. Brown to limit his search to credit card records.

7. In response to ordering paragraph 1.b of the Court's August 14, 2006 order, I am positive Mr. Brown understood I would convey to opposing counsel and the Court his findings as to the existence and location of relevant documents. There could essentially have been no other purpose for the document search.

8. Mr. Brown kept me apprised informally regarding the status of his document search and when he planned to travel for the case. I do not recall receiving written summaries or other

reports of his progress, although I may have received informal e-mails. I could have instructed Mr. Brown to provide more detailed information concerning the steps taken in his search. However, I believed that, in view of Mr. Brown's experience, this was unnecessary and could have been viewed as confrontational.

9. On approximately July 18, 2005, I saved on my office computer an e-mail which I had sent to the paralegal supervisor and the chief paralegal, with a copy to Mr. Brown. My saved copy of that e-mail is attached to this declaration. In it, I noted, among other things, that Mr. Brown had worked on the case "since about April," and that, beginning soon, "the workload for discovery will increase dramatically, as we will be expected to provide additional information and documents, and to round up witnesses, from 19 military treatment facilities across the Southwest U.S." (emphasis added). This reflected my understanding that Mr. Brown was contacting people at, or concerning, every existing MTF (of which there are actually 18).

10. Mr. Brown did not advise me, in response to that e-mail – or, indeed, at any other time, to date – that he did not contact individuals knowledgeable about each MTF. (I did not know whether this would actually require contacting someone at each MTF.) I am unsure as to the exact time period, but I vividly recall asking Mr. Brown, via e-mail, on more than one occasion, during what I believe was the summer of 2005, whether he was certain we had located all responsive documents. I recall telling Mr. Brown that the Court had raised questions during one or more status conferences regarding the thoroughness of our search. I distinctly recall that Mr. Brown advised me in at least one e-mail, in these or very similar words, that, other than the documents we had produced, "They [the MTFs] destroyed them. They're all gone."

11. Consistent with this, in his declaration which was filed with the Court in October 2005, Mr. Brown stated, among other things, "I believe I have sought and found and copied all relevant discovery documents that currently exist." Brown Decl. ¶ 9. Plaintiff has questioned the provenance of this declaration. Mr. Brown personally drafted the declaration, at my request, and supplied it to me, as I recall, approximately two to four days before the filing was due. I do not

recall requesting any changes, or even discussing the content of the declaration with Mr. Brown. On the due date, I discovered that the declaration was unsigned and that Mr. Brown was on travel and unavailable to sign. As Mr. Brown had specifically told me he would sign the declaration, I signed it upon his behalf, as is indicated in the signature.

12. To this date, with the concurrence of our supervisors, I have not discussed with Mr. Brown why he performed the document search in the manner he apparently did. When I began to learn, in the process of obtaining the declarations required by the Court's June 13, 2006 order, that Air Force MTFs, in particular, possessed responsive documents which they had not been asked to turn over for production, I sent Mr. Brown an e-mail alerting him to this fact and asking him to correct me if my conclusion that he had not contacted a number of the MTFs was mistaken. Although I do not have a copy of it, I distinctly recall that his e-mail reply stated only, "My bad." Since approximately that time, a different paralegal has been assigned to coordinate the collection, scanning, and production of remaining documents from the MTFs.

13. In response to ordering paragraph 1.c of the Court's August 14, 2006 order, the Department of Justice attorney who is mentioned in the affidavit of Lynn Nelson must be Kathie Shahan, identified in paragraph 5 above.

14. In response to ordering paragraph 1.d of the Court's August 14, 2006 order, I believe the Department of Justice employee (not described as an attorney) mentioned in the affidavit of Debra Thompson must be Mr. Brown, and that Ms. Thompson is mistaken as to the date, which must have been March or April 2005. Mr. Brown and I are the only representatives of the Department of Justice who would have collected documents for this case in 2005. Mr. Brown was not involved in the case in February 2005. I have reviewed the record of my official travel since September 2004 (attached to this declaration), which confirms my recollection that I did not travel to Texas at any time in 2005 prior to April 2005.

15. Upon penalty of perjury under 28 U.S.C. § 1746, I declare that the foregoing is true and correct to the best of my knowledge and belief.

KYLE CHADWICK

Dated: Aug. 17, 2006

**From:** Chadwick, Kyle (CIV)
**Sent:** Monday, July 18, 2005 1:02 PM
**To:** Bleecker, Kathryn (CIV); Mabry, Brooke (CIV)
**Cc:** Brown, Peter (CIV)
**Subject:** United Medical Supply, 154-03-289 (Fed. Cl.)

