**THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **United Medical Supply Company, Inc., Plaintiff** | **03-289** |
| | **Judge Allegra** |
| **v.** | |
| **The United States, Defendant** | |

**PLAINTIFF'S DECLARATION OF COMPLIANCE WITH PROVISIONS 2(A) AND 2(B) OF COURT'S ORDER OF AUGUST 24, 2006**

**TO THE HONORABLE UNITED STATES COURT OF FEDERAL CLAIMS:**

Plaintiff United Medical Supply Company, Inc. files this its Declaration of Compliance with Provisions 2(a) and 2(b) of the Courts order of August 24, 2006 as follows:

1. The specific references in Plaintiff's Complaint regarding Plaintiff's negligent estimates claim are as follows (which portion of Plaintiff's Complaint is attached as Appendix A):

    a. Introductory paragraph on page 1 behind "(2)."
    b. Paragraphs numbers 18, 64, and 69 - 85.

2. All document requests previously made to Defendant regarding Plaintiff's negligent estimates claim are as follows:

    a. Plaintiff's initial discovery requests served in 2002. The Government's responses are included. (See Appendix B).

    b. Plaintiff's Request for Production of Documents served on March 4, 2003. (Appendix C). The Government did not respond to this discovery request. Plaintiff reserved it in November 2003 and was advised that the responsive documents no longer existed.

c. Plaintiff's Request for Production of Documents served June 22, 2005, Requests numbers 1, 2 and 3. (Appendix D). Plaintiff cannot locate any record showing a response to this request.

3. A new document request pursuant to paragraph 2(b) of the Court's order is attached as Appendix E.

**Signed August 26, 2006.**

Respectfully submitted,

s/ Frank L. Broyles
Frank L. Broyles
State Bar No. 03230500
**Goins, Underkofler, Crawford & Langdon, LLP**
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax
Attorney for Plaintiff

## Certificate of Service

The original of the foregoing and referenced Appendices was served on the persons shown below by the method shown below.

s/ Frank L. Broyles

**Persons Served:**

Kyle Chadwick
Department of Justice
Method Served: email on August 26, 2006.

**APPENDICES**

Bookmarked as Appendix:

A – Portions of Complaint (pages 1-8)
B - Discovery Served in 2002 re: negligent estimation claim (pages 9-16)
C - Discovery Served on March 4, 2003 re: negligent estimation claim (pages 17-18)
D - Discovery Served June 2005 re: negligent estimation claim (pages 19-21)
E - Plaintiff's request for production served August 2006 per Court's order (pages 22-23)

RECEIVED
MAR 2 4 2003
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | CASE NO: 03-CV-289<br><br>Judge Allegra |

## AMENDED COMPLAINT

TO THE HONORABLE COURT:

Plaintiff, United Medical Supply Company, Inc., files this its Amended Complaint pursuant to this Court's Rule 3.1(a)(2) against the United States (generally referenced as "Government"). Plaintiff seeks a judgment awarding it an equitable adjustment to the price of Contract Number SP0200-97-D-7133 (referenced in this Complaint as "the Contract" or "Contract") for: (1) the Government's various breaches of the Contract; (2) the Government's breaches of duty of care in preparing the bid Solicitation documents, Solicitation Number DLA120-93-R-0587 (generally referenced as "the Solicitation" or "Solicitation"); and (3) the Government's failure to purchase items maintained in stock by Plaintiff pursuant to Government issued stock commitments.

## JURISDICTION

1. This Court has jurisdiction of this case as a direct appeal of an adverse decision of a contracting officer pursuant Section 10(a)(1) of the Contract Disputes Act.

in breach of the Contract, it often either diverted its orders of DAPA items to third parties without making any attempt to order from Plaintiff, or it attempted to order from Plaintiff on a just-in-time ("JIT") basis without first providing Plaintiff with Usage Data as required by the Contract, thus preventing Plaintiff from filling the JIT order. Then, when Plaintiff did not fill the JIT order, the Government often diverted the order to third parties. For this breach, Plaintiff seeks an equitable adjustment.

