**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **UNITED MEDICAL SUPPLY COMPANY, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-289C** **(Judge Allegra)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DECLARATION OF E. KATHLEEN SHAHAN**

I, E. Kathleen Shahan, do hereby declare:

1. I am a trial attorney with the Department of Justice ("DOJ"), Civil Division, Commercial Litigation Branch, Corporate/Financial Section. I have held this position since 1988. This declaration is based upon my personal knowledge and contemporaneous notes, and is submitted to comply with this Court's Order dated August 24, 2006.

2. In July 2001, my office received a telephone call from the United States Attorneys Office in Ft. Worth, Texas, concerning United Medical Supply Company, Inc.'s ("UMS" or "plaintiff") petition for bankruptcy protection, and I was requested to look into the matter. I contacted UMS' counsel to determine the government's interest in the case, if any, and the agency involved. I concuded that UMS' claims involved a contract with the Department of Defense ("DOD"), Defense Supply Center Philadelphia ("DSCP"). Thereafter, I contacted Kathleen Hallam of the DSCP Office of General Counsel ("OGC") who informed me that the UMS contract was closed and that no claim had been filed by UMS pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* ("CDA"). Subsequently, she provided a copy of

the contract files for my use, if needed.

3. On October 5, 2001, I received a litigation package from the United States Attorneys Office forwarding an adversary complaint and petition to take depositions that had been filed by UMS in the bankruptcy action. (The United States was not named in this action.) The adversary complaint sought to take depositions of former UMS employees in order to perpetuate their testimony for a contract claim that UMS had not yet filed with the DSCP contracting officer.

4. The adversary complaint was inadvertently dismissed by the bankruptcy court, and subsequently reinstated on January 18, 2002. On August 16, 2002, the bankruptcy court dismissed the adversary complaint without prejudice.

5. Meanwhile, on November 27, 2001, and thereafter, UMS filed a number of Freedom of Information Act ("FOIA") requests with DSCP. I was informed that DSCP was identifying documents covered by the requests, which ranged from 35 files if the requests were interpreted narrowly to hundreds of files if broadly construed. DSCP provided documents in response to some of the FOIA requests and denied other requests, which denials were appealed by UMS.

6. On or about June 28, 2002, UMS filed a CDA claim with the DSCP contracting officer, which was denied on August 22, 2002. UMS' counsel informed me that a complaint appealing the decision would be filed shortly in the bankruptcy court. In anticipation of the appeal and discovery requests, I began working with the DSCP OGC to identify and locate individuals with information and documents relating to the UMS contract. I arranged to meet with personnel at DSCP on September 13 and 14, 2002; I met with, *inter alia*, Linda Flately (Contracting Officer and Chief, New Initiatives Section), Anthony Amendolia (New Initiatives Section Case Manager) and Donna Galligan (New Initiatives Section).

7. On September 13, 2002, UMS filed an adversary complaint pursuant to the CDA in the bankruptcy court.[1] The complaint and the summons was processed by the Civil Division on September 24, 2002, and I formally received it on October 7, 2002. UMS' counsel forwarded a copy to me directly and by letter dated September 24, 2002, I sent a copy of the summons and complaint to Ms. Hallam at DSCP which stated that:

> Our response must be filed by October 18, 2002. The summons also includes the court's Order Regarding Adversary Proceedings, Trial Setting and Alternative Scheduling Order which sets forth certain timetables and actions required to be taken by the parties. The Order provides, *inter alia*, that the parties must confer and file a proposed scheduling order, and that within ten days thereafter, must make the disclosures required by Federal Bankruptcy Rule 7026(a). I have enclosed a copy for your convenience.
>
> Please notify the appropriate parties of these requirements, particularly with respect to Rule 7026(a)(1)(A) & (B). We need to start immediately to identify all of the individuals that have discoverable information, to notify these individuals, and to instruct them to retain all documents, e-mails, etc. in their possession that relate to the contract at issue.

