IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., *Plaintiff* | CASE NO: 03-CV-289 |
| v. | Judge Allegra |
| THE UNITED STATES, *Defendant* | |

## JOINT STATUS REPORT

**TO THE HONORABLE COURT:**

Plaintiff and Defendant set out their respective issues pursuant to the Court order of January 9, 2007, as follows:

## PLAINTIFF'S OUTSTANDING ISSUES

**I. Plaintiff's Interrogatories 4, 5, 6, 7, 19 and 20. [Copy attached at Appendix A].**

In 2002 Plaintiff served its first set of interrogatories including those identified above. These interrogatories requested Defendant to provide four (4) types of information: (i) the dollar amount of DAPA purchases each MTF made from Plaintiff, broken down by year; (ii) the estimated dollar amount of DAPA purchases each MTF made from third parties, broken down by year; (iii) Defendant's estimate of the dollar amount of diverted purchases made by each MTF, broken down by year; and (iv) the dollar amount of DAPA products each MTF ordered from Plaintiff which was not provided by Plaintiff. Defendant did not serve any objection to any of these interrogatories, including any undue burden objection.

In June and July 2005, Plaintiff filed multiple motions to compel responses to discovery, including a motion to compel Defendant to answer these 6 interrogatories. In July 2005, Defendant agreed to provide responses, but failed to do so. On April 26, 2006 and June 13, 2006 the Court ordered Defendant to respond to the above identified interrogatories.[1] Plaintiff received a response in July 2006. [Copy attached at Appendix B].

The response received by Plaintiff was deficient in several respects. First, it did not answer the questions asked. Second, it was not verified. Third, the answer provided was based on seriously flawed methodology since it limited the "maximum" diversions only to credit card purchases and only to credit card purchases coded with SICs of 5047. Plaintiff notified Defendant of the deficiencies and provided specific examples of credit card purchases from DAPA holders that did not appear in the 5047 database provided by Defendant. Defendant refused to amend the interrogatory responses or to verify the responses provided.

We now are almost two years away from Plaintiff's motions to compel and one year from the Court's first order directing Defendant to respond to the interrogatories. In conjunction with Plaintiff's other spoliation and discovery abuse claims, Plaintiff has sought sanctions against Defendant for its unjustified refusal to appropriately respond

[1] The Court's order filed in June stated at paragraph (i), "On or before July 5, 2006, Defendant shall produce any remaining data concerning sales transactions in this case and respond to Plaintiff's interrogatories 4, 5, 6,7, 19 and 20. "

to these six interrogatories. The Court has indicated it would probably not grant Plaintiff the relief it previously sought but would consider an order in limine.

To avoid further delay in attempting to obtain answers to the interrogatories or obtain a verification of the current answers, Plaintiff will file a motion in limine, which Plaintiff anticipates will include a request for attorneys' fees and an inference against Defendant with respect to some or all of the destroyed documents.

**II. Unproduced documents referenced in previously produced DSCP documents.**

Plaintiff believes Defendant has not complied with its discovery obligations with respect to some of the identified documents. The Court's orders of April 2006 and June 2006 required Defendant to produce any remaining data concerning sales transactions in the case. Recently served documents from DSCP at Bates labels DAMC 1454 and 1455 indicate the existence of previously unproduced usage data and UMS sales data.

There are additional "unproduced" documents identified in DSCP previously "produced" documents that have not been produced by Defendant. One is a DAPA usage study completed by Mr. Greg Wentzel at DSCP. Plaintiff previously served two specific document requests for production of that study. The first was in March 2003, the second in October 2003. [Copies attached at Appendix C]. Defendant never responded to either request other than to advise Plaintiff that Plaintiff's discovery rights had been cut off by the JSR filed in July 2003 and subsequent order thereon. Plaintiff disagrees with Defendant's position since the parties had agreed to continue discovery during the bankruptcy court to Court of Federal Claims process.

Other documents identified in previously produced DSCP documents that Plaintiff believes are significantly material to the case are: Occupancy Statistics referenced in G-UMS-DSCP-10694; Budgets and Communications concerning budgets under control of Daryl Spencer as referenced in G-UMS-DSCP-10694; The study by Anthony Amendolia of credit card usage at Fort Hood including the underlying 122 page print-out of usage data, both referenced in Mr. Amendolia's email of August 20, 1996 ; usage data for obtained in connection with the implementation of the Generation II PV program; and previously requested missing pages from the Wilford-Hall Usage study.

For reasons discussed below, Plaintiff believes that the best way to flush out the volume and actual existence of these documents is to serve specific requests for production with a shortened time for service of a response by Defendant. Plaintiff would be prepared to do that within one week of the filing of a Court order permitting Plaintiff to serve such requests.

**III. Defendant's Non-Compliance with paragraph 3(a) of the Court's document preservation order.**

In paragraph 3(a) of its document preservation order filed September 8, 2006, the Court directed each facility to, "… describe, in detail, …whether it believes such documents once existed but were destroyed, and how and when they were destroyed. ..." In a previously filed JSR, Plaintiff contended that the certain entities had not complied with the obligation described above because they did not state a belief

regarding existence of documents or provide any description of how and when responsive documents were destroyed. Plaintiff was under the impression that each entity would make an effort to determine if the types of documents described were the types of documents that the entity historically had created or maintained. That effort was not apparent in the filings made by the following entities: AFMLO, Altus AFB, Dyess AFB, Kirtland AFB, Randolf AFB, Tinker AFB, Vance AFB, Fort Huachuca and Corpus Christi Naval Air Station. Since the filing of the JSR, supplements were filed by Fort Hood, Fort Huachuca, Brooke Army Medical Center and Fort Sill (2). The deficiencies remain uncorrected.

Plaintiff does not believe that further pursuit of this information *via* supplemented statements is worth the effort, at least from the perspective of Plaintiff's case. Plaintiff believes depositions will be substantially more meaningful on these issues.

**IV. Timing for Plaintiff's identification of additional OIG data**

Defendant has contended that all credit card purchases of DAPA items would appear in the OIG database under SIC 5047.[2] The recent OIG sample provided by Defendant clearly indicates this is not the case. Two SICs, 5969 and 8011, reveal massive amounts of credit card purchases from DAPA holders. The information also reveals other SICs with some credit card sales by DAPA holders. To date, the following additional SICs have been identified: 5947, 5999, 8043, 8071, and 8099.

The sample provided by Defendant was a one year sample of all credit card purchases by each MTF, irrespective of SIC. Plaintiff will be in a position to provide Defendant with a data request for the 1995-2001 time period limited by SICs on or before March 12, 2007. That request will include a request for disclosure of the names of the credit card holders who made the purchases.

Completion of production of the OIG data may permit the parties to revisit their positions on settlement.

**V. Anticipated additional pleadings to be filed by Plaintiff.**

Plaintiff anticipates filing a complaint with respect to outstanding invoices during March 2007. That complaint will have its own cause number, but it is anticipated that it will be tried in conjunction with this case.

Plaintiff also anticipates filing a motion for leave to file a second amended complaint in this case. The second amended complaint will not add any new causes of action, but will modify Plaintiff's claims for relief based on the discovery that Plaintiff has obtained to date.

**VI. Spoliation Discovery**

Plaintiff anticipates that the remaining spoliation discovery will consist of depositions which Plaintiff requests be taken in Dallas. The depositions requested by Plaintiff are: oral deposition of Peter Brown, the depositions of a few of the credit card users and a 30(b)(6) deposition of Defendant. The 30(b)(6) will seek to obtain

---

[2] Defendant's interrogatory responses identified in Section I purport to identify "maximum" diversions

information from DSCP regarding its procedures for implementing document preservation in a litigation context and how those procedures were or were not implemented in this case. It further will seek information from 3 MTFs (one from each branch of service) on the types of records customarily created and/or maintained relevant to this case. Plaintiff anticipates that these depositions could be completed in March 2007.

**VII. Remaining Fact Discovery**

If Plaintiff does not have to compel discovery from Defendant, Plaintiff believes it can complete fact discovery by the end of June 2007, which will consist primarily of 30(b)(6) depositions, additional depositions of a few of the credit card users, and requests for admissions. Plaintiff, however, may need to serve additional requests for production concerning usage data and Solicitation estimates of purchases.

As part of fact discovery, Plaintiff intends to identify, inspect and copy documents previously identified by Defendant. These documents are located at the offices of Defendant's counsel and at DSCP in Philadelphia. Defendant's counsel has indicated that these documents will be made available upon reasonable notice.

Plaintiff also intends to request copies of some or all electronic information identified by DSCP but not previously produced.

---

based only on credit card sales coded SIC 5047.

**VIII. Expert Discovery**

Plaintiff believes that expert disclosures, including reports and depositions of experts, can be completed two months following close of fact discovery.

**IX. Additional Joint Status Report Regarding Trial Issues**

Plaintiff believes that a JSR regarding trial issues and finalizing a trial schedule can be completed within two weeks following close of expert discovery.

DEFENDANT'S RESPONSES

Rather than responding to plaintiff's lengthy statement above, which we view as neither constructive nor responsive to the order issued by the Court on January 9, 2007, the Government responds with particularity to subparts (a)-(f) of paragraph 3 of that order:

(a) The Court directed the parties to propose a "plan for" completing the process of making available to United Medical the comprehensive credit card transaction records that are maintained by the OIG. United Medical proposes to serve a final, comprehensive data request on or before March 5, 2007. We will need 30 days to respond. Because some records from 2000 and 2001 contain active account information, we will request the Court to enter a standard protective order, to maintain the confidentiality of those records. We will not, however, assert any categorical bar or protection against disclosure of card holder information.

United Medical's assertion that the Government argues "that all credit card purchases of DAPA items [sh]ould appear in the OIG database under SIC [standard industrial code] 5047" is both superfluous to this filing, and false. Literally for months, we have said otherwise, both to plaintiff and to the Court.

(b) The Court ordered United Medical to list "responsive . . . DSCP . . . documents that plaintiff has found described in other documentation, but has not received." We continue to be mystified, to put it mildly, by plaintiff's complaints about the discovery it has obtained from DSCP, beginning more than four years ago. This issue is completely distinct from the difficulties relating to document production that we encountered at several of the MTFs. Plaintiff spent several days at DSCP in January 2003 and departed with what its counsel later described to us as approximately "10 lateral file drawers" of documents. (We can file any correspondence cited here, if the Court so desires.) On December 7, 2006 – 75 days ago – we advised United Medical

in writing, consistent with ordering paragraph 3(c) of the September 2006 document preservation order, that DSCP's documents were available, again, for inspection and copying on three days' notice. Notwithstanding its professed desire to "flush out" documents from DSCP, United Medical has chosen not to visit Philadelphia. It seems to wish to avoid the trip, by amending prior discovery requests to call for individual documents and giving us "a shortened time" to respond. We do not believe this is what the Court contemplated when it adopted the schedule in paragraph 3 of the document preservation order. Although we need not burden the Court with details (unless directed to do so), all of the DSCP documents that United Medical complains it lacks either (i) do not exist, or (ii)(a) have been sent to plaintiff and/or (b) have been continuously available for inspection in Philadelphia. Plaintiff simply has not conducted discovery at DSCP, as the Court directed in September 2006.

(c) The Court ordered United Medical to identify all of its "discovery requests regarding DSCP that have not been resolved . . . ." It cites none. It does mention two patently untimely "document requests." The first, it purported to serve in March 2003 – before the transfer complaint was filed with this Court, or the parties had conferred concerning the joint preliminary status report ("JPSR"). Plaintiff served the other one in October 2003 – after the Court had adopted, in part, the schedule proposed in the JPSR, allowing the Government only to conduct discovery "relating to Plaintiff's [pending summary judgment] Motion," until December 15, 2003. 9/29/03 Dkt. Order. United Medical acknowledges that we advised it that these two "requests" were of no effect, yet it took no further action.

(d) The Court ordered the parties to propose a new schedule to implement ordering paragraph 3(a)-(c) of the document preservation order. We have identified all responsive documents of which we are aware, pursuant to paragraph 3(a). The Court should establish a

deadline of 60 days from this date for United Medical complete its review, to include any additional review of DSCP documents or other records.

(e) The Court directed the parties to set forth a "resolution, or a plan for resolving," the disagreement regarding plaintiff's interrogatories number 4-7, 19, and 20. United Medical cites no resolution and offers no plan. It reargues its position, but, in the end, vaguely proposes to file a motion in limine at some unspecified date. We agree with the Court that this issue should not linger. United Medical should either file a motion to compel amended responses on or before February 26, 2007, or not all. We believe the Court knows, from on-the-record status conferences and previous filings, that this disagreement has nothing to do with either an "undue burden objection," or "destroyed documents," two phrases United Medical persists in interjecting. Absent a motion, we have no other comment.

(f) Finally, the Court directed the parties to file a "plan for the future conduct of this case, including the close of discovery, resolution of the spoliation issue, and ultimate consideration of the merits of this case." 1/9/07 Order ¶ 3(f). United Medical proposes suddenly to conduct all of its spoliation-related depositions within 40 days, i.e., "in March 2007"; to complete fact discovery on or before June 29, 2007; and to complete expert discovery by the end of August 2007. It is otherwise vague as to details and, in particular, it does not say what procedures the Court should adopt to "resol[ve] . . . the spoliation issue."

We share the Court's desire to resolve this case promptly and efficiently. The Court can promote this by, among other things, (i) establishing a relatively detailed schedule, with deadlines that are realistic and firm for both parties, barring exigent circumstances, and (ii) providing definitive guidance, sooner rather than later, concerning (a) exactly what must be proved concerning spoliation, and (b) how it could be proved.

We have now filed approximately two dozen sworn statements, as well as contemporaneous evidence, concerning document retention. It is unclear how, if at all, the discovery plaintiff wishes to conduct could aid the Court in resolving the two issues it emphasized during the most recent status conference, viz., (i) exactly what information any missing documents may have contained that is now unavailable, and (ii) the degree of the Government's fault for their loss. See Eaton Corp. v. Appliance Valves Corp., 790 F.2d 874, 878 (Fed. Cir. 1986); see also Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566 (Fed. Cir. 1996) (noting threshold requirement, in patent case, to show that "calculation of damages is impeded by incomplete records of the infringer"). Regarding fault, we have cited Eaton and Columbia First Bank v. United States, 58 Fed. Cl. 54, 56 (2003), among other decisions, to establish that United Medical must prove bad faith. The Court has tentatively (we believe) suggested it could, instead, apply a sliding scale of culpability and adjust the severity of adverse inferences, if any, accordingly. Discovery is likely to be inefficient and unproductive unless these ambiguities are resolved and the parties understand what kinds of evidence could be germane, and why.

At the same time, the "spoliation issue" cannot be wholly divorced from the merits. Ultimately, under any legal standard, "the trier of fact [must] be able to determine in what respect and to what extent [any missing evidence] would have been detrimental" to us and beneficial to United Medical. Hudson Trans. Lines, Inc. v. Zozichowski, 142 F.R.D. 68, 77 (S.D.N.Y. 1991). The Court can only determine this if United Medical states exactly: (i) where the evidentiary gaps in its merits case allegedly are; (ii) why each and every gap that plaintiff seeks to rectify with an adverse inference is the result of cognizable spoliation; (iii) and what other evidence in the record plaintiff would have the Court use to fill the gaps. By the same token, to the extent any item of missing evidence is immaterial, or can be readily substituted for, or if there is no basis to

conclude it would have been favorable to United Medical, the spoliation claims will be irrelevant to the trial on the merits, with respect to that particular evidence.

Therefore, if, and to the extent, United Medical intends to take spoliation-related depositions, including those ordered by the Court in paragraph 1(c)(iii) of the order dated August 24, 2006, the Court should either (i) as we would prefer, issue an order, based upon the parties' prior briefing, setting forth the spoliation standard the Court will apply at trial and the relevant issues thereunder, or (ii) require United Medical to file its deposition topics with the Court for advance review and, in the same filing, to make a prima facie showing that substantive evidentiary gaps of the kind described above exist. "Spoliation discovery" can take place concurrently with other discovery and need not be completed in March 2007. Based upon experience, we believe United Medical's proposed expert discovery schedule is overly optimistic.

With all of the above in mind, the Government proposes the following schedule:

| | |
|---|---|
| February 26, 2007 | Deadline for plaintiff's motions regarding discovery now outstanding |
| March 5, 2007 | Plaintiff's omnibus data query to OIG |
| [April 1, 2007? | Court's guidance concerning spoliation standard?] |
| April 4, 2007 | Defendant's service of final OIG data sets |
| April 20, 2007 | Deadline for document review per 9/8/06 Order ¶ 3(c) |
| same | Deadline for plaintiff's service of written discovery and notices of fact depositions (latter to be filed with Court if spoliation-related, see above). Plaintiff may serve 10 interrogatories, in addition to those already served; and may take seven additional depositions (having taken three to date), not including depositions pursuant to ¶ 1(c)(iii) of the 8/24/06 order. William Bandy, having been deposed de bene esse for trial, may not be further deposed or otherwise provide sworn statements in support of plaintiff's case. No limit on the number of requests for admission |

| | |
|---|---|
| June 29, 2007 | Close of fact discovery |
| July 13, 2007 | Deadline for motions concerning discovery requests served after February 20, 2007 |
| same | Expert reports, if any |
| August 3, 2007 | Rebuttal expert reports, if any |
| [September 2007? | Evidentiary proceeding concerning spoliation?] |
| September 28, 2007 | Close of all discovery |
| [October 2007? | Post-discovery conference per RCFC App. A ¶ 11?<br>Start of pretrial schedule per RCFC App. A ¶¶ 13-17? ] |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE**

With respect to the "limine" proposal, Plaintiff's counsel recalls the Court noting this may be the preferable way to handle Plaintiff's spoliation and discovery abuse complaints. Plaintiff's counsel also recalls that the Court indicated that a motion to compel further discovery of previously served requests was probably not the appropriate manner in which to proceed if there already was an outstanding order directing a response from Defendant. There is an outstanding order directing Defendant to respond to Plaintiff's interrogatories. During the telephonic status conference the parties' counsel and the Court could not recall whether there was or was an order directing a response. To the recollection of Plaintiff's counsel, the Court further Plaintiff probably would not obtain much useful information by further efforts to compel.

Plaintiff believes an focused request for production might avoid DSCP providing Plaintiff a massive amount of documents and telling Plaintiff to go find the specific documents Plaintiff knows it desires. When Plaintiff initially visited DSCP in 2003, Plaintiff complained about the lack of specific documents that should have been in DSCP custody and produced. A request for production of those documents will require Defendant to acknowledge the existence or non-existence of them. As it stands, Defendant's counsel has simply stated, if we have them they will be produced. Based on prior experience, that means they will be produced as part of a massive document production of irrelevant documents and Plaintiff is welcome to try and find them. Plaintiff does contend that this would result in wasteful effort and expense and, most

importantly from Plaintiff's perspective, most likely to result in the documents being obtained by Plaintiff. The Government contends that Plaintiff's Second Request for Production served on Kathy Shahan was untimely. The parties had agreed to engage in discovery at the time that Plaintiff served its Request for Production. [Appendix C-3]. Defendant never served a response to a very simple request for production or produced the requested document.

With respect to Defendant's proposed schedule, Plaintiff opposes the limitations on depositions and interrogatories until Plaintiff has had an opportunity to review the remaining OIG data and usage data at DSCP. Plaintiff further opposes the attempt to prevent further discovery from Mr. Bandy for several reasons. Mr. Bandy is a designated expert, and he has not had the opportunity to review, *inter alia,* the remaining OIG data or additional discovery to be obtained from Defendant.

Plaintiff does not oppose the June 29, 2007 and forward deadlines suggested by Defendant's counsel. Plaintiff also believes Defendant's April 20, 2007 deadline for inspection of paragraph 3(c) documents is reasonable.

**Signed February 20, 2007.**

Respectfully Submitted,

s/ Frank L. Broyles

FRANK L. BROYLES
TX State Bar 03230500
GOINS, UNDERKOFLER, CRAWFORD & LANGDON, LLP
1201 Elm St.
Suite 4800
Dallas, TX 75270
Tele: 214.969.5454
Fax 214.969.5902

Attorney for Plaintiff

PETER D. KEISLER
Assistant Attorney General

s/Jeanne E. Davidson
by Mark A. Melnick
JEANNE E. DAVIDSON
Acting Director

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 616-20530

Attorneys for Defendant

CERTIFICATE OF SERVICE

Service of the filed copy will be served on counsel for Defendant by the Court's electronic service system and by email sent by Plaintiff's counsel.

s/ Frank L. Broyles

Appendix A

Plaintiff's First Set of Discovery Requests

Frank L. Broyles
1201 Elm St.
Suite 4800
Dallas, TX 75270
214-969-5454
214-969-5902 Telecopy
frankb@gucl.com email
Special Counsel to Reorganized Debtor

Appendix - US's Mtn to compel
03-289

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: UNITED MEDICAL SUPPLY COMPANY, INC., Reorganized Debtor | CASE NO.01 - 41911-bjh-11<br>Chapter 11 |
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br>v.<br>United States of America, Defendant | Adversary: 02-4230 |

**PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO DEFENDANT UNITED STATES**

TO DEFENDANT UNITED STATES OF AMERICA
By and through its attorney of record:

Ms. E. Kathleen Shahan
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875

Pursuant to Bankruptcy Rules 7033 and 7034, Plaintiff serves the following discovery requests. Documents requested are to be produced at the offices of counsel for Plaintiff by December 1, 2002. Responses to the discovery requests are to be served in accordance with rules 7033 and 7034.

APPDX 00001

These discovery requests incorporate the following defined terms:

1. "Award"

   This means the prime vendor contract between Plaintiff and Defense Supply Center Philadelphia (and its predecessor), as that contract was amended from time to time. It is the contract for which a claim was submitted to the DSCP under the Contract Disputes Act. It generally was identified as Award SP0200-97-D-7133.

2. "Solicitation"

   This means the solicitation seeking proposals for a prime vendor in the Lone Star Region. It generally was identified as Solicitation DLA120-93-R-0587.

3. "Participating Medical Treatment Facility" or "Participating MTF"

   This means each medical treatment facility in the Lone Star Region, including Fort Huachuca, AZ, that participated in the Prime Vendor Program under the contract with United Medical Supply.

4. "Prime Vendor Program"

   This means the Program for purchase and distribution of medical supplies and equipment to DoD MTFs in various regions, one of which was the Lone Star Region.

5. "Scheduled Medical Equipment and Supplies"

   This means the equipment and supplies purchased by the Participating MTFs that the Participating MTFs could have ordered from United Medical Supply. It refers to equipment and supplies purchased from United Medical Supply or other sources; the only criteria is that they were purchased and at the time they were purchased, the MTF could have ordered them from United Medical Supply at the time. Generally, DAPA products is synonymous with this term, unless used in the context of regions other than the Lone Star Region

6. "Contract Year"

   This means June 1 to June 1 beginning in 1997, except that the last Contract Year includes only those months prior to termination of United

Medical as the Prime Vendor as part of the implementation of the Prime Vendor II Program.

7. "Supply Center"

This means the DPSC or the DSCP.

INTERROGATORIES

1. This interrogatory requests information pertaining to the representations made by the Defendant in the Award SP0200-97-D-7133 and Modification Number 006 to that Award. For each Participating MTF, please provide the following information (The dollar amount provided for each Participating MTF is expected to total the amount stated in the Award and Modifications. If an exact dollar amount is not known, however, a best estimate may be used):

a. The dollar amount attributable to the Participating MTF for that MTF's share of the estimated dollar value for the base year as represented by the DPSC in the Solicitation.

b. The dollar amount attributable to the Participating MFT for that MTF's share of the estimated total dollar value for the contract as represented by the DPSC in the Solicitation.

c. If the totals provided under a and b above do not equal the amounts represented in the referenced Award and Modification, state why they do not.

2. What was the process used by Defendant to estimate the contract value over the projected five annual contract periods, including the process used to identify those MTFs expected to participate in the program.

3. Identify the persons with the Supply Center who prepared the estimates of contract value.

4. For each Participating MTF, identify the MTF and state, by contract year, the total dollar amount of Scheduled Medical Products and Supplies purchased by that particular MTF for each Contract Year during the term of the Contract between Plaintiff and Defendant, and, for each MTF, state the dollar amount of the Scheduled Medical Products and Supplies purchased from United Medical and the dollar amount of the Scheduled Medical Products and Supplies purchased from third parties.

5. For each Participating MTF, identify the MTF and state the total dollar amount of products for each contract year that the particular MTF ordered from United Medical but which was not supplied by United Medical.

6. For each Participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States.

7. For each Participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not.

8. Prior to awarding the contract to United Medical, did the Government make any estimate of profits or profit margins it anticipated United Medical receiving under the Contract, either by dollar or percent of revenues?

9. Did the Government ever determine during the term of the Contract that its original requirements estimates were too high? If "yes," state when such a determination was made, the individuals involved in making that determination, the dollar amount by which the Government's estimates were too high, and if the Government considered giving the Prime Vendors and adjustment to the contract price.

APPDX 00005

10. State all reasons, as you understand it, that Scheduled Medical Equipment and Supplies were, from time to time, ordered by a Participating MTF from United Medical under the Prime Vendor Contract, but not supplied by United Medical, specifically including: the MTF failed to properly order, the order was killed by United Medical, United Medical failed to provide timely confirmation, and United Medical failed to provide timely delivery.

11. With respect to each reason provided above, if you have an estimated dollar volume for of Scheduled Medical Equipment and Supplies ordered but not supplied, state the dollar amount you estimate was not supplied with respect to each reason for which you have such an estimate.

12. What is your estimate of the dollar volume of Scheduled Medical Equipment and Supplies not sold by United Medical due to the eleven alleged contractual violations you identify in your written denial of United Medical's claim dated August 22, 2002.

13. Identify each person involved in denying United Medical's request to mediate its claims against the Department of Defense. Identify means to provide the persons name, title, and business address. A person is involved if he or she provided information used in preparing the denial or reviewed the denial before it was sent to Plaintiff.

14. State, with respect to each Participating MTF, the dollar volume of Scheduled Medical Equipment and Supplies shipped by United Medical after the confirmation indicated the order had been killed. If you do not know exactly, answer with a best estimate.

15. With respect to every other region in the Prime Vendor Program for which a requirements contract was established, identify the: (1) region by name, (2) prime vendor or vendors (name and address) that were awarded a requirements contract (3) date of the initial award (4) represented value of the contract on the DoD solicitation (5) the actual dollar volume of products purchased from each of the other prime vendors under the contract, and whether or not a claim for equitable adjustment or breach of contract was filed by that prime vendor.

16. For each claim for equitable adjustment or breach of contract filed by another prime vendor under the Prime Vendor Program, state the prime vendor filing the claim, the amount of the claim, the resolution of the claim; and summarize the basis for the claim.

17. If you contend that the requirements of the Participating MTFs for Scheduled Medical Equipment and Supplies decreased from the Supply Center estimate after the Solicitation was provided to United Medical, state the reasons for such decrease and identify the date or dates such reasons became known to the United States.

18. For each Participating MTF, identify the MTF and state the total dollar amount of products for each contract year that the particular MTF ordered from United Medical but which was not supplied by United Medical. If you are unable to answer the dollar amount exactly, provide your best estimate.

19. For each Participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States. If you are unable to answer the dollar amount exactly, provide your best estimate.

20. For each Participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not. If you are unable to provide an exact dollar amount, provide your best estimate.

21. Prior to awarding the contract to United Medical, did the Government make any estimate of profits or profit margins it anticipated United Medical receiving under the Contract, either by dollar or percent of revenues?

22. Did the Government ever determine during the term of the Contract that its original requirements estimates were too high? If "yes," state when such a determination was made, the individuals involved in making that determination, the dollar amount by which the Government's estimates were too high, and if the Government considered giving the Prime Vendors and adjustment to the contract price. If you are unable to provide a dollar amount exactly, provide your best estimate.

23. State all reasons, as you understand it, that products were, from time to time, ordered by an MTF from United Medical under the Prime Vendor Contract, but not supplied by United Medical, specifically including the failure, if any, of the MTF to properly order, the order was killed by United Medical, United Medical failed to provide timely confirmation, and United Medical failed to provide timely delivery.

24. With respect to each reason provided above, if you have an estimated dollar volume for of products ordered but not supplied for individual reasons, state the dollar amount you estimate was not supplied with respect to each reason for which you have such an estimate.

25. What is your best estimate of the dollar volume of supplies not sold by United Medical due to the eleven alleged contractual violations you identify in your written denial of United Medical's claim dated August 22, 2002.

26. Identify each person involved in denying United Medical's request to mediate its claims against the Department of Defense. Identify means to provide the persons name, title, and business address.

27. State, with respect to each MTF, your best estimate of the dollar volume of items shipped by United Medical after the confirmation indicated the order had been killed.

28. With respect to every other region in the Prime Vendor Program for which a requirements contract was established, identify the: (1) region by name, (2) prime vendor or vendors (name and address) that were awarded a requirements contract (3) date of the initial award (4) represented value of the contract on the DoD

solicitation (5) the actual dollar volume of products purchased from each of the other prime vendors under the contract, and whether or not a claim for equitable adjustment or breach of contract was filed by that prime vendor.

29. For each claim for equitable adjustment or breach of contract filed by another prime vendor under the Prime Vendor Program, state the prime vendor filing the claim, the amount of the claim, the resolution of the claim, and summarize the basis for the claim.

30. If you contend that the requirements of the Participating MTFs for Scheduled Medical Equipment and Supplies decreased from the Supply Center estimate after the Solicitation was provided to United Medical, state the reasons for such decrease and identify the date or dates such reasons became known to the United States.

31. Did the Participating MTF's purchase Scheduled Medical Equipment and Supplies from sources other than United Medical in breach of the Prime Vendor Contract with United Medical?

32. If the answer to the previous question is "yes," state the dollar amount of such diverted purchases in breach of the contract. If you do not know exactly, state your best estimate.

33. Identify each person who claims that United Medical failed to perform its contractual obligations under the Award.

REQUESTS FOR PRODUCTION

Plaintiff requests production for inspection and copying the following:

1. The documents used by the Supply Center to estimate the representations made to United Medical of Base Year Contract Value and the Total Contract Value, including information received from each Participating MTF. This request refers to the estimate of contract value originally made and as amended from time to time by the Department of Defense.

2. All summaries prepared by or for the Supply Center which evidence, for any prime vendor region or Participating MTF any of the following:

a. the dollar volume of Scheduled Medical Equipment and Supplies purchased, including but not limited to summaries of annual or other period purchases and purchases by vendor;

b. percentage summaries pertaining to Scheduled Medical Equipment and Supplies purchases, including but not limited to percentages of annual purchases purchased from the prime vendor and purchases from non-prime vendor sources;

c. summaries of purchases of Scheduled Medical Equipment and Supplies not made from United Medical Supply due to the failure of United Medical Supply to comply with the contract.

3. The records for or with respect to each Participating MTF which evidence the total dollar amount of Scheduled Medical Products and Supplies purchased by that particular MTF for each Contract Year during the term of the Contract between Plaintiff and Defendant.

4. Records from each MTF which evidence the Scheduled Medical Products and Supplies purchased from United Medical and the dollar amount of the Scheduled Medical Products and Supplies purchased from third parties.

5. All correspondence between the Supply Center and Participating MTF's which evidence an effort by the Supply Center to stop the Participating MTF's from purchasing DAPA products from entities other than Prime Vendors. This seeks records related to all regions and MTFs.

6. All investigative reports by the Supply Center to determine why MTF's were purchasing Scheduled Medical Equipment and Supplies from sources other than a Prime Vendor. This request seeks reports submitted internally, to any other agency, or to Congress.

7. All correspondence between the Supply Center and Participating MTFs pertaining to any failure of United Medical Supply to comply with the contract terms.

8. All correspondence between the Supply Center and United Medical pertaining to any failure of United Medical Supply to comply with the contract terms.

9. All investigative reports by the Supply Center to determine the cause or causes of United Medical's failures to comply with the contract terms. This request seeks reports submitted internally, to any other agency, or to Congress.

10. All documents which estimate the profits or losses the Supply Center projected for United Medical under the Award.

11. The ten contract files referenced by the Supply Center in Plaintiff's FOIA requests to the Supply Center. For reference purposes, Mr. Linda Flatley referenced these files in an email to Catherine Kearns dated December 10, 2001.

12. All claims submitted by any prime vendor of medical supplies for breaches of contract or equitable adjustment under the prime vendor program in which United Medical participated as a prime vendor.

13. All correspondence between the Supply Center and any Participating MTF pertaining to the estimate of annual volume of Scheduled Medical Equipment and Supplies for that MTF. This request seeks documents created before and after the Award.

Respectfully submitted,

Frank L. Broyles
Texas State Bar No. 03230500
GOINS, UNDERKOFLER, CRAWFORD
& LANGDON, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for United Medical Supply

CERTIFICATE OF SERVICE

On October 25, 2002 the foregoing notice was served on the persons shown below by the method shown below in accordance with applicable bankruptcy rules.

**PERSONS SERVED:**

Ms. E. Kathleen Shahan
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875

Via Hand Delivery (overnight courier)

APPDX 00013

Appendix B

Defendant's Amended Responses to Certain Interrogatories Pursuant to Court Order of April 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., | ) | |
| Plaintiff, | ) | No. 03-289C (Judge Allegra) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S AMENDED RESPONSES TO
PLAINTIFF'S INTERROGATORIES NO. 4-7, 19, AND 20

Pursuant to Rule 34 of the Court's Rules and the Court's order dated June 13, 2006, defendant, the United States, responds as follows to the following interrogatories served by plaintiff in November 2002, in case number 01-41911-bjh-11 (Bankr. N.D. Tex.). These responses supersede and replace defendant's prior responses.

RESPONSES TO INTERROGATORIES

4. For each Participating MTF, identify the MTF and state, by contract year, the total dollar amount of Scheduled Medical Products and Supplies purchased by that particular MTF during each Contract Year during the term of the Contract between Plaintiff and Defendant, and for each MTF, state the dollar amount of the Scheduled Medical Products and Supplies purchased from United Medical and the dollar amount of the Scheduled Medical Products and Supplies purchased from third parties.

Amended Response:

We cannot provide a definitive answer, because the purchasing records currently known to be available do not reflect the quantities, or dollar values, of individual items purchased. Absent detailed records concerning individual items, it is impossible to determine, among other things, whether an item was subject to a DAPA, or available from plaintiff, at the time of purchase. However, we can derive various estimates of the dollar values of covered items purchased by each MTF from third parties, applying a range of assumptions. (The total dollar value of Scheduled Medical Products and Supplies purchased by each MTF in each year would be the total value of purchases from United Medical, which plaintiff knows as well as defendant, and which is immaterial to plaintiff's damages, plus the total purchased from third parties.)

Estimates which are very generous to plaintiff can be derived by reviewing the information concerning credit card purchases which was supplied in 2006 by the Department of Defense, Office of the Inspector General ("OIG"), and assuming that every item purchased from a third party with an SIC code of 5047 ("medical") represents an item covered by plaintiff's contract. (We do not believe that is a realistic assumption.) The OIG was unable to recover

purchasing information for calendar year 1998. Accordingly, we have further assumed that average purchases per bed per bed for each facility during 1998 were equal to the averages for the remaining portions of the contract term, for which information is available. Because the data reflect that there was a "ramp up" period for each facility during the initial months of the contract, during which the facilities gradually increased their purchases from United Medical, we do not believe the assumption that the per-bed average in 1998 would have equaled the per-bed average over the entire contract term is reasonable, either.

The estimates below can (and should, for purposes of assigning damages) be reduced pro rata by inserting more reasonable assumptions concerning (i) the proportion of items with SIC code 5047 which were scheduled supplies under plaintiff's prime vendor contract and (ii) the missing 1998 data. However, the following table provides our current estimates, based upon available data, of the maximum dollar value of scheduled supplies purchased by each MTF from parties other than United Medical, throughout the contract term.

| MILITARY TREATMENT FACILITY | AMOUNT |
|---|---|
| ALTUS AFB | $323,120.80 |
| BROOKS AFB | 1,194,150.21 |
| CANNON AFB | 741,879.23 |
| CORPUS CHRISTI | 112,075.38 |
| DYESS AFB | 321,641.03 |
| FORT BLISS | 9,211,715.53 |
| FORT HOOD | 2,902,641.50 |
| FORT HUACHUCA | 1,171,529.78 |
| FORT SAM HOUSTON | 18,723,782.05 |
| FORT SILL | 4,264,473.78 |
| GOODFELLOW AFB | 93,131.17 |
| HOLLOMAN AFB | 762,105.39 |
| KELLY AFB | 227,957.08 |
| LAUGHLIN AFB | 150,941.72 |
| RANDOLPH AFB | 484,167.37 |
| SHEPPARD AFB | 2,230,914.22 |
| TINKER AFB | 1,184,817.76 |
| VANCE AFB | 141,674.65 |
| **Total** | **$44,242,718.66** |

5. For each participating MTF, identify the MTF and state the total dollar amount of products for each contract year that the particular MTF ordered from United Medical but which was not supplied by United Medical.

Amended Response:

We lack sufficient data concerning all canceled, unfilled, and partially filled orders (not all of which resulted in creation of records) to construct a reasonable estimate, nor do we bear the burden of proof. If plaintiff wishes to suggest a methodology (or alternate methodologies) for deriving estimates responsive to this interrogatory from data currently known to be available, the Government will perform the investigation and calculations necessary in order to supply the results under plaintiff's theory or theories. However, the Government does not understand how the answer could be relevant to plaintiff's damages in this case.

6. For each participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States.

Amended Response:

The following table is based upon the same information and assumptions as are discussed in our amended response above to interrogatory number 4.

| MILITARY TREATMENT FACILITY | 1997 | 1998 (Based on Average Monthly for Other Time Periods) | 1999 | 2000 | 2001 |
|---|---|---|---|---|---|
| ALTUS AFB | $725.94 | $91,316.75 | $88,407.13 | $116,237.20 | $26,433.78 |
| BROOKS AFB | 1,133.62 | 337,477.23 | 266,417.41 | 531,394.62 | 57,727.33 |
| CANNON AFB | 294.04 | 209,661.52 | 214,327.60 | 263,893.58 | 53,702.49 |
| CORPUS CHRISIT | - | 31,673.48 | - | 35,406.42 | 44,995.48 |
| DYESS AFB | - | 90,898.55 | 81,838.40 | 109,945.58 | 38,958.50 |
| FORT BLISS | 517,416.77 | 2,605,361.91 | 2,326,903.85 | 2,940,099.12 | 821,933.88 |
| FORT HOOD | - | 820,311.73 | - | 1,758,836.36 | 323,493.41 |
| FORT HUACHUCA | 108,920.69 | 332,280.50 | 270,140.23 | 394,194.31 | 65,994.05 |
| FORT SAM HOUSTON | 1,007,608.91 | 5,291,503.62 | 4,138,915.12 | 5,888,721.31 | 2,397,033.09 |
| FORT SILL | 337,863.69 | 1,205,177.37 | 1,157,838.37 | 1,208,600.32 | 354,994.03 |
| GOODFELLOW AFB | - | 26,319.68 | 28,267.00 | 30,355.00 | 8,189.49 |
| HOLLOMAN AFB | 341.11 | 215,377.61 | 109,943.47 | 380,167.93 | 56,275.27 |
| KELLY AFB | 13,884.35 | 64,422.65 | 63,697.73 | 85,952.35 | - |
| LAUGHLIN AFB | - | 42,657.44 | 44,194.33 | 64,089.95 | - |
| RANDOLPH AFB | - | 136,829.91 | 76,732.14 | 219,504.27 | 51,101.05 |
| SHEPPARD AFB | - | 630,475.76 | 547,975.92 | 841,084.24 | 211,378.30 |
| TINKER AFB | - | 334,839.80 | 389,473.70 | 362,210.98 | 98,293.28 |
| VANCE AFB | - | 40,038.49 | 36,387.31 | 46,847.78 | 18,401.07 |
| **Total** | **$1,988,189.12** | **$12,506,624.01** | **$9,841,459.71** | **$15,277,541.32** | **$4,628,904.50** |

7. For each participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not.

Amended Response:

The Government's current estimates of the maximum amounts are stated in our amended response above to interrogatory number 6. For purposes of assigning damages, those estimates should be reduced pro rata by applying reasonable assumptions concerning (i) the proportion of items with SIC code 5047 which were purchased by credit card that were subject to plaintiff's prime vendor contract; (ii) the missing 1998 data; (iii) the proportion of the items purchased by credit card which were available from United Medical at the time; and (iv) the proportion of such items that were ordered unsuccessfully from United Medical immediately before being purchased by credit card.

19. For each participating MTF, identify the MTF and state the dollar amount of Products that particular MTF purchased from third parties, i.e., suppliers other than United Medical, during the term of the contract between United Medical and the United States. If you are unable to answer the dollar amount exactly, provide your best estimate.

Amended Response:

This interrogatory duplicates number 6 (except that it adds a request for a best estimate). See our amended response above to that interrogatory.

20. For each participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not. If you are unable to provide an exact dollar amount, provide your best estimate.

Amended Response:

This interrogatory duplicates number 7 (except that it adds a request for a best estimate). See our amended response above to that interrogatory.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

OF COUNSEL:
KATHLEEN HALLAM
Chief Trial Attorney
Defense Supply Center
Philadelphia

July 5, 2006

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 5th day of July 2006, I caused the attached discovery responses to be served by first class mail and e-mail (PDF) courtesy copy upon:

Frank L. Broyles
Goins, Underkofler, Crawford & Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, TX 75270

Appendix C-1

Request for Production Served on Defendant, March 2003

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | CASE NO: 03-CV-289 |

**PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

TO DEFENDANT UNITED STATES OF AMERICA
By and through its attorney of record:

Ms. E. Kathleen Shahan
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875

Plaintiff serves the following request for documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. Documents requested are to be produced at the offices of counsel for Plaintiff by April 8, 2003. Responses to the discovery requests are to be served in accordance with rule 34.

In June 1999 DSCP sent out memos to all medical/surgical DAPA holders. It was signed by Greg Wentzel. That memo, Part II, stated that DSCP had completed an intensive review of historical sales pertaining the medical surgical database. Plaintiff is requesting the United States to produce the documents reviewed and the reports prepared in connection with this intensive review. This request includes all questionnaires sent to or received from MTFs.

Respectfully submitted,

Frank L. Broyles
Texas State Bar No. 03230500
GOINS, UNDERKOFLER, CRAWFORD
& LANGDON, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for United Medical Supply

CERTIFICATE OF SERVICE

On March 4, 2003 the foregoing was served on the persons shown below by the method shown below in accordance with applicable rules.

**PERSONS SERVED:**

Ms. E. Kathleen Shahan
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875

Via Fax and Certified Mail RRR
7002 2410 0004 6840 6943

Appendix C-2

Request for Production Served on Defendant, October 2003

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC.,<br>Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | CASE NO: 03-CV-289 |

PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

TO DEFENDANT UNITED STATES OF AMERICA
By and through its attorney of record:

Mr. Kyle Chadwick
U.S. DEPARTMENT OF JUSTICE
8th Floor
1100 L. St., N.W.
Washington, D.C. 20530

Plaintiff serves the following request for documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. Documents requested are to be produced at the offices of counsel for Plaintiff by December 1, 2003. Responses to the discovery requests are to be served in accordance with rule 34.

**Request #1:**

In June 1999 DSCP sent out memos to all medical/surgical DAPA holders. It was signed by Greg Wentzel. That memo, Part II, stated that DSCP had completed an intensive review of historical sales pertaining the medical surgical database. Plaintiff is requesting the United States to produce the documents reviewed and the reports prepared in connection with this intensive review. This request includes all questionnaires sent to or received from MTFs.

**Response:**

**Request #2:**

At some point in time the Government changed all electronic invoicing and payment information from a contractor VAN to a Government VAN. Plaintiff requests

that the Government produce for inspection and copying all records retained by the agency that operated the Government VAN if such records were invoices or payment processing requests dealing with Plaintiff, United Medical Supply Company, Inc.

**Response:**

**Request #3:**

At some point in time the Government changed all electronic invoicing and payment information from a contractor VAN to a Government VAN. Plaintiff requests that the Government produce for inspection and copying all correspondence between the agency responsible for operating the Government Van and DSCP if such correspondence concerned problems with invoices from or payments to prime vendors under the DSCP prime vendor Generation I program.

**Response:**

Respectfully submitted,

Frank L. Broyles
Texas State Bar No. 03230500
GOINS, UNDERKOFLER, CRAWFORD
& LANGDON, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff
United Medical Supply Company, Inc.

CERTIFICATE OF SERVICE

On October 29, 2003 the foregoing was served on the persons shown below by the method shown below in accordance with applicable rules.

**PERSONS SERVED:** – Certified Mail RRR

Mr. Kyle Chadwick
Attorney
U.S. DEPARTMENT OF JUSTICE
8th Floor
1100 L. St., N.W.
Washington, D.C. 20530

Appendix C-3

Agreement by Parties with respect to transition discovery into the Court of Federal Claims

**Frank L. Broyles**

**From:** Shahan, Kathie [Kathie.Shahan@usdoj.gov]
**Sent:** Thursday, December 12, 2002 9:16 AM
**To:** 'Frank L. Broyles'
**Subject:** RE: transfer to court of federal claims

I've no objection. I confirmed with DSCP yesterday that you will be there starting January 13 to review all of the documents that you requested. I anticipate that I will also get responses to my discovery requests without interruption.
I assume that I will probably continue to handle the case, although I can't say for sure until it is transferred and we are formally notified. I will continue to work on it until I hear otherwise. I suspect that, at best (for me), an attorney from the Court of Federal Claims section might be assigned to assist with it. Kathie

-----Original Message-----
From: Frank L. Broyles [mailto:frankb@gucl.com]
Sent: Thursday, December 12, 2002 10:10 AM
To: Shahan, Kathie
Subject: transfer to court of federal claims

United Medical has decided not to seek a motion for rehearing or appeal the transfer order. It is going to file a request for additional findings and conclusions to protect the claims court's jurisdiction under the Plan. In the meantime, I presume you have no objection to proceeding with discovery even though we don't have a judge or case number yet. Let me know, Frank