1. **Evidence Preservation and Discovery Issues**
   a. Whether DSCP did nor did not discharge its evidence preservation and discovery obligations in this lawsuit, particularly including the policies at DSCP pertaining to these issues.
   b. The identities of the persons responsible for implementing evidence preservation and discovery compliance policies at DSCP with respect to Plaintiff's complaint and discovery requests and the particular responsibilities each person had.
2. **Diversion**
   a. Defendant's interpretation of the types of medical equipment and supplies described by the phrase, "normal day-to-day requirements for brand name specific and generic medical supplies"
   b. The types of medical equipment and supplies not within that description.
   c. The 12-month reporting period referenced in the original Solicitation and various amendments including, for each MTF,
      i. the identity of the individual or individuals who created the reports,
      ii. the identity of the individual or individuals who received the reports,
      iii. what information was included in the reports, and
      iv. the documents evidencing the creation and maintenance of the reports.
   d. The basis for the statement by DSCP made on page 12 of Solicitation Amendment 008 that the facilities spent an estimated $57,665,500 per year, including,
      i. the identity of the individual or individuals responsible for collecting that information for DSCP,
      ii. the process by which the information was collected,
      iii. what areas and functions of each MTF participated in the collection of information used to provide the estimate,
      iv. the identity of the individual or individuals at each MTF who provided that information, and
      v. the process by which that information was obtained at the MTF level.
   e. The bases for, and accuracy of, the statement(s) in the GEN II Addendum to Standard Form 1449 that
      i. 45% of the med/surg items used in the National Capital Region are purchased using the DSCP Prime Vendor Program
      ii. PV Sales in the National Capital Region are currently estimated at $1.4 million per month.

iii. Currently med/surg PV sales worldwide average $8.4 million per month
iv. The MTFs estimate the balance of med/surg items are purchased directly from manufacturers and dealers using government wide commercial purchase cards and /or local purchase methods,
v. Any estimates made by any Lone Star MTF that formed the basis for the estimate described in the previous paragraph and how the MTF made such estimates,
vi. It can be assumed that DSCP med surg PV sales is relatively consistent across the regions.
vii. The quantity of beds from the Lone Star Region included in the 6,478 total bed estimate.
**viii.** The basis for Defendant's contention, if any, that United Medical should have inventoried those med/surg items purchased by use of credit cards, including the basis that United Medical had been provided usage data for such items.

3. **Failure of Defendant's Payment System**
    a. Who had the authority to decide whether United Medical would or would not be notified of the failure and how was the decision made, including the pros and cons of each course of action.
    b. Any contention by Defendant that United Medical was notified of the system failure and when and how Defendant contends that United Medical was notified.
    c. How and when the problem with the payment system was totally corrected.
    d. DSCP's assessment of the impacts of the system failure.
    e. Claims made by PVs resulting from the failure
4. **Unpaid Account's Receivable**
    a. The investigation made by Donna Galligan with respect to the account receivable issue
    b. Interpretation of the spreadsheet data provided by DFAS.
    c. Interpretation of Donna Galligan's spreadsheet