**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., *Plaintiff* | CASE NO: 03-CV-289 |
| v. | Judge Allegra |
| THE UNITED STATES, *Defendant* | |

**PLAINTIFF'S REPLY TO: DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**TO THE HONORABLE UNITED STATES COURT OF FEDERAL CLAIMS:**

Plaintiff regrets that Court intervention is required in yet another discovery dispute between the parties. The Government's position, however, is not supported by the facts, the law, or even common sense. Not only are Plaintiff's discovery rights prejudiced, but Plaintiff's counsel had to cancel his August vacation to "be available" for depositions, which the Government indicated might be a possibility.

The Government has delayed discovery. It did not provide a single deposition date for a July or August 2007 deposition or advise Plaintiff that it could not provide dates for that period, it did not provide any corrected OIG data, it did not answer or otherwise timely respond to the two interrogatories Plaintiff served on June 21, 2007, and it has not provided its estimate of when it will be able to complete fact discovery. The only written discovery provided during July and August were some Government business records with a *caveat* by Government counsel that the records were not

reliable. The Government never suggested that no discovery could take place during these months.

Perhaps the most clear cut evidence of the Government's frivolous position and unjustified discovery tactics is its contention, made on page 5 of its Response, that it could not consider Plaintiff's proposal to resolve the dispute *via* means of an agreed scheduling order <u>with dates of the Government's choosing</u> because, according to the Government,

> "By the time we received that response, however, we were obligated to begin preparing this brief."

The Government received Plaintiff's referenced response on August 8, 2007, <u>the day after</u> the Government suggested that Plaintiff should withdraw its Motion to Compel. The Government's "we could not turn back" position makes absolutely no sense and is not credible. The Government cannot expect that either the Court or Plaintiff accepts the Government's statement that it became so entrenched in one-day that Plaintiff's reasonable and typical solution could not be considered as a solution to avoid Court intervention.

Other facts associated with the Government's rejection of Plaintiff's proposal to resolve the dispute make the Government's position even more unreasonable. Plaintiff's proposal was made at 4:59 p.m. CDT on August 8, 2007. Government counsel rejected it at 5:00 p.m., CDT, August 8, 2007, <u>one-minute after it was received,</u> with the terse comment, "OK, we will seek attorneys' fees."

Each of the remaining fact discovery issues is summarized below, as well as a summary of timeline beginning with May 7, 2007, the date on which the Government advised Plaintiff that its previously produced OIG data was wrong and the Government would provided corrected data "as promptly as we can," which corrected data still has not been provided.

## I. TIMELINE

| Date | Event | Comment |
|---|---|---|
| 5/7/07 | Government advised Plaintiff that the previously provided OIG data is incorrect and corrected data will be provided as promptly as it can.[1] | Plaintiff had invested hundreds of hours in analyzing the incorrect data since it represented the best source of estimates of diversions. Corrected data still has not been provided. |
| 6/21/07 | Plaintiff served 2 interrogatories on the Government pertaining to negligent estimate. | The Government never requested an extension, filed a motion for protective order or answered the interrogatory. It tardily advised Plaintiff it may not answer interrogatory 6. |
| 6/25/07 | Government counsel advised Plaintiff's counsel that he needs to know who Plaintiff wants to depose and he may try to enlist the help of other Government attorneys to defend the depositions. | Plaintiff's counsel promptly provided the requested names. |
| 7/1/07 | Plaintiff inquired about taking the depositions of Flatley and Amendolia on July 9, 10 or 12. | Plaintiff's counsel does not recall ever receiving a response. |
| 7/2/07 | Plaintiff indicated it wants the depositions of Troy Molnar and Mike David and asked if they are located in Philadelphia. | The Government responded they were not in Philadelphia and asked if Plaintiff still wanted the Government to try and locate them. Plaintiff responded, "yes" it did. |

[1] This is in the record as Exhibit B to Plaintiff's Motion to Compel. It is the Government's response to interrogatory 5, one of Plaintiff's previously served interrogatories.

| Date | Event | Comment |
| --- | --- | --- |
| 7/5/07 | The Government advised Plaintiff it will not be able to respond to all of Plaintiff's discovery requests or make all the requested deponents available by the close of discovery on July 27, 2007 and that an extension would be needed. | Plaintiff suggested a conference call with the Court and advised the Court of such a need.<br><br>Plaintiff's also indicated he wanted to take a vacation in August. |
| 7/10/07 | The Court advised the parties to file a motion to compel or a motion for protective order with respect to discovery disputes. | |
| 7/10/07 | The Government advised Plaintiff that it would not be in a position to provide an estimate of time needed for the extension until the middle of the week of July 16. | Plaintiff responded by reminding the Government that it had not provided the corrected OIG data and that needed to be addressed. |
| 7/12/07 | Plaintiff inquired if a 60-day discovery extension would be adequate. Government counsel responded, "For now, I can only repeat what I wrote below, last week. '. . . I think we're looking at an extension past Labor Day, at a minimum. But I want to be as accurate as possible. I don't think I'll be in a position to project realistic dates until the middle of this week, at the earliest.' When I do have that information, I'll get back to you." | The Government's email reply is attached, since it was not included in the email traffic attached to the Government's opposition to Plaintiff's Motion to Compel. |
| 7/19/07 | Plaintiff inquired about the status and expressed concern since discovery was about to close. | Plaintiff did not receive a response. |
| 7/23/07 | Plaintiff again inquired about the status of any estimate of the extension needed. | |
| 7/23/07 | The Government responded to Plaintiff's 7/23 inquiry with, "as I've said repeatedly, I'll tell you as soon as I have the information I need." | |
| 8/7/07 | The Government sent Plaintiff the letter attached to the Government's Objection at p. 13-15 of 16. | The Government requested Plaintiff to withdraw its motion to compel. It also advised Plaintiff that one of the witness Plaintiff requested on July 2, 2007 was retiring at the end of August 2007 |

| Date | Event | Comment |
|---|---|---|
| | | and might have to be served with a subpoena. |
| 8/8/07 | Plaintiff declined to withdraw its Motion to Compel but suggested an agreed scheduling order to pin down dates of the Government's choosing for completion of the various remaining discover tasks. The Government immediately (within one minute) rejected Plaintiff's proposal with, "OK, we will seek attorneys' fees." See, p. 16 of 16 attached to the Government's objection. | |

## II. SUBSTANTIVE DISCOVERY ISSUES

**THE OIG DATA**

Based on some of the Government's interrogatory responses, credit card data maintained by the Office of Inspector General appears to provide the most reliable data for estimating diverted purchases. Several years ago, an interrogatory was served on the Government requesting the Government to provide its best estimate of diverted purchases. Indeed, the Court ordered the Government to answer the interrogatory. Instead of providing its best estimate of diverted purchases, the Government, based on the OIG data, provided its "best estimate of maximum diverted purchases" and suggested a methodology using OIG data for estimating actual diverted purchases. The Government did not incorporate into its estimate of maximum diverted purchases, purchases that were coded with SIC numbers other than 5047. The 5047 SIC numbers did not even represent the majority of purchases that the Government should have used in making its estimate of maximum diverted purchases.

After some discovery wrangling and intervention by the Court, the Government provided Plaintiff with OIG data for thousands of credit card transactions for several

requested SIC numbers. These transactions purportedly were filtered to meet the criteria that Plaintiff had identified. Following receipt of that data, Plaintiff invested hundreds of hours reviewing and analyzing that OIG data and building its damage model.

On May 7, 2007, the Government advised Plaintiff that,

> …it has come to our attention that some of the [credit] card holders identified in the [OIG] spreadsheets were not working at any of the MTFs during the contract term. The transactions appear in the search results because they worked in the same city, and in the same service, as one of the MTFs. (OIG could not query the data by individual MTF.) We will identify those card holders (who are not relevant to this case) in our supplemental response to this interrogatory, which we will provide as promptly as we can.

[*See*, Plaintiff's Motion to Compel, Attachment B, interrogatory response 5].

The correct OIG information is critical to Plaintiff's completion of its damage model. Yet the Government has not supplemented. By its August 7, 2007 letter, the Government notified Plaintiff it will be at least another month. No definite date for the supplementation has been provided.

**PLAINTIFF'S INTERROGATORIES SERVED JUNE 21, 2007**
**(Plaintiff's Motion to Compel, Attachment C)**

Plaintiff served two interrogatories. The Government did not answer the interrogatories, request an extension of time to answer the interrogatories, or file a motion for protective order. The first indication of when the interrogatories would be

answered was in the August 7, 2007 letter in which the Government indicated it would provide a response in September.

There is a significant contradiction between the position taken by DSCP on the estimates and the position taken by the MTFs queried to date. The MTF position is that the estimates are to high. Indeed, during his deposition, Colonel James Riley testified the estimates have no basis in reality. Internal documents of DSCP support Colonel Riley's position. Yet, the Government will not retreat from its position that the DSCP Solicitation estimates were not negligent. Plaintiff has spent countless hours attempting to find if there is any evidence to support DSCP's position that the estimates are not negligent. Nothing has been discovered. Interrogatory 6 is part of that effort. Plaintiff seeks a sworn interrogatory response on the issue. If effort has been made to locate any individual with knowledge, Plaintiff is entitled to know the extent of that effort and the negative results obtained.

**THE DEPOSITION SCHEDULING**

Since Plaintiff filed its Motion to Compel, some progress has been made. The Government proposed deposition dates some of the individuals identified by Plaintiff and dates for the deposition of two witnesses have been established (Lt. Col. Molnar and Donna Galligan). Plaintiff identified specific dates to take for the depositions of the two most important witnesses: Mr. Amendolia and Ms. Flatley. The dates Plaintiff selected were purportedly dates on which these witnesses would be available. The Government, however, has advised Plaintiff that it has not been able to "confirm" that

these witnesses will actually be available on the dates selected by Plaintiff from the choices previously provided by the Government.

As to Plaintiff's 30(b)(6), the Government still has not identified all relevant witnesses for each of the topics identified by Plaintiff.

**Signed August 26, 2007.**

Respectfully submitted,

/s/ Frank L. Broyles
Frank L. Broyles
State Bar No. 03230500
Goins, Underkofler, Crawford
& Langdon, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff

CERTIFICATE OF SERVICE

On August 26, 2007 the foregoing was served on the persons shown below by the method shown below.

/s/ Frank L. Broyles

**PERSONS SERVED:**

Kyle Chadwick
Department of Justice
Method Served:ECF service by the Court Clerk

## Frank L. Broyles

**From:** Chadwick, Kyle (CIV) [Kyle.Chadwick@usdoj.gov]
**Sent:** Tuesday, July 17, 2007 9:04 AM
**To:** Frank L. Broyles
**Subject:** FW: Thanks for the call

For now, I can only repeat what I wrote below, last week. ". . . I think we're looking at an extension past Labor Day, at a minimum. But I want to be as accurate as possible. I don't think I'll be in a position to project realistic dates until the middle of [this] week, at the earliest." When I do have that information, I'll get back to you.

-----Original Message-----
From: Frank L. Broyles [mailto:flbroyles@gucl.com]
Sent: Tuesday, July 10, 2007 12:42 PM
To: Chadwick, Kyle (CIV)
Subject: RE: Thanks for the call

When talking with whomever, don't forget the Gov't indicated it needed additional time to answer one of my prior interrogs, so we will need to know how much time for that one too. Thanks, Frank

-----Original Message-----
From: Chadwick, Kyle (CIV) [mailto:Kyle.Chadwick@usdoj.gov]
Sent: Tuesday, July 10, 2007 11:35 AM
To: Frank L. Broyles
Subject: Thanks for the call

Sorry I missed you. It looks like Judge Allegra misunderstood your message. I agree, we should file an unopposed or joint extension motion fairly soon.

One of the many issues, though, is that Mike McGlinchey is currently on leave, I think until next Tues. or Weds., as is Amendolia, so it's really not possible, this week, for me to get a handle on how much more time we'll need for everything. I have similar issues at DoD OIG (for which McGlinchey isn't my primary contact).

As much as I wish it were otherwise, realistically, since I'm in trial Aug. 6-14, and I know from experience how difficult it is every year for agencies to finish tasks in August, I think we're looking at an extension past Labor Day, at a minimum. But I want to be as accurate as possible. I don't think I'll be in a position to project realistic dates until the middle of next week, at the earliest.