Peter Brown has been providing able assistance with discovery on this case since about April. Fact discovery was originally scheduled to end July 26. Peter has asked me to advise you that, following an extension of the discovery schedule into December -- which we expect Judge Allegra to order within a week or so -- the workload for discovery will increase dramatically, as we will be expected to provide additional information and documents, and to round up witnesses, from 19 military treatment facilities across the Southwest U.S. Plaintiff had a requirements contract between 1997 and 2001 to provide medical/surgical items to these hospitals.

I have agreed to make a good faith effort to produce all information by Oct. 15, 2005, and plaintif's counsel and I have worked out an order of priority for obtaining info from the various facilities. I have requested assistance from DoD, but because the activity that awarded the contract, and where agency counsel is (DSCP in Phila.), is separate and distinct from the chain of command of the various medical facilities (from the various uniformed services) that ordered products under plaintiff's contract, agency counsel can offer only limited help. Please let me know if I can answer any questions about the workload.

OMEGA WORLD TRAVEL

Welcome KYLE CHADWICK

Home | My Account | My Tri

Site: DOJ Shared

Message

TO CHANGE/CANCEL AN EXISTING TRIP WHICH HAS ALREADY BEEN TIC
YOU MUST CALL 1-866-635-8497 (8 a.m.-11 p.m.) OR 1-866-831-7433
& afterhours). PLEASE PROVIDE RESERVATION ID TO EXPEDITE SERVIC

# My Trips

KYLE CHADWICK's Trips

My
Tı
M

Show only past trips for myself in the list below.

## Past Trips

| Traveler | Travel | Trip Type | Notes | Select |
|---|---|---|---|---|
| KYLE E CHADWICK | To Dallas/Ft Worth on August 4, 2006 at 7:59 AM | Flight Rental Car Hotel Room | Record #KOUMYU Active | View |
| KYLE E CHADWICK | To Los Angeles on June 26, 2006 at 4:35 PM | Flight Hotel Room | Record #IBGWBD Active | View |
| KYLE E CHADWICK | To Denver on May 25, 2006 at 2:40 PM | Flight Hotel Room | Record #EDTMDX Active | View |
| KYLE E CHADWICK | To Denver on May 9, 2006 at 2:40 PM | Flight Hotel Room | Record #BZAZRQ Active | View |
| KYLE E CHADWICK | To Dallas/Ft Worth on March 7, 2006 at 5:25 PM | Flight | Record #BYBDHF Archived | View |
| KYLE E CHADWICK | To Dallas/Ft Worth on March 7, 2006 at 3:00 PM | Hotel Room | Record #JERAPA Ticketed | View |
| KYLE E CHADWICK | To Denver on January 31, 2006 at 11:00 PM | Hotel Room | Record #GTNCSK Active | View |
| KYLE E CHADWICK | To Denver on January 31, 2006 at 5:00 PM | Flight | Record #JHGJSL Active | View |
| KYLE E CHADWICK | To Tallahassee on January 20, 2006 at 6:05 AM | Flight | Record #FOKKKL Active | View |
| KYLE E CHADWICK | To Denver on January 17, 2006 at 6:15 PM | Flight Rental Car Hotel Room | Record #GTEJGY Active | View |
| KYLE E CHADWICK | To Dallas/Ft Worth on December 5, 2005 at 6:00 AM | Flight Rental Car | Record #KDUGYZ Active | View |
| KYLE E CHADWICK | To Detroit on November 8, 2005 at 6:17 PM | Flight Rental Car Hotel Room | Record #EGSVWG Active | View |
| KYLE E CHADWICK | To San Antonio on August 24, 2005 at 10:15 AM | Flight Hotel Room | Record #ILXMWX Active | View |
| KYLE E CHADWICK | To San Antonio on July 28, 2005 at 1:40 PM | Flight Rental Car Hotel Room | Record #BNUMHJ Ticketed | View |
| KYLE E CHADWICK | To Dallas/Ft Worth on May 25, 2005 | Flight Rental Car | Record #KLUBDJ Active | View |

| | | | | |
|---|---|---|---|---|
| | at 7:19 AM | | | |
| KYLE E CHADWICK | To Dallas/Ft Worth<br>on April 12, 2005<br>at 6:00 AM | Flight | Record #BPRGJP<br>Active | View |
| KYLE E CHADWICK | To Dayton<br>on September 13, 2004<br>at 6:55 PM | Flight<br>Rental Car<br>Hotel Room | Record #MBSSNN<br>Active | View |

© 2003-2006 GetThere L.P. - All rights reserved
Send us your feedback

GetThere

source