18. Four. Plaintiff seeks an equitable adjustment of the Contract Price based on the failure of the Government to use due care in preparing the Solicitation. In the Solicitation, the Government provided estimates of purchases it would make under the Contract and the bases for those estimates. The Government instructed bidders, including Plaintiff, to base their bids on the estimates. The Government knowingly misrepresented the bases for the estimates by stating that the estimates equaled historical purchases when in fact they did not. Indeed, the Government's historical purchase data evidence the Government's purchases of items that would be subject to the Contract were but a small fraction (less than 10 percent) of the Solicitation estimates.

19. Five. Plaintiff, under the terms of the Contract, was permitted to return unpurchased DAPA items to the manufacturer even when the ordering facility had provided Usage Data for those items if the facility had not completed the purchase within the time period provided by the Contract, a time period tied to the date the Usage Data had been provided. This created a problem for the

Star region since December 2, 1994 were 95% caused by the Government's failure to act, provide information, or the MTF's failure to embrace the Prime Vendor concept." But, Mr. Schmitt opposed the Contract modification for Plaintiff proposed by Mr. Chenoweth because "there is nothing founded in any type of Government contracting law that requires 'the interest of fair treatment of all parties concerned.'" Plaintiff did not receive the Contract modification requested by Mr. Chenoweth.

63. On August 6, 1997 Brooke Army Medical Center, one of the ordering facilities in the Lone Star Region, concluded that bad Usage Data was severely impacting fill rates and that the Usage Data was "broken" and needed a manual fix.

64. Ms. Linda Flatley warned DPSC personnel that it was subject to a claim if complete and accurate Usage Data was not provided because the prime vendors did not bid expecting to have to work with piecemeal data.

65. Much of Plaintiff's efforts throughout the period beginning January 30, 1997 through March 2001 were spent trying to create reliable usage information for the ordering facilities in the Lone Star Region, efforts that increased the cost of performance and efforts that Plaintiff had planned on using to otherwise perform its Contract obligations.

### D. Sales Volume Deficiencies

66. The Government made Solicitation representations to potential bidders, including Plaintiff, of its estimated Contract purchases over a five-year period.

67. The actual annual sales volumes that were achieved in the Lone Star Region by Plaintiff were approximately fifteen percent of the Government estimates.

68. There were two primary reasons for the sales deficiencies: the ordering facilities purchased many of their DAPA items from sources other than Plaintiff in violation of the Contract (diverted purchases) and the methodology used to make the estimates was so flawed that the estimates were materially inflated and unrealistic.

***Breach of Duty of Care in Preparing Bid Documents***

69. The Government, through the Defense Logistic Agency's Defense Personnel Support Center ("DPSC"), later changed to Defense Supply Center Philadelphia ("DSCP"), solicited offers for Prime Vendors in 22 different regions. Beginning in 1993, the Lone Star Region was solicited by the Solicitation. Plaintiff's bids were in response to the Solicitation.

70. With respect to the Government's volume estimates for projected sales by the Lone Star Prime Vendor, the Government, in the Solicitation, made the following representation to Plaintiff and other Lone Star potential bidders:

> "Based on a 12-month reporting period, the ordering facilities that will be listed in Attachment III spent an estimated $57,965,500 per year for those types of medical/surgical products covered by the proposed contract. Based on this figure, the following is the Government's best estimate of yearly sales that the ordering facilities will experience over the five-year period.

| | Yearly Estimate | Approximately Yearly Maximum |
|---|---|---|
| First Year | $ 28,982,750.00 | $ 72,456,875.00 |
| Second Year | 57,965,500.00 | 144,913,750.00 |

| | | |
|---|---|---|
| Third Year | 57,965,500.00 | 144,913,750.00 |
| Fourth Year | 57,965,500.00 | 144,913,750.00 |
| Fifth Year | 57,965,500.00 | 144,913,750.00 |

71. Following the above table providing the purchase estimates, the Government further emphasized that the offer should be based on these estimates and instructed offerors that, "*Your proposed distribution fee should be based on the Yearly Estimate....*""

72. Discovery obtained in this case evidences a failure of care in making the estimates for the following reasons:

73. First, there was no structured methodology for obtaining the estimates. The process appears to have had little more structure than a casual discussion about upcoming weather, a what is your "best guess?"

74. Based on discovery obtained in this case the entire representation that the estimates were supported by purchase histories was false:

a. The estimates were not based on a 12 month reporting period;

b. The ordering facilities never represented to DSCP that they had previously made purchases in the volumes estimated; and

c. The ordering facilities never represented to DSCP that the estimates were limited to the types of medical/surgical products covered by the Contract.

75. The Government knew that the estimates were unrealistic.

76. A comparison of actual sales during the Contract period to estimated sales for that same period is overwhelming evidence of the negligence of the Government

in providing estimates. Not a single Gen I Prime Vendor Region ever purchased the estimated annual quantity stated in its respective Solicitation.

77. The Government prepared a spreadsheet for six of the Prime Vendor regions comparing estimates against actual purchases. The only complete year shown on the spreadsheet was for the "base" or first year. First year actual sales for these six regions were 37% of estimated in the Cascades Region, 15% in the Illinois/Kentucky/Missouri Region, 36% in the Florida/Georgia Region, 13% in the Panhandle Region, 9% in the Ohio/Illinois Region, and approximately 33% in the Carolinas Region.

78. Plaintiff was awarded the Prime Vendor Contract on January 30, 1997. At the end of December 1996, the Government had access to the confidential and proprietary information for purchases by Lone Star ordering facilities from the first Lone Star Prime Vendor (Owens & Minor) for at least the 9 months ending December 31, 1996. The Government produced at least some of this information in response to Plaintiff's discovery requests in this case.

79. A comparison of the estimated monthly sales represented in the Solicitation to historic monthly purchases from the previous Prime Vendor is dramatic. The most cursory due diligence would have raised serious questions about the validity of the estimates provided in the Solicitation.

80. Table: "Estimated average monthly purchase volumes used in the Solicitation compared to confidential DSCP records of actual average monthly DAPA purchases from the previous Prime Vendor (Owens & Minor) (both rounded to

the nearest thousand dollars) for the period shown, taken from DSCP records produced in this lawsuit"

| *Ordering Facility* | *Estimated PV Purchases ($/mo) used in Solicitation* | *Actual PV Purchases ($/mo )for 9 mo. Period ending 12/31/96* |
|---|---|---|
| Fort Sam Houston | $1,750,000 | $332,000 |
| Fort Hood | $ 333,000 | $ 73,000 |
| Fort Bliss | $1,500,000 | $130,000 |
| Fort Sill | $ 333,000 | $ 46,000 |
| Corpus Christi Naval H | $ 25,000 | $ 15,000 |
| Kelly AFB | $ 29,000 | $ 2,000 |
| Randolph AFB | $ 9,000 | $ 4,000 |
| Sheppard AFB | $ 208,000 | $ 14,000 |
| Altus AFB | $ 167,000 | $ 4,000 |
| Tinker AFB | $ 35,000 | $ 38,000 |
| Reese AFB | $ 5,000 | $ 400 |
| Dyess AFB | $ 124,000 | $ 2000 |
| Holloman AFB | $ 33,000 | $ 8,000 |
| Cannon AFB | $ 42,000 | $ 7,000 |

81. A "do the math" exercise based on the Government's records does not support the estimates.

82. DSCP periodically requested ordering facilities to estimate their monthly prime vendor purchases compared to total purchases. The specific question asked of each ordering facility was, "What percentage of your medical/surgical supplies do you buy from your prime vendor?"

83. Dividing the sales from the prime vendor by the response to the question should equal that facility's total medical/surgical purchases for the period covered, which was usually six months. For example, if the prime vendor sold $1,000,000 of supplies to the facility during the reporting period, and the facility reported

that it purchased 20 percent of its supplies from the prime vendor, then its total purchases for medical surgical supplies during the period should be about $5,000,000.

84. If the estimates provided to bidders were reasonably accurate, the total purchases calculation described in the above paragraph, except in unusual circumstances, should exceed the estimated purchases, since not all purchases of medical/surgical supplies were subject to the prime vendor Contract. The fact is that the total purchase calculation consistently yields numbers far short of the estimates provided by DSCP in the Solicitations.

85. The only reasonable conclusion is that the Government did not exercise due care in preparing the Solicitation estimates of purchase volumes, estimates on which bidders – including Plaintiff - were instructed to rely.

**E. Diverted Purchases**

86. The Government would have the Court believe that the difference between the estimated purchases and actual purchases resulted from performance failures by the Government's prime vendors. In other words, "everybody is out of step but us."

87. Overwhelming evidence is that the MTFs purchased DAPA items from sources other than Plaintiff in violation of the "requirements" Contract.

88. There is the huge discrepancy between estimated and actual purchases throughout the prime vendor system, and the Lone Star Region is no exception.

E. Kathleen Shahan
D.C. Bar # 267872
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875
202 - 307-0249
202 - 307-0494 (telefax)
Kathie.Shahan@usdoj.gov
Attorney for the United States

IN THE UNITED BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| In re: UNITED MEDICAL SUPPLY COMPANY INC., Debtor-in-Possession | Case No. 01 - 41911-bjh-11 |
| | Chapter 11 |
| United Medical Supply Company, Inc., Plaintiff, | |
| v. | Adversary: 02 - 4230 |
| United States of America, Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO DEFENDANT UNITED STATES**

Defendant, the United States of America, responds to plaintiff's first set of discovery requests as follows:

INTERROGATORY NO. 2

What was the process used by Defendant to estimate the contract value over the projected five annual contract periods, including the process used to identify those MTFs expected to

participate in the program.

ANSWER NO. 2

DSCP requested information from the Prime Vendor Service Representatives (one for each branch – the Army, the Air Force and the Navy). They were asked to provide DSCP with the yearly estimates for each of their participating facilities. DSCP consolidated the information to determine the total estimate. Due to the startup time involved, DSCP used 50% of the total yearly estimate provided for the base year contract and 100% of the estimate for the option years. DSCP also requested that they provides a list of the facilities that wanted to participate in th program.

INTERROGATORY NO. 3

Identify the persons with the Supply Center who prepared the estimates of contract value.

ANSWER NO. 3

The identity of the individual at DSCP who collected the estimates provided by the Army, the Air Force and the Navy and collated them to produce the contract estimate is currently unknown. The information was collected from Major Troy Molnar of the Air Force and from Mike David of the Army. The individual from whom the information at the Navy was collected is unknown at this time.

INTERROGATORY NO. 9

Did the Government ever determine during the term of the Contract that its original requirement estimates were too high? If "yes, " state when such a determination was made, the

individuals involved in making that determination, the dollar amount by which the Government's estimates were too high, and if the Government considered giving the Prime Vendors and [sic] adjustment to the contract price.

ANSWER NO. 9

No.

1

## REQUEST FOR PRODUCTION

**REQUEST NO. 1**

**The documents used by the Supply Center to estimate the representations made to United Medical of Base Year Contract Value and the Total Contract Value, including information received from each Participating MTF. This request refers to the estimate of contract value originally made and as amended from time to time by the Department of Defense.**

**RESPONSE NO. 1**

**The only existing document responsive to this request is attached as Attachment C.**

<u>REQUEST NO. 13</u>

All correspondence between the Supply Center and any Participating MTF pertaining to the estimate of annual volume of Scheduled Medical Equipment and Supplies for that MTF. The request seeks documents created before and after the Award.

<u>RESPONSE NO. 13</u>

To the extent that documents to this requested existed, they were not maintained, but the information was collated into the document attached as Attachment B.

As to Objections:

Dated: November 25, 2002

Respectfully submitted,

ROBERT D. McCALLAM, JR.
Assistant Attorney General

RICHARD H. STEPHENS
United States Attorney

J. CHRISTOPHER KOHN
TRACY J. WHITAKER
E. KATHLEEN SHAHAN
D.C. Bar No. 267872
Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
(202)307-0249

ATTORNEYS FOR THE UNITED STATES

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | CASE NO: 03-CV-289 |

## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

TO DEFENDANT UNITED STATES OF AMERICA
By and through its attorney of record:

Ms. E. Kathleen Shahan
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875

Plaintiff serves the following request for documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. Documents requested are to be produced at the offices of counsel for Plaintiff by April 8, 2003. Responses to the discovery requests are to be served in accordance with rule 34.

In June 1999 DSCP sent out memos to all medical/surgical DAPA holders. It was signed by Greg Wentzel. That memo, Part II, stated that DSCP had completed an intensive review of historical sales pertaining the medical surgical database. Plaintiff is requesting the United States to produce the documents reviewed and the reports prepared in connection with this intensive review. This request includes all questionnaires sent to or received from MTFs.

Respectfully submitted,

Frank L. Broyles
Texas State Bar No. 03230500
GOINS, UNDERKOFLER, CRAWFORD
& LANGDON, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for United Medical Supply

CERTIFICATE OF SERVICE

On March 4, 2003 the foregoing was served on the persons shown below by the method shown below in accordance with applicable rules.

**PERSONS SERVED:**

Ms. E. Kathleen Shahan
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875

Via Fax and Certified Mail RRR
7002 2410 0004
6840 6943



Disc B

6-22-05

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | CASE NO: 03-CV-289<br><br>Judge Allegra |

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**
**(June 22, 2005)**

**TO UNITED STATES, by and through its attorney, Mr. Kyle Chadwick**
U. S. Department of Justice
1100 L. St., NW
8th Floor
Washington, DC 20530

Pursuant to Court of Federal Claims Rule 34, Plaintiff United Medical Supply Company, Inc. serves the following requests for production of documents for inspection and copying. The documents are to be produced at the offices of Frank L. Broyles shown below at 10 a.m. on July 25, 2005 unless otherwise agreed to by counsel or ordered by the Court.

**A. Definitions**

**a.** DSCP means Defense Supply Center Philadelphia and its predecessor Defense Personnel Support Center ("DPSC").
**b.** Prime Vendor Contract means that requirements medical supply contract awarded United Medical effective June 1, 1997 by DSCP for the Lone Star Region.
**c.** United Medical means United Medical Supply Company, Inc., a corporation organized under the laws of the State of Texas and headquartered in Fort Worth Texas.
**d.** DAPA Items means items subject to a Distribution and Pricing Agreement between the DAPA holder and DSCP for consumable and disposable medical/surgical products and hand-held surgical instruments.
**e.** Lone Star MTF means an individual medical treatment facility that participated in the prime vendor program for which United Medical was the prime vendor.

REQUESTS FOR PRODUCTION:

1. Each and every pro forma budget for each individual Lone Star MTF if such budgets included any time period between July 1, 1995 and May 31, 2000 and included, by separate line item or otherwise, projected expenses for DAPA items.



DSC 24

2. Each and every financial reports for each individual Lone Star MTF if such reports evidence actual expenses for DAPA items, by separate line item or otherwise, during the same periods covered by the above request.

3. Back up information used to prepare the documents described in the previous two interrogatories.

4. Contracts between any Lone Star MTF and any DAPA holder pursuant to which direct purchases (*a/k/a* DBPA sales) were made from the DAPA holder by any Lone Star MTF during the time period June 1, 1997 through April 30, 2001.

5. All records of credit card purchases made for DAPA items by any Lone Star MTF during the time period June 1, 1997 through April 30, 2001.

**Signed June 22, 2005.**

Respectfully submitted,

Frank L. Broyles
State Bar No. 03230500
Goins, Underkofler, Crawford
& Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff

CERTIFICATE OF SERVICE

On June 22, 2005 the foregoing requests for production was served on the persons shown below by the method shown below.

**PERSONS SERVED:**

Kyle Chadwick
Department of Justice
Method Served: overnight courier for hand delivery on June 23, 2005.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff | CASE NO: 03-CV-289 |
| v. | Judge Allegra |
| THE UNITED STATES, Defendant | |

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**
(August 24, 2006)

**TO Defendant, by and through its attorney,**
**Mr. Kyle Chadwick**
U. S. Department of Justice
1100 L. St., NW
8th Floor
Washington, DC 20530

Pursuant to Court of Federal Claims Rule 34, Plaintiff United Medical Supply Company, Inc. serves the following request for production of documents for inspection and copying. The documents are to be produced at the offices of Frank L. Broyles shown below at 10 a.m. on September 26,2006 unless otherwise agreed to by counsel or ordered by the Court. Additionally, the Government is required to respond as provided by Rule 34.

**Request:**

**All data used by the defendant to generate contract estimates that were employed by DSCP in the Lone Star Solicitation or Award Renewals exercised by the Government in years 1998, 1999, and 2000.**

Respectfully submitted,

s/ Frank L. Broyles

Frank L. Broyles
State Bar No. 03230500
**GOINS, UNDERKOFLER, CRAWFORD & LANGDON, LLP**
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax
Attorney for Plaintiff

CERTIFICATE OF SERVICE

The original of the foregoing request for production with referenced attachments was served on the persons shown below by the method shown below.

s/ Frank L. Broyles

**PERSONS SERVED:**

Kyle Chadwick
Department of Justice
Method Served: overnight courier for hand delivery on August 25, 2006.