8. From this time until the case was transferred to the Court of Federal Claims and responsibility for it transferred to the National Courts Section of the Commercial Litigation Branch in early 2003, I was in frequent contact with DSCP, particularly Ms. Hallam and Mr. Amendolia, as we continued to locate individuals and documents related to the UMS contract. In October 2002, DSCP informed me that they had received initial responses regarding documents and individuals, but were still investigating. On October 7, 2002, DSCP began receiving

[1] On October 17, 2002, the United States filed a motion to dismiss without prejudice to allow plaintiff to file the complaint in the Court of Federal Claims. On December 11, 2002, the bankruptcy court ordered the adversary proceeding transferred to this Court. I agreed to continue with discovery during this time to prevent delay caused by the transfer of the case.

documents in response to its initial inquiries.

9. During this time, Mr. Amendolia confirmed that, at my request, he had contacted each of the Medical Treatment Facility ("MTF") customers under the UMS contract and asked if they had any documents related to the UMS contract. We then attempted to identify and locate individuals, both former and current employees, at each base that would have knowledge of, or documents related to, the UMS contract. Mr. Amendolia determined that 24 MTFs were covered by the UMS contract, and identified Raymond W. Bliss Army Health Center in Fort Huachuca, Arizona, the Brooke Army Medical Center ("BAMC"), Fort Sam Houston, in San Antonio, Texas, and the William Beaumont Army Medical Center, at Fort Bliss in El Paso, Texas, as the MTFs with the largest amount of purchases under the UMS contract. Accordingly, I initially concentrated on these three facilities.

10. On October 25, 2002, UMS filed its first set of discovery requests, and on November 22, 2002, the United States filed its response. In December 2002, I made arrangements with DSCP and UMS counsel for the production of UMS contract documents at the DSCP facility the week of January 13, 2003. UMS counsel spent two days at DSCP reviewing, questioning and identifying documents for copying. I spent that time at DSCP interviewing Mr. Amendolia, Marhelia Tillman-Bynum (invoice facilitator), Nancy Martin (contract manager), Margaret Rees (Chief of Medical/Surgical Products Group), Nora Steigerwalt (estimates), Tom Stevens (contract employee), Bruce Carson (Prime Vendor Implementation Vendor) (who specifically said he would continue to look for sales data), Helen Connors (Contract Administrator), Donna Galligan (New Initiatives Section), and James Jennings (contract officer). Mr. Jennings stated that he was continuing to identify individuals involved and to identify points of contact at the

MTFs . He was also looking into various computer systems to determine if plaintiff could directly load information from EDI (Electronic Data Interchange) computer records. On January 29 to 30, 2003, I returned to DSCP to interview Bud Wellens (Chief Systems Officer), Sharon Wilson (Payment Facilitator), Bill Di Lauro (contracting officer), Diana Diloria (Prime Vendor Program), Linda Flately, and Donna Kennedy (contracting officer). Each individual was asked if they had documents related to the UMS contract, and if so, to provide the documents or copies thereof.

11. On January 6, 2003, I received notification from DSCP that two facilities – Raymond W. Bliss Army Health Center and BAMC, Fort Sam Houston – had documents responsive to UMS' request. I contacted Debra Thompson, Deputy Chief of Medical Material at BAMC, and made arrangements to interview her and other individuals she identified as familiar with the UMS contract and to review the documents she had identified as related to the UMS contract.

12. From February 3 to 5, 2003, I went to BAMC in San Antonio, Texas and interviewed Ms. Thompson and Lieutenant Colonel James Reilly (Chief, Logistics Division) and had brief conversations with other individuals. I spent a considerable amount of time with Ms. Thompson, at which time she identified 26 long and 17 short boxes of documents which contained shipping orders and packing slips related to the UMS contract, as well as credit card orders. She maintained these documents in a locked cage in the warehouse and was aware of the need to retain the documents until the case was resolved.

13. Melvin R. Hicks (Medical Supply Officer) was identified as the individual with the most knowledge concerning the UMS contract at the Bliss Army Health Center in Fort Huachuca, Arizona. As Mr. Hicks had recently retired, I interviewed him by telephone on

January 8, 2003. I then traveled to Fort Huachuca on March 11, 2003, and had an extensive telephone interview with him. During these interviews, he indicated that the system they had only went back two years, so that they may not have documents before that time. He recalled that there was a box or two of credit card records that may still be at the base. Apparently, there was no one else still at Fort Huachuca who had more than a *de minimus* involvement with the UMS contract. The individual in charge at the time of my visit was Captain Michael S. Widdon. I had a conversation with Captain Widdon concerning retention of any documents related to the UMS contract, and he showed me the documents they had located and indicated that they would retain them until notified to the contrary.

14. On February 10, 2003, the plaintiff filed its Complaint in this Court. I notified UMS' counsel that an attorney from the National Courts Section of the Commercial Branch would be assigned as counsel for this case. Meanwhile, I continued to interview individuals who had information and documents relating to the contract and to look for relevant documents. On March 21, 2003, an Amended Complaint was filed. I forwarded each complaint to Ms. Hallam at DSCP and reminded her of the Rule 26 disclosure requirements and deadline for filing the answer.

15. After some preliminary conversations, on February 18, 2002, I interviewed, by telephone, Oscar Molinar (Deputy Chief of Medical Material) at the William Beaumont Army Medical Center at Fort Bliss in El Paso, Texas. On March 13, 2003, I traveled to Fort Bliss and spent one and a half days there reviewing documents and interviewing personnel including Mr. Molinar and Judy Carrillo (Item Manager), and I spoke with several other individuals, including Lynn Nelson (Administrative Assistant). With respect to documents related to the UMS contract,

Mr. Molinar indicated that in his personal files he had hard copies of some of his e-mails, but that he had had a computer crash and many of his e-mails were lost. Mr. Molinar also specifically identified the following documents as relating to the UMS contract: (1) fill rates that MTF put together from computer records; (2) the prime vendor briefing book that he provided in May 1999 for Lieutenant Colonel Riley and, he thought, Mr. Amendolia; (3) purchases made in April 2001 after the contract was over; (4) credit card purchases; and (5) credit card purchases with IFICS. As my visit was characterized as an initial, exploratory visit, it was my understanding at the time that Mr. Molinar and his staff understood that these documents would be retained for future review and possible production.

16. I do not recall telling Ms. Nelson that their UMS records were "useless," although I do recall general conversations, not necessarily with Ms. Nelson, discussing the possibly insurmountable task of relating a credit card purchase to a specific DAPA (Distribution and Pricing Agreement) item covered by the UMS contract. I had very brief conversations with Ms. Nelson as most of my time was spent with Mr. Molinar and, to a lesser extent, with Ms. Carrillo (who confirmed that she still had credit card registers). Further, as the whole purpose of my trip was to identify individuals with knowledge of, and documents related to, the UMS contract, I would not have expressed an interest in actually reviewing the credit card records at that time.

17. On March 4, 2003, I received Plaintiff's Second Request for Production of Documents related to an historical review of the medical surgical database conducted by DSCP and immediately forwarded it to Kathleen Hallam at DSCP and requested that she let me know what documents were available and when and where they could be made available for review and production to plaintiff. By this time, as plaintiff noted in its March 5, 2003, motion for

extension, the United States had produced over 100,000 pages of documents.

18. In total, I interviewed 21 individuals in person, two by telephone, and identified another 39 individuals who potentially had knowledge and documents related to the UMS contract. I attempted to locate these individuals during the time that I was assigned as lead counsel on the case, but this effort was constrained by the demands of the war on DOD personnel and its priority and complicated because many of these individuals were deployed overseas or had retired. At each interview, I specifically asked each individual if they had any documents related to the UMS contract and, if so, requested that they either provide the documents, or copies of the documents, or retain the documents until they could be reviewed.

I declare, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the forgoing is true and correct to the best of my knowledge and belief.

October 12, 2006.

E. Kathleen Shahan

E. KATHLEEN SHAHAN
TRIAL ATTORNEY