**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | MAIN CASE NO: 03-CV-289<br>Consolidated case no: 07-cv-187<br>Judge Allegra |

**SECOND AMENDED COMPLAINT**

TO THE HONORABLE COURT:

Plaintiff, United Medical Supply Company, Inc., files this its Second Amended Complaint against the United States (generally referenced as "the Government") arising out of the Government's breaches of contract.

United Medical seeks a judgment awarding it damages and/or equitable adjustments to the price for the Government's breaches of Contract Number SP0200-97-D-7133 and 7134 (referenced in this Complaint as "the Contract" or "Contract").

**JURISDICTION**

1. This Court has jurisdiction of this case as a direct appeal of adverse decisions of a contracting officer pursuant Section 10(a)(1) of the Contract Disputes Act.

2. The Contract at issue was a one-year contract with four one-year renewal options in favor of the Government. It was first effective June 1, 1997. The Government exercised 3 of the renewal options, and the Contract terminated on or about May 31, 2001.

3. An initial certified, claim for equitable adjustment of the Contract Price based on diversion of purchases and orders, failure to timely pay invoices in accordance with contract terms, failure to honor stock commitments, breach of duty of good faith, and negligent estimation was filed with the Contracting Officer, Ms. Linda Flatley, on or about June 28, 2002.

4. The claim was denied on August 22, 2002.

5. A subsequent, uncertified claim for $100,000.00 for outstanding account receivable owed by the Government to United Medical was filed with contracting officer James Jennings on December 18, 2006.

6. The second claim was deemed denied by operation of law sixty days after it was filed.

7. United Medical has exhausted all required administrative remedies including two requests to the Contracting Officer for use of ADR. Until this lawsuit was filed, the Government denied Plaintiff's ADR requests.

8. United Medical has discharged its obligations under the Contract either by performance or by legal excuse. When the Government renewed the Contract three (3) times, it concluded that United Medical had performed its obligations under the Contract. (Exhibit A attached).

9. This case was originally filed with the United States Bankruptcy Court for the Northern District of Texas on or about September 5, 2002.

10. The Bankruptcy Court, on motion filed by the Government, transferred this case to this Court.

11. This Court granted summary judgment against United Medical on its claim for failure to honor stock commitments.

12. Subsequent to the filing of United Medical's First Amended Complaint, significant discovery has occurred with respect to United Medical's remaining claims.

13. Accordingly, this Second Amended Complaint is based on United Medical's claims filed with the contracting officer for breach by negligent estimation, breach by diversion, breach by failure to timely pay accounts payable to United Medical, breach by failure to pay certain accounts receivable at all, and breach of the Government's duty of good faith, including its implied duty to not hinder or delay performance by United Medical.

## STANDARD OF REVIEW

14. Trial before this court is *de novo* and there is no presumptive validity to the decision of the Contracting Officer who denied United Medical's claim. Contract Disputes Act, §§6(a) and 10(a)(3). *Assurance Co. v. U.S.*, 813 F.2d 1202 (Fed. Cir. 1987).

## PARTIES

15. Plaintiff United Medical Supply Company, Inc. is (and at all relevant times was) a "small business" corporation chartered under the laws of the State of Texas with its headquarters in Fort Worth, Texas.

16. Until 2001, United Medical enjoyed a reputation in the medical supply community as an industry leader in the medical supply business.

17. As recently as September 2000, United Medical was independently rated the best regional distributor of medical supplies in the United States and fourth best overall distributor out of the 567 distributors evaluated. Its 96.84 rating was higher than any national or other regional distributor. Only three local distributors had higher ratings.

18. United Medical is now operating as a reorganized debtor under a confirmed "Chapter 11 liquidating plan."

19. Defendant is the United States. It has appeared in this case through DOJ counsel and is typically referenced in this pleading as the Government. It also appeared in the general Chapter 11 case filed by United Medical, but did not file a proof of claim or otherwise make any claim against United Medical.

## CLAIMS

20. United Medical seeks an equitable adjustment and damages award based on the Government's breaches described herein. To some extent the claims are additive and to some extent they are duplicative. To the extent that the claims are duplicative, United Medical pleads such claims in the alternative and requests a judgment that awards United Medical the maximum dollar amount to which it may be entitled.

## CLAIM 1
## DIVERSION OF PURCHASES AND ORDERS

21. United Medical seeks judgment against the United States for lost profits resulting from DAPA item purchases by MTFs from third parties that should

have been made from United Medical under the requirements contract at issue ("the Contract").

**The Contract**

22. The Contract was a requirements contract covering certain types of medical supplies and hand held surgical instruments.

23. The Contract was part of the Defense Supply Center Philadelphia ("DSCP") Prime Vendor Program.

24. The Contract required various medical related facilities in Texas, New Mexico, Oklahoma and Fort Huachuca, Arizona to purchase a broad range of medical supplies and equipment from United Medical. The facilities are commonly called Medical Treatment Facilities ("MTFs"), although a few did not actually treat patients. The geographic region was named the Lone Star Region.

25. The two largest Lone Star MTFs in terms of dollars of medical products used were located at Fort Bliss in El Paso Texas (William Beaumont Hospital) and Fort Sam Houston in San Antonio Texas (Brooke Army Medical Center or "BAMC").

26. There were a number of DSCP prime vendor contracts other than the Contract. These were based on geographic location and types of medical products covered by the particular contract.

27. The Contract was the second prime vendor contract for the Lone Star Region and is part of what the Government commonly called its GEN I Prime Vendor Program.

28. The previous prime vendor contract for essentially the same area and types of products was between the Government and a distributor then known as Owens & Minor. The Government sometimes called this the GEN 0 Prime Vendor Program.

29. Under the Contract, the various medical facilities subject to the contract were required to order all of the medical products described in the Contract, with minor exception, from United Medical.

**The Types of Medical Products Subject to the Requirements Contract.**

30. The medical products the Government was required to order and purchase from United Medical were all of the MTFs' requirements for, "consumable and disposable medical/surgical products and hand-held surgical instruments" subject to Distribution and Pricing Agreements ("DAPAs").

31. The products covered by the Contract were typically called, "DAPA items."

32. DSCP did not consider DAPAs contracts.

33. At any given time there were over one-hundred thousand DAPA items in the DAPA catalogue, but only a small fraction of those items were actually used in any appreciable quantity by the MTFs.

**DAPAs.**

34. DAPAs were informal agreements between the Government and manufacturers and distributors that fixed the maximum amount that the Government could be charged for a given DAPA item.

35. These manufacturers and distributors were typically called, "DAPA Holders."

36. The DAPA catalogue was constantly changing for a variety of reasons. One type of DAPA item would be replaced with another. One DAPA Holder might be acquired or merged with another DAPA Holder. New products were routinely added or deleted from the DAPA database by the DAPA Holder.

37. In contrast to the representation made in the Solicitation, DAPA Holders were not required by the DAPA Agreement to do business with United Medical, and some refused to do so.

38. Another problem encountered with the DAPA concept was that product numbers would change, even though the product itself did not change.

39. Some DAPA Holders did not maintain product liability insurance, which prevented United Medical from selling their products under the Prime Vendor contract.

40. Notwithstanding problems with the DAPA concept and the misrepresentation by the Government about the binding nature of the Distribution and Pricing Agreements, United Medical obtained agreements to

distribute virtually all DAPA products that were actually used by the various Military Medical Treatment Facilities ("MTFs") in the Lone Star Region.

**Usage Data for DAPA items.**

41. United Medical was a distributor. It would purchase product from the various DAPA Holders for its inventory and then ship to the MTFs as the product was ordered.

42. The Prime Vendor Program was an inventory management program. The Government wanted the prime vendors such as United Medical to inventory those products the Government used, but not over inventory since over-inventory would increase costs and defeat the purpose of the Prime Vendor programs.

43. To accomplish this inventory management goal, the MTFs were required to provide United Medical with usage data for the "consumable and disposable medical/surgical products and hand-held surgical instruments" historically used by the MTF.

44. The obligation to provide usage data was a continuing obligation. The Government was required to provide the data before the effective date of the Contract and periodically thereafter.

45. United Medical was only required to stock items for which it had current usage data.

46. The parties agree that accurate usage data was essential to make the program work.

47. United Medical's had three types of delivery obligations: just-in-time ("JIT"), extended delivery ("EDO") and emergency. JIT was a 24 hour obligation, EDO was a ten-day obligation.

48. When an MTF had not provided United Medical with current usage data for a given DAPA item, it was expected that the item would be ordered by and EDO, not JIT.

49. The MTFs were never able to provide United Medical with accurate usage data and routinely placed JIT orders for products for which no current usage data was available.

50. In an attempt to build a reliable usage data database during the Contract term, United Medical relied on its historical sales to the Lone Star MTFs.

51. United Medical did not have any usage data for purchases made by an MTF from other sources during the contract period.

**Estimation of Diverted Purchases**

52. A diverted purchase is a purchase that the Government was contractually required to purchase from United Medical but which was made from some other party.

53. There were a variety of reasons that purchases were made from third parties that should have been made from United Medical. These include orders

placed as JIT order when they should have been placed as EDO orders because usage data was either not provided or stale. Primarily though, diversions occurred because individuals purchased DAPA items from third parties *via* alternative purchase methods either because of convenience or ignorance of the Contract's requirements.

54. It is not practical to attempt to identify each diversion transaction and that an estimate of the dollar amount of the diversions must be made.

**Estimation of Maximum Diverted Purchases**

55. In October 2002, United Medical served the following interrogatory number 7 on Defendant,

> 7. For each participating MTF, identify the MTF and state, for each contract year, the dollar amount of diverted purchases made by that MTF for that contract year during the term of the contract between the Government and United Medical. The term "diverted purchases" as used in this interrogatory means purchases made by the MTF from third parties which it contractually was required to first order from United Medical but did not.

56. Initially the Government responded that it was not aware of any diverted purchases.

57. The Government amended its answer on July 5, 2006 and estimated maximum diverted purchases of $44,242,718.66

58. In its amended response, the Government claimed that reductions from its estimated maximum dollar amount of diverted purchases should be made for purposes of awarding damages.

59. In calculating its $44 million estimate, the Government, claimed,

> We [the Government] cannot provide a definitive answer, because the purchasing records currently known to be available do not reflect quantities, or dollar values, of individual items purchased. Absent detailed records concerning individual items, it is impossible to determine, among other things, whether an item was subject to a DAPA, or available from Plaintiff, at the time of purchase….
>
> [but] we can derive various estimates of the dollar values of covered items purchased by each MTF from third parties, applying a range of assumptions.

60. The Government, however, did not make those various estimates notwithstanding its statement that it could make the estimates and a Court order directing it to make those estimates. It simply made a qualified estimate of maximum diverted purchased based on the assumptions it described.

61. The qualification added to its $44 million estimate was,

> The estimates below can (and should, for purposes of assigning damages) be reduced pro rata by inserting more reasonable assumptions concerning (i) the proportion of items with SIC code 5047 which were scheduled supplies under plaintiff's prime vendor contract and (ii) the missing 1998 data.

62. The Government's maximum estimate was based on flawed assumptions.

63. The Government's estimate was based on the incorrect assumption that all diversions were OIG recorded credit card purchase identified by standard industry code (SIC) of 5047.

64. The Government's assumption that all diversions were made by OIG recorded credit card purchases and coded 5047 is incorrect.

65. Documents produced by the Government evidence that not all diverted purchases were recorded in the OIG data and most purchases of diverted products were not SIC coded 5047.

66. The Government also omitted significant time-periods for at least two MTFs from its estimate.

**Appropriate Reductions from Estimated Maximum Diversions.**

67. United Medical agrees that certain reductions from estimated maximum diversions are required as part of the damages calculation.

68. A reasonable reduction should be made to account for purchased items that were not subject to the contract.

69. A reasonable reduction should be made to account for DAPA items purchased by the MTFs that would not have been filled by United Medical unless the Government was the cause of such orders not being fulfilled.

70. United Medical disagrees with the Government, however, that a reduction should be made based on whether the DAPA product purchased was or was not in United Medical's inventory on the date of purchase. United Medical's inventory was based on usage data, and the primary source of usage data was United Medical's historical sales to the Government. Usage data for diverted purchases was not provided to United Medical. Moreover, the OIG data does not distinguish between JIT orders and EDO orders. Even if a diverted order had been placed with United Medical, the fact that United

Medical might not have that item in stock when the order was received is not determinative of whether United Medical could or could not have filled the order.

**Damages for Diverted Orders**

71. United Medical suffered lost profits as a result of the diversion of orders and purchases by the Government.

72. United Medical requests an award of damages consisting of profits it lost due to diverted purchases by the Government, or, if the Court does not award United Medical its lost profits, an equitable adjustment to the Contract Price.

**CLAIM 2**
**NEGLIGENT ESTIMATION**

73. As part of its Solicitation, the Government was required to estimate the volume of orders that would be placed against the Contract.

74. The Government had an obligation to exercise ordinary care in making its estimate.

75. The duty to exercise ordinary care in making estimates, includes a duty to update estimates based on newly acquired information.

76. A breach of the duty to exercise ordinary care is a breach of contract.

77. The Government did not exercise ordinary care in making the estimate.

78. Indeed, documents and testimony obtained during discovery evidence such a cavalier attitude to support a finding that the Government's estimates were

made in bad faith and exaggerated for the purpose of obtaining reduced bids by prospective prime vendors.

79. The Government expected United Medical to rely on the Government's estimates, and United Medical did rely on the Government's estimates to the detriment of United Medical. Indeed, the Government admitted that if its estimates would have been significantly lower, United Medical would have substantially increased its bid percentage.

80. The Award, No. SP0200-97-D-7133 dated January 30, 1997, estimated the value of the Contract over a five-year period at $272,268,214.00 with a first-year value of $30,177,346.00. These estimates were directly based on the estimates the various MTFs and service branches provided to DSCP.

81. Various Solicitation documents made estimates of purchases similar in magnitude to the Contract Value stated in the award.

82. The Government repeatedly represented to United Medical that the estimates were based on historical purchases of the types of medical/surgical covered by the proposed contract.

83. The purchase estimates were based on a DSCP internal one-page document prepared by DSCP no later than November 6, 1995.

84. The estimates provided to United Medical were negligent for many reasons, among them being:

a. The November 1995 estimates were for purchases of all medical supplies, not just Government's estimates of orders it would place against the Contract;

b. By November 1995, the Government had sufficient experience under the GEN 0 Prime Vendor program with prime vendor Owens & Minor to know that the November 6, 1995 one-page estimate did not even come close to representing a reasonable volume of purchases under the Contract, but chose to ignore that data;

c. The Government made no meaningful attempt to confirm the accuracy of the estimates between November 6, 1995 and January 30, 1997;

d. DSCP's 1995 and 1996 internal reports summarizing purchase volumes of different types of medical supplies and sources of those purchases significantly differs from both the November 6, 1995 DSCP internal estimate and Solicitation estimates; and

e. By January 30, 1997, the Government had sufficient experience with other GEN 0 and GEN I prime vendor contracts to know that its estimating methodology was seriously flawed.

**Damages for Negligent Estimation**

85. The appropriate measure of damages under current case law is an award of unabsorbed overhead, either as a damage award or equitable adjustment to the Contract Price.

86. The unabsorbed overhead calculation must be based on the difference between the negligent estimate and a non-negligent estimate, not on actual purchases unless those happen to represent a non-negligent estimate.

87. United Medical suffered unabsorbed overhead damages as a result of the Government's breach of contract by negligent estimation.

88. For the Government's negligent estimation, United Medical seeks recovery as a damage award, or alternatively, an equitable adjustment to the Contract Price, an amount equal to its unabsorbed overhead, but only to the extent that such award is not duplicative of any award made for diversion.

## CLAIM 3
## ACCOUNT CLAIM

89. The Government ordered, received and accepted products provided by United Medical for which it has not paid and which are due and owing.

90. The Government's refusal to even acknowledge the validity of the claim has been made in bad faith.

91. DSCP recently admitted that it holds approximately $40,000 of funds received from the various MTFs for purchases made from United Medical.

92. DSCP would not provide the reasons that those funds have not been turned over to United Medical, but the documents obtained evidence that the purpose in withholding the funds was to obtain settlement leverage over United Medical.

93. The Government repeatedly, and falsely, insisted that it could not investigate United Medical's claim for outstanding account balances unless United Medical could identify the Government's call numbers with United Medical's invoice numbers, even though United Medical could (and did) provide a list of the Government's call numbers for which it showed a balance outstanding.

94. United Medical's account records maintained in the ordinary course of its business evidence that it is owed over $180,000.00 plus interest.

95. Because United Medical had to submit an uncertified claim on the account, the claim it actually submitted to the contracting officer, James Jennings, was limited to $100,000.00.

96. For the reasons discussed below in its breach of duty of good faith, particularly the segment dealing with the failure of the Mercator Translator, United Medical's records are more reliable than the Government's records, if any, that form the basis for any claim that it does not owe United Medical at least $100,000 plus CDA interest.

97. United Medical requests that the Court award it contract damages of $100,000.00 plus CDA interest on its outstanding account claim.

**CLAIM 4**
**BREACH OF DUTY OF GOOD FAITH**

98. Under the Contract, the Government owed United Medical a duty of good faith, including a duty not to hinder or delay Contract performance by United Medical.

99. The Government breached that duty in several respects as described below.

**The Mercator Translator Problem**

100. In early 1999 the Government elected to install an electronic component in its invoice payment system known as a Mercator Translator.

101. The Mercator Translator's function was to translate the language from a sending computer into the language of the receiving computer so that contractor invoices submitted electronically could be processed and paid.

102. That function previously had been performed, satisfactorily, by another brand of translator.

103. Almost from day one the translator did not work. The result was a tragic backlog of invoice payments to various contractors, including United Medical.

104. During early discovery in this case, United Medical discovered a series of internal "crisis" DSCP emails, including emails predicting the demise of United Medical as a result of the failure of the Mercator Translator. Ms. Sara Bird, in an internal July 1, 1999 DSCP email, wrote to John Boyle,

> Jack, We certainly appreciate the extraordinary efforts Bud Wellens and your office have made to shore up our failing electronic invoicing system. Perhaps after today, we will get the attention from the IT folks that we all have been demanding. As you personally may not be aware, United Medical is a small, minority owned distributor. We can't afford the adverse publicity nor the deterioration of service to our Texas customers if they are unable to pay their bills and are cut off from their suppliers. Their cash flow is very tight. If you can help get them the money they are owed, we'd be grateful…. We have

> established a reputation for reliability in paying our bills. Our low distribution fees are for the most part dependent on cash management. These problems have set us back with the industry. I suppose we can call it the first casualty of Y2K.

105. Notwithstanding the terrible problem being experienced by DSCP, it decided either affirmatively or simply by default not to notify United Medical of the problem. Rather, it kept telling United Medical that it must not be submitting its invoice payments in the proper electronic format.

106. Several of the DSCP internal emails describe an effort by some DSCP personnel to hand-pay United Medical, but a final election by DSCP not to do that because it had bigger fish to fry.

107. Until November 2007, the Government took the position that the Mercator Translator problem was short and temporary. That was not the case and the Government had no basis for that position.

108. Approximately one-year after the failure of the Mercator Translator became an issue, DSCP contacted Mr. Ralph Colavita to fix the problem, primarily because of his expertise with the Mercator Translator in another area of the Department of Logistics.

109. Mr. Colavita substantially solved the problem around the summer of 2000.

110. Throughout the period in which the Mercator Translator failure was an issue, the Government:

    a. Never notified United Medical of the problem;

b. Kept ordering products from United Medical at the rate of approximately $45,000 per day with knowledge that United Medical was in a financial crisis caused by the failure of the Government to honor its payment obligations and with knowledge that it was reasonably probable that the Government would not timely pay for the products it kept ordering;

c. Never notified the MTFs of the problem;

d. Never notified United Medical's secured lender, CIT Credit Finance, Inc., of the problem so that it might make lending concessions to United Medical;

e. Kept advising United Medical that the problem was with United Medical's invoicing system; and

f. Kept instructing United Medical to resend its invoices even though the Government knew that the invoices were being resent into the same defective system.

111. The Government admits that it should have notified United Medical of the problem, but cannot provide any reason for its failure to provide the notification.

**The Account Receivable Mess**

112. The Government's failure to pay United Medical's outstanding account receivable is not simply a typical dispute over whether funds are owed or not owed.

113. The Government has known since before this lawsuit was filed that various MTFs had forwarded funds to DSCP as payments due United Medical for products purchased by those MTFs.

114. The Government has known since before this lawsuit was filed that many of its payment related records had been destroyed by the failure of the Mercator Translator.

115. Notwithstanding the Government's knowledge about the problems it had caused and was causing, the Government elected to attempt to leverage the account receivable by putting United Medical in a duress situation.

116. A DSCP internal email of January 18, 2001 from Steven McManus to John Cuorato paints the picture. The issue is whether DSCP should pay United Medical $284,000 owed on account. The response was,

> I think in the end we will have to give him the money, but I would like to make sure we get our money's worth.

**The Usage Data Issue**

117. Successful inventory management under the Prime Vendor Program required complete and accurate Usage Data.

118. Plaintiff never received complete and accurate Usage Data from the ordering facilities, and advised the Government of this problem on numerous occasions.

119. The term "Usage Data" was defined under the Contract as "items with associated quantities, designated by the ordering facility as those that will [be] ordered under the Prime Vendor program."

120. Each ordering facility had two basic obligations to provide Usage Data.

121. First, it had to provide Usage Data to Plaintiff during the transition period between Contract award and the June 1, 1997 effective date. Specifically, the each facility was supposed to provide the Usage Data within ten days of Contract award.

122. Second, each ordering facility had to periodically provide Usage Data during the term of the Contract for items that it desired to order unless that item had been purchased in the same or greater quantities during the 45-day period immediately before the month in which the item was being ordered.

123. The Government breached its obligation to provide Usage Data during both the transition period and the Contract period.

124. The failure by the Government to provide usage data to United Medical was the subject of DSCP internal correspondence and debate.

125. On July 16, 1997, Glenn T. Chenoweth, then Chief, Programs and Contract Integrity Division with the DPSC, wrote an internal memorandum requesting a "fairness" Contract modification for United Medical. His primary justification for that was his acknowledgement that the Contract required the Government to provide Usage Data within ten days of Contract award and

that the Government wholly failed to do this. He goes on to state that the lack of Usage Data was going to impair Plaintiff's ability to perform.

126. On August 27, 1997 Michael Schmitt, DPSC Project Manager for the Lone Star Region responded to Mr. Chenoweth's request. Mr. Schmitt concluded that the Government had failed to provide Usage Data to Plaintiff in accordance with the Contract requirements, but that the Usage Data was so flawed that providing it might have created more problems than it solved. He also stated,

> [M]any of the contractual problems arising in the Lone Star region since December 2, 1994 were 95% caused by the Government's failure to act, provide information, or the MTF's failure to embrace the Prime Vendor concept. But, Mr. Schmitt opposed the Contract modification for Plaintiff proposed by Mr. Chenoweth because "there is nothing founded in any type of Government contracting law that requires "the interest of fair treatment of all parties concerned."

127. United Medical did not receive the Contract modification requested by Mr. Chenoweth.

128. On August 6, 1997 Brooke Army Medical Center, one of the ordering facilities in the Lone Star Region, concluded that bad Usage Data was severely impacting fill rates and that the Usage Data was "broken" and needed a manual fix.

129. Ms. Linda Flatley warned DPSC personnel that it was subject to a claim if complete and accurate Usage Data was not provided because the prime vendors did not bid expecting to have to work with piecemeal data.

130. Much of Plaintiff's efforts throughout the period beginning January 30, 1997 through March 2001 were spent trying to create reliable usage information for the ordering facilities in the Lone Star Region, efforts that increased the cost of performance and efforts that Plaintiff had planned on using to otherwise perform its Contract obligations.

**Request for Damages or Equitable Adjustment for the Government's Breach of Duty of Good Faith including Duty not to Hinder or Delay performance.**

131. For the breaches of duty of good faith including the duty not to hinder or delay contractor performance United Medical requests an award of damages, or in the alternative, an equitable adjustment to the Contract Price to the extent that such an award is not duplicative of any sums awarded under Claims 1, 2 and 3.

132. Plaintiff's request includes an award of lost profits and damages to reputation caused by the Government's breach of the implied duties described above.

**INCORPORATED AND ATTACHED APPENDICES**

133. Plaintiff attached to and incorporates in this Amended Complaint the following: Exhibit A – the Government's conclusions pertaining to United Medical's performance in connection with each of the three contract renewals; Exhibit B – excerpts from the Contract Documents; Exhibit C – The page on which the Government based its Solicitation Estimate and Contract Value; Exhibit D – Internal Government correspondence regarding the Mercator Translator problem previously filed as part of the summary judgment record;

and Exhibit E – Internal Government correspondence pertaining to United Medical's account receivable claim.

134. Plaintiff incorporates as an Appendix to this Complaint the Appendices to the Original Complaint filed in the United States Bankruptcy Court and transferred as part of the record by that Court to this Court.

135. Plaintiff also incorporates as an Appendix to this Second Amended Complaint those documents filed by Plaintiff as an Appendix to its First Amended Complaint.

**REQUEST FOR RELIEF**

Plaintiff requests that after trial on the merits, and after any required election of remedies, Plaintiff be awarded the maximum allowable judgment against the Government for Plaintiff's actual and special damages and/or an equitable adjustment to the Contract Price, including lost profits, unabsorbed overhead, $100,000 for outstanding and unpaid invoices and Contract interest due thereon, damage to reputation, plus interest on its claim as allowed by law, plus all other relief to which it justly may be entitled.

Plaintiff further requests that following entry of judgment and on separate application the Court grant an award of non-taxable costs as provided by the Equal Access to Justice Act.

Signed January 4, 2008.

Respectfully submitted,

s/Frank L Broyles
Frank L. Broyles
State Bar No. 03230500
GOINS, UNDERKOFLER, CRAWFORD
& LANGDON, LLP
1201 Elm Street
4800 Renaissance Tower
Dallas, Texas 75270
(214) 969-5454
(214) 969-5902 Fax

Attorney for Plaintiff

CERTIFICATE OF SERVICE

On January 4, 2008 the above Second Amended Complaint and exhibits were served on the persons shown below by the method shown below.

/s Frank L. Broyiles

**PERSONS SERVED:**

**Kyle Chadwick via email.**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | MAIN CASE NO: 03-CV-289<br>Consolidated case no: 07-cv-187<br>Judge Allegra |

**EXHIBIT A TO SECOND AMENDED COMPLAINT**

**FINDINGS BY DSCP IN CONNECTION WITH DSCP'S EXERCISE OF CONTRACT OPTIONS YEARS**

OPTION YR 1 - PAGES A-1 to A-5

OPTION YR 2 - PAGES A-6 to A-13

OPTION YR 3 - PAGES A-14 to A-22

## FINDINGS AND DETERMINATION OF THE CONTRACTING OFFICER

Based on the following findings, it is the determination of the Contracting Officer, in accordance with FAR 17.207, to exercise option year one, for a period of one year, for the Medical/Surgical Prime Vendor Program - Lone Star Region, contracts SP0200-97-D-7133 (JITO/EDO) and SP0200-97-D-7134 (Stockless) dated January 30,1997 (with an effective date of June 1, 1997). The first year option will be effective June 1, 1998 and will expire on May 31, 1999.

## FINDINGS

1. Request for Proposal #DLA120-93-R-0587 was synopsized and issued under Full and Open Competition procedures. Three offers were received. Contracts SP0200-97-D-7133 and SP0200-97-D-7134 were awarded to United Medical Supply on January 30, 1997, using a Best Value acquisition methodology with technical quality being more important than price. These contracts cover the distribution of medical/surgical products to nineteen facilities in the Lone Star Region. The contracts were awarded for one year plus four one-year option periods. The estimated annual sales volume of the facilities in the region is $28,357,750.00 for the base year and $56,715,500.00 for each of the option years. Each year, the percentage of sales for JITO/EDO is expected to decrease and the Stockless percentage is expected to increase. The distribution fees for the base year plus option years are as follows:

| | Distribution Fee | Estimated Total |
|---|---|---|
| **Base Year** | | |
| JITO/EDO | 6.4% | $1,778,598 |
| Stockless | 7.4% | 41,969 |
| | | $1,820,567 |
| **Option Year 1** | | |
| JITO/EDO | 6.4% | $3,194,217 |
| Stockless | 7.4% | 503,634 |
| | | $3,697,851 |
| **Option Year 2** | | |
| JITO/EDO | 6.4% | $2,504,556 |
| Stockless | 7.4% | 1,301,054 |
| | | $3,805,610 |
| **Option Year 3** | | |
| JITO/EDO | 6.4% | $1,851,194 |
| Stockless | 7.4% | 2,056,504 |
| | | $3,907,698 |
| **Option Year 4** | | |
| JITO/EDO | 6.4% | $1,488,215 |
| Stockless | 7.4% | 2,476,199 |
| | | $3,964,414 |

DSCP 4-07-0012

2. One subsequent Medical/Surgical Prime Vendor award has been made since the award of this contract. The award was made to Allegiance Healthcare Corporation and is included in the list below. Twenty-three Medical/Surgical Prime Vendor contracts have been awarded as of this date. All twenty-three awards were made under full and open competition. The following information indicates all Medical Surgical Prime Vendor Contracts awarded as of this date:

| **REGION** | **PRIME VENDOR** | **DISTRIBUTION FEES** Yr 1 | Yr 2 | Yr 3 | Yr 4 | Yr 5 |
|---|---|---|---|---|---|---|
| Cascades | Bergen Brunswig Medical | 6.5% | 6.0% | 5.5% | 5.5% | 5.5% |
| IL/KY/MO | Bergen Brunswig Medical | 5.9% | 5.8% | 5.7% | 5.6% | 5.5% |
| FL/GA | Owens & Minor | 6.0% | 5.5% | 5.5% | 5.5% | 5.5% |
| Panhandle | Owens & Minor | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| OH/IL | Bergen Brunswig Medical | 5.5% | 5.5% | 5.5% | 5.5% | 5.5% |
| Carolinas (Panama/Honduras) | Bergen Brunswig Medical | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Rocky Mountains | Bergen Brunswig Medical | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Midwest | Midwest Medical | 5.9% | 5.8% | 5.7% | 5.6% | 5.5% |
| Hawaii | Pacific Criticare | 14.2% | 13.2% | 11.2% | 10.2% | 10.2% |
| Europe | Bergen Brunswig Medical | 6.7% | 5.86% | 5.86% | 5.86% | 5.86% |
| | Surge | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| AL/TN/ARK (Puerto Rico) | Bergen Brunswig Medical | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Montana | Kreisers, Inc. | 5.9% | 5.5% | 5.5% | 5.5% | 5.0% |
| Alaska | Bergen Brunswig Medical | 13.0% | 13.0% | 13.0% | 13.0% | 13.0% |
| Dakotas | Kreisers, Inc | 5.9% | 5.5% | 5.5% | 5.5% | 5.0% |
| Utah/Idaho | Bergen Brunswig Medical | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Tidewater | Bergen Brunswig Medical | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| San Francisco | Owens & Minor | 5.9% | 5.75% | 5.2% | 5.0% | 5.0% |
| Pacific | Bergen Brunswig Medical | 8.91% | 6.9% | 6.9% | 6.9% | 6.9% |
| | Surge | 8.91% | 6.9% | 6.9% | 6.9% | 6.9% |
| NY/NE | Owens & Minor | 8.0% | 7.5% | 5.5% | 5.5% | 5.5% |
| National Capitol | Owens & Minor | 6.0% | 5.75% | 5.3% | 5.25% | 5.25% |
| | Stockless | 13.0% | 12.75% | 12.5% | 12.0% | 11.0% |
| Wilford Hall | Owens & Minor | 7.0% | 7.0% | 6.25% | 5.0% | 5.0% |
| Lone Star | United Medical Supply | 6.4% | 6.4% | 6.4% | 6.4% | 6.4% |
| | Stockless | 7.4% | 7.4% | 7.4% | 7.4% | 7.4% |
| San Diego | Allegiance Healthcare Corp | 5.1% | 5.1% | 4.9% | 4.7% | 4.5% |

An informal analysis of prices reveals that the first option year distribution fee for the Lone Star Region compares favorably to the distribution fees for all Medical/Surgical Prime Vendor contracts. Therefore, it is determined that the 6.4% distribution fee for option year one of contract SP0200-97-D-7133 (JITO/EDO) is fair and reasonable. The 7.0% distribution fee for contract SP0200-97-D-7134 (Stockless) compares favorably with the National Capitol Region (the only other Stockless contract) and is therefore considered fair and reasonable.

3. On April 29, 1998, United Medical Supply was sent a Preliminary Notice to Exercise Option Year One. The notice advised United Medical Supply that the Government is considering voking the option in accordance with Option Clause 52.217-9P10, Option for Requirements Contract Term Extension. United Medical Supply was also informed that the preliminary notice does not commit the Government to an extension.

DSCP 4-07-0013

4. Consideration was also given to other factors which impact overall cost such as the need for continuity of operations, investment in training and equipment and the potential costs of disrupting operations. Each prime vendor has its own proprietary electronic ordering system. As customers become more familiar with a particular firm's ordering system, efficiency increases and other associated supply management costs decrease. Awarding the contract to another Prime Vendor and having to start over will eliminate these operational economies. The contract was designed for a five-year period in order to maximize efficiency. Failure to exercise the option at this time would have a tremendous impact on the overall mission of the ordering facilities in the Lone Star Region.

5. In accordance with FAR 17.207(c) the following conditions have been met:

a. The requirement covered by the option fulfills an existing Government need;
b. The exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors considered and;
c. The option was included in the original synopsis and was evaluated with the initial proposals.

**DETERMINATION**

Based on the above findings, it is the intent of the undersigned to exercise the first option year under subject contracts. The option year one distribution fee (6.4% for JITO/EDO and 7.4% for Stockless), is the same as the base year distribution fees. Based on estimated requirements of $56,715,500, the total estimated value of the option year is $60,413,351. This figure represents $56,715,500 for the estimated requirements plus $3,697,851 ($3,194,217 for JITO/EDO plus $503,634 for Stockless) for distribution fees. Execution of the option is the most advantageous way of fulfilling the Government's needs, price and other factors considered.

United Medical Supply has demonstrated a full understanding of the Government requirements and has performed all the required tasks and functions cited in the aforementioned contract. The firm is a commercially recognized large volume distributor of medical/surgical products. It has been determined that United Medical Supply, from a critical review of its commercial operations, can handle the financial and logistical obligations of this contract without difficulty. In accordance with the provisions of FAR 9.105-2, I hereby determine that United Medical Supply is considered to be responsible within the meaning of FAR 9.103 and 9.104.

James Jennings 5/8/98
JAMES JENNINGS
Contracting Officer

DSCP 4-07-0014

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

| | |
|---|---|
| 1. CONTRACT ID CODE | PAGE 1 OF 1 PAGES |
| 2. AMENDMENT/MODIFICATION NO. | P00010 |
| 3. EFFECTIVE DATE | June 1 1998 |
| 4. REQUISITION/PURCHASE REQ. NO. | N/A |
| 5. PROJECT NO. *(If applicable)* | |
| 6. ISSUED BY CODE SP0200 | DEFENSE SUPPLY CENTER PHILADELPHIA<br>2800 SOUTH 20TH STREET<br>PHILADELPHIA, PA 19145-5099<br>CONTRACT SPECIALIST: N. MARTIN<br>PHONE: 215-737-8422 |
| 7. ADMINISTERED BY *(If other than Item 6)* CODE SP0200 | SAME AS BLOCK 6 |
| 8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)* | United Medical Supply<br>5117 Northeast Parkway<br>Fort Worth, TX 76106 |
| CODE | 5T804 |
| FACILITY CODE | |
| (x) 9A. AMENDMENT OF SOLICITATION NO. | |
| 9B. DATED *(SEE ITEM 11)* | |
| X 10A. MODIFICATION OF CONTRACT/ORDER NO. | SP0200-97-D-7133 |
| 10B. DATED *(SEE ITEM 13)* | 01/30/97 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. Accounting and Appropriation Data *(If required)*

MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| (x) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER *(Specify type of modification and authority)* Clause 52.217-9P10, OPTION FOR REQUIREMENTS CONTRACT TERM EXTENSION (PRIME VENDOR) |

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

Subject contract is hereby modified as follows:

1. In accordance with Clause 52.217-9P10, Option Year-One of subject contract is hereby invoked. The option period will become effective June 1, 1998 and will expire on May 31, 1999. The distribution fee for the Option Year-One period is 6.4%.

2. All other terms and conditions remain unchanged.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | |
|---|---|
| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)* L. FLATLEY |
| 15B. CONTRACTOR/OFFEROR ____ *(Signature of person authorized to sign)* | 16B. UNITED STATES OF AMERICA BY L. Flatley *(Signature of Contracting Officer)* |
| 15C. DATE SIGNED | 16C. DATE SIGNED 5/27/98 |

NSN 7540-01-152-0070
PREVIOUS EDITION UNUSABLE

Created using PerForm Pro software.

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

| 1. CONTRACT ID CODE | PAGE 1 | OF PAGES 1 |
|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(If applicable)* |
|---|---|---|---|
| P00004 | June 1, 1998 | N/A | |

6. ISSUED BY CODE SP0200

DEFENSE SUPPLY CENTER PHILADELPHIA
2800 SOUTH 20TH STREET
PHILADELPHIA, PA 19145-5099
CONTRACT SPECIALIST: N. MARTIN
PHONE: 215-737-8422

7. ADMINISTERED BY *(If other than Item 6)* CODE SP0200

SAME AS BLOCK 6

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)*

United Medical Supply
5117 Northeast Parkway
Fort Worth, TX 76106

CODE 5T804 FACILITY CODE

(X) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED *(SEE ITEM 11)*

X 10A. MODIFICATION OF CONTRACT/ORDER NO. SP0200-97-D-7134

10B. DATED *(SEE ITEM 13)* 01/30/97

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. Accounting and Appropriation Data *(If required)*

MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| (X) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc).* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: CONTRACTOR'S COPY DUPLICATE ORIGINAL |
| X | D. OTHER *(Specify type of modification and authority)* Clause 52.217-9P10, OPTION FOR REQUIREMENTS CONTRACT TERM EXTENSION (PRIME VENDOR) |

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

Subject contract is hereby modified as follows:

1. In accordance with Clause 52.217-9P10, Option Year - One of subject contract is hereby invoked. The option period will become effective June 1, 1998 and will expire on May 31, 1999. The distribution fee for the Option Year - One period is 7.4%.

2. All other terms and conditions remain unchanged.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)* L. FLATLEY | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR *(Signature of person authorized to sign)* | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA BY L. Flatley *(Signature of Contracting Officer)* | 16C. DATE SIGNED 5/27/98 |

NSN 7540-01-152-9070
PREVIOUS EDITION UNUSABLE

Created using PerForm Pro software.

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

**FINDINGS AND DETERMINATION OF THE CONTRACTING OFFICER**

Based on the following findings, it is the determination of the Contracting Officer, in accordance with FAR 17.207, to exercise option year two, for a period of one year, for the Medical/Surgical Prime Vendor Program – Lone Star Region, Contracts SP0200-97-D-7133 (JITO/EDO) and SP0200-97-D-7134 (Stockless) dated January 30, 1997 (with an effective date of June 1, 1997). The second option period will be effective June 1, 1999 and will expire on May 31, 2000.

**FINDINGS**

1. Request for Proposal (RFP) DLA120-93-R-0587 was synopsized and issued under Full and Open Competition procedures. Three offers were received. Contracts SP0200-97-D-7133 and SP0200-97-D-7134 were awarded to United Medical Supply on January 30, 1997, using a Best Value acquisition methodology with technical quality being more important than price. These contracts covered the distribution of medical/surgical products to nineteen facilities in the Lone Star Region. The contracts were awarded for one year plus four one-year option periods. The estimated annual sales volume of the facilities in the region is $28,357,750.00 for the base year and $56,715,500.00 for each option year. Each year, the percentage of sales for JITO/EDO is expected to decrease and the Stockless percentage is expected to increase. The distribution fees for the base plus option years are as follows:

| | DISTRIBUTION FEE | ESTIMATED TOTAL |
|---|---|---|
| **Base Year** | | |
| JITO/EDO | 6.4% | $1,778,598 |
| Stockless | 7.4% | 41,969 |
| | | **$1,820,567** |
| **Option Year 1** | | |
| JITO/EDO | 6.4% | $3,194,217 |
| Stockless | 7.4% | 503,634 |
| | | **$3,697,851** |
| **Option Year 2** | | |
| JITO/EDO | 6.4% | $2,504,556 |
| Stockless | 7.4% | 1,301,054 |
| | | **$3,805,610** |
| **Option Year 3** | | |
| JITO/EDO | 6.4% | $1,851,194 |
| Stockless | 7.4% | 2,056,504 |
| | | **$3,907,698** |

DSCP-UMS-1681

**FINDINGS AND DETERMINATION OF THE CONTRACTING OFFICER (continued)**

| Option Year 4 | | |
|---|---|---|
| JITO/EDO | 6.4% | $1,488,215 |
| Stockless | 7.4% | 2,476,199 |
| | | $3,964,414 |

2. Twenty-three Medical/Surgical Prime Vendor contracts have been awarded as of this date. Twenty-one of the twenty-three awards were made under full and open competition (Two were Small Business Set-Asides). Listed below are all the current Medical/Surgical Prime Vendor contract distribution fees:

| REGION | PRIME VENDOR | DISTRIBUTION FEES Yr 1 | Yr 2 | Yr 3 | Yr 4 | Yr 5 |
|---|---|---|---|---|---|---|
| Cascades | BBMC | 6.5% | 6.0% | 5.5% | 5.5% | 5.5% |
| IL/KY/MO | BBMC | 5.9% | 5.8% | 5.7% | 5.6% | 5.5% |
| FL/GA | Owens & Minor | 6.0% | 5.5% | 5.5% | 5.5% | 5.5% |
| Panhandle | Owens & Minor | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| OH/IL | BBMC | 5.5% | 5.5% | 5.5% | 5.5% | 5.5% |
| Carolinas | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Rocky Mountains | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Midwest | Midwest Medical | 5.9% | 5.8% | 5.7% | 5.6% | 5.5% |
| Hawaii | Pacific Criticare | 14.2% | 13.2% | 11.2% | 10.2% | 10.2% |
| Europe | BBMC | 6.7% | 5.86% | 5.86% | 5.86% | 5.86% |
| | Surge | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| AL/TN/ARK | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Montana | Kreisers, Inc. | 5.9% | 5.5% | 5.5% | 5.5% | 5.0% |
| Alaska | BBMC | 13.0% | 13.0% | 13.0% | 13.0% | 13.0% |
| Dakotas | Kreisers, Inc. | 5.9% | 5.5% | 5.5% | 5.5% | 5.0% |
| Utah/Idaho | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Tidewater | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| San Francisco | Owens & Minor | 5.9% | 5.75% | 5.2% | 5.0% | 5.0% |
| Pacific | BBMC | 8.91% | 6.9% | 6.9% | 6.9% | 6.9% |
| | Surge | 8.91% | 6.9% | 6.9% | 6.9% | 6.9% |
| NY/NE | Owens & Minor | 8.0% | 7.5% | 5.5% | 5.5% | 5.5% |
| National Capitol | Owens & Minor | 6.0% | 5.75% | 5.3% | 5.25% | 5.25% |
| | Stockless | 13.0% | 12.75% | 12.5% | 12.0% | 11.0% |
| Wilford Hall | Owens & Minor | 7.0% | 7.0% | 6.25% | 5.0% | 5.0% |
| Lone Star | United Medical Supply | 6.4% | 6.4% | 6.4% | 6.4% | 6.4% |
| | Stockless | 7.4% | 7.4% | 7.4% | 7.4% | 7.4% |
| San Diego | Allegiance Healthcare | 5.1% | 5.1% | 4.9% | 4.7% | 4.5% |

An informal analysis of distribution fees reveals that the Lone Star Region distribution fee for option year two compares favorably to the distribution fees for the other CONUS

DSCP-UMS-1682

**FINDINGS AND DETERMINATION OF THE CONTRACTING OFFICER (continued)**

Medical/Surgical Prime Vendor contracts. In addition, the distribution fee is same as the Base Year and Option Years One & Two. Therefore, it is determined that the 6.4% distribution fee for option year two of contract SP0200-97-D-7133 (JITO/EDO) is fair and reasonable. The 7.4% distribution fee for contract SP0200-97-D-7134 (Stockless) compares favorably with the National Capitol Region (the only other Stockless contract) and is therefore considered fair and reasonable.

3. On April 13, 1999, United Medical was sent a Preliminary Notice to Exercise Option Year Two. The notice advised United Medical Supply that the Government is considering invoking the option in accordance with Option Clause 52.217-9P10, Option for Requirements Contract Term Extension. United Medical Supply was also informed that the preliminary notice does not commit the Government to an extension.

4. Consideration was also given to other factors, which impact overall cost such as the need for continuity of operations, investment in training and equipment, and the potential costs of disrupting operations. Each prime vendor has its own proprietary electronic ordering system. As customers become more familiar with a particular firm's ordering system, efficiency increases and other associated supply management costs decrease. Failure to exercise the option at this time would have a tremendous impact on the overall mission of the ordering facilities.

5. In accordance with FAR 17.207 (c) the following conditions have been met:

a. The requirement covered by the option fulfills an existing Government need.
b. The exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors considered.
c. The option was included in the original synopsis and was evaluated with the initial proposals.

**DETERMINATION**

Based on the above findings, it is the intent of the undersigned to exercise the second option year under the contract. The option year two distribution fee (6.4% for JITO/EDO and 7.4% for Stockless) is the same as the base year and option year one distribution fees. Based on the estimated requirements of $56,715,500, the total estimated value of option year two is $60,413,351. This figure represents $56,715,500 for the estimated requirements plus $3,697,851 ($3,194,217 for JITO/EDO plus $503,634 for Stockless) for distribution fees. Execution of the option is the most advantageous way of fulfilling the Government's need, price and other factors considered.

United Medical Supply has demonstrated a full understanding of the Government requirements and has performed all the required tasks and functions cited in the aforementioned contract.

DSCP-UMS-1683

**FINDINGS AND DETERMINATION OF THE CONTRACTING OFFICER (continued)**

The firm is a commercially recognized large volume distributor of medical/surgical products. It has been determined that United Medical Supply, from a critical review of its commercial operations, can handle the financial and logistical obligations of this contract without difficulty. In accordance with the provisions of FAR 9.105-2, I hereby determine that United Medical Supply is considered to be responsible within the meaning of FAR 9.103 and 9.104.

James Jennings 5/11/99
JAMES JENNINGS
Contracting Officer

DSCP-UMS-1684

# REQUEST FOR CONTRACT APPROVAL

THRU: DSCP-MSAA

THRU:

TO: DSCP-MSA

1. ACTION PROPOSED
APPROVAL REQUIRED BY DPSC CONTRACTING POLICY MANUAL 1692-2
[ ] NEW CONTRACT [X] CONTRACT MODIFICATION [ ] PBM

1a. BASIS FOR MODIFICATION ("X", If Applicable)
[X] EXERCISE OF OPTION [ ] OTHER

2. ACCEPTANCE EXPIRATION DATE

2a. ("X" If Applicable)
[ ] EXPEDITED APPROVAL REQUESTED

3. TYPE OF CONTRACT
FIRM FIXED PRICE REQUIREMENTS TYPE

4. BRIEF DESCRIPTION OF SUPPLIES OR SERVICES
PRIME VENDOR FOR MEDICAL/SURGICAL PRODUCTS
LONE STAR REGION - OPTION YEAR 2

4a. QUANTITY 4b. UNIT 4c. UNIT PRICE

5. [ ] PR [ ] MIPR [ ] RONS
a. PR or MIPR Number: N/A
b. Date Received:

6. SOLICITATION
a. Number b. Date Issued c. Date Opened/Closed

7. NAME AND COMPLETE ADDRESS OF CONTRACTOR (Include Division Reference)
UNITED MEDICAL SUPPLY
5117 NORTHEAST PARKWAY
FORT WORTH, TX 76106
PLACE OF PERFORMANCE: VARIOUS

7a. "X" APPLICABLE BOX
[X] SMALL BUSINESS [ ] SMALL DISADVANTAGED BUSINESS [ ] LARGE BUSINESS [ ] LABOR SURPLUS

8. CONTRACT NUMBER
SP0200-97-D-7133/7134

9. AMOUNT IS
[X] ESTIMATED [ ] ACTUAL

9a. TOTAL DOLLAR VALUE
$60,413,351.00

9b. AMOUNT FUNDED

9c. "X" APPLICABLE BOX
[ ] GFP [ ] GFM

9d. DOLLAR VALUED

10. METHOD OF PROCUREMENT
[ ] SEALED BID (IFB) [X] NEGOTIATED (RFP) [ ] OTHER THAN FULL OPEN COMPETITION: 10 USC 2304 (C)

11. INCREASE OPTION IN CONTRACT
[ ] YES [X] NO IF YES, MAXIMUM % 10%

12a. REQUIRED DELIVERY DATE(S) MET.
[X] YES [ ] NO

12. EXTENSION OF COMPETITION
a. NO. SOLICITED [ ] d. NO. LATE [ ]
b. NO. RESPONSIVE [ ] e. NO. MISTAKES [ ]
c. NO. NON RESPONSIVE [ ] f. NO. REJECTED [ ]

13. PRICING BRIEF:
a. COST OR PRICING DATA: [ ] WAS REQUIRED [X] WAS NOT REQUIRED
b. AUDIT: [ ] ACCOMPLISHED [ ] WAIVED [X] NOT REQUIRED
c. PRICE ANALYSIS WAS ACCOMPLISHED BY: [ ] C&P ELEMENT [X] CONTRACTING ELEMENT
d. RELATIONSHIP OF PRICE TO PRIOR PROCUREMENT (Detail in Price Analysis, Tab 21)
[X] LOWER .10 % [ ] HIGHER % [ ] SAME [ ] NO PRIOR PROCUREMENT INFORMATION OBTAINABLE

REMARKS:

EXERCISE FOR OPTION YEAR 2 FOR A PERIOD OF ONE YEAR.

OPTION PERIOD WILL BE EFFECTIVE FROM J UNE 1, 1999 WILL EXPIRE ON MAY 31, 2000.

DISTRIBUTION FEE FOR OPTION YEAR 2 IS: 6.4% (SP0200-97-D-7133, JITO/EDO)
7.4% (SP0200-97-D-7134, STOCKLESS)

14. [X] APPROVED FOR LEGAL SUFFICIENCY (For Comments See Page 2)

TITLE: Asst Counsel

SIGNATURE: [signature] Stallworth

DATE: 4-22-99

15. TYPED NAME AND SIGNATURE OF CONTRACTING OFFICER
JAMES JENNINGS [signature] James Jennings

15a. DATE: 5/11/99

16. NAME AND SIGNATURE OF COMMODITY DIRECTOR/COMMANDER, SHIP AS APPLICABLE
L. FLATLEY [signature] L Flatley

16a. DATE DISPATCHED: 5/11/99

17. ENCLOSURES: [ ] CONTRACT FILE WITH DLA FORM 678 [ ] DPSC-PT FILE COPY [ ] ACQUISITION CHRONOLOGY

DPSC FORM 677
JUNE 90

PAGE 1 OF 2 PAGES
(EF) FF-2.0

DSCP-UMS-1685

**CONTRACT APPROVAL/ DISAPPROVAL ACTION**

| 18. TO: (Constracting Officer) | FROM: (Approval Authority) |
|---|---|
| DSCP-MSAA | DSCP-MSA |

AWARD CITED ON REVERSE SIDE IS:

- [X] a. APPROVAL
- [ ] b. APPROVED SUBJECT TO CONDITIONS CITED BELOW IN "REMARKS"
- [ ] c. DISSAPPROVED ( "Remarks" below for explanation )
- [ ] d. RETURNED FOR ADDITIONAL ACTION REQUESTED IN "REMARKS" BELOW

| TITLE | SIGNATURE (Approval Authority) | DATE |
|---|---|---|
| L. FLATLEY<br>CHIEF, NEW INITIATIVES BRANCH | L. Flatley | 5/11/99 |

RESERVED FOR LEGAL COMMENTS

DPSC FORM JUNE 90 677 (EF)

PAGE 2 OF 2 PAGES

DSCP-UMS-1686

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE | PAGE OF PAGES 1 1

2. AMENDMENT/MODIFICATION NO. P00008
3. EFFECTIVE DATE JUNE 1, 1999
4. REQUISITION/PURCHASE REQ. NO. N/A
5. PROJECT NO. *(If applicable)*

6. ISSUED BY CODE SP0200

DEFENSE SUPPLY CENTER PHILADELPHIA
2800 SOUTH 20TH STREET
PHILADELPHIA, PA 19145
ATTN: D. KENNEDY/DSCP-MSAA/215-737-7075

7. ADMINISTERED BY *(If other than Item 6)* CODE SP0200

SAME AS BLOCK 6

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)*

UNITED MEDI CAL SUPPLY
5117 NORTHEAST PARKWAY
FORT WORTH, TX 76106

CODE 5T804 | FACILITY CODE

(✓) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED *(SEE ITEM 11)*

X 10A. MODIFICATION OF CONTRACT/ORDER NO. SP0200-97-D-7134

10B. DATED *(SEE ITEM 13)* JANUARY 30, 1997

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*
MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (✓) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103 (b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER *(Specify type of modification and authority)* CLAUSE 52.217-9P10, OPTION FOR REQUIREMENTS CONTRACT TERM EXTENSION (PRIME VENDOR) |

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return _________ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

1. IN ACCORDANCE WITH CLAUSE 52.217-9P10, OPTION YEAR TWO IS HEREBY INVOKED. THE OPTION PERIOD WILL BECOME EFFECTIVE JUNE 1, 1999 AND WILL EXPIRE ON MAY 31, 2000. THE DISTRIBUTION FEE FOR THE OPTION YEAR TWO PERIOD IS 7.4%.

2. ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER *(Type or print)*

16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)*
JAMES JENNINGS
CONTRACTING OFFICER

15B. CONTRACTOR/OFFEROR
________________
*(Signature of person authorized to sign)*

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
BY James Jennings
*(Signature of Contracting Officer)*

16C. DATE SIGNED 5/11/99

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

DSCP-UMS-2583

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT** | 1. CONTRACT ID CODE | PAGE OF PAGES 1 | 1

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(If applicable)* |
|---|---|---|---|
| P00016 | JUNE 1, 1999 | N/A | |

| 6. ISSUED BY CODE SP0200 | 7. ADMINISTERED BY *(If other than Item 6)* CODE SP0200 |
|---|---|
| DEFENSE SUPPLY CENTER PHILADELPHIA<br>2800 SOUTH 20TH STREET<br>PHILADELPHIA, PA 19145<br>ATTN: D. KENNEDY/DSCP-MSAA/215-737-7075 | SAME AS BLOCK 6 |

| 8. NAME AND ADDRESS OF CONTRACTOR *(No., street, country, State and ZIP Code)* | (✓) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| UNITED MEDI CAL SUPPLY<br>5117 NORTHEAST PARKWAY<br>FORT WORTH, TX 76106 | | 9B. DATED *(SEE ITEM 11)* |
| | X | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>SP0200-97-D-7133 |
| CODE 5T804 FACILITY CODE | | 10B. DATED *(SEE ITEM 13)*<br>JANUARY 30, 1997 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*
MEDICAL/SURGICAL PRIME VENDOR LONE STAR REGION

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| (✓) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103 (b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER *(Specify type of modification and authority)*<br>CLAUSE 52.217-9P10, OPTION FOR REQUIREMENTS CONTRACT TERM EXTENSION (PRIME VENDOR) |

**E. IMPORTANT:** Contractor ☒ is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

1. IN ACCORDANCE WITH CLAUSE 52.217-9P10, OPTION YEAR TWO IS HEREBY INVOKED. THE OPTION PERIOD WILL BECOME EFFECTIVE JUNE 1, 1999 AND WILL EXPIRE ON MAY 31, 2000. THE DISTRIBUTION FEE FOR THE OPTION YEAR TWO PERIOD IS 6.4%.

2. ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)*<br>JAMES JENNINGS<br>CONTRACTING OFFICER | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br>*(Signature of person authorized to sign)* | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY James Jennings<br>*(Signature of Contracting Officer)* | 16C. DATE SIGNED<br>5/11/99 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

DSCP-UMS-2582

## FINDINGS AND DETERMINATION OF THE CONTRACTING OFFICER

Based on the following findings, it is the determination of the Contracting Officer, in accordance with FAR 17.207, to exercise option year three, for a period of one year, for the Medical/Surgical Prime Vendor Program – Lone Star Region, Contracts SP0200-97-D-7133 (JITO/EDO) and SP0200-97-D-7134 (Stockless) dated January 30, 1997 (with an effective date of June 1, 1997). The second option period will be effective June 1, 2000 and will expire on May 31, 2001.

## FINDINGS

1. Request for Proposal (RFP) DLA120-93-R-0587 was synopsized and issued under Full and Open Competition procedures. Three offers were received. Contracts SP0200-97-D-7133 and SP0200-97-D-7134 were awarded to United Medical Supply on January 30, 1997, using a Best Value acquisition methodology with technical quality being more important than price. These contracts covered the distribution of medical/surgical products to nineteen facilities in the Lone Star Region. The contracts were awarded for one year plus four one-year option periods. The estimated annual sales volume of the facilities in the region is $28,357,750.00 for the base year and $56,715,500.00 for each option year. Each year, the percentage of sales for JITO/EDO is expected to decrease and the Stockless percentage is expected to increase. The distribution fees for the base plus option years are as follows:

| | DISTRIBUTION FEE | ESTIMATED TOTAL |
|---|---|---|
| **Base Year** | | |
| JITO/EDO | 6.4% | $1,778,598 |
| Stockless | 7.4% | 41,969 |
| | | **$1,820,567** |
| **Option Year 1** | | |
| JITO/EDO | 6.4% | $3,194,217 |
| Stockless | 7.4% | 503,634 |
| | | **$3,697,851** |
| **Option Year 2** | | |
| JITO/EDO | 6.4% | $2,504,556 |
| Stockless | 7.4% | 1,301,054 |
| | | **$3,805,610** |
| **Option Year 3** | | |
| JITO/EDO | 6.4% | $1,851,194 |
| Stockless | 7.4% | 2,056,504 |
| | | **$3,907,698** |

**FINDINGS AND DETERMINATION OF THE CONTRACTING OFFICER (continued)**

| | | |
|---|---|---|
| **Option Year 4** | | |
| JITO/EDO | 6.4% | $1,488,215 |
| Stockless | 7.4% | 2,476,199 |
| | | **$3,964,414** |

2. Twenty-three Medical/Surgical Prime Vendor contracts have been awarded as of this date. Twenty-one of the twenty-three awards were made under full and open competition (Two were Small Business Set-Asides). Listed below are all the current Medical/Surgical Prime Vendor contract distribution fees:

| REGION | PRIME VENDOR | DISTRIBUTION FEES Yr 1 | Yr 2 | Yr 3 | Yr 4 | Yr 5 |
|---|---|---|---|---|---|---|
| Cascades | BBMC | 6.5% | 6.0% | 5.5% | 5.5% | 5.5% |
| IL/KY/MO | BBMC | 5.9% | 5.8% | 5.7% | 5.6% | 5.5% |
| FL/GA | Owens & Minor | 6.0% | 5.5% | 5.5% | 5.5% | 5.5% |
| Panhandle | Owens & Minor | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| OH/IL | BBMC | 5.5% | 5.5% | 5.5% | 5.5% | 5.5% |
| Carolinas | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Rocky Mountains | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Midwest | Midwest Medical | 5.9% | 5.8% | 5.7% | 5.6% | 5.5% |
| Hawaii | Pacific Criticare | 14.2% | 13.2% | 11.2% | 10.2% | 10.2% |
| Europe | BBMC | 6.7% | 5.86% | 5.86% | 5.86% | 5.86% |
| | Surge | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| AL/TN/ARK | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Montana | Kreisers, Inc. | 5.9% | 5.5% | 5.5% | 5.5% | 5.0% |
| Alaska | BBMC | 13.0% | 13.0% | 13.0% | 13.0% | 13.0% |
| Dakotas | Kreisers, Inc. | 5.9% | 5.5% | 5.5% | 5.5% | 5.0% |
| Utah/Idaho | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Tidewater | BBMC | 6.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| San Francisco | Owens & Minor | 5.9% | 5.75% | 5.2% | 5.0% | 5.0% |
| Pacific | BBMC | 8.91% | 6.9% | 6.9% | 6.9% | 6.9% |
| | Surge | 8.91% | 6.9% | 6.9% | 6.9% | 6.9% |
| NY/NE | Owens & Minor | 8.0% | 7.5% | 5.5% | 5.5% | 5.5% |
| National Capitol | Owens & Minor | 6.0% | 5.75% | 5.3% | 5.25% | 5.25% |
| | Stockless | 13.0% | 12.75% | 12.5% | 12.0% | 11.0% |
| Wilford Hall | Owens & Minor | 7.0% | 7.0% | 6.25% | 5.0% | 5.0% |
| Lone Star | United Medical Supply | 6.4% | 6.4% | 6.4% | 6.4% | 6.4% |
| | Stockless | 7.4% | 7.4% | 7.4% | 7.4% | 7.4% |
| San Diego | Allegiance Healthcare | 5.1% | 5.1% | 4.9% | 4.7% | 4.5% |

## FINDINGS AND DETERMINATION OF THE CONTRACTING OFFICER (continued)

An informal analysis of distribution fees reveals that the Lone Star Region distribution fee for option year three compares favorably to the distribution fees for the other CONUS Medical/Surgical Prime Vendor contracts. In addition, the distribution fee is same as the Base Year and Option Years One & Two. Therefore, it is determined that the 6.4% distribution fee for option year three of contract SP0200-97-D-7133 (JITO/EDO) is fair and reasonable. The 7.4% distribution fee for contract SP0200-97-D-7134 (Stockless) compares favorably with the National Capitol Region (the only other Stockless contract) and is therefore considered fair and reasonable.

3. On April 12, 2000, United Medical was sent a Preliminary Notice to Exercise Option Year Three. The notice advised United Medical Supply that the Government is considering invoking the option in accordance with Option Clause 52.217-9P10, Option for Requirements Contract Term Extension. United Medical Supply was also informed that the preliminary notice does not commit the Government to an extension.

4. Consideration was also given to other factors, which impact overall cost such as the need for continuity of operations, investment in training and equipment, and the potential costs of disrupting operations. Each prime vendor has its own proprietary electronic ordering system. As customers become more familiar with a particular firm's ordering system, efficiency increases and other associated supply management costs decrease. Failure to exercise the option at this time would have a tremendous impact on the overall mission of the ordering facilities.

5. In accordance with FAR 17.207 (c) the following conditions have been met:

a. The requirement covered by the option fulfills an existing Government need.
b. The exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors considered.
c. The option was included in the original synopsis and was evaluated with the initial proposals.

## DETERMINATION

Based on the above findings, it is the intent of the undersigned to exercise the third option year under the contract. The option year three distribution fee (6.4% for JITO/EDO and 7.4% for Stockless) is the same as the distribution fee for the base year, option year one and option year two. Based on the estimated requirements of $56,715,500.00, the total estimated value of option year three is $60,623,198.00. This figure represents $56,715,500.00 for the estimated requirements plus $3,907,698 ($1,851,194.00 for JITO/EDO plus $2,056,504 for Stockless) for distribution fees. Execution of the option is the most advantageous way of fulfilling the Government's need, price and other factors considered.

United Medical Supply has demonstrated a full understanding of the Government requirements and has performed all the required tasks and functions cited in the aforementioned contract.

**FINDINGS AND DETERMINATION OF THE CONTRACTING OFFICER (continued)**

The firm is a commercially recognized large volume distributor of medical/surgical products. It has been determined that United Medical Supply, from a critical review of its commercial operations, can handle the financial and logistical obligations of this contract without difficulty. In accordance with the provisions of FAR 9.105-2, I hereby determine that United Medical Supply is considered to be responsible within the meaning of FAR 9.103 and 9.104.

Donna M Kennedy
DONNA M. KENNEDY 5/22/00
Contracting Officer

# REQUEST FOR CONTRACT APPROVAL

THRU: DSPC-MSAA
THRU:
TO: DSCP-MSAA

1. ACTION PROPOSED
APPROVAL REQUIRED BY DPSC CONTRACTING POLICY MANUAL 1692-2
[ ] NEW CONTRACT [X] CONTRACT MODIFICATION [ ] PBM

1a. BASIS FOR MODIFICATION ("X", If Applicable)
[X] EXERCISE OF OPTION [ ] OTHER

2. ACCEPTANCE EXPIRATION DATE

2a. ("X" If Applicable) [ ] EXPEDITED APPROVAL REQUESTED

3. TYPE OF CONTRACT: FIRM FIXED PRICE, REQUIREMENTS

4. BRIEF DESCRIPTION OF SUPPLIES OR SERVICES
MEDICAL/SURGICAL PRIME VENDOR
LONE STAR REGION

4a. QUANTITY | 4b. UNIT | 4c. UNIT PRICE

5. [ ] PR [ ] MIPR [ ] RONS
a. PR or MIPR Number: N/A
b. Date Received:

6. SOLICITATION
a. Number: N/A
b. Date Issued:
c. Date Opened/Closed:

7. NAME AND COMPLETE ADDRESS OF CONTRACTOR (Include Division Reference)
UNITED MEDICAL SUPPLY
5117 NORTHEAST PARKWAY
FORT WORTH, TX 76106
PLACE OF PERFORMANCE: SEE ATTACHED SHEET

7a. "X" APPLICABLE BOX
[X] SMALL BUSINESS [ ] SMALL DISADVANTAGED BUSINESS [ ] LARGE BUSINESS [ ] LABOR SURPLUS

8. CONTRACT NUMBER: SP0200-97-D-7133/7134

9. AMOUNT IS [X] ESTIMATED [ ] ACTUAL

9a. TOTAL DOLLAR VALUE: $60,623,198.00

9b. AMOUNT FUNDED

9c. "X" APPLICABLE BOX [ ] GFP [ ] GFM

9d. DOLLAR VALUED

10. METHOD OF PROCUREMENT
[ ] SEALED BID (IFB) [X] NEGOTIATED (RFP) [ ] OTHER THAN FULL OPEN COMPETITION 10 USC 2304 (C)

11. INCREASE OPTION IN CONTRACT
[X] YES [ ] NO IF YES, MAXIMUM % 10%

12. EXTENSION OF COMPETITION
a. NO. SOLICITED [ ]
b. NO. RESPONSIVE [ ]
c. NO. NON RESPONSIVE [ ]
d. NO. LATE [ ]
e. NO. MISTAKES [ ]
f. NO. REJECTED [ ]

12a. REQUIRED DELIVERY DATE (S) MET. [X] YES [ ] NO

13. PRICING BRIEF:
a. COST OR PRICING DATA: [ ] WAS REQUIRED [X] WAS NOT REQUIRED
b. AUDIT: [ ] ACCOMPLISHED [ ] WAIVED [X] NOT REQUIRED
c. PRICE ANALYSIS WAS ACCOMPLISHED BY: [ ] C&P ELEMENT [X] CONTRACTING ELEMENT
d. RELATIONSHIP OF PRICE TO PRIOR PROCUREMENT (Detail in Price Analysis, Tab 21)
[ ] LOWER % [ ] HIGHER % [X] SAME [ ] NO PRIOR PROCUREMENT INFORMATION OBTAINABLE

REMARKS:

EXERCISE OPTION YEAR THREE FOR A PERIOD OF ONE YEAR.

OPTION PERIOD WILL BE EFFECTIVE JUNE 1, 2000 AND WILL EXPIRE ON MAY 31, 2001.

DISTRIBUTION FEE FOR OPTION YEAR THREE IS: 6.4% - SP0200-97-D-7133 - JITO/EDO
7.4% - SP0200-97-D-7134 - STOCKLESS

14. [X] APPROVED FOR LEGAL SUFFICIENCY (For Comments See Page 2)

TITLE: Asst Counsel
SIGNATURE: Andrew L Stallworth
DATE: 4-20-00

15. TYPED NAME AND SIGNATURE OF CONTRACTING OFFICER: DONNA M. KENNEDY [signature]
15a. DATE: 5/22/00

16. NAME AND SIGNATURE OF COMMODITY DIRECTOR/COMMANDER, SRH, AS APPLICABLE: L. FLATLEY [signature]
16a. DATE DISPATCHED: 5/22/00

17. ENCLOSURES: [ ] CONTRACT FILE WITH DLA FORM 678 [ ] DPSC-PT FILE COPY [ ] ACQUISITION CHRONOLOGY

DPSC FORM 677
JUNE 90

PAGE 1 OF 2 PAGES
(EF) FF-20

DSCP-UMS-1663

**CONTRACT APPROVAL/ DISAPPROVAL ACTION**

| 18. TO: (Contracting Officer) | FROM: (Approval Authority) |
|---|---|
| DSCP-MSAA | DSCP-MSAA |

AWARD CITED ON REVERSE SIDE IS:

[X] a. APPROVAL

[ ] b. APPROVED SUBJECT TO CONDITIONS CITED BELOW IN "REMARKS"

[ ] c. DISSAPPROVED ("Remarks" below for explanation)

[ ] d. RETURNED FOR ADDITIONAL ACTION REQUESTED IN "REMARKS" BELOW

| TITLE | SIGNATURE (Approval Authority) | DATE |
|---|---|---|
| L. FLATLEY<br>SECTION CHIEF, NEW INITIATIVES BRANCH | | |

RESERVED FOR LEGAL COMMENTS

DPSC FORM JUNE 90 677 (EF)

PAGE 2 OF 2 PAGES

DSCP-UMS-1664

MAY-05-2000 09:49 BASE CONTRACTING 215 737 7942 P.02

# CONTRACT ANNOUNCEMENT
**(DLAR 4105.1, SUBPART 5.3)**

REPORT CONTROL SYMBOL DD-LA(AR)1279

**TO:** Director, Defense Logistics Agency
ATTN: DLA-B
Cameron Station
Alexandria, VA 22304-6100

**FROM:** DEFENSE SUPPLY CENTER PHILADELPHIA
ATTN: DSCP-MSAA (DONNA KENNEDY)
700 ROBBINS AVENUE
PHILADELPHIA, PA 19111

1a. NAME AND LOCATION OF CONTRACTOR *(Include Division and County; DO NOT USE P.O. BOX)*
UNITED MEDICAL SUPPLY
5117 NORTHEAST PARKWAY
FORT WORTH, TX 76106
(TARRANT COUNTY)

2. PROPOSED AWARD RELEASE DATE: MAY 22, 2000

3a. CONTRACT NUMBER: SP0200-97-D-7133/7134

3b. MODIFICATION NUMBER: P00021/P00012

3c. SOLICITATION NUMBER: DLA120-93-R-0587

1b. POINT OF CONTACT AT CONTRACTOR'S FIRM AND TELEPHONE NUMBER *(President/Vice President)*
WILLIAM BANDY, PRESIDENT
800-333-2733

4. TOTAL DOLLAR VALUE OF THIS ACTION: $60,623,198.00

5. AMOUNT PREVIOUSLY OBLIGATED *(Applicable only if action is a modification)*

6. LOCATION(S) OF PERFORMANCE IF OTHER THAN ABOVE *(Use separate page if necessary; Indicate if subcontractor, include business size and if labor surplus area)*
SEE ATTACHED SHEET

7. USING SERVICE
- [x] ARMY
- [ ] NAVY
- [ ] AIR FORCE
- [ ] MARINE CORPS
- [ ] FEDERAL CIVILIAN AGENCIES
- [ ] OTHER *(Specify)*:

8. CONTRACTOR IS
- [x] SMALL BUSINESS
- [ ] LARGE BUSINESS
- [ ] SMALL DISADVANTAGED BUSINESS
- [ ] IN LABOR SURPLUS AREA
- [ ] LABOR SURPLUS AREA SET-ASIDE
- [ ] SMALL BUSINESS SET-ASIDE

9. EXTENT OF COMPETITION
a. NO. SOLICITED: N/A
b. NO. RESPONSES:
c. [ ] PROPOSAL [ ] SEALED BID [ ] SOLE SOURCE

10. TYPE OF CONTRACT
- [ ] FIRM FIXED PRICE
- [ ] FIXED PRICE WITH ECONOMIC PRICE ADJUSTMENT
- [x] OTHER *(Specify)*: REQUIREMENTS

11.
a. FOREIGN MILITARY SALE *(FMS)* TO: N/A *(Name of Country)*
b. COMBINED PURCHASE FOR ______ *(Name of Service/Agency)*
AND FOR ______ *(Name of Country)* UNDER FMS PROGRAM.

12. EQUAL OPPORTUNITY CLEARANCE OBTAINED: [x] YES [ ] NO

13a. FUNDS AVAILABLE: [ ] YES [ ] NO

13b. FUNDS, SERVICE, FISCAL YEAR: N/A

14. DATE OF PERFORMANCE COMPLETION: MAY 31, 2001

15. ITEM(S) OR SERVICE(S), QUANTITY(S) AND UNIT OF ISSUE, OTHER ADDITIONAL INFORMATION.
THIS ACTION REPRESENTS EXECUTION OF THE THIRD OPTION PERIOD AVAILABLE UNDER SUBJECT CONTRACTS, MEDICAL/SURGICAL PRIME VENDOR, LONE STAR REGION. CONTRACT #SP0200-97-D-7133 CONTAINS THE JITO/EDO PORTION. CONTRACT #SP0200-97-D-7134 CONTAINS THE STOCKLESS PORTION. OPTION PERIOD IS EFFECTION JUNE 1, 2000 AND EXPIRES MAY 31, 2001. DISTRIBUTION FEE FOR OPTION YEAR THREE: 6.4% FOR JITO/EDO, 7.4% FOR STOCKLESS (REMAINS THE SAME AS BASE YEAR & OPTION YEARS ONE AND TWO).

CONCUR: Joseph Gushue
JOSEPH GUSHUE
Chief, Integrity Office
Office of Procurement Management

16. **MEMBER(S) OF CONGRESS TO BE NOTIFIED (DLA-B use only)**

| SENATOR | SENATOR |
|---|---|
| REPRESENTATIVE | REPRESENTATIVE |

17. CONTRACTING OFFICER AND TELEPHONE NUMBER: DONNA M. KENNEDY 215-737-7075

18. SIGNATURE AND DATE *(Approving Official, level higher than Contracting Officer)*: L. FLATLEY L. Flatley

DLA FORM 1693, JUN 90 *(EG)* PREVIOUS EDITION IS OBSOLETE. PerFORM (PRO)

DSCP-UMS-1670

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE

PAGE OF PAGES: 1 | 1

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(If applicable)* |
|---|---|---|---|
| P00021 | JUNE 1, 2000 | N/A | |

6. ISSUED BY CODE SP0200

DEFENSE SUPPLY CENTER PHILADELPHIA
700 ROBBINS AVENUE
PHILADELPHIA, PA 19111
ATTN: D. KENNEDY/DSCP-MSAA/215-737-7075

7. ADMINISTERED BY *(If other than Item 6)* CODE SP0200

SAME AS BLOCK 6

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, country, State and ZIP Code)*

UNITED MEDICAL SUPPLY
5117 NORTHEAST PARKWAY
FORT WORTH, TX 76106

CODE 5T804 FACILITY CODE

(✓) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED *(SEE ITEM 11)*

X 10A. MODIFICATION OF CONTRACT/ORDER NO. SP0200-97-D-7133

10B. DATED *(SEE ITEM 13)* JANUARY 30, 1997

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*
MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

(✓) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103 (b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

X D. OTHER *(Specify type of modification and authority)*
CLAUSE 52.217-9P10, OPTION FOR REQUIREMENTS CONTRACT TERM EXTENSION (PRIME VENDOR)

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

1. IN ACCORANCE WITH CLAUSE 52.217-9P10, OPTION YEAR THREE IS HEREBY INVOKED. THE OPTION PERIOD WILL BECOME EFFECTIVE JUNE 1, 2000 AND WILL EXPIRE ON MAY 31, 2001. THE DISTRITION FEE FOR THE OPTION YEAR THREE PERIOD IS 6.4%.

2. ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER *(Type or print)*

16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)*
DONNA M. KENNEDY
CONTRACTING OFFICER

15B. CONTRACTOR/OFFEROR
*(Signature of person authorized to sign)*

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
BY [signature]
*(Signature of Contracting Officer)*

16C. DATE SIGNED 5/22/00

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE | PAGE OF PAGES: 1 | 1

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| P00012 | JUNE 1, 2000 | N/A | |

6. ISSUED BY CODE SP0200

DEFENSE SUPPLY CENTER PHILADELPHIA
700 ROBBINS AVENUE
PHILADELPHIA, PA 19111
ATTN: D. KENNEDY/DSCP-MSAA/215-737-7075

7. ADMINISTERED BY (If other than Item 6) CODE SP0200

SAME AS BLOCK 6

8. NAME AND ADDRESS OF CONTRACTOR (No., street, country, State and ZIP Code)

UNITED MEDI CAL SUPPLY
5117 NORTHEAST PARKWAY
FORT WORTH, TX 76106

CODE 5T804 FACILITY CODE

(✓) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACT/ORDER NO. SP0200-97-D-7134

10B. DATED (SEE ITEM 13) JANUARY 30, 1997

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION - STOCKLESS

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (✓) | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103 (b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification and authority) CLAUSE 52.217-9P10, OPTION FOR REQUIREMENTS CONTRACT TERM EXTENSION (PRIME VENDOR) |

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ________ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

1. IN ACCORANCE WITH CLAUSE 52.217-9P10, OPTION YEAR THREE IS HEREBY INVOKED. THE OPTION PERIOD WILL BECOME EFFECTIVE JUNE 1, 2000 AND WILL EXPIRE ON MAY 31, 2001. THE DISTRITION FEE FOR THE OPTION YEAR THREE PERIOD IS7.4%.

2. ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
DONNA M. KENNEDY
CONTRACTING OFFICER

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| (Signature of person authorized to sign) | | BY Donna M. Kennedy (Signature of Contracting Officer) | 5/22/00 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
30-105
STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | MAIN CASE NO: 03-CV-289<br>Consolidated case no: 07-cv-187<br>Judge Allegra |

**EXHIBIT B TO SECOND AMENDED COMPLAINT**

CONTRACT EXCERPTS FROM SOLICITATION, AWARD AND POST AWARD

CONTRACT DOCUMENTS

I-1

# SOLICITATION AND OFFER

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) — RATING DO-C9 — PAGE 1 OF 88 PAGES

2. SOLICITATION NUMBER: DLA120 -93-R-0587

3. TYPE OF SOLICITATION: ☐ SEALED BID (IFB) ☒ NEGOTIATED (RFP)

4. DATE ISSUED: 11-AUG-93

5. REQUISITION/PURCHASE REQ NO: Requirements

6. ADDRESS MAILED OFFER TO: CODE SPO101

DEFENSE LOGISTICS AGENCY
DEFENSE PERSONNEL SUPPORT CENTER
2800 SOUTH 20TH STREET
POST OFFICE BOX 8636
PHILADELPHIA, PA 19101-8636

7. DELIVER HANDCARRIED OFFER, INCLUDING DELIVERY BY COMMERCIAL CARRIER TO

DEFENSE PERSONNEL SUPPORT CENTER
OFFER DEPOSITORY
BLDG. 9, 4TH FLOOR, WING F
2800 SOUTH 20TH STREET
PHILADELPHIA, PA 19145

6A. FOR INFORMATION CALL (No Collect Calls): (215) 737-7979

6B. PURCHASING AGENT: H. ARMSTRONG
CONTRACTING OFFICER: W. DI LAURO
OFFICE SYMBOL: DPSC-MPHB

7A. ADDRESS ELECTRONIC TRANSMISSIONS (When Authorized) TO
Facsimile: (215) 737-8129 (Primary)
(215) 737-2228 (Alternate)
TWX: 710 670 1643
TELEX: 83 1434

## SOLICITATION

8. Sealed offers will be received at the Defense Personnel Support Center, ATTN: DPSC-MPO, Bldg 9-4-F, until (hour) 3:00 PM local time (date) 14-SEP-93. To assure prompt delivery, mailed offers should be addressed per block 6, electronic transmissions per block 7A, and handcarried offers delivered to the specific location set forth in block 7. If offering, your reply envelope must be plainly marked with the solicitation number, date, and time set forth for receipt of offers.

**CAUTION:**
**FAILURE TO SUBMIT OFFER:** See Section L, Provision No. 52.214-9 or 52.215-15. When not responding to the solicitation with an offer, complete the reverse side, fold, affix postage and mail.

**LATE SUBMISSIONS, MODIFICATIONS AND WITHDRAWALS:** See Section L, provision No. 52.214-7 or 52.215-10. All offers are subject to all terms and conditions contained in this solicitation.

8A. **NOTICE: ANY CONTRACT AWARDED TO A CONTRACTOR WHO, AT THE TIME OF AWARD WAS SUSPENDED, DEBARRED, INELIGIBLE FOR RECEIPT OF CONTRACTS WITH GOVERNMENT AGENCIES OR IN RECEIPT OF A NOTICE OF PROPOSED DEBARMENT FROM ANY GOVERNMENT AGENCY, IS VOIDABLE AT THE OPTION OF THE GOVERNMENT.**

9. THIS SOLICITATION IS FOR the selection of a Medical/Surgical "Prime Vendor" for the Lone Star (Texas/Oklahoma/New Mexico) Region AND IS
☐ Total Set-Aside for SDB Concerns
☐ Total Set-Aside for Small Business Concerns
☐ Partial Set-Aside for Small Business Concerns with Preferential Consideration for SDB Concerns
☐ Unrestricted Acquisition with Evaluation Preference for SDB Concerns
☒ Unrestricted Acquisition

## OFFER (MUST BE FULLY COMPLETED BY OFFEROR)

NOTE: ITEM 10 DOES NOT APPLY IF THE SOLICITATION INCLUDES SECTION K PROVISION NO. 52.214-16, MINIMUM BID ACCEPTANCE PERIOD

10. In compliance with the above, the undersigned agrees, if this offer is accepted within 120 calendar days (60 calendar days unless a different period is inserted by the offeror) from the date for receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule.

| 11. DISCOUNT FOR PROMPT PAYMENT (See Section I, Clause No 52.232-8) | 10 CALENDAR DAYS | 20 CALENDAR DAYS | 30 CALENDAR DAYS | ___ CALENDAR DAYS |
|---|---|---|---|---|
| | % | % | % | % |

| 12. ACKNOWLEDGEMENT OF AMENDMENTS (The offeror acknowledges receipt of amendments to the Solicitation for offers and related documents numbered and dated) | AMENDMENT NO | DATE | AMENDMENT NO | DATE |
|---|---|---|---|---|
| | | | | |

13. CAGE CODE ______ FACILITY CODE ______

NAME AND ADDRESS OF OFFEROR (Street, City, County, State and Zip Code):
United Medical Supply Co., Inc.
5117 Northeast Parkway
Fort Worth, TX 76106

AREA CODE AND TELEPHONE NUMBER: 817-626-9261

☒ Check if remittance address is different from above. Enter such address in schedule (see DPSC Provision 52.242-9P18).

14. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or print): Joe W. Smith, Jr., Executive Vice President

15. SIGNATURE: [signature]

16. OFFER DATE: 14 Sep. '93

DPSC FORM 33 (OVERPRINT 2) TEST
AUG 92
EDITION MAR 92 OBSOLETE

DLA 120a 93-R-0587

| SOLICITATION NO. | PAGE 2 | OF |
|---|---|---|

NO OFFER SUBMITTED FOR REASON(S) CHECKED

| | | | |
|---|---|---|---|
| | CANNOT COMPLY WITH SPECIFICATIONS | | CANNOT MEET DELIVERY REQUIREMENT |
| | NO OPEN PRODUCTION CAPACITY AT PLANT | | DO NOT REGULARLY MANUFACTURE OR SELL THE TYPE OF ITEMS INVOLVED |
| | OTHER *(Specify)* | | |
| | WE DO/WE DO NOT DESIRE TO BE RETAINED ON THE MAILING LIST FOR FUTURE PROCUREMENT OF THE FOLLOWING NSNs | | |

| NAME AND ADDRESS OF FIRM *(Include zip code)* | SIGNATURE |
|---|---|
| | TYPE OR PRINT NAME AND TITLE OF SIGNER |

fold

fold

FROM:

AFFIX STAMP HERE

TO: DEFENSE LOGISTICS AGENCY
DEFENSE PERSONNEL SUPPORT CENTER
ATTN: DPSC-MPO
2800 SOUTH 20TH STREET
P. O. BOX 8419
PHILADELPHIA, PA 19101-8419

SOLICITATION NO. ______________________

OPENING CLOSING DATE AND LOCAL TIME ______________________

*(Do not Staple)*

## GENERAL INFORMATION FOR OFFERORS

The Defense Personnel Support Center (DPSC), Directorate of Medical Materiel is establishing a "Prime Vendor" program for brand name specific and generic medical supplies. A "Prime Vendor" is a business concern that functions as a purchaser's primary source for specified classes of products. A prime vendor is responsible for the delivery of goods produced by various suppliers to the customer upon order.

DPSC Medical is selecting regional prime vendors for brand name specific and generic medical supplies covering two product classes - pharmaceuticals and medical/surgical items. Presently, these items are purchased locally by the military medical facilities. Each prime vendor will be the primary supplier of one of the designated product classes for member hospitals in a given geographic region. Under this program, the prime vendors chosen by DPSC will furnish the participating hospitals with the majority of their normal day-to-day requirements for brand name specific and generic medical supplies.

DPSC Medical will establish approximately 22 regions covering the continental United States plus Alaska and Hawaii. There will be two prime vendors per region - one for pharmaceuticals and one for medical/surgical items. Each prime vendor will be responsible for supplying all of the medical items that are listed on Distribution and Pricing Agreements (see below) ordered by the participating medical facilities in the specific region. Two separate solicitations and contracts will be issued and awarded for each region - one for pharmaceuticals and one for medical/surgical items.

As part of the program, we are establishing "Distribution and Pricing Agreements" (DAPA's) with pharmaceutical and medical/surgical product manufacturers. Under a DAPA, the agreement holder consents to allow prime vendors selected by DPSC Medical to distribute its products to participating hospitals and agrees that the prime vendor will be charged no more that the prices set forth in the agreement. Orders will not be directly placed against the DAPA's; they are being used only to establish pricing and to obtain the right for our prime vendors to distribute an agreement holder's products. The DAPA's will be used to facilitate "charge-back" arrangements between the agreement holders and DPSC Medical's prime vendors. It will be the responsibility of the prime vendor to establish the necessary "charge-back" arrangements with the DAPA holders. DPSC may also issue Indefinite Delivery Type Contracts (IDTC's) for specific products to be distributed by the prime vendor. The prime vendor will be required to obtain these specific products from the listed sources. The price charged by the prime to the ordering activities will not exceed that cited in the IDTC plus the offeror's negotiated distribution fee.

At the time of award of each prime vendor contract, DPSC will provide the selected prime vendor a copy of all DAPA's and IDTC's either electronically or in a paper format.

<u>NOTE</u>: THIS SOLICITATION WILL RESULT IN THE SELECTION OF A MEDICAL/SURGICAL PRODUCTS PRIME VENDOR FOR THE <u>LONE STAR</u> REGION (TEXAS/OKLAHOMA/NEW MEXICO) - see Attachment <u>III</u>.

**AMENDMENT OF SOLICITATION/M .FICATION OF CONTRACT**

1. CONT 'T ID CODE

PAGE OF PAGES: 1 | 96

| AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 0008 | 4 DEC 1995 | N/A | |

ISSUED BY CODE SP0200

DEFENSE PERSONNEL SUPPORT CENTER
DPSC-MSBAC
2800 SOUTH 20TH STREET
PHILADELPHIA, PA 19101
ATTN: Theresa Rucci, 215-737-2465

7. ADMINISTERED BY (If other than Item 6) CODE

SAME AS BLOCK 6

. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

United Medical Supply Company, Inc.
5117 Northeast Parkway
Fort Worth, Tarrant County, Texas 76106

(✓) X 9A. AMENDMENT OF SOLICITATION NO. DLA120-93-R-0587

9B. DATED (SEE ITEM 11) 11 August 1993

10A. MODIFICATION OF CONTRACT/ORDER NO.

10B. DATED (SEE ITEM 13)

CODE | FACILITY CODE

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [X] is extended, [ ] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning 1 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

(✓) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [ ] is not, [X] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

SEE ATTACHED PAGES

DOD Contract file

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| Joe W. Smith, Jr., Executive Vice President | | ROGER DIXON CONTRACTING OFFICER | |
| 15B. CONTRACTOR/OFFEROR [signature] (Signature of person authorized to sign) | 15C. DATE SIGNED 1/15/96 | 16B. UNITED STATES OF AMERICA BY (Signature of Contracting Officer) | 16C. DATE SIGNED |

NSN 7540-01-152-8070 30-105-02 STANDARD FORM 30 (Rev. 10-83) Prescribed by GSA FAR (48 CFR) 53.243

DLA12043-R 0587



*******NOTICE TO OFFERORS*******

This amendment is being issued in order to incorporate the substantial changes made to the Prime Vendor (Medical/Surgical) Program as a result of changing customer needs and changes in the technical requirements of the program. These changes are necessary in order to make this contract's requirements similar in nature to the other Prime Vendor(Medical/Surgical) contracts for the other regions so as to insure uniformity of products and services for all of the customers in the program.

AMENDMENT OF SOLICITATION DLA120-93-R-0587
AMENDMENT 0008

1. Pages 1-88 of solicitation DLA120-93-R-0587 dated 11 August 1993, and amendments 0001-0007 (including the undated version of amendment 0001) are hereby deleted and replaced with amendment 0008 dated 4 December 1995.

2. Please refer to pages 92 thru 95. All Naval facilities will require one order entry package. All Army facilities will require as a minimum two order entry sites. Additional site locations will be provided after contract award.

3. The closing date is hereby extended to 3:00 PM, local time, 17 January 1996. All responses must be received by the above cited time and date and are subject to the late submission, modifications, and withdrawal of proposals or quotation provision of the solicitation. February 28, 96

4. Facsimile proposals are acceptable; FAR 52.215-18 ``Facsimile Proposals'' is hereby incorporated into this solicitation. Facsimile numbers 215-737-9300/9301/9302 or 9303 apply.

5. Upon acknowledgment of this amendment, the offeror agrees that its offer, as it may have been amended or submitted, may be accepted within the same number of calendar days after the revised closing date as were specified for acceptance of the initial offer.

Address all mailed responses to the following address:

DEFENSE PERSONNEL SUPPORT CENTER
OFFER DEPOSITORY
BLDG 12, 1ST FLOOR, WING E
2800 SOUTH 20TH STREET
PHILADELPHIA, PA 19145

**GENERAL INFORMATION FOR OFFERORS**

The Defense Personnel Support Center (DPSC), Directorate of Medical Materiel is establishing a "Prime Vendor" program for brand name specific and generic medical supplies. A "Prime Vendor" is a business concern that functions as a purchaser's primary source for specified classes of products. A prime vendor is responsible for the delivery of goods produced by various suppliers to the customer upon order.

DPSC Medical is selecting regional prime vendors for brand name specific and generic medical supplies broadly covering medical/surgical and pharmaceutical products. Presently, these items are purchased locally by the military medical facilities. Each prime vendor will be the primary supplier of one of the designated product groupings for member hospitals in a given geographic region. Under this program, the prime vendors chosen by DPSC will furnish the participating ordering facilities with the majority of their normal day-to-day requirements for brand name specific and generic medical supplies.

DPSC Medical will establish approximately 21 regions covering the United States, Europe, and Pacific. There will be two prime vendors per region - one for medical/surgical items and one for pharmaceuticals. Each Prime Vendor will be responsible for supplying <u>all</u> of the medical items that are listed on Distribution and Pricing Agreements (see below) ordered by the participating ordering facilities in the specific region. Duplicate items appearing on multiple DAPAs must be available through the Prime Vendor.

As part of the program, we are establishing "Distribution and Pricing Agreements" (DAPA's) with medical/surgical and pharmaceutical product manufacturers. Under a DAPA, the agreement holder consents to allow prime vendors selected by DPSC Medical to distribute its products to participating ordering facilities and agrees that the prime vendor will be charged no more that the prices set forth in the agreement. Orders will not be directly placed against the DAPA's; they are being used only to establish pricing and to obtain the right for our prime vendors to distribute an agreement holder's products. The DAPA's will be used to facilitate "charge-back" arrangements between the agreement holders and DPSC Medical's prime vendors. It is the responsibility of the prime vendor to use the DAPA holders as its source of supply. The specific sources of supply (DAPA Holder) for any item is determined by the ordering facility at the time an order is placed. It is the responsibility if the Prime Vendor to establish the necessary "charge-back" arrangements with the DAPA holders. DPSC may also issue Indefinite Delivery Type Contracts (IDTC's) for specific products to be distributed by the Prime Vendor. The Prime Vendor will be required to obtain these specific products from the listed sources. The price charged by the prime to the ordering activities will not exceed that cited in the IDTC plus the offeror's negotiated distribution fee.

At the time of award of each Prime Vendor contract, DPSC will provide the selected Prime Vendor a copy of all DAPA's and IDTC's either electronically or in a paper format.

<u>NOTE</u>: THIS SOLICITATION WILL RESULT IN THE SELECTION OF A MEDICAL/SURGICAL PRODUCTS PRIME VENDOR FOR THE <u>LONE STAR REGION</u> (TEXAS/OKLAHOMA/NEW MEXICO) - see Attachment <u>III</u>.

DLA120-93-R-0587



**CAUTION NOTICE**

This is a Source Selection Acquisition:

Award will be based on factors other than cost or price alone. Evaluation factors for award are contained in DPSC Clause 52.215-9P19 "EVALUATION FACTORS FOR AWARD".

Source evaluation and selection procedures are contained in DPSC Clause 52.215-9P20 "SOURCE EVALUATION AND SELECTION PROCEDURES".

2. DPSC Clause 52.215-9P12 should be reviewed carefully prior to commencing preparation of your proposal. Proposals which do not provide the required information in the prescribed format as cited in DPSC Clause 52.215-9P12 may be excluded from further consideration. Technical proposals must be devoid of all discussions or reference to price.

NOTE: Technical evaluation factors 6 & 7, Socioeconomic considerations and Small and Small Disadvantaged Entrepreneurial Enhancement Development (SEED) Program, must be submitted with the Business Proposal.

3. Subcontracting plans (Reference Clause 52.219-9): In the event that an annual company or division wide subcontracting plan is submitted in response to this solicitation, offerors are reminded that the plan should be current, approved and cover the company's current fiscal year, which must be identified. If an offeror has a previously approved plan, a new plan should be submitted at least sixty days before the existing plan expires. A Small Business and Small Disadvantaged Business Plan Subcontracting Guide is provided in this solicitation and is marked "Attachment II."

Subcontracting plans approved by other government agencies should be company or division wide in order to be applicable. All plans approved by another government agency must be accompanied by the letter of approval issued by the agency. Plans must be submitted with the initial proposal. Small business concerns must meet the requirements of FAR 19.001 and meet the size standards as specified in clause 52.219-22. All small business and small disadvantaged business concerns will be subject to review and verification by the Small Business Administration.

4. A Requirements type contract is contemplated with the option to extend the effective period of the contract for four additional one year periods. The total length of the contract would not exceed 5 years. Offers on the options are mandatory. Failure to offer on all options will result in an offer being eliminated from further consideration. A determination of price reasonableness for these line items shall be made prior to award.

5. Award Announcement: The Government reserves the right to require the successful offeror to participate in a ceremony to commemorate the award of the contract. The location, date and time of the ceremony will be coordinated with the contractor, DPSC and facilities within the region.

DLA120-93-R-0058 Page 6

Section B, Schedule of Supplies

The offeror, if awarded this contract, shall be paid for each medical/surgical product ordered and delivered which appears on a DPSC Medical Distribution and Pricing Agreement (DAPA) or on an Indefinite Delivery-Type Contract (IDTC), plus the offeror's negotiated distribution fee. For an item covered by a DAPA, the prime vendor will furnish the product at the price cited on the agreement plus the offeror's negotiated distribution fee. For an item covered by an IDTC, the prime vendor will furnish the product from the source listed under the IDTC at a price which does not exceed the price set forth in the IDTC plus the offeror's negotiated distribution fee.

The prime vendor shall only accept orders for and shall only furnish, under the contract, products which are a part of the DPSC Prime Vendor Program.

The offeror is to insert in the spaces provided below its proposed distribution fees for the stockless option and JITO/EDO option for both the initial 1-year contract ordering period and for each of the 4 yearly option periods. These fees will cover all of the medical facilities listed on the attached list of facilities considering the stockless option and for the JITO/EDO option (see Attachment I of the Solicitation). The distribution fee must be the same for all of the covered facilities. However, offerors may propose different fees for each of the ordering periods.

Partial offers based on only some of the listed facilities will not be considered. YOU MUST SUBMIT AN OFFER FOR ALL ORDERING FACILITIES LISTED AS ELIGIBLE FOR SELECTING THE STOCKLESS OPTION. Failure to submit a separate stockless option offer, in addition to your JITO and EDO offers, will render your proposal ineligible for consideration for award for this region. The evaluation of option lines does not obligate the Government to exercise any of the options. The offeror's proposed distribution fee is to be expressed as a percentage (%) and shall be based on performance in accordance with the contract's Statement Of Work.

OFFEROR'S DISTRIBUTION FEE:

| | | PROPOSED DISTRIBUTION FEE | |
|---|---|---|---|
| LINE ITEM NO. | TIME PERIOD | STOCKLESS OPTION | JITO/EDO OPTION |
| 0001 | INITIAL YEAR | 7.4%* % | 6.4% * % |
| 0002 | OPTION YEAR ONE | 7.4%* % | 6.4%* % |
| 0003 | OPTION YEAR TWO | 7.4%* % | 6.4%* % |
| 0004 | OPTION YEAR THREE | 7.4%* % | 6.4%* % |
| 0005 | OPTION YEAR FOUR | 7.4%* % | 6.4%* % |

* SUBJECT TO NEGOTIATION IF VOLUME DOES NOT REACH 90% OF THE STATED CONTRACT AWARD.

DLA120-93-R-058 Page 7

EVALUATION OF OFFERS: The Government will evaluate price offers by:

PART A-The weight given to the Stockless Option pricing will not be the same as the weight given to the JITO/EDO Option pricing for evaluation purposes. The weighting factors

| | JITO/EDO | STOCKLESS |
|---|---|---|
| Base Year | 93% | 7% |
| 1st Option | 74% | 26% |
| 2nd Option | 66% | 34% |
| 3rd Option | 58% | 42% |
| 4th Option | 50% | 50% |

will be applied to the anticipated annual estimated dollar amounts.

PART B-To get the Total Evaluated Stockless Distribution Fee,
1) Multiply the Annual Estimate times the Weighting Factor for that year times the offered distribution fee percentage for that year.
2) Do this for each of the five years.
3) Add the dollar figures for each year together.

PART C-To get the Total Evaluated JITO/EDO Distribution Fee
1) Multiply the Annual Estimate times the Weighting Factor for that year times the offered distribution fee percentage for that year.
2) Do this for each of the five years.
3) Add the dollar figures for each year together.

PART D-To get the Total Evaluated Distribution Fee for the offer, add the answers from parts B and C together.

EXAMPLE: For this EX.the Dist.Fee is 5% for JITO/EDO & 10% for Stockless

| Stockless | Annual Estimates | | Assigned Wt Going Stockless | | Offered Dist.Fee | | Weighted Distribution Fee |
|---|---|---|---|---|---|---|---|
| Base | $19,700,000 | X | 7% | X | 10% | = | $ 137,900 |
| 1st YR | $39,401,000 | X | 26% | X | 10% | = | $1,024,426 |
| 2nd YR | $39,401,000 | X | 34% | X | 10% | = | $1,339,634 |
| 3rd YR | $39,401,000 | X | 42% | X | 10% | = | $1,654,842 |
| 4th YR | $39,401,000 | X | 50% | X | 10% | = | $1,970,050 |
| | TOTAL EVALUATED STOCKLESS DISTRIBUTION FEE | | | | | | $6,126,852 |

| | Annual Estimates | | Assigned Wt Going JITO/EDO | | Offered Dist.Fee | | Weighted JITO/EDO Distribution Fee |
|---|---|---|---|---|---|---|---|
| Base | $19,700,000 | X | 93% | X | 5% | = | $ 916,050 |
| 1st YR | $39,401,000 | X | 74% | X | 5% | = | $1,457,837 |
| 2nd YR | $39,401,000 | X | 66% | X | 5% | = | $1,300,233 |
| 3rd YR | $39,401,000 | X | 58% | X | 5% | = | $1,142,629 |
| 4th YR | $39,401,000 | X | 50% | X | 5% | = | $ 985,025 |
| | TOTAL EVALUATED JITO/EDO DISTRIBUTION FEE | | | | | | $5,801,774 |

**Section B, Schedule of Supplies**

**Estimated Annual Requirements:**

Based on a 12-month reporting period, the medical treatment facilities that will be covered by the contract locally spent an estimated $57,665,500 per year for those types of medical/surgical products covered by the proposed contract. No guarantee is given that this volume will be purchased. It should be noted that during the first year of the contact each facility will begin to reduce its existing inventory of medical/surgical products. Orders will be placed with the Prime Vendor as existing inventories are reduced to lower levels. This may effect the volume of ordering during the base ordering period.

**EVALUATION OF OFFERS:**

The Government will evaluate price offers by:

(1) Multiplying the annual estimated requirements for the base ordering period and each option period by the offer's distribution fee for each period and then;

(2) Adding the dollar figure for each year to arrive at the total cost for the distribution fee for the entire 5 years.

For additional information, refer to SECTION M, clause 52.217-9P14(M).

DLA120-93-R-058,

## Section C - Statement of Work (SOW)

GENERAL INFORMATION:

A. The contractor (Prime Vendor) shall provide all medical/surgical products for which the Prime Vendor has been authorized as a distributor under DPSC Medical's Distribution and Pricing Agreements (DAPAs) or under Indefinite Delivery-Type Contracts (IDTCs). Under the contract, the Prime Vendor shall distribute the medical/surgical products to the ordering facilities specified on AttachmentIII in accordance with the terms and conditions set forth in the contract. During the term of the contract or any renewals thereof, DPSC reserves the right to add ordering facilities to or delete ordering facilities from the list shown at AttachmentIII. All ordering facilities added will be from the same geographic area as the region covered by this solicitation. Offerors are alerted that the contract estimate may change after award as a result of these additions or deletions. The Prime Vendor will make shipments in one of the following ways:

ROUTINE:

1. Just-In-Time Orders (JITO) - orders which the ordering facility wants delivered within 24 hours of order placement, excluding holidays and weekends. These items must be from DAPAs or IDTCs.

or

2. Extended Delivery Orders (EDO) - orders which the ordering facility wants delivered within 7 calendar days of order placement. These items must be from DAPAs or IDTCs. The intent of EDOs is to provide a method for non-usage data items to be ordered.

EMERGENCY: Usage data items requiring expedited delivery. See Paragraph "G" under "Minimum Performance Requirements."

The majority of orders placed are expected to be Just-In-Time Orders. The ordering facility has the right to identify any item they have submitted usage data on as a JITO. All Extended Delivery Order items appearing on one order must be delivered at the same time and within 7 days of order placement. If all ordered items are available in fewer than 7 days, they may be shipped in a single shipment at that time. Just-In-Time and Extended Delivery shipments cannot be combined on a single purchase order.

"Drop" shipments are limited to those authorized by the ordering facility. Drop shipments are goods available through but not inventoried by the Prime Vendor. Drop shipments can be either JITOs or EDOs depending on the ordering arrangements the Prime Vendor has made with the ordering facility.

B. Only items appearing on a DPSC Medical DAPA or IDTC will be ordered and delivered under the Prime Vendor contract. All items are brand name specific or generic commercial products which are identified by the manufacturer's item descriptions and part numbers and conform to the manufacturer's commercial specifications. Estimated requirements listed in Section B reflect annual estimated requirements based upon usage figures provided by the participating ordering facilities.

Section C - Statement of Work (SOW)
(Continued)

C. Each ordering facility's ordering point(s) will be responsible for its own ordering of items required. At time of contract award, the Prime Vendor will be furnished the name(s) of individuals authorized to act as a focal point at each facility included in this contract. Orders may be placed up to and including the last day of the contract.

DEFINITIONS:

1. Manufacturers'/DAPA Holders Backordered Lines - includes all lines which are completely unfilled or only partially filled due solely to manufacturers' backorders. Manufacturers' backorders represent material the manufacturer is unable or unwilling to supply to the Prime Vendor. The Prime Vendor shall receive full credit for fill rate calculations for each partially filled or completely unfilled line caused by a manufacturer's backorder.

2. Total Lines Not Shipped - any line with no partial shipments made.

3. Partially Filled Line - any line that is not shipped in its entirety.

When the Prime Vendor ships a total quantity but any of the following discrepant conditions are found, the Prime Vendor can only take credit for a Partially Filled Line:

a. Missed picks
b. Damaged items
c. Unauthorized substitutions
d. Outdated items

4. Fill or Kill - If an order for an item cannot be filled by the Prime Vendor when ordered, the request for that particular item will be automatically "killed" (cancelled) unless the ordering facility has previously approved delivery of a substitute. However, if the Prime Vendor can partially fill an order for an item, it shall do so and the remaining quantity will be automatically "killed" unless the ordering facility has previously approved delivery of a substitute. The Prime Vendor Interface (PVI) cannot handle substitute items.

5. Fill Rate - The fill rate will be individually calculated on a monthly basis for each ordering facility and shall be based only on those products for which the Prime Vendor and DAPA holder have entered into an agreement.

6. *Fill Rate Calculation for Both Just-In-Time Orders and Extended Delivery Orders:

Fill Rate(%) = (100% - Controllable Factor) + Non-Controllable Factor

where the

* Each of these fill-rates must be calculated + Reported separately.

**Section C - Statement of Work (SOW)**
(Continued)

Controllable Factor(%) = Tot Lines Not Shipped + 1/2 Credit for Part Fill Lines / Total lines Ordered

and

Non-Controllable Factor(%) = Manufacturers' Backordered Lines / Total Lines Ordered

Sample Fill Rate Calculation for Just-In-Time Orders:

Total Lines Ordered = 2500
Total Lines Not Shipped = 150
Part Fill Lines = 50
Manufacturer Backorders = 50

$$\text{Controllable Factor} = \frac{150 + 1/2(50)}{2500} = .07 \text{ or } 7\%$$

$$\text{Non-Controllable Factor} = \frac{50}{2500} = .02 \text{ or } 2\%$$

$$\text{Fill Rate\%} = (100\% - 7\%) + (2\%) = 95\%$$

7. Usage Data (Core Items) - items, with associated quantities, designated by the ordering facility as those that will ordered under the Prime Vendor program.

8. Delivered Unit Price - the product's delivered unit price shall be computed as follows (the unit price is the lowest unit of measure):

(i) the price of the product itself, as negotiated and published on a DPSC DAPA or IDTC, plus
(ii) the Prime Vendor's distribution fee, plus
(iii) the applicable DPSC administrative fee.

| Example: | | |
|---|---|---|
| | Product Price | $20.00 |
| | Distribution Fee (5.0%) | + 1.00 |
| | Subtotal (for example only) | $21.00 |
| | DPSC Administrative Fee ~~(1.0%)~~ 1.3% | + ~~.21~~ .27 |
| | Delivered Unit Price | ~~$21.21~~ 21.27 |

The DPSC administrative fee is applied after the product price and the Prime Vendor's distribution fee are added together. The delivered unit price is to be the only price visible to the ordering facility. At the time of award, DPSC will furnish the Prime Vendor all current product and pricing information appearing on a DPSC DAPA or IDTC and the current DPSC administrative fee. The DPSC administrative fee shall be subject to change (normally on 1 October of each year). ~~The DPCS distribution fee for the period of October 1, 1995 through September 30, 1996 is 1.3%.~~ The DPSC administration fee as of October 1995 is 1.3%

Section C - Statement of Work (SOW)
(Continued)

MINIMUM PERFORMANCE REQUIREMENTS: The Prime Vendor shall meet the following minimum performance requirements for each ordering facility cited in the contract (see Attachment III):

A. Maintain, at a minimum, a 95% monthly fill-rate for each ordering facility for Just-in-Time Orders and Extended Delivery Orders. Supplies shall be furnished on a "fill-or-kill" basis. The fill-rate is based on the definition provided under Section C "Definitions" #5. Offerors are advised that alternate "Fill-Rate" methodologies are unacceptable.

B. Accept receipt of non-emergency orders on its Electronic Order Entry (EOE) system at all times between the hours of 8:00 A.M. and 5:00 P.M, local time of the ordering facility, Monday through Friday.

C. Accept on a daily basis up to 15 individual delivery orders from each ordering facility cited in the contract. The Prime Vendor shall package each order separately for delivery to the ordering facility delivery point(s) cited in the contract.

D. Accept receipt of emergency orders 24 hours a day, 7 days per week.

E. Within 30 days of getting usage data from the ordering facilities, the Prime Vendor will have the items available for ordering. The initial 60 days of ordering for each ordering facility will be exempt from the fill-rate calculation. Items ordered by a facility whose usage data has not been provided or whose product quantities of the most recent month in question exceed the prior 45 day usage will be exempt from the calculation.

F. Deliver all orders for non-emergency supplies within 24 hours (JITO) or 7 calendar days (EDO) of receipt of the order. Deliveries will be made between the hours of 8:00 A.M. and 5:00 P.M., local time, Monday through Friday, excluding holidays. JITOs received on a Friday will be delivered on the following Monday. All JITOs received by 5:00 P.M. must be delivered within 24 hours except as noted above (i.e., holidays and weekends).

G. For William Beaumont Army Medical Center, El Paso, TX, deliver all orders for emergency supplies within 8 hours of receipt of the order in 100% of the cases. For the following facilities - Reese AFB - TX, USAF Clinic - Goodfellow AFB TX, Holloman AFB NM, USAF Hospital Kirtland AFB - Alberquerque, NM, and Cannon AFB NM deliver all emergency supplies within 12 hours of receipt of the order in 100% of the cases. For all the remaining facilities deliver all orders for emergency supplies within 6 hours of receipt of the order in 100% of the cases. Provide emergency delivery service 24 hours per day, 7 days per week.

Provide each ordering facility with the telephone number and/or pager number of the Prime Vendor's representative responsible for providing this service. Delivery of items on an emergency basis will be by fastest possible carrier if emergency shipments are requested by the ordering facility. The contractor will provide a minimum of two (2) emergency shipments per month at no additional charge to the ordering facility. Additional emergency shipments can have all applicable transportation and handling costs charged to the ordering facility. Each Prime Vendor must

Section C - Statement of Work (SOW)
(Continued)

initial expiration/shelf life of 6 months or less, the Prime Vendor shall provide at least 75% of the dating.

M. The Prime Vendor shall notify each ordering facility of any manufacturer backordered item which its usage reports indicate it orders.

N. The Prime Vendor shall submit recommendations or requests for substitute products directly to the Contracting Officer's Representative or the ordering facility. Only the Contracting Officer's Representative or the ordering facility can approve and order substitute products. During manufacturer's backorder periods for usage data items, the Prime Vendor's sales representative is required to assist the ordering facilities in promptly identifying available substitute DAPA items.

O. The Prime Vendor's representative shall make a minimum of one scheduled sales visit per month to each ordering facility to discuss customer satisfaction. Additional visits may be requested at the discretion of the Contracting Officer or ordering facility. The Prime Vendor must supply a toll-free access number for the facilities to use when contacting the Prime Vendor's sales representative, if outside the local calling area.

My firm will provide a toll-free access number as required: (check one)

_X__ Yes ______ No

NOTE: If you are providing a toll-free access number, please identify and list in technical proposal under "Customer Support."

P. Special Requirements:

1. The Prime Vendor must have Prime Vendor/DAPA Holder agreements in place, within 90 days of their award date, for a minimum of 95% of the DAPA items under agreement between the DAPA holders and DPSC.

2. The Prime Vendor shall not require more than a maximum of $1 million of product liability coverage per DAPA holder.

FAILURE TO MEET THE REQUIREMENTS OF PARAGRAPH "P" IS GROUNDS FOR TERMINATION FOR DEFAULT.

MINIMUM ELECTRONIC ORDER ENTRY (EOE) SYSTEM REQUIREMENTS

A. The Prime Vendor must provide the name and phone number of their technical EOE system expert to the Contracting Officer and to Defense Medical Systems Support Center (DMLSS-PMO). This technical expert must be available to answer all questions regarding the Prime Vendor's EOE system.

B. The Prime Vendor must be capable of processing batch orders (on-line capability in addition, is acceptable). The system will have the capability of asynchronous dial-up. If customer access is not available via asynchronous dial-up, a value-added network (VAN) shall be used which will convert the bisynchronous signal to an asynchronous format and vice versa. The Prime Vendor is responsible for obtaining and maintaining the VAN during the scope of the contract. The cost of the VAN will be borne by the Prime Vendor. The Prime Vendor's electronic order entry system shall

SECTION I

REF. NO. OF DOC. BEING CONT'D DLA120-93-R-0587 PAGE 40 OF 96

[ ] 52.232-16 PROGRESS PAYMENTS (JUL 1991)
ALTERNATE II (AUG 1987)
Paragraph (m) $__________(limit on amount of unliquidated progress payments)

[ ] 52.232-18 AVAILABILITY OF FUNDS (APR 1984)

[X] 52.232-25 PROMPT PAYMENT (MAR 1994) *
The following time frames apply to the fill-ins contained in this clause:
Para (a)(6)(i): 7th day
Para (b)(2): 7th day for progress payments and 14th day for interim payments on cost type contracts.

* Paragraphs (a)(2)(i) and (a)(2)(ii) are revised as follows: delete "30" day and substitute "15" day

[X] 52.232-28 ELECTRONIC FUNDS TRANSFER PAYMENT METHODS (APR 1989)

[X] 52.203-7002 Display of DoD Hotline Poster

[ ] 52.242-2 PRODUCTION PROGRESS REPORTS (APR 1991)

[ ] 52.242-10 F.O.B. ORIGIN-GOVERNMENT BILLS OF LADING OR PREPAID POSTAGE (APR 1984)

[ ] 52.244-2 SUBCONTRACTS (COST-REIMBURSEMENT AND LETTER CONTRACTS) (FEB 1995)
ALTERNATE I (APR 1985)

[ ] 52.245-2 GOVERNMENT PROPERTY (FIXED-PRICE CONTRACTS) (DEC 1989)

[ ] 52.245-2 GOVERNMENT PROPERTY (FIXED-PRICE CONTRACTS) (DEC 1989)
ALTERNATE I (APR 1984)

[ ] 52.245-4 GOVERNMENT-FURNISHED PROPERTY (SHORT FORM) (APR 1984)

[ ] 52.245-17 SPECIAL TOOLING (DEC 1989)

[ ] 52.246-23 LIMITATION OF LIABILITY (APR 1984)

[ ] 52.247-1 COMMERCIAL BILL OF LADING NOTATIONS (APR 1984)

[ ] 52.248-1 VALUE ENGINEERING (MAR 1989) ALT III (APR 1984)
NOTE: In accordance with DPSC-VECP program requirements, a VECP will not be considered if it is the subject of a similar proposal submitted by another contractor or concurrently being pursued independently by the Government.

[X] 52.253-1 COMPUTER GENERATED FORMS (JAN 1991)

REF. NO. OF DOC. BEING CONT'D DLA120-93-R-0587 PAGE 41 OF 96

The FAR provisions/clauses listed below are incorporated by reference only when checked. Where an applicability statement appears beneath a checked provision/clause, the provision/clause will apply only as indicated in the statement.

| | | |
|---|---|---|
| [X] | 52.202-1 | DEFINITIONS (SEP 1991) |
| [X] | 52.203-1 | OFFICIALS NOT TO BENEFIT (APR 1984) |
| [X] | 52.203-3 | GRATUITIES (APR 1984) |
| [X] | 52.203-5 | COVENANT AGAINST CONTINGENT FEES (APR 1984) |
| [X] | 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1985) |
| [X] | 52.203-7 | ANTI-KICKBACK PROCEDURES (OCT 1988) |
| [X] | 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (SEP 1990) |
| [X] | 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JAN 1990) |
| [X] | 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED OR PROPOSED FOR DEBARMENT (NOV 1992)<br>(APPLICABLE TO CONTRACTS OVER $25,000) |
| [X] | 52.210-5 | NEW MATERIAL (APR 1984) |
| [X] | 52.225-11 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (MAY 1992) |
| [X] | 52.232-1 | PAYMENTS (APR 1984) |
| [X] | 52.232-8 | DISCOUNTS FOR PROMPT PAYMENT (APR 1989) |
| [X] | 52.232-11 | EXTRAS (APR 1984) |
| [X] | 52.232-17 | INTEREST (JAN 1991) |
| [X] | 52.232-23 | ASSIGNMENT OF CLAIMS (JAN 1986) ~~ALTERNATE I (APR 1984)~~ |
| [X] | 52.233-1 | DISPUTES (MAR 1994) |
| [X] | 52.233-3 | PROTEST AFTER AWARD (AUG 1989) |
| [X] | 52.242-12 | REPORT OF SHIPMENT (REPSHIP) (DEC 1989) |
| [X] | 52.242-13 | BANKRUPTCY (APR 1991)<br>(APPLICABLE TO CONTRACTS OVER $25,000) |
| [X] | 52.243-1 | CHANGES-FIXED PRICE (AUG 1987) |
| [X] | 52.244-1 | SUBCONTRACTS (FIXED-PRICE CONTRACTS) (FEB 1995) |
| [ ] | 52.249-1 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SHORT FORM) (APR 1984) |
| [X] | 52.249-2 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (APR 1984) |
| [X] | 52.249-8 | DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984) |

52.243-1 Changes Fixed Price

[X] 52.216-21 REQUIREMENTS (APR 1984)

(a) This is a requirements contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies or services specified in the Schedule are estimates only and are not purchased by this contract. Except as this contract may otherwise provide, if the Government's requirements do not result in orders in the quantities described as "estimated" or "maximum" in the Schedule, that fact shall not constitute the basis for an equitable price adjustment.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. Subject to any limitations in the Delivery Order Limitations clause or elsewhere in this contract, the Contractor shall furnish to the Government all supplies or services specified in the Schedule and called for by orders issued in accordance with the Ordering clause. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(c) Except as this contract otherwise provides, the Government shall order from the Contractor all the supplies or services specified in the Schedule that are required to be purchased by the Government activity or activities specified in the Schedule.

(d) The Government is not required to purchase from the Contractor requirements in excess of any limit on total orders under this contract.

(e) If the Government urgently requires delivery of any quantity of an item before the earliest date that delivery may be specified under this contract, and if the Contractor will not accept an order providing for the accelerated delivery, the Government may acquire the urgently required goods or services from another source.

(f) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after 24 hours following expiration of the contract.

[ ] 52.216-21 REQUIREMENTS (APR 1984) ALTERNATE I (APR 1984) Substitute the following for para (c) of 52.216-21 above:

(c) The estimated quantities are not the total requirements of the Government activity specified in the Schedule, but are estimates of requirements in excess of the quantities that the activity may itself furnish within its own capabilities. Except as this contract otherwise provides, the Government shall order from the Contractor all of that activity's requirements for supplies and services specified in the Schedule that exceed the quantities that the activity may furnish within its own capabilities.

[ ] 52.216-21 REQUIREMENTS (APR 1984) ALTERNATE II (APR 1984) Add the following para (g) to 52.216-21 above:

(g) The requirements referred to in this contract are for items to be manufactured according to Government specifications. Notwithstanding anything to the contrary stated in the contract, the Government may acquire similar products by brand name from other sources for resale.

[ ] 52.216-21 REQUIREMENTS (APR 1984) ALTERNATE III (APR 1984) Substitute following for para (c) of 52.216-21 above:

(c) The Government's requirements for each item or subitem of supplies or services described in the Schedule are being purchased through one non-set-aside contract and one set-aside contract. Therefore, the Government shall order from each Contractor approximately one-half of the total supplies or services specified in the Schedule that are required to be purchased by the specified Government activity or activities. The Government may choose between the setaside Contractor and the non-set-aside Contractor in placing any particular order. However, the Government shall allocate successive orders, in accordance with its delivery requirements, to maintain as close a ratio as is reasonably practicable between the total quantities ordered from the two Contractors.

[ ] 52.216-21 REQUIREMENTS (APR 1984) ALTERNATE IV (APR 1984) - Substitute the following para (c) for para (c) of 52.216-21 above and add the following para (g):

(c) The Government's requirements for each item or subitem of supplies or services described in the Schedule are being purchased through one non-set-aside contract and one set-aside contract. Therefore, the Government shall order from each Contractor approximately one-half of the total supplies or services specified in the Schedule that are required to be purchased by the specified Government activity or activities. The Government may choose between the set-aside Contractor and the non-set-aside Contractor in placing any particular order. However, the Government shall allocate successive orders, in accordance with its delivery requirements, to maintain as close a ratio as is reasonably practicable between the total quantities ordered from the two Contractors.

(g) The requirements referred to in this contract are for items to be manufactured according to the Government specifications. Notwithstanding anything to the contrary stated in the contract, the Government may acquire similar products by brand name from other sources for resale.

[X] 52.217-9P10 OPTION FOR REQUIREMENTS CONTRACT TERM EXTENSION (JAN 1992) DPSC

(a) Acceptance of the option provision(s)/clauses contained herein is mandatory. Failure to indicate acceptance of the option by annotating the offeror's option price in the Schedule or elsewhere in the solicitation will be deemed non-acceptance of the option and will result in rejection of the offeror's entire bid/proposal.

(b) Offerors may offer options at unit prices which differ from the unit prices for the base ordering period. These prices may vary with the quantities actually ordered and the dates when ordered.

(c) The contracting officer may extend the term of this contract by written notice to the contractor within the time specified in the Schedule provided that the contracting officer shall give the contractor a preliminary written notice of intent to extend at least 30 days before expiration of the contract. The preliminary notice does not commit the Government to an extension.

(d) Performance under the option period shall continue at the same performance level specified for the basic contract.

(e) The option to extend the term of the contract shall be exercised not later than three (3) days before the expiration date of the contract.

(f) The option is deemed exercised when mailed or otherwise furnished to the contractor.

(g) If the contracting officer exercises this option, the extended contract shall be considered to include this option clause.

(h) The total duration of any options exercised under this clause shall not exceed 365 days.

(i) The following provisions apply only to negotiated acquisitions:

(1) If an option has been priced under this solicitation and is to be exercised at time of award of the basic contract, the submission of certified cost or pricing data shall be required prior to award where the combined dollar value of the basic contract and option exceeds $500,000, unless an exemption thereto is appropriate in accordance with FAR 15.804-3.

(2) Prior to the award of any contract which will contain one or more priced options totalling $500,000 or more, the submission of certified cost or pricing data covering the basic contract and the option(s) shall be required regardless of when the option(s) may be exercised, unless an exemption thereto is appropriate in accordance with FAR 15.804-3.

The $500,000 threshold shall revert to $100,000 after December 31, 1995; therefore, all subcontracts awarded after December 31, 1995, and/or all changes or modifications made after December 31, 1995 shall be subject to the $100,000 threshold.

[ ] 52.217-9P11 OPTION FOR NIB/ NISH INDEFINITE QUANTITY OR REQUIREMENTS CONTRACT TERM EXTENSION (JAN 1992) DPSC

(a) The contracting officer may extend the term of this contract by written notice to the contractor within the time specified in the Schedule provided that the contracting officer shall give the contractor a preliminary written notice of intent to extend at least __________ days before expiration of the contract. The preliminary notice does not commit the Government to an extension.

(b) Performance under the option period shall continue at the same performance level specified for the basic contract.

(c) The option to extend the term of the contract shall be exercised not later than three (3) days before the expiration date of the contract.

(d) The option is deemed exercised when mailed or otherwise furnished to the contractor.

(e) If the contracting officer exercises this option, the extended contract shall be considered to include this option clause.

(f) The total duration of any options exercised under this clause shall not exceed __________ days.

PROVISIONS SET FORTH IN FULL

[X] 52.252-1 SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (JUN 1988)

This solicitation incorporates one or more solicitation provisions by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

[X] 52.252-5 AUTHORIZED DEVIATIONS IN PROVISIONS (APR 1984)

(a) The use in this solicitation of any Federal Acquisition Regulation (48 CFR Chapter 1) provision with an authorized deviation is indicated by the addition of "(DEVIATION)" after the date of the provision.

(b) The use in this solicitation of any Defense FAR Supplement (48 CFR Chapter 2) provision with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

The following Federal Acquisition Regulation (FAR) provisions are incorporated by reference only when checked:

| | NUMBER | TITLE/DATE |
|---|---|---|
| [ ] | 52.209-7 | ORGANIZATIONAL CONFLICTS OF INTEREST - MARKETING CONSULTANTS (NOV 1991) (APPLICABLE IF THE CONTRACT AMOUNT IS EXPECTED TO EXCEED $200,000) |
| [ ] | 52.210-6 | LISTING OF USED OR RECONDITIONED MATERIAL, RESIDUAL INVENTORY AND FORMER GOVERNMENT SURPLUS PROPERTY (APR 1984) |
| [X] | 52.212-7 | NOTICE OF PRIORITY RATING FOR NATIONAL DEFENSE USE (SEP 1990) |

(NOTE: A "DO" priority rating will apply to any resultant contract.)

| | NUMBER | TITLE/DATE |
|---|---|---|
| [ ] | 52.214-1 | SOLICITATION DEFINITIONS--SEALED BIDDING (JUL 1987) |
| [ ] | 52.214-3 | AMENDMENTS TO INVITATIONS FOR BIDS (DEC 1989) |
| [ ] | 52.214-4 | FALSE STATEMENTS IN BIDS (APR 1984) |
| [ ] | 52.214-5 | SUBMISSION OF BIDS (DEC 1989) |
| [ ] | 52.214-6 | EXPLANATION TO PROSPECTIVE BIDDERS (APR 1984) |
| [ ] | 52.214-7 | LATE SUBMISSIONS, MODIFICATIONS, AND WITHDRAWALS OF BIDS (DEC 1989) |
| [ ] | 52.214-9 | FAILURE TO SUBMIT BID (APR 1984) |
| [ ] | 52.214-10 | CONTRACT AWARD-SEALED BIDDING (JUL 1990) |
| [ ] | 52.214-12 | PREPARATION OF BIDS (APR 1984) |
| [ ] | 52.214-13 | TELEGRAPHIC BIDS (APR 1984) |
| [ ] | 52.214-13 | TELEGRAPHIC BIDS (APR 1984) ALTERNATE I (NOV 1988) |
| [X] | 52.214-34 | SUBMISSION OF OFFERS IN THE ENGLISH LANGUAGE (APR 1991) |
| [X] | 52.214-35 | SUBMISSION OF OFFERS IN U.S. CURRENCY (APR 1991) |
| [X] | 52.215-5 | SOLICITATION DEFINITIONS (JUL 1987) |
| [X] | 52.215-7 | UNNECESSARILY ELABORATE PROPOSALS OR QUOTATIONS (APR 1984) |
| [X] | 52.215-8 | AMENDMENTS TO SOLICITATIONS (DEC 1989) |
| [X] | 52.215-9 | SUBMISSION OF OFFERS (DEC 1989) |
| [X] | 52.215-10 | LATE SUBMISSIONS, MODIFICATIONS, AND WITHDRAWALS OF PROPOSALS (DEC 1989) |
| [X] | 52.215-12 | RESTRICTION ON DISCLOSURE AND USE OF DATA (APR 1984) |
| [X] | 52.215-13 | PREPARATION OF OFFERS (APR 1984) |
| [X] | 52.215-14 | EXPLANATION TO PROSPECTIVE OFFERORS (APR 1984) |
| [X] | 52.215-15 | FAILURE TO SUBMIT OFFER (APR 1984) |
| [X] | 52.215-16 | CONTRACT AWARD (JUL 1990) ALTERNATE II (NOV 1992) |
| [✓] | 52.215-16 | CONTRACT AWARD (JUL 1990) ALTERNATE III (AUG 1991) |
| [ ] | 52.215-17 | TELEGRAPHIC PROPOSALS (JUL 1987) |
| [ ] | 52.215-17 | TELEGRAPHIC PROPOSALS (JUL 1987) ALTERNATE I (NOV 1988) |
| [ ] | 52.215-30 | FACILITIES CAPITAL COST OF MONEY (SEP 1989) |
| [X] | 52.216-1 | TYPE OF CONTRACT (APR 1984) Firm Fixed Price Requirements Contract |

Section M - Evaluation Factors for Award

The Technical Evaluation Factors are as Follows:

1. Past Performance
2. Product Availability
3. Electronic Order Entry Systems (EOE) and Electronic Data Interchange
4. Customer Support
5. Surge Readiness and Sustainment
6. Socioeconomic Considerations
7. Small and Small Disadvantaged Entrepreneurial Enhancement Development (SEED) Program

The above factors are listed in descending order of importance. Factor 1 is more important than Factor 2 which is more important than Factor 3, which is more important than Factor 4, which is more important than Factors 5, 6 & 7, all of which are of equal importance.

In evaluating the merit of each technical evaluation factor, additional credit will be given for responses that exceed the Government's requirements and are beneficial to the Government. The technical evaluation will assess the ability of offerors to successfully meet the requirements of the solicitation.

Factor 1 - Past Performance: The offeror's proposal will be evaluated to determine if it demonstrates a level of past performance that provides a reasonable assurance that the solicitation requirements will be met. This reasonable assurance is based on a subjective assessment of the contractor's past prime vendor experience, both commercial and military, and may include, but is not limited to, the factors listed below. (A record of marginally acceptable or unacceptable past performance will have a negative effect on the offeror's rating for this factor.) The offeror's past performance as a pharmaceutical and/or medical surgical prime vendor covering JITO/EDO and stockless delivery programs will be evaluated. The factors are:

A. It has handled a volume of sales that ensures its ability to handle a volume of sales similar to or greater than the solicitation's yearly estimate.

B. It has sufficient business relationships with manufacturers to ensure that the solicitation requirements can be met.

C. It has a satisfactory history of responding to customer problems arising with the prime vendor catalog and/or any aspect of the EOE system.

D. Sales representatives have been responsive to the customer's needs. Problems with customer support have been escalated by the facility to the prime vendor designated point of contact have been addressed promptly, and resolved to the satisfaction of the customer.

Section M - Evaluation Factors for Award

E. Its product fill-rates show that on average, in every region, the firm has met or exceeded the product fill rate they committed to at time of award.

F. It is conducting its operations in accordance with all applicable federal, state, and local agency regulations. It has no regulatory actions pending for which a course of action to remedy the problem has not been proposed.

G. The Prime Vendor must have adequate experience as an actual Prime Vendor, distributing MED/SURG products, to ensure they are capable of handling the variety of challenges that will arise in establishing this type of purchasing/distribution system for our ordering facilities.

Factor 2 - Product Availability: The offeror's proposal will be evaluated to determine if it can adequately meet the solicitation requirements for product availability. The offeror has met the requirements for this factor when it adequately demonstrates the following:

A. It provides the ordering facilities with a method for processing Just-In-Time Orders and Extended Delivery Orders that:

1. is easy to use;
2. gets them the required delivery;
3. minimizes manual intervention on the part of the ordering facility;
4. allows for invoicing through the Prime Vendor system.

B. It can meet the required fill rates for Just-In-Time Orders and Extended Delivery Orders.

C. There are no significant categories of products that they cannot distribute and no significant manufacturers' items that they cannot distribute.

D. The distribution facilities are physically close enough to all ordering facilities in the region, or proposed premium transportation methods proposed are adequate, to ensure required product availability to each facility.

E. It provides an order cut-off time that meets the SOW requirements.

Factor 3 - Electronic Order Entry Systems (EOE) and Electronic Data Interchange (EDI) Capability: The offeror's proposal will be evaluated to determine if it can adequately meet the solicitation

Section M - Evaluation Factors for Award

requirements for EOE/EDI capability. The offeror has met the requirements for this factor when it adequately describes the following:

A. It will provide adequate training at each ordering facility to ensure that Government personnel understand the workings of the proposed catalog and EOE/EDI system.

B. It can provide the required business documents in ANSI X12 format within six months of award (the 850, 855, & 832 documents). It can provide the EDI invoice at time of award.

C. It ensures that ordering facilities will be able to place orders to a single contractor order receipt point without having to distinguish between divisions.

D. It has proposed an EOE system with a price and product catalog and can ensure that all items for which the ordering facilities have provided usage data can be loaded within 60 days of contract award.

E. Its EOE/EDI system can distinguish between IDTC/DAPA and non-IDTC/non-DAPA items prior to order placement and its order confirmation will show rejection of non-IDTC/non-DAPA items.

F. It can provide an electronic order confirmation within two hours following transmission of the order from the ordering facilities in all cases.

G. There are adequate "help" procedures in place if a problem is encountered by Government personnel when interacting with the prime vendor's catalog or EOE system.

H. The Prime Vendor must have an established, well-thought-out operational capability backup plan that will ensure continuity of operations (with minimal downtime) in the event of a disaster.

I. The Prime Vendor must have adequate experience with its proposed EOE system and EDI system to ensure it is capable of handling the variety of requirements in establishing a Prime Vendor for our ordering facilities.

J. The Prime Vendor's system does not rely on manual intervention at any stage of the process in order to comply with the SOW requirements.

K. The Prime Vendor will electronically load their electronic catalog.

L. Some features considered user-friendly by the DPSC evaluators, and beneficial to the ordering facilities, may be given a more favorable rating.

Section M - Evaluation Factors for Award

M. The Prime Vendor must have adequate experience with EDI to ensure it can handle transmitting/receiving ANSI X12 810, 850, 855, & 832 transaction sets both inside and outside of the EOE system.

N. The Prime Vendor must meet the SOW requirements for search capabilities.

O. The Prime Vendor has an adequate "continuity of operations" plan in place to ensure against lost systems capability. [illegible]

NOTE: Offerors may be required to perform an Operational Capability Demonstration at any time in accordance with Clause 52.215-9P10 of this solicitation. The Government will test the offeror's electronic order entry and distribution system to verify that its operational capabilities meet those set forth in its proposal.

Factor 4 - Customer Support: The offeror's proposal will be evaluated to determine if it can adequately meet the solicitation requirements for Customer Support. The offeror has met the requirements for this factor when it adequately demonstrates the following:

A. It has demonstrated that it has an adequate product recall plan in effect.

B. The sample packing list meets all requirements of the Statement of Work.

C. It will conduct the necessary sales representative visits to ensure that adequate progress is being made on the contract and that customers are receiving what they believe is satisfactory customer support.

D. It has adequately described how it will monitor customer support and customer satisfaction at the ordering facility.

E. The Prime Vendor has an adequate plan to ensure ordering facilities are aware of manufacturer backorders.

F. The Prime Vendor has proposed an acceptable report package, and provided adequate samples.

H & G. See Amendment 0012 pg 27 of 47

Factor 5 - Surge Readiness and Sustainment: The offeror's proposal will be evaluated to determine if it can meet the surge requirements of the solicitation.

Factor 6 - Socioeconomic Considerations: The offeror's proposal will be evaluated to determine if it has taken steps to ensure that small businesses and small disadvantaged businesses will have an equitable opportunity to compete for subcontracts.

Section M - Evaluation Factors for Award

Small businesses will be credited for the dollar value/percentage of work they perform the same as if the work was subcontracted to a small business concern, as long as they request it in the required documentation.

Factor 7 - Small and Small Disadvantaged Entrepreneurial Enhancement Development (SEED) Program: The offeror's proposal will be evaluated to determine if it has taken the initiative have one or more mentoring agreements between the offeror and a small business or small disadvantaged firm who participates in carrying out the requirements of the prime vendor contract.

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE | PAGE OF PAGES 01 | 47

2. AMENDMENT/MODIFICATION NO.: 0012
3. EFFECTIVE DATE: 07 FEB 1996
4. REQUISITION/PURCHASE REQ. NO.: N/A
5. PROJECT NO. *(If applicable)*

6. ISSUED BY — CODE: SP0200

DEFENSE PERSONNEL SUPPORT CENTER
2800 SOUTH 20TH STREET
PHILADELPHIA, PA 19145-5099
CONTRACT SPECIALIST: N. MARTIN
PHONE: 215-737-8422

7. ADMINISTERED BY *(If other than Item 6)* — CODE: SP0200

SAME AS BLOCK 6

Working Copy

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)*

United Medical Supply Company, Inc.
5117 Northeast Parkway
Fort Worth, Texas 76106

(✓) X — 9A. AMENDMENT OF SOLICITATION NO.: DLA120-93-R-0587

9B. DATED *(SEE ITEM 11)*: 11 AUGUST 1993

10A. MODIFICATION OF CONTRACT/ORDER NO.

10B. DATED *(SEE ITEM 13)*

CODE | FACILITY CODE

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [X] is extended, [ ] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning 01 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(If required)*

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

(✓)
A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER *(Specify type of modification and authority)*

**E. IMPORTANT:** Contractor [ ] is not, [ ] is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

MED/SURG PRIME VENDOR - LONE STAR REGION

Subject solicitation is hereby amended as follows:

The closing date is hereby extended to 3:00 PM, local time, 28 February 1996. All responses must be received by the above cited time and date and are subject to the late submission, modifications, and withdrawal of proposals or quotation provision of the solicitation.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER *(Type or print)*

Joe W. Smith, Jr.
Executive Vice President

16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)*

15B. CONTRACTOR/OFFEROR

*(Signature of person authorized to sign)*

15C. DATE SIGNED: 2/27/96

16B. UNITED STATES OF AMERICA

BY ______ *(Signature of Contracting Officer)*

16C. DATE SIGNED

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105-02

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

**Amendment 0008 is hereby revised as follows:**

**Page 3:**

Paragraphs 2 and 4 are deleted in their entirety.

Paragraph 3 is revised to read: **The closing date is hereby extended until 3:00 PM, local time, 28 February 1996.** All responses must be received by the above cited time and date and are subject to the late submission, modifications, and withdrawal of proposals or quotation provision of this solicitation.

**GENERAL INFORMATION FOR OFFERORS**

**Page 4:**

Paragraph 3: Delete sentence 3 and replace with: Each Prime Vendor will be responsible for supplying all of the medical items that are listed on Distribution and Pricing Agreements (see below) ordered by the participating ordering facilities in the specific region.

Paragraph 4: Delete sentence 7 and replace with: It is the responsibility of the Prime Vendor to establish the necessary "charge-back" arrangements with the DAPA holders.

Paragraph 4: Delete sentence 10 and replace with: The price charged by the prime to the ordering facilities will not exceed that cited in the IDTC plus the offeror's negotiated distribution fee.

Add the following paragraph: Many of the below changes require your firm to respond to a "Yes" or "No" question. Other questions require your firm to answer generally by checkmark. Failure to check the responsive block (s), or checking both blocks, will be determined to be that your firm is unable or unwilling to comply with the revised requirements as detailed.

AMENDMENT OF SOLICITATION DLA120-93-R-0587
AMENDMENT 0012

CAUTION NOTICE
(CONTINUED)

1) Maintains small business and SDB as suppliers.

2) Increases the level of participation in the prime vendor program.

3) Fosters the development of long term business relationships between large and small business concerns as well as opening the door of communication between small business concerns.

SEED agreements can be offered which address sales volume, allow for private label manufacturing, assist in marketing product, speak to systems design, look to increasing the customer base, look to developing management skills, or any of a number of other approaches that will benefit small and small disadvantaged business concerns.

Small business concerns must meet the requirements of FAR 19.001 and meet the size standards as specified in Clause 52.219-22. All small business and small disadvantaged business concerns will be subject to review and verification by the Small Business Administration.

5. A Requirements type contract is contemplated with the option to extend the effective period of the contract for four additional one year periods. The total length of the contract would not exceed 5 years. Offers on the options are mandatory. Failure to offer on all options will result in an offer being eliminated from further consideration. A determination of price reasonableness for these line items shall be made prior to award.

6. Award Announcement: The Government reserves the right to require the successful offeror to participate in a ceremony to commemorate the award of the contract. The location, date and time of the ceremony will be coordinated with the contractor, DPSC and facilities within the region.

7. OFFERORS ARE REMINDED THAT FACSIMILE OFFERS ARE NOT AUTHORIZED.

(END OF CAUTION NOTICE)

Pages 6 through 12 are hereby deleted in their entirety and replaced with the following:

## SECTION B

## SCHEDULE OF SUPPLIES

Based on a 12 month reporting period, the ordering facilities that will be listed in Attachment III spent an estimated $57,965,500 per year for those types of medical/surgical products covered by the proposed contract. Based on this figure, the following is the Government's best estimate of yearly sales that these ordering facilities will experience over the five year period.

| | Yearly Estimate | Approximate Yearly Maximum |
|---|---|---|
| First Year | $28,982,750.00 | $ 72,456,875.00 |
| Option Year 1 | $57,965,500.00 | $144,913,750.00 |
| Option Year 2 | $57,965,500.00 | $144,913,750.00 |
| Option Year 3 | $57,965,500.00 | $144,913,750.00 |
| Option Year 4 | $57,965,500.00 | $144,913,750.00 |

Annual Estimates are as follows:

| | Base Year | Option Years 1-4 |
|---|---|---|
| Considering Stockless Option (See Page 13) | $23,500,000 | $47,000,000 |
| JITO/EDO Option Only | $ 5,482,750 | $10,965,500 |

No guarantee is given that the above volume will be purchased. It should be noted that during the first year of the contract each facility will begin to reduce its existing inventory of medical/surgical products. Orders will be placed with the Prime Vendor as existing inventories are reduced to lower levels. This may affect the volume of ordering during the base ordering period.

Your proposed distribution fee should be based on the Yearly Estimate. If the Approximate Yearly Maximum is exceeded in any given year, the contract will be completed for that year but subsequent years will be resolicited.

SECTION B - SCHEDULE OF SUPPLIES (CONTINUED)

The offeror, if awarded this contract, shall be paid the DAPA/IDTC price for each medical/surgical product ordered and delivered which appears on a DPSC Medical Distribution and Pricing Agreement (DAPA), or on an Indefinite Delivery-Type Contract (IDTC), plus the offeror's negotiated distribution fee. For an item covered by a DAPA, the Prime Vendor will furnish the product at the price cited on the agreement plus the offeror's negotiated distribution fee. For an item covered by an IDTC, the Prime Vendor will furnish the product from the source listed under the IDTC at the price set forth in the IDTC plus the offeror's negotiated distribution fee.

The Prime Vendor shall only accept orders for and shall only furnish, under the contract, products which are a part of the DPSC Prime Vendor Program.

The offeror is to insert in the spaces provided below its proposed distribution fees for the stockless option (See page 13 for facilities that are eligible) and JITO/EDO option (See pages 40 through 47 for facilities that are eligible) for both the initial 1-year contract ordering period and for each of the 4 yearly option periods. These fees will cover all of the medical facilities listed for the appropriate option [Stockless option (see page 13 of this Amendment) vs the JITO/EDO option (see Attachment III, pages 40 through 47 of this Amendment)]. The distribution fee must be the same for all of the covered facilities. However, offerors may propose different fees for each of the ordering periods.

Partial offers based on only some of the listed facilities will not be considered. **YOU MUST SUBMIT AN OFFER FOR ALL ORDERING FACILITIES LISTED AS ELIGIBLE FOR SELECTING THE STOCKLESS OPTION.** Failure to submit a separate stockless option offer, in addition to your JITO and EDO offers, will render your proposal ineligible for consideration for award for this region. The evaluation of option lines does not obligate the Government to exercise any of the options. The offeror's proposed distribution fee is to be expressed as a percentage (%) and shall be based on performance in accordance with the contract's Statement of Work.

OFFEROR'S DISTRIBUTION FEE:

| | | PROPOSED DISTRIBUTION FEE | |
|---|---|---|---|
| LINE ITEM NO. | TIME PERIOD | STOCKLESS OPTION | JITO/EDO OPTION |
| 0001 | INITIAL YEAR | 7.4%* % | 6.4%* % |
| 0002 | OPTION YEAR ONE | 7.4%* % | 6.4%* % |
| 0003 | OPTION YEAR TWO | 7.4%* % | 6.4%* % |
| 0004 | OPTION YEAR THREE | 7.4%* % | 6.4%* % |
| 0005 | OPTION YEAR FOUR | 7.4%* % | 6.4%* % |

* Subject to negotiation if volume does not reach 90% of the stated contract award.

## SECTION B - SCHEDULE OF SUPPLIES (CONTINUED)

EVALUATION OF OFFERS: The Government will evaluate price offers in the following way:

PART A - The facilities that are eligible for the Stockless Option will not be using that type of buying exclusively (or right away). For evaluation purposes, the dollars spent on JITO/EDO buys vs. Stockless buys will be weighted as follows:

| | JITO/EDO | STOCKLESS |
|---|---|---|
| Base Year | 93% | 7% |
| 1st Option | 74% | 26% |
| 2nd Option | 66% | 34% |
| 3rd Option | 58% | 42% |
| 4th Option | 50% | 50% |

will be applied to the anticipated annual estimated dollar amounts (see page 5 of this amendment).

**PART B - To get the Total Evaluated** Stockless Distribution Fee,

1) Multiply the Annual Estimate for the facilities considering stockless times the Weighting Factor for stockless for that year times the offered distribution fee percentage for stockless for that year.
2) Do this for each of the five years.
3) Add the dollar figures for each year together.

PART C - Section I
To get the Total Evaluated JITO/EDO Distribution Fee,

1) Multiply the Annual Estimate for the facilities considering stockless times the Weighting Factor for JITO/EDO for that year times the offered distribution fee percentage for JITO/EDO for that year.
2) Do this for each of the five years.
3) Add the dollar figures for each year together.

PART C - Section II

1) Multiply the Annual Estimate for JITO/EDO Option Only for that year times the offered distribution fee percentage for JITO/EDO for that year
2) Do this for each of the five years
3) Add the dollar figures for each year

To get the total for Part C, add the answers from sections I & II together.

PART D - To get the Total Evaluated Distribution Fee for the offer, add the answers from parts B and C together.

## SECTION B - SCHEDULE OF SUPPLIES (CONTINUED)

**EXAMPLE:** For this EX. the Dist. Fee is 5% for JITO/EDO & 10% for Stockless.

| | Annual Estimates | | Assigned Wt Going Stockless | | Offered Dist. Fee | | Weighted Stockless Distribution Fee |
|---|---|---|---|---|---|---|---|
| Base | $23,500,000 | X | 7% | X | 10% | = | $ 164,500 |
| 1st YR | $47,000,000 | X | 26% | X | 10% | = | $1,222,000 |
| 2nd YR | $47,000,000 | X | 34% | X | 10% | = | $1,598,000 |
| 3rd YR | $47,000,000 | X | 42% | X | 10% | = | $1,974,000 |
| 4th YR | $47,000,000 | X | 50% | X | 10% | = | $2,350,000 |
| | TOTAL EVALUATED STOCKLESS DISTRIBUTION FEE | | | | | | $7,308,500 |

| | Annual Estimates | | Assigned Wt Going JITO/EDO | | Offered Dist. Fee | | Weighted JITO/EDO Distribution Fee |
|---|---|---|---|---|---|---|---|
| Base | $23,500,000 | X | 93% | X | 5% | = | $1,092,750 |
| 1st YR | $47,000,000 | X | 74% | X | 5% | = | $1,739,000 |
| 2nd YR | $47,000,000 | X | 66% | X | 5% | = | $1,551,000 |
| 3rd YR | $47,000,000 | X | 58% | X | 5% | = | $1,363,000 |
| 4th YR | $47,000,000 | X | 50% | X | 5% | = | $1,175,000 |
| | | | | | | | $6,920,750 |

EVALUATED JITO/EDO DISTRIBUTION FEE FOR FACILITIES <u>ELIGIBLE</u> FOR STOCKLESS

| | Annual Estimates | Offered Dist. Fee | Evaluated JITO/EDO Dist. Fee |
|---|---|---|---|
| Base | $ 5,482,750 | 5% | $ 274,137.50 |
| 1st YR | $10,965,500 | 5% | $ 548,275.00 |
| 2nd YR | $10,965,500 | 5% | $ 548,275.00 |
| 3rd YR | $10,965,500 | 5% | $ 548,275.00 |
| 4th YR | $10,965,500 | 5% | $ 548,275.00 |
| | | | $2,467,237.50 |

EVALUATED JITO/EDO DISTRIBUTION FEE FOR FACILITIES <u>NOT</u> <u>ELIGIBLE</u> FOR STOCKLESS

| TOTAL EVALUATED STOCKLESS DIST FEE | + | TOTAL EVALUATED JITO/EDO DIST FOR FACILITIES ELIGIBLE FOR STOCKLESS | + | TOTAL EVALUATED JITO/EDO DIST FOR FACILITIES NOT ELIGIBLE FOR STOCKLESS | = | TOTAL EVALUATED DISTRIBUTION FEE |
|---|---|---|---|---|---|---|
| $7,308,500 | + | $6,920,750 | + | $2,467,237.50 | = | $16,696,487.50 |

For additional information, refer to SECTION M, Clause 52.217-9P14(M).

Page 47 is hereby deleted in its entirety and replaced by the following:

[X] 52.217-9P10 OPTION FOR REQUIREMENTS CONTRACT TERM EXTENSION (PRIME VENDOR)

(a) Acceptance of the option clauses contained herein is mandatory. Failure to indicate acceptance of the option by annotating the offeror's distribution fee in the schedule or elsewhere in the solicitation will be deemed non-acceptance of the option and will result in rejection of the offeror's entire proposal.

(b) Offerors may offer options at distribution fees which differ from the distribution fee for the base ordering period.

(c) The contracting officer may extend the term of this contract by written notice to the contractor within the time specified in the Schedule provided that the contracting officer shall give the contractor a preliminary written notice of intent to extend at least 30 days before expiration of the contract. The preliminary notice does not commit the Government to an extension.

(d) Performance under the option period shall continue at the same performance level specified for the basic contract.

(e) The option to extend the term of the contract shall be exercised not later than three days before the expiration date of the contract.

(f) The option is deemed exercised when mailed or otherwise furnished to the contractor.

(g) If the contracting officer exercises this option, the extended contract shall be considered to include this option clause.

(h) The total duration of any options exercised under this clause shall not exceed 4 year(s).

(i) The following provisions apply only to negotiated acquisitions:

(1) If an option has been priced under this solicitation and is to be exercised at time of award of the basic contract, the submission of certified cost and pricing data may be required prior to award where the combined dollar value of the basic contract and option exceeds $500,000, unless an exemption thereto is appropriate in accordance with FAR 15.804-3.

(2) Prior to the award of any contract which will contain one or more priced options totalling $500,000 or more, the submission of certified cost or pricing data covering the basic contract and the option(s) may be required regardless of when the option(s) may be exercised, unless an exemption thereto is appropriate in accordance with FAR 15.804-3.

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE | PAGE OF PAGES: 1 | 5

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| 0014 | 26 MAR 96 | N/A | |

6. ISSUED BY — CODE: SP0200

DEFENSE PERSONNEL SUPPORT CENTER
2800 SOUTH 20TH STREET
PHILADELPHIA, PA 19145-5099
CONTRACT SPECIALIST: N. MARTIN
PHONE: 215-737-8422

7. ADMINISTERED BY (If other than Item 6) — CODE: SP0200

SAME AS BLOCK 6

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

(✓) X — 9A. AMENDMENT OF SOLICITATION NO.: DLA120-93-R-0587

9B. DATED (SEE ITEM 11): 11 AUGUST 1993

10A. MODIFICATION OF CONTRACT/ORDER NO.

10B. DATED (SEE ITEM 13)

CODE | FACILITY CODE

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [X] is extended, [ ] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning 01 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

(✓)

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

**E. IMPORTANT:** Contractor [ ] is not, [ ] is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

MED/SURG PRIME VENDOR - LONE STAR REGION

Subject solicitation is hereby amended as follows:

The closing date is hereby extended to 3:00 PM, local time, 11 April 1996. All responses must be received by the above cited time and date and are subject to the late submission, modifications, and withdrawal of proposals or quotation provision of the solicitation.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br>(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY (Signature of Contracting Officer) | 16C. DATE SIGNED |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105-02

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

DSCP-UMS-2412

Delete SECTION B on page 5 of Amendment 0012 in its entirety and replace with the following:

SECTION B

SCHEDULE OF SUPPLIES

Based on a 12 month reporting period, the ordering facilities that will be listed in Attachment III spent an estimated $56,715,500 per year for those types of medical/surgical products covered by the proposed contract. Based on this figure, the following is the Government's best estimate of yearly sales that these ordering facilities will experience over the five year period.

| | Yearly Estimate | Approximate Yearly Maximum |
|---|---|---|
| First Year | $28,357,750.00 | $ 70,894,375.00 |
| Option Year 1 | $56,715,500.00 | $141,788,750.00 |
| Option Year 2 | $56,715,500.00 | $141,788,750.00 |
| Option Year 3 | $56,715,500.00 | $141,788,750.00 |
| Option Year 4 | $56,715,500.00 | $141,788,750.00 |

No guarantee is given that the above volume will be purchased. It should be noted that during the first year of the contract each facility will begin to reduce its existing inventory of medical/surgical products. Orders will be placed with the Prime Vendor as existing inventories are reduced to lower levels. This may affect the volume of ordering during the base ordering period.

Your proposed distribution fee should be based on the Yearly Estimate. If the Approximate Yearly Maximum is exceeded in any given year, the contract will be completed for that year but subsequent years will be resolicited.

DSCP-UMS-2413

Delete pages 7 and 8 of Amendment 0012 in their entirety and replace with the following:

A portion of each year's estimate is for the JITO/EDO portion of the contract and a portion is for the Stockless portion of the contract.

The potential dollar value for the stockless portion of this contract in the base year is $23,500,000.00. The remaining $4,857,750.00 is the potential dollar value for the base year for facilities using the JITO/EDO portion of the contract only. For Option years 1-4, the potential dollar value for the stockless portion is $47,000,000.00 and the remaining $9,715,500.00 is the potential dollar value for facilities using the JITO/EDO portion of the contract only.

The following is the Government's best estimate of what percentages of these figures will be stockless and how the distribution fee will be calculated. (For this example the proposed distribution fee is 10%):

**STOCKLESS**

| | ANNUAL ESTIMATE | | ASSIGNED WEIGHT | | PROPOSED DISTRIBUTION FEE | | TOTAL STOCKLESS DIST FEE |
|---|---|---|---|---|---|---|---|
| Base Year | $23,500,000 | X | 2% | X | 10% | = | $ 47,000.00 |
| Option Yr 1 | $47,000,000 | X | 12% | X | 10% | = | $ 564,000.00 |
| Option Yr 2 | $47,000,000 | X | 31% | X | 10% | = | $1,457,000.00 |
| Option Yr 3 | $47,000,000 | X | 49% | X | 10% | = | $2,303,000.00 |
| Option Yr 4 | $47,000,000 | X | 59% | X | 10% | = | $2,773,000.00 |

Total Evaluated Proposed Stockless Distribution Fee: $7,144,000.00

DSCP-UMS-2414

The following is an example of how the distribution fee will be calculated for the JITO/EDO portion of the contract. (For this example the proposed JITO/EDO distribution fee is 5%):

JITO/EDO

| | ANNUAL ESTIMATE | | ASSIGNED WEIGHT | | PROPOSED DISTRIBUTION FEE | | TOTAL JITO/EDO DIST FEE |
|---|---|---|---|---|---|---|---|
| Base Year | $23,500,000 | X | 98% | X | 5% | = | $1,151,500.00 |
| | $ 4,857,750 | X | 100% | X | 5% | = | $ 242,887.50 |
| Option Yr 1 | $47,000,000 | X | 88% | X | 5% | = | $2,068,000.00 |
| | $ 9,715,500 | X | 100% | X | 5% | = | $ 485,775.00 |
| Option Yr 2 | $47,000,000 | X | 69% | X | 5% | = | $1,621,500.00 |
| | $ 9,715,500 | X | 100% | X | 5% | = | $ 485,775.00 |
| Option Yr 3 | $47,000,000 | X | 51% | X | 5% | = | $1,198,500.00 |
| | $ 9,715,500 | X | 100% | X | 5% | = | $ 485,775.00 |
| Option Yr 4 | $47,000,000 | X | 41% | X | 5% | = | $ 963,500.00 |
| | $ 9,715,500 | X | 100% | X | 5% | = | $ 485,775.00 |

Total Evaluated Proposed JITO/EDO Distribution Fee: $9,188,987.50

The Total Evaluated Proposed Stockless Distribution Fee and the Total Evaluated Proposed JITO/EDO Distribution Fee will be added together to come up with the TOTAL PROPOSED DISTRIBUTION FEE which from the above example would be $16,332,987.50.

On page 9 of Amendment 0012 under "B. Prime Vendor's Daily Duties:" delete number 5 and replace with the following: 5) Deliver and restock material to the stock sites by 3:00 P.M.; local time of the stock site, on the following day of order authorization.

Add to page 13 of Amendment 0012 the following: The dollar value listed for each of these facilities includes potential JITO/EDO sales and Stockless sales. These facilities can place JITO/EDO orders or stockless orders. Facilities not listed on this page but listed on pages 40 through 47 will be placing only JITO/EDO orders.

On page 44 of Amendment 0012 delete the US PUBLIC HEALTH SERVICE (USPHS) as an ordering/receiving point.

Add the following ordering/receiving point:

Fort Huachuca, AZ
DEA# AR5071814

<u>ORDERING POINT</u>
Raymond Bliss Army Hosp
Materials Mgt, Bldg 45022
Fort Huachuca, AZ 85613

<u>RECEIVING POINT</u>
Raymond Bliss Army Hosp
Materials Mgt, Bldg 45022
Fort Huachuca, AZ 85613

DSCP-UMS-2415

The following is hereby incorporated into subject solicitation:

AWARD DATE/EFFECTIVE DATE

Award Date:

The award date for this solicitation will be the date of signature by the Contracting Officer in block 20C on the cover award page. This date will not be used to determine the start date for the base year.

Effective Date:

The effective date is the date the contract becomes effective, as shown in block 3 on the cover award page. The base year begins on the effective date. In Clause 52.216-18 (M), 'Electronic Ordering Under "Prime Vendor, "' paragraph (a), second sentence delete "date of award" and substitute "the effective date." so that the sentence now reads "Such orders may be issued from "the effective date" through 1 year thereafter."

Please Note: Since this and the preceding award for this region are requirements contracts, they cannot be effective at the same time. Accordingly, no delivery orders under the new contract may be processed by the Prime Vendor prior to the effective date of the new contract.

If the Prime Vendor holding the present contract receives the follow-on award, the change to the new distribution fee will take place on the effective date of the follow-on contract.

If a new Prime Vendor (to the region) receives this award, the period between the award date and the effective date of the contract will be used by the Government and the new Prime Vendor as a "ramp-up" period. In the interest of minimizing the amount of time that the ordering facilities have to spend without a Prime Vendor, during this period the Government will take all actions required to assist the awardee in taking over the Prime Vendor responsibilities for the region on the effective date of the contract. The new Prime Vendor shall use the period between the award and effective dates of the new contract to comply with all of the requirements of the Statement of Work (e.g., submission of implementation plan, training, preparation for availability of usage data items, etc.) to ensure successful implementation of the new contract by the effective date. The new Prime Vendor may also receive (but not process) electronic delivery orders from the ordering facilities for the purpose of testing the EOE/EDI system prior to the effective date of the new contract.

We expect there to be approximately 120 days between the award date and effective date of the new contract.

DSCP-UMS-2416

# AWARD/CONTRACT

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) — RATING: DO-C9 — PAGE 01 OF 10 PAGES

2. CONTRACT (*Proc. Inst. Ident.*) NO.: SP0200-97-D-7133

3. EFFECTIVE DATE: 1 JUNE 1997

4. REQUISITION/PURCHASE REQUEST/PROJECT NO.: N/A

5. ISSUED BY — CODE SP0200

DEFENSE PERSONNEL SUPPORT CENTER
2800 SOUTH 20TH STREET
PHILADELPHIA, PA 19145-5099
DPSC-MSAA (N. MARTIN/215-737-8422)

6. ADMINISTERED BY (*If other than Item 5*) — CODE SP0200

SAME AS BLOCK 6

7. NAME AND ADDRESS OF CONTRACTOR (*No., street, city, county, State and ZIP Code*)

UNITED MEDICAL SUPPLY
5117 NORTHEAST PARKWAY
FORT WORTH, TX 76106

CODE 5T804 — FACILITY CODE

8. DELIVERY: [ ] FOB ORIGIN [X] OTHER (*See below*)

9. DISCOUNT FOR PROMPT PAYMENT: N/A

10. SUBMIT INVOICES (*4 copies unless otherwise specified*) TO THE ADDRESS SHOWN IN: ITEM 12

11. SHIP TO/MARK FOR — CODE

AS CITED IN INDIVIDUAL DELIVERY ORDERS

12. PAYMENT WILL BE MADE BY — CODE SC0200

DFAS-COLUMBUS CENTER ATTN: DFAS-CO-SEM
P.O. BOX 182317
COLUMBUS, OH 43218-6248

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
[ ] 10 U.S.C. 2304(c)( ) [ ] 41 U.S.C. 253(c)( )

14. ACCOUNTING AND APPROPRIATION DATA: 97X4930 5CM0 S33150

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | MEDICAL/SURGICAL PRIME VENDOR FOR THE LONE STAR REGION. THE CONTRACT NUMBER IN BLOCK 2 WILL BE USED FOR THE JITO/EDO PORTION OF THE CONTRACT. NO STOCKLESS SALES WILL BE CAPTURED UNDER THIS CONTRACT NUMBER. | THE ESTIMATED DOLLAR VALUES CITED BELOW INCLUDE ALL POTENTIAL JITO/EDO AND STOCKLESS SALES PLUS THE APPLICABLE DISTRIBUTION FEES<br><br>ESTIMATED DOLLAR VALUE FOR THE BASE YEAR: | | | $30,177,346.00 |

15G ESTIMATED TOTAL AMOUNT OF CONTRACT: $ 272,268,214.00

## 16. TABLE OF CONTENTS

| (✓) | SEC | DESCRIPTION | PAGE(S) | (✓) | SEC | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| | A | SOLICITATION/CONTRACT FORM | | | I | CONTRACT CLAUSES | |
| | B | SUPPLIES OR SERVICES AND PRICES/COSTS | | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| | C | DESCRIPTION/SPECS./WORK STATEMENT | | | J | LIST OF ATTACHMENTS | |
| | D | PACKAGING AND MARKING | | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| | E | INSPECTION AND ACCEPTANCE | | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| | F | DELIVERIES OR PERFORMANCE | | | | | |
| | G | CONTRACT ADMINISTRATION DATA | | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| | H | SPECIAL CONTRACT REQUIREMENTS | | | M | EVALUATION FACTORS FOR AWARD | |

*CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE*

17. [ ] CONTRACTOR'S NEGOTIATED AGREEMENT (*Contractor is required to sign this document and return ______ copies to issuing office.*) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (*Attachments are listed herein.*)

18. [X] AWARD (*Contractor is not required to sign this document.*) Your offer on Solicitation Number DLA120-93-R-0587*, including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

*SEE PAGE 2

19A. NAME AND TITLE OF SIGNER (*Type or print*)

20A. NAME OF CONTRACTING OFFICER: L. FLATLEY

19B. NAME OF CONTRACTOR
BY ______ (*Signature of person authorized to sign*)

19C. DATE SIGNED

20B. UNITED STATES OF AMERICA
BY L. Flatley (*Signature of Contracting Officer*)

20C. DATE SIGNED: 1/30/97

NSN 7540-01-152-8069
PREVIOUS EDITION UNUSABLE

26-107
1985 O - 478-632

STANDARD FORM 26 (REV. 4-85)
Prescribed by GSA

CONTRACT NUMBER: SP0200-97-D-7133 PAGE 02 OF 10
NAME OF CONTRACTOR: UNITED MEDICAL SUPPLY
MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION

| ITEM NO | SUPPLIES/SERVICES | DISTRIBUTION FEE JITO/EDQ |
|---|---|---|
| 0001 | BASE YEAR | 6.4% |
| 0002 | OPTION YEAR 1 | 6.4% |
| 0003 | OPTION YEAR 2 | 6.4% |
| 0004 | OPTION YEAR 3 | 6.4% |
| 0005 | OPTION YEAR 4 | 6.4% |

CONTRACT PERIOD:

The contract term is for a one (1) year period commencing on the date cited in block 3 on page 1 of this document.

This contract contains option provisions in accordance with Clause 52.217-9P10. This document does not exercise these options. You will be notified in writing, at the time the Government chooses to exercise any option.

THE CONTRACT NUMBER SP0200-97-D-7134 WILL BE ISSUED FOR THE STOCKLESS PORTION OF THE CONTRACT.

Inspection and Acceptance shall be in accordance with the terms and conditions contained in the Statement of Work (SOW).

Delivery terms shall be in accordance with the terms and conditions contained in the Statement of Work (SOW).

In accordance with Clause 52.216-18 (M), 'Electronic Ordering Under "Prime Vendor,"' Delivery Orders for any supplies to be furnished under this contract may be issued from the effective date of the contract through one (1) year thereafter.

Pursuant to Clause 52.216-21, "Requirements", the contractor shall not be required to make any deliveries under this contract after 10 days after the expiration of the contract.

* This award includes the following documents:

Amendments 0008 through 0019
Contractor Letters dated 12 Dec 96, 3 Jan 97, 16 Jan 97 & 21 Jan 97
BAFO Letter dated 24 Jan 97

CONTRACT NUMBER: SP0200-97-D-7133 PAGE 03 OF 10
CONTRACTOR: UNITED MEDICAL SUPPLY
MEDICAL/SURICAL PRIME VENDOR - LONE STAR REGION

ATTACHMENT #III

ORDERING FACILITIES
ORDERING AND RECEIVING POINTS
MEDICAL/SURGICAL PRIME VENDOR PROGRAM
LONE STAR (TEXAS/OKLAHOMA/NEW MEXICO) REGION

| ORDERING POINTS(S) | RECEIVING POINT(S) |
|---|---|
| FORT SAM HOUSTON<br>BROOKE ARMY MEDICAL CENTER<br>DEA REG NO. AB6296063 | 3A |
| Brooke Army Medical Center<br>Material Branch, Logistics Div.<br>Building 2640<br>Fort Sam Houston, TX 78234 | Brooke Army Medical Center<br>Material Branch, Logistics Div.<br>Building 2640<br>Fort Sam Houston, TX 78234 |
| FORT SAM HOUSTON<br>BROOKE ARMY MEDICAL CENTER | |
| Brooke Army Medical Center<br>Operating Room/Dept Surgery<br>Main Hospital 3rd Floor<br>Building 1000<br>Fort Sam Houston, TX 78234 | Brooke Army Medical Center<br>Operating Room/Dept Surgery<br>Main Hospital 3rd Floor<br>Building 1000<br>Fort Sam Houston, TX 78234 |
| FORT SAM HOUSTON<br>BROOKE ARMY MEDICAL CENTER | |
| Brooke Army Medical Center<br>Burn Center Ward 14A<br>Main Hospital 4th Floor<br>Building 1000<br>Fort Sam Houston, TX 78234 | Brooke Army Medical Center<br>Burn Center Ward 14A<br>Main Hospital 4th Floor<br>Building 1000<br>Fort Sam Houston, TX 78234 |
| FORT SAM HOUSTON<br>BROOKE ARMY MEDICAL CENTER | |
| Brooke Army Medical Center<br>OB/GYN Clinic<br>Building 1000<br>Room 187<br>Fort Sam Houston, TX 78234 | Brooke Army Medical Center<br>OB/GYN Clinic<br>Building 1000<br>Room 187<br>Fort Sam Houston, TX 78234 |

THE GOVERNMENT RESERVES THE RIGHT TO ADD ORDERING AND RECEIVING POINTS OR DELETE ORDERING AND RECEIVING POINTS DURING THE LIFE OF THE CONTRACT.

Ordering facilities shall refer to the DPSC Medical Prime Vendor Program Desk Reference for instructions on selecting and ordering products.

CONTRACT NUMBER: SP0200-97-D-7133 PAGE 04 OF 10
CONTRACTOR: UNITED MEDICAL SUPPLY
MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION

**ATTACHMENT #III**
**ORDERING FACILITIES**
**ORDERING AND RECEIVING POINTS**
**MEDICAL/SURGICAL PRIME VENDOR PROGRAM**
**LONE STAR (TEXAS/OKLAHOMA/NEW MEXICO) REGION**

| ORDERING POINT(S) | RECEIVING POINT(S) |
|---|---|
| **FORT SAM HOUSTON<br>BROOKE ARMY MEDICAL CENTER** | |
| Brooke Army Medical Center<br>Central Materiel Section<br>Building 2376<br>Beach Pavilion Basement<br>Fort Sam Houston, TX 78234 | Brooke Army Medical Center<br>Central Materiel Section<br>Building 2376<br>Beach Pavilion Basement<br>Fort Sam Houston, TX 78234 |
| **FORT SAM HOUSTON<br>BROOKE ARMY MEDICAL CENTER** | |
| Brooke Army Medical Center<br>Operating Room/Dept Surgery<br>Building 2376<br>Beach Pavilion 2nd Floor<br>Fort Sam Houston, TX 78234 | Brooke Army Medical Center<br>Operating Room/Dept Surgery<br>Building 2376<br>Beach Pavilion 2nd Floor<br>Fort Sam Houston, TX 78234 |
| **FORT SAM HOUSTON<br>BROOKE ARMY MEDICAL CENTER** | |
| W80XVY<br>147TH Medlog Battalion<br>Medical Supply Support Activity<br>Building 4217<br>Fort Sam Houston, TX 78234 | W80XVY<br>147TH Medlog Battalion<br>Medical Supply Support Activity<br>Building 4217<br>Fort Sam Houston, TX 78234 |
| FORT HOOD<br>DARNALL ARMY COMMUNITY HOSPITAL<br>DEA REG NO. BD2247536 | |
| Darnall Army Community Hospital (4 Each)<br>Medical Supply Officer<br>Warehouse 92066<br>West Fort Hood, TX 76544-5063 | Darnall Army Community Hospital<br>Medical Supply Officer<br>Warehouse 92066<br>West Fort Hood, TX 76544-5063 |

Waco Kileen

THE GOVERNMENT RESERVES THE RIGHT TO ADD ORDERING AND RECEIVING POINTS OR DELETE ORDERING AND RECEIVING POINTS DURING THE LIFE OF THE CONTRACT.

Ordering facilities shall refer to the DPSC Medical Prime Vendor Program Desk Reference for instructions on selecting and ordering products.

**ATTACHMENT #III**
**ORDERING FACILITIES**
**ORDERING AND RECEIVING POINTS**
**MEDICAL/SURGICAL PRIME VENDOR PROGRAM**
**LONE STAR (TEXAS/OKLAHOMA/NEW MEXICO) REGION**

| ORDERING POINT(S) | RECEIVING POINT(S) |
| --- | --- |
| **FORT BLISS<br>WILLIAM BEAUMONT ARMY MEDICAL CENTER<br>DEA REG NO. AW5847681** | |
| Material Branch (2 Each)<br>William Beaumont Army Medical Center<br>Building 11156<br>Biggs Army Airfield<br>El Paso, TX 79918 | Material Branch (2 Each)<br>William Beaumont Army Medical Center<br>Building 11156<br>Biggs Army Airfield<br>El Paso, TX 79918 |
| **FORT BLISS<br>WILLIAM BEAUMONT ARMY MEDICAL CENTER** | |
| WBAMC<br>Materiel Distribution Section<br>Building 7777<br>Room 1-67<br>El Paso, TX 79920 | WBAMC<br>Materiel Distribution Section<br>Building 7777<br>Room 1-67<br>El Paso, TX 79920 |
| **FORT BLISS<br>WILLIAM BEAUMONT ARMY MEDICAL CENTER** | |
| WBAMC<br>Operating Room<br>Building 7777<br>Room 4-389<br>El Paso, TX 79920 | WBAMC<br>Operating Room<br>Building 7777<br>Room 4-389<br>El Paso, TX 79920 |
| **FORT BLISS<br>WILLIAM BEAUMONT ARMY MEDICAL CENTER** | |
| Consolidated Troop Medical Clinic<br>Building 2496<br>Room T117<br>Ricker Road<br>Fort Bliss, TX 79916 | Consolidated Troop Medical Clinic<br>Building 2496<br>Room T117<br>Ricker Road<br>Fort Bliss, TX 79916 |

THE GOVERNMENT RESERVES THE RIGHT TO ADD ORDERING AND RECEIVING POINTS OR DELETE ORDERING AND RECEIVING POINTS DURING THE LIFE OF THE CONTRACT.

Ordering facilities shall refer to the DPSC Medical Prime Vendor Program Desk Reference for instructions on selecting and ordering products.

**ATTACHMENT #III**
**ORDERING FACILITIES**
**ORDERING AND RECEIVING POINTS**
**MEDICAL/SURGICAL PRIME VENDOR PROGRAM**
**LONE STAR (TEXAS/OKLAHOMA/NEW MEXICO) REGION**

| ORDERING POINT(S) | RECEIVING POINT(S) |
|---|---|
| **FORT BLISS**<br>**WILLIAM BEAUMONT ARMY MEDICAL CENTER** | |
| USA Health Clinic<br>Building 525<br>White Sands Missile Range,<br>New Mexico 88002-5509 | USA Health Clinic<br>Building 525<br>White Sands Missile Range,<br>New Mexico 88002-5509 |
| **FORT SILL**<br>**REYNOLDS ARMY COMMUNITY HOSPITAL**<br>**DEA REG NO. AU5233882** | |
| Medical Supply Warehouse<br>Building 4300<br>Thomas Street<br>Fort Sill, OK 73503-6300 | Medical Supply Warehouse<br>Building 4300<br>Thomas Street<br>Fort Sill, OK 73503-6300 |
| **FORT SILL**<br>**REYNOLDS ARMY COMMUNITY HOSPITAL**<br>**DEA REG NO. AU5233882** | |
| Central Materiel Supply<br>Building 4300<br>Room GE118<br>Thomas Street<br>Fort Sill, OK 73503-6300 | Central Materiel Supply<br>Building 4300<br>Room GE118<br>Thomas Street<br>Fort Sill, OK 73503-6300 |
| **NAVAL HOSPITAL**<br>**CORPUS CHRISTI**<br>**DEA REG NO. BN0235590** | |
| N00285<br>Commanding Officer<br>Materials Management Dept (029)<br>10651 E Street<br>Building H-100<br>Corpus Christi, TX 78419-5131 | N00285<br>Commanding Officer<br>Materials Management Dept (029)<br>10651 E Street<br>Building H-100<br>Corpus Christi, TX 78419-5131 |

THE GOVERNMENT RESERVES THE RIGHT TO ADD ORDERING AND RECEIVING POINTS OR DELETE ORDERING AND RECEIVING POINTS DURING THE LIFE OF THE CONTRACT.

Ordering facilities shall refer to the DPSC Medical Prime Vendor Program Desk Reference for instructions on selecting and ordering products.

CONTRACT NUMBER: SP0200-97-D-7133 PAGE 07 OF 10
CONTRACTOR: UNITED MEDICAL SUPPLY
MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION

**ATTACHMENT #III**
**ORDERING FACILITIES**
**ORDERING AND RECEIVING POINTS**
**MEDICAL/SURGICAL PRIME VENDOR PROGRAM**
**LONE STAR (TEXAS/OKLAHOMA/NEW MEXICO) REGION**

| ORDERING POINT(S) | RECEIVING POINT(S) |
| --- | --- |
| **NAVAL HOSPITAL CORPUS CHRISTI** | |
| N00285<br>Commanding Officer<br>Materials Management Dept (029)<br>10651 E. Street<br>Building H-100<br>Corpus Christi, TX 78419-5131 | N32645<br>Officer in Charge<br>Branch Medical Clinic<br>8100 Jefferson Avenue<br>Building 9<br>Naval Air Station<br>Dallas, TX 75211 |
| **NAVAL AIR STATION DALLAS, TX** | |
| Branch Medical Clinic<br>8100 Jefferson Avenue<br>Naval Air Station<br>Dallas, TX 75211 | Branch Medical Clinic<br>8100 Jefferson Avenue<br>Naval Air Station<br>Dallas, TX 75211 |
| **FORT HUACHUCA, AZ DEA REG NO. AR5071814** | |
| Raymond Bliss Army Hospital<br>Materials Mgt, Bldg 45022<br>Fort Huachuca, AZ 85613 | Raymond Bliss Army Hospital<br>Materials Mgt, Bldg 45022<br>Fort Huachuca, AZ 85613 |
| **U.S. AIR FORCE CLINIC BROOKS AFB DEA REG NO. RB0117083** | |
| 70TH Logistics Squadron/LGB<br>8006 Chennault Road<br>Suite 1<br>Brooks AFB, TX 78235 | 70TH Logistics Squadron/LGB<br>8006 Chennault Road<br>Suite 1<br>Brooks AFB, TX 78235 |

S/A

THE GOVERNMENT RESERVES THE RIGHT TO ADD ORDERING AND RECEIVING POINTS OR DELETE ORDERING AND RECEIVING POINTS DURING THE LIFE OF THE CONTRACT.

Ordering facilities shall refer to the DPSC Medical Prime Vendor Program Desk Reference for instructions on selecting and ordering products.

CONTRACT NUMBER: SP0200-97-D-7133 PAGE 08 OF 10
CONTRACTOR: UNITED MEDICAL SUPPLY
MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION

**ATTACHMENT #III**
**ORDERING FACILTIES**
**ORDERING AND RECEIVING POINTS**
**MEDICAL/SURGICAL PRIME VENDOR PROGRAM**
**LONE STAR (TEXAS/OKLAHOMA/NEW MEXICO) REGION**

| ORDERING POINT(S) | RECEIVING POINT(S) |
|---|---|
| **U.S. AIR FORCE CLINIC KELLY AFB DEA REG NO. BU3128596** | |
| 76 Medical Group/SGSL<br>204 Wagner Drive<br>Building 1730<br>Kelly AFB, TX 78241-5846 | 76 Medical Group/SGSL<br>204 Wagner Drive Bldg 1730<br>Back Warehouse Door<br>Kelly AFB, TX 78241-5846 |
| **U.S. AIR FORCE CLINIC RANDOLPH AFB DEA REG NO. AR6241501** | |
| Medical Supply Officer<br>221 3rd St West<br>Building 1040<br>Randolph AFB, TX 78150 | Medical Supply Officer<br>221 3rd St West<br>Building 1040<br>Randolph AFB, TX 78150 S/A |
| **U.S. AIR FORCE HOSPITAL LAUGHLIN AFB DEA REG NO. AU6749153** | |
| FM3099<br>47th Medical Squadron/SGL<br>590 Mitchell Blvd<br>Building 375<br>Laughlin AFB, TX 78843-5000 | FM3099<br>47th Medical Squadron/SGL<br>590 Mitchell Blvd<br>Building 375<br>Laughlin AFB, TX 78843-5000 S/A |
| **U.S. AIR FORCE HOSPITAL SHEPPARD AFB** | |
| 82nd Medical Group/SGAL<br>149 Hart St<br>Building 1200, Suite 7<br>Sheppard AFB, TX 76311-3484 | 82nd Medical Group/SGAL<br>149 Hart St<br>Building 1200, Suite 7<br>Sheppard AFB, TX 76311-3484 Wichita Falls |

THE GOVERNMENT RESERVES THE RIGHT TO ADD ORDERING AND RECEIVING POINTS OR DELETE ORDERING AND RECEIVING POINTS DURING THE LIFE OF THE CONTRACT.

Ordering facilities shall refer to the DPSC Medical Prime Vendor Program Desk Reference for instructions on selecting and ordering products.

CONTRACT NUMBER: SP0200-97-D-7133
CONTRACTOR: UNITED MEDICAL SUPPLY
MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION



**ATTACHMENT #III**
**ORDERING FACILITIES**
**ORDERING AND RECEIVING POINTS**
**MEDICAL/SURGICAL PRIME VENDOR PROGRAM**
**LONE STAR (TEXAS/OKLAHOMA/NEW MEXICO) REGION**

| ORDERING POINT(S) | RECEIVING POINT(S) |
|---|---|
| **U.S. AIR FORCE HOSPITAL ALTUS AFB DEA REG NO. AU5589847** | |
| 97th Medical Group/SGAL<br>301 North First Street<br>Building 46<br>Altus AFB, OK 73523-5005 | 97th Medical Group/SGAL<br>301 North First Street<br>Building 46<br>Altus AFB, OK 73523-5005 |
| **U.S. AIR FORCE HOSPITAL TINKER AFB DEA REG NO. AM5948041** | |
| 72d Medical Support Squadron/SGSL<br>5700 Arnold Drive<br>Building 5801<br>Tinker AFB, OK 73145-8102 | 72d Medical Support Squadron/SGSL<br>5700 Arnold Drive<br>Building 5801<br>Tinker AFB, OK 73145-8102 |
| **U.S. AIR FORCE HOSPITAL REESE AFB DEA REG NO. BM0465799** | |
| 64th Medical Group/SGSLM<br>250 13th St.<br>Building 1300<br>Reese AFB, TX 79489-5008 | 64th Medical Group/SGSLM<br>250 13th St.<br>Building 1300<br>Reese AFB, TX 79489-5008 Lubbock |
| **U.S. AIR FORCE HOSPITAL DYESS AFB DEA REG NO. AU5209540** | |
| 7th Medical Group/SGAL<br>697 Hospital Road<br>Building 9201<br>Dyess AFB, TX 79607-1367 | 7th Medical Group/SGAL<br>697 Hospital Road<br>Building 9201<br>Dyess AFB, TX 79607-1367 Abilene |

THE GOVERNMENT RESERVES THE RIGHT TO ADD ORDERING AND RECEIVING POINTS OR DELETE ORDERING AND RECEIVING POINTS DURING THE LIFE OF THE CONTRACT.

Ordering facilities shall refer to the DPSC Medical Prime Vendor Program Desk Reference for instructions on selecting and ordering products.

**ATTACHMENT #III**
**ORDERING FACILITIES**
**ORDERING AND RECEIVING POINTS**
**MEDICAL/SURGICAL PRIME VENDOR PROGRAM**
**LONE STAR (TEXAS/OKLAHOMA/NEW MEXICO) REGION**

| ORDERING POINT(S) | RECEIVING POINT(S) |
|---|---|
| **U.S. AIR FORCE CLINIC GOODFELLOW AFB DEA REG NO. AU6006995** | |
| FM3030<br>17th Med Support Squadron/SGL<br>271 Fort Richardson Ave<br>Building 1001<br>Goodfellow AFB, TX 76908-4902 | FM3030<br>17th Med Support Squadron/SGL<br>271 Fort Richardson Ave<br>Building 1001<br>Goodfellow AFB, TX 76908-4902 |
| **U.S. AIR FORCE HOSPITAL HOLLOMAN AFB DEA REG NO. AC4868165** | |
| 49th Medical Group/SGL<br>Medical Logistics<br>280 First Street<br>Building 14<br>Holloman AFB, NM 88330-5300 | 49th Medical Group/SGL<br>Medical Logistics<br>280 First Street<br>Building 14<br>Holloman AFB, NM 88330-5300 |
| **U.S. AIR FORCE HOSPITAL CANNON AFB DEA REG NO. AU6683397** | |
| FM4855<br>27th Medical Group/MGAL<br>208 West Casablanca<br>Cannon AFB, NM 88103 | FM4855<br>27th Medical Group/MGAL<br>208 West Casablanca<br>Cannon AFB, NM 88103 |
| **VANCE AFB, OK DEA REG NO. B94426676** | |
| 71st Medical Group<br>527 Gott Road<br>Building 810<br>Vance AFB, OK 73705-5105 | 71st Medical Group<br>527 Gott Road<br>Building 810<br>Vance AFB, OK 73705-5105 |

THE GOVERNMENT RESERVES THE RIGHT TO ADD ORDERING AND RECEIVING POINTS OR DELETE ORDERING AND RECEIVING POINTS DURING THE LIFE OF THE CONTRACT.

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE | PAGE 1 OF PAGES 2

2. AMENDMENT/MODIFICATION NO.: P00006
3. EFFECTIVE DATE: 6-30-97
4. REQUISITION/PURCHASE REQ. NO.: N/A
5. PROJECT NO. (If applicable)

6. ISSUED BY CODE SP0200
DEFENSE PERSONNEL SUPPORT CENTER
2800 SOUTH 20TH STREET
PHILADELPHIA, PA 19145-5099
CONTRACT SPECIALIST: N. MARTIN
PHONE: 215-737-8422

7. ADMINISTERED BY (If other than Item 6) CODE SP0200
SAME AS BLOCK 6

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)
UNITED MEDICAL SUPPLY
5117 NORTHEAST PARKWAY
FORT WORTH, TX 76106

CODE 5T804 | FACILITY CODE

(X) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.
X SP0200-97-D-7133

10B. DATED (SEE ITEM 13) 01/30/97

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. Accounting and Appropriation Data (If required)
MEDICAL/SURGICAL PRIME VENDOR - LONE STAR REGION

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

(X) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

X B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 01 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The above referenced contract is hereby modified to reflect the changes cited on Page 2 of this document.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print): C.M.R. Bandy - President
15B. CONTRACTOR/OFFEROR: [signature] (Signature of person authorized to sign)
15C. DATE SIGNED: 6-18-97

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print): L. FLATLEY
16B. UNITED STATES OF AMERICA BY [signature] (Signature of Contracting Officer)
16C. DATE SIGNED: 6/30/97

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
Created using PerForm Pro software.
STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

17

MODIFICATION NUMBER: P00006
CONTRACT NUMBER: SP0200-97-D-7133
MEDICAL/SURGICAL PRIME VENDOR
LONE STAR REGION

1. The following Ordering and Receiving Point is hereby added to the Lone Star Region:

**ORDERING POINT** / **RECEIVING POINT**

AFMLO/OL-2
DEA# BA4429937

| ORDERING POINT | RECEIVING POINT |
|---|---|
| AFMLO/OL-2<br>501 Felix St., Warehouse 6<br>Fort Worth, TX 76115-0627 | AFMLO/OL-2<br>501 Felix St., Warehouse 6<br>Fort Worth, TX 76115-0627 |

Point of Contact: TSgt Koonce
Telephone: 817-885-6964

Estimated Dollar Value: $400,000.00 per year

2. There shall be no change in the contractual distribution fees as a result of the above-cited change. All other terms and conditions of the contract remain the same.

** TOTAL PAGE.006 **

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | MAIN CASE NO: 03-CV-289<br>Consolidated case no: 07-cv-187<br>Judge Allegra |

## EXHIBIT C TO SECOND AMENDED COMPLAINT

DSCP PAGE USED FOR BASIS FOR ESTIMATES OF REQUIREMENTS

E. Kathleen Shahan
D.C. Bar # 267872
Civil Division
U.S. Department of Justice
P.O. Box 875, Ben Franklin Station
Washington, D.C. 20044-0875
202 - 307-0249
202 - 307-0494 (telefax)
Kathie.Shahan@usdoj.gov
Attorney for the United States

**IN THE UNITED BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: UNITED MEDICAL SUPPLY COMPANY INC., Debtor-in-Possession | ) | Case No.01 - 41911-bjh-11<br>Chapter 11 |
| United Medical Supply Company, Inc., Plaintiff, | ) | |
| v. | ) | Adversary: 02 - 4230 |
| United States of America, Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF**
**<u>DISCOVERY REQUESTS TO DEFENDANT UNITED STATES</u>**

Defendant, the United States of America, responds to plaintiff's first set of discovery requests as follows:

......

**<u>REQUEST FOR PRODUCTION</u>**

**<u>REQUEST NO. 1</u>**

The documents used by the Supply Center to estimate the representations made to United Medical of Base Year Contract Value and the Total Contract Value, including information received from each Participating MTF. This request refers to the estimate of contract value originally made and as amended from time to time by the Department of Defense.

**<u>RESPONSE NO. 1</u>**

The only existing document responsive to this request is attached as Attachment C.

.....

As to Objections:

Dated: November 25, 2002

Respectfully submitted,

ROBERT D. McCALLAM, JR.
Assistant Attorney General

RICHARD H. STEPHENS
United States Attorney

E. Kathleen Shahan

J. CHRISTOPHER KOHN
TRACY J. WHITAKER
E. KATHLEEN SHAHAN
D.C. Bar No. 267872
Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
(202)307-0249

ATTORNEYS FOR THE UNITED STATES

VERIFICATION

The undersigned certifies, under penalty of perjury, that, to the best of her knowledge and belief, the factual information in the foregoing responses is true.

Date: 11/21/02

James Jennings

James Jennings, Contracting Officer

**MEDICAL/SURGICAL PRIME VENDOR**
**LONE STAR REGION**

11/6/95

| | |
|---|---|
| **ARMY** | |
| Fort Sam Houston | $21,000,000 |
| Fort Hood | $ 4,000,000 |
| Fort Bliss | $18,000,000 |
| Fort Sill | $ 4,000,000 |
| **NAVY** | |
| Corpus Christi | $ 300,000 |
| **AIR FORCE** | |
| Brooks AFB | $ 74,500 |
| Kelly AFB | $ 350,000 |
| Randolph AFB | $ 110,000 |
| Laughlin AFB | $ 420,000 |
| Sheppard AFB | $ 2,500,000 |
| Altus AFB | $ 2,000,000 |
| Tinker AFB | $ 420,000 |
| Reese AFB | $ 60,000 |
| Dyess AFB | $ 1,490,000 |
| Goodfellow AFB | $ 41,000 |
| Holloman AFB | $ 400,000 |
| Cannon AFB | $ 500,000 |
| US Public Health Service | $ 2,000,000 |
| TOTAL | $57,665,500 |

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | MAIN CASE NO: 03-CV-289<br>Consolidated case no: 07-cv-187<br>Judge Allegra |

## EXHIBIT D TO SECOND AMENDED COMPLAINT

Sample DSCP internal email correspondence regarding impact on payments to Plaintiff from failure of DSCP's Mercator translator.

Period Covered by emails: March 19, 1999 to December 6, 1999

**From:** Rees, Margaret [paa3050@dscp.dla.mil]
**Sent:** Monday, December 06, 1999 3:57 PM
**To:** Gatica, Al; Falls, Christopher; Donald LTCol Butterworth; Flatley, Linda; Gunn, Florence; Charalabidis, John; Rees, Margaret; Polini, Geneva; Carfagno, Ronald; Rogers, Roslyn; Wentzel, Gregory
**Cc:** 'Amendolia, Anthony'
**Subject:** FW: MEDICAL P.V. REPORT FOR November 30, 99

list of contract numbers.xls    Medical PV Interest Bearing In...

Greg- what is going on with United? Do you need to get Anthony
to help?
Maggie
> -----Original Message-----
> From: Wellens, Bud
> Sent: Monday, December 06, 1999 2:29 PM
> To: Bird, Sara
> Cc: Beck, Robert; Boyle, John; McManus, Stephen; Rees, Margaret
> Subject: FW: MEDICAL P.V. REPORT FOR November 30, 99
>
> Sally: Things are not getting better. As of 30 Nov there were 1572
> interest bearing invoices valued at $ 7,961,913. During Nov 1487 new
> invoices became interest bearing. Oct and Nov paid a total of $ 103,514
> Interest. Bud
>
>
>
> -Original Message-----
> From: Blais, Antoinette
> Sent: Monday, December 06, 1999 1:54 PM
> To: Galligan, Donna; Wellens, Bud
> Cc: DiTomo, Gus; Morris, Anne; Pringle, Toron
> Subject: MEDICAL P.V. REPORT FOR November 30, 99
>
> FYI
>
> <<list of contract numbers.xls>> <<Medical PV Interest
> Bearing Invoices.xls>>



DSCP-UMS-0568

**From:** Rees, Margaret [paa3050@exmail.dscp.dla.mil]
**Sent:** Friday, July 02, 1999 8:21 AM
**To:** Gatica, Al; Falls, Christopher; Donald LTCol Butterworth; Flatley, Linda; Gunn, Florence; Charalabidis, John; Rees, Margaret; Ostermann, Len; Polini, Geneva; Carfagno, Ronald; Rogers, Roslyn; Wentzel, Gregory
**Subject:** FW: MEDICAL INTEREST BEARING INVOICES

list of contract numbers.xls    Medical PV Interest Bearing In...

```
> -----Original Message-----
> From:     Bird, Sara
> Sent:     Thursday, July 01, 1999 4:21 PM
> To: McManus, Stephen; Rees, Margaret
> Subject:  FW: MEDICAL INTEREST BEARING INVOICES
>
> Guys,
> We have a terrible problem where we don't have the invoices because the
> translator "ate" them, but we have these invoices for $9m and we can't
> seem to get them processed?! Specifically, in pharmaceuticals, what is
> the problem with Bindley Western in the National Capitol Region? There
> are several millions of dollars outstanding and they're old. We owe them
> so much money I'm surprised they haven't cut us off. Please tell me what
> is going on. Tomorrow morning after the surcharge meeting, please. We
> haven't lost any facilitators have we? Sally
> -----Original Message-----
> From:     Wellens, Bud
> Sent:     Thursday, July 01, 1999 4:08 PM
> To: Bird, Sara
> Cc: Boyle, John
> Subject:  MEDICAL INTEREST BEARING INVOICES
>
> Sally: It is getting worse.There are now 1734 interest bearing invoices
> valud at $ 9 Million. During June 1999 pd $ 47,593.31 interest. This is
> more than all past FY's , except fy 98 were we pd $ 89,000. FYTD Medical
> SAMMS interst is $ 186,988.67. On 30 September 1998 there were 280
> interest bearing invoices valued at $1.5 Mil. It appears that something
> has changed.
>
> -----Original Message-----
> From:     Pringle, Toron
> Sent:     Thursday, July 01, 1999 3:24 PM
> To: Wellens, Bud; Galligan, Donna
> Cc: DiTomo, Gus; Morris, Anne
> Subject:  EI
>
> FYI  <<list of contract numbers.xls>>    <<Medical PV Interest
> Bearing Invoices.xls>>
```



DSCP-UMS-0624

**From:** Rees, Margaret [paa3050@exmail.dscp.dla.mil]
**Sent:** Thursday, July 01, 1999 4:14 PM
**To:** 'Amendolia, Anthony'; 'Flatley, Linda'; 'Polini, Geneva'; 'Wentzel, Gregory'
**Subject:** FW: UNITED MEDICAL

-----Original Message-----
From: Bird, Sara
Sent: Thursday, July 01, 1999 4:03 PM
To: Boyle, John
Cc: Rees, Margaret; McManus, Stephen
Subject: FW: UNITED MEDICAL

Jack,
We certainly appreciate the extraordinary efforts Bud Wellens and your office have made to shore up our failing electronic invoicing system. Perhaps after today, we will get the attention from the IT folks that we all have been demanding. As you personally may not be aware, United Medical is a small, minority owned distributor. We can't afford the adverse publicity nor the deterioration of service to our Texas customers if they are unable to pay their bills and are cut off from their suppliers. Their cash flow is very tight. If you can help get them the money they are owed, we'd be grateful. See the series of emails below.

As you may know we are resoliciting the pharmaceutical contracts right now and will begin the med-surg later this year. We have established a reputation for reliability in paying our bills. Our low distribution fees are for the most part dependent on cash management. These problems have set us back with the industry. I suppose we can call it the first casualty of Y2K. Sally

> -----Original Message-----
> From: Wellens, Bud
> Sent: Thursday, July 01, 1999 1:25 PM
> To: Wentzel, Greg
> Cc: Galligan, Donna; Rees, Margaret; Polini, Geneva; Boyle, John
> Subject: RE: UNITED MEDICAL
>
> They will have to wait in cash mgmt for 15 days. I can't be moving up over
> 10,000 payments for the numerous vendors with problems. Bud
>
> -----Original Message-----
> From: Wentzel, Greg
> Sent: Thursday, July 01, 1999 1:07 PM
> To: Wellens, Bud
> Cc: Galligan, Donna; Rees, Margaret; Polini, Geneva
> Subject: RE: UNITED MEDICAL
>
> Bud,
> We provided United a list consisting of 266 ULOs valued at $364,897.96.
> All were established prior to 4 June. I used
> that cutoff on the presumption that if it hadn't expended by now, it
> wasn't going to. They are going to retransmit and
> provide me with the invoice #'s and transmission date.
>
> Once received, and presuming that they make it thru the translator, what
> can be done to forego having them sit in
> cash management for 15 days??

>
> With the $79K that was paid out to United yesterday, the total payments
> for June are $848K. Unless I'm way off base
> in my figuring, The 364K in ULOs should make up the shortfall that United
> experienced in May and early June payments.
>
> Greg
>
> -----Original Message-----
> From: Wellens, Bud
> Sent: Thursday, July 01, 1999 12:31 PM
> To: Wentzel, Greg
> Cc: Boyle, John; Brukiewa, Ted; Galligan, Donna; Rees, Margaret
> Subject: UNITED MEDICAL
>
> Greg: I faxed Donna a list of all open ULO's as of 30 June 1999.
> There are 207 awards , valued at $ 273,770 , which have not pd. Either the
> invoice became interest bearing, or the invoices were not processed as a
> result of the ongoing problems. Determine if the obl is valid and the
> invoice didn't fall off the wheel. If so, suggest having United reinvoice.
> Chances of finding the old ones is slim as time passes. Lets try to put
> this behind us in the most expeditious manner. Bud

To: Wellens, Bud
Subject: FW: Mercator Translator Impact on EDI Process

-----Original Message-----
From: Allen, George
Sent: Wednesday, June 30, 1999 4:50 PM
To: 'bob_chamberlin@hq.dla.mil'; 'carla_vonbernewitz@hq.dla.mil';
mae_devincentis@hq.dla.mil
Cc: John Boyle; Phil, Col Liller; Rose Marie Badame; sbird@dscp.dla.mil;
dmongeon@dscp.dla.mil
Subject: Mercator Translator Impact on EDI Process

Sir,
As you can see by Sally's note below, we cannot seem to get to a point where we can come to closure on the Mercator translator. I have asked the staff to document the myriad problems, and what should have could have been done, but the bottom line is we will not meet the current deadline and I cannot give you a better one at this point. I had expected our staff here to provide you with specific data based on our conversation before I went on leave, and that did not occur. I will have a detailed brief to present to you at or before your weekly update on July 8, at which time we MIGHT be able to pick a better date.

-----Original Message-----
From: Bird, Sara
Sent: Wednesday, June 30, 1999 4:04 PM
To: Allen, George; Boyle, John; Badame, Rose Marie; Liller, Phil Col
Subject: Translator Impact on EDI Process

George, Jack, Phil and Ro,
I don't want to throw gasoline on what is already the most vexing problem to strike our prime vendor, ECAT and EDI programs but Ted's memo below is just the tip of an iceberg. We are not paying our vendors and it has affected some small businesses and 8a contractors. If we have been minimizing this issue with HQS DLA, now is the time to 'fess up and cry for help. Carla VonBernjwitz and ADM Chamberlin need to know how much trouble we're in. They might be very angry but I doubt they would insist on the mid-July deadline. Can we explore paying the invoices with our credit card or is that even harder than what we're doing? Sally

> -----Original Message-----
> From: Simpson, John
> Sent: Tuesday, June 29, 1999 8:46 PM
> To: Brukiewa, Ted
> Cc: Coyne, Brian; DiNicola, Donald; Wellens, Bud; Pera, Madeline;
> Garvin, Kathleen; Minnick, Robert LTC; Perez, Joseph; Dabrowski, Chester;
> McCarthy, Thomas; Dawley, Regina
> Subject: RE: Impact on EDI Process
>
> Ted and others: I'm as frustrated as you. My folks are trying real hard
> to work the issues but we just can't seem to get our heads above water.
> I've repeatedly asked for TSI support and it takes a while for us to get
> it. Once we get it, they come in and fix the issues and then leave.

**From:** Rees, Margaret [paa3050@exmail.dscp.dla.mil]
**Sent:** Monday, June 21, 1999 1:18 PM
**To:** 'Flatley, Linda'; 'Polini, Geneva'; Garvin, Kathleen
**Subject:** FW: FYI

> -----Original Message-----
> From: Wellens, Bud
> Sent: Monday, June 21, 1999 1:08 PM
> To: Wentzel, Greg; Coyne, Brian
> Cc: Brukiewa, Ted; Rees, Margaret; Galligan, Donna; Amendolia, Anthony;
> Polini, Geneva; Boyle, John
> Subject: RE: FYI
>
> Greg: I revived the examples you provided. GU40 AND 49 are in cash mgmt
> waiting to be pd. GT57, GT67, GT78 show a transation date prior to
> mecater. I do not see these invoices in the segment listings. However, the
> MVS translator blew out on 12, 13, and 14 May 1999 and it is possiblbe
> that these invoices were there, but not restored by O. I suggest that you
> have United invoice these orders. I show no records in Mecater segment
> listing for GT78,GT95, and GU35. Brian please see if you can find these.
> Note that non of this is my doing. Prior to Mecater these type problems
> did not exist. Suggest letting Brian to his research, restore if he finds
> them, and wait to month end so we have an updated ULO list with June
> information. Then make a determination as to what to do. Bud
>
> -----Original Message-----
> From: Wentzel, Greg
> Sent: Wednesday, June 16, 1999 4:47 PM
> To: Wellens, Bud
> Cc: Brukiewa, Ted; Rees, Margaret; Galligan, Donna; Amendolia, Anthony;
> Polini, Geneva
> Subject: RE: FYI
>
> Bud,
>
> We do have almost 60 aging invoices from United Medical totaling over
> $108,000. We always seem to have
> that issue with United and the customers in the Lonestar Region. But that
> is not the issue that concerns us
> here. We still believe, despite claims to the contrary, that many of our
> PV 810s were not recovered and
> successfully processed thru the translator and into SAMMS. For example,
> we now have somewhere in the
> neighborhood of 300 customer ULOs awaiting United Invoices. That's an
> awful lot of customer receipts without
> accompanying invoices. I've listed below a small sample of customer
> obligations amounting to big money
> from the point of United Medical. I gather that the last 3 might still be
> in cash management, but the first 5?
> We just pulled out some of the big ones, there are plenty more.
>
>
> Inv. Trans. dte Inv. # Obl. date $
> Value Call #
> 5/10/99 71320913 5/13/99
> 16,947.46 GT57
> 5/14/99 71360512 5/21/99
> 28,114.57 GT67
> 5/14/99 71397075 5/22/99
> 17,067.55 GT78
> 5/20/99 71473540 5/26/99

1

DSCP-UMS-0631

> 16,637.60 GT95
> 5/27/99 71569702 5/31/99
> 17,331.44 GU18
> 6/3/99 71646975 6/9/99
> 21,211.38 GU35
> 6/4/99 71664549 6/10/99
> 16,171.50 GU40
> 6/8/99 71702125 6/12/99
> 17,829.63 GU49
>
> Bud and Ted, I'm not trying to beat a dead horse, but I don't think that
> all the evidence supports the
> contention that this issue is resolved.
>
> Greg
>
>
>
> -----Original Message-----
> From: Wellens, Bud
> Sent: Wednesday, June 16, 1999 11:45 AM
> To: Wentzel, Greg
> Cc: Brukiewa, Ted; Rees, Margaret
> Subject: FW: FYI
>
> Her is part of the problem. Bud
>
> -----Original Message-----
> From: Pringle, Toron
> Sent: Wednesday, June 16, 1999 10:51 AM
> To: Wellens, Bud
> Cc: Blais, Antoinette
> Subject: FYI
>
> Pacific Criticare United Medical Supply Co Inc
> SP020096D7116 SP020097D7133
> 1 invoice 51 INVOICES
> TOTAL- 110.00 TOTAL- 70,350.00
> TORON



DSCP-UMS-0632

**From:** Rees, Margaret [paa3050@exmail.dscp.dla.mil]
**Sent:** Tuesday, June 15, 1999 10:39 AM
**To:** 'steve.hasting@ftdetrck-ccmail.army.mil'; 'Amendolia, Anthony'; 'Flatley, Linda'; 'Polini, Geneva'; 'Wentzel, Gregory'
**Subject:** RE: Follow Up

yes- we are actively working this issue. results from a move to a new translator and has screwed up subsistence, medical and c&t invoicing. we think we are coming out of it now. Mr. Bandy is one of our priorities. we have paid him quite a bit in last week. Maggie

-----Original Message-----
From: steve.hasting@ftdetrck-ccmail.army.mil
[mailto:steve.hasting@ftdetrck-ccmail.army.mil]
Sent: Monday, June 14, 1999 6:26 PM
To: mrees@dscp.dla.mil
Subject: Follow Up

Maggie,

In the conference call last week, Bill mentioned that he couldn't comply with the contractual requirement to implement DAASC VAN EDI because DSCP was about $1,000,000 in arrears, with $500,000 over 15 days. Do you know what this payment problem is all about?

Thanks

Steve

Forward Header

Subject: Follow Up
Author: <Wpbandy@aol.com> at Internet-Mail
Date: 06/14/1999 3:51 PM

Steve,

Unfotunately, I have misplaced your telephone number, but I would like to visit with you concerning the payment prblems I am having with the DOD. The situation has become increasingly critical and the people at DSCP, although well meaning, seem to be totally incapable of getting anything done about it.
By critical, I mean that their continued inability to meet contractual payment terms is threatening the very existence of United Medical. Meanwhile,
we continue to meet our obligations to service the facilities properly.

If I need to contact someone else, please let me know. My number is 800-333-2733, and I am here in the office until at least 9:00 every night. Thanks for your help.

Bill

been received, the DIC YPM will only post shipment.

**From:** Wellens, Bud
**Sent:** Monday, June 07, 1999 7:47 AM
**To:** Miraglia, Anthony; Brukiewa, Ted
**Cc:** Matlack, Randy; Galligan, Donna; Wentzel, Greg; Perez, Joseph
**Subject:** RE: United Medical Supply Co. Invoicing

When an item is DVD the YPM will result in posting of both ship and receipt. The receipt results in the generation of the sale. United apears to be resolved as of this moment. Who knows what will happen tommorow.

-----Original Message-----
**From:** Miraglia, Anthony
**Sent:** Monday, June 07, 1999 7:11 AM
**To:** Brukiewa, Ted
**Cc:** Matlack, Randy; Galligan, Donna; Wentzel, Greg; Wellens, Bud; Perez, Joseph
**Subject:** RE: United Medical Supply Co. Invoicing

Ted,

I saw Brian's response and assume this problem has been corrected. Anyway, in the Medical Prime Vendor process, shipment, not receipt, is automatically posted in the ACF via generation of a DIC YPM transaction that is created out of our unique BIDS processes. Receipt is posted based on invoice processing. I will talk to Bud and try to clarify what he is referring to.

***Anthony Miraglia***
**DSCP MRIN**
**DSN 444-5537 COM (215) 737-5537**
**FAX 5780 / 5555**
**Email: amiraglia@dscp.dla.mil**

**From:** Brukiewa, Ted
**Sent:** Tuesday, June 01, 1999 9:25 AM
**To:** Wentzel, Greg; Galligan, Donna; Perez, Joseph
**Cc:** Rees, Margaret; Garvin, Kathleen; Simpson, John; Coyne, Brian; Wellens, Bud; Dabrowski, Chester; Matlack, Randy; Miraglia, Anthony; Flatley, Linda; Fowler, Michael; Parker, Hermon
**Subject:** RE: United Medical Supply Co. Invoicing

Greg,

When you and Donna identified the problem to me, I informed Brian Coyne immediately. Brian checked, and reported back to me that all the companies he had up were working fine. That's when I enlisted Chester's help to see if there was a visibility problem on our end. Based on some indicators that appear in the ACF, which we believed show dates when an invoice is received, it was felt that invoices were in fact being received, but that our visibility of these invoices had been disturbed somehow. At this point, Operations was still in the process of moving companies to the new (Mercator) translator, so I thought this was what happened. Unfortunately, both Randy Matlack and Anthony Miraglia were in Columbus, and I could not verify this belief, so we went with it.

When Anthony came back, he talked to Donna, and then told me that we were wrong, there was nothing wrong with the invoice view, and that we were half wrong on the ACF indicators, that the PV process puts in the shipped date, and that the invoice receipt puts in the received date. But that still left me believing that the invoices had been received, just not seen by us. On Thursday, when Bud identified the problem, I walked over to talk to him. He told me that both dates are put in by the PV process, and therefore, we have no visibility of the receipt of an invoice, except via the invoice view, once again leading me back to Randy / Anthony. Randy was gone, Anthony on vacation. Brian was aware of the problem at this point, via Bud, and working on a solution. When all the individuals mentioned are in one place at one time, I, so this won't happen again, will try to find out just how this process works.

John invited you to call him directly with any future invoice problems, I would prefer that this not happen. I spent quite a bit of time last week involved in trying to find out just what was going on, in

2

DSCP-UMS-0640

gathering information, and in trying to make sure everybody knew what was transpiring. It would be better if this office was the one place to be able to find out just what is going on. I have copied just about everybody who has been involved in this process, because I still might not have the story right. I informed Pharmaceuticals of this problem, and asked them to keep a lookout for anything unusual with PV invoices.

There are many contributing factors to this dilemma, and I would like to be able to state that everything is under control, but at this point stuff is still happening. I know that Operations is working real hard to try to move all EDI companies to the new (Mercator) translator. They have examples over there (Bldg. 36) where they have had a company moved, operational, then a change occurred that screwed up the move. In most cases, it's the company that has caused the problem. I will request, from Brian, a list of which companies are on the new translator, and which still need to be moved. I will also ask that as soon as something happens involving any of our firms, that we be informed. I will do my best to keep everyone informed as to problems, and solutions to those problems, apparently resulting from the move to the new translator. Please feel free to forward this on to anyone I may have missed.

Thanks,

Ted Brukiewa

CHIEF
INITIATIVES BRANCH

Phone: 215-737-2183
(DSN) 444-2183
FAX: 215-737-5555
(DSN) 444-5555
e-mail: tbrukiewa@dscp.dla.mil

-----Original Message-----
From: Wentzel, Greg
Sent: Tuesday, June 01, 1999 7:23 AM
To: Brukiewa, Ted; Galligan, Donna; Perez, Joseph
Cc: Rees, Margaret; Garvin, Kathleen
Subject: FW: United Medical Supply Co. Invoicing

Ted, Joe, Donna: Note below. When would start seeing the invoices in the Invoice View? Are the missing invoices
retreivable, or do our PVs have to resubmit? Does anyone know? Ted I have to presume that Simpsons people really
did know about this weeks ago, and my email to Wellens was not the first wake up call!

Greg

-----Original Message-----
From: Simpson, John
Sent: Friday, May 28, 1999 1:52 PM
To: Wentzel, Greg; Coyne, Brian
Subject: RE: United Medical Supply Co. Invoicing

Greg: We'll have this fixed first thing Tuesday! In the future, please send email or call Mr. Coyne directly at X8257 when you encounter an EDI invoice problem. The sooner we know about it the better!

John

-----Original Message-----
From: Wentzel, Greg
Sent: Friday, May 28, 1999 12:28 PM
To: Wellens, Bud
Cc: Rees, Margaret; Simpson, John; Boyle, John; Garvin, Kathleen; Brukiewa, Ted; Galligan, Donna; Amendolia, Anthony
Subject: United Medical Supply Co. Invoicing

**Importance:** High

Bud,

This is to confirm our fonecon of this AM. Using historical sales data as a basis, the interruption in the 810
processing routine since 17 May has already delayed payments to United on the order of $375,000. This
firm (a small business) cannot absorb even a temporary loss of this magnitude without serious risk to its
financial viability. In the event that the systems issues are not resolved by 1 June, we will have no option
but to initiate requests for manual payments by DFAS. We understand that this is inefficient, resource intensive,
and costly, but we cannot be put in a position of contributing to the failure of United Medical due to issues
that currently appear to rest solely with the government.

If required, I would appreciate your supporting this action and coordinating with the appropriate DFAS
functionals to ensure immediate attention.

Thankyou for your assistance,

Greg Wentzel
Med/Surg PV Customer Support Section
Med/Surg Products CBU
Directorate of Medical Materiel

***Anthony Miraglia***
**DSCP MRIN**
**DSN 444-5537 COM (215) 737-5537**
**FAX 5780 / 5556**
**Email: amiraglia@dscp.dla.mil**

**Kennedy, Donna**

0#1/h

**From:** Flatley, Linda
**Sent:** Wednesday, June 02, 1999 10:58 AM
**To:** Kennedy, Donna; Jennings, James
**Subject:** FW: MORE FRUSTRATION

-----Original Message-----
**From:** Wentzel, Greg
**Sent:** Wednesday, June 02, 1999 10:23 AM
**To:** Rees, Margaret; Flatley, Linda; Amendolla, Anthony; Polini, Geneva; Galligan, Donna; Bruklewa, Ted; Garvin, Kathleen
**Subject:** FW: MORE FRUSTRATION

More status on O&M, United, BBMC-Colonial invoicing issues. United has supposedly been corrected. Working on O&M, and Colonial to follow. But note that the source of the problem alledgedly rests with the PVs???? Strange that these errors would crop up at the exact same time as the migration to a new translator.

-----Original Message-----
**From:** Wellens, Bud
**Sent:** Wednesday, June 02, 1999 10:13 AM
**To:** Wentzel, Greg
**Subject:** FW: MORE FRUSTRATION

fyi

-----Original Message-----
**From:** Simpson, John
**Sent:** Wednesday, June 02, 1999 10:11 AM
**To:** Wellens, Bud
**Subject:** FW: MORE FRUSTRATION

Did you get this update?

-----Original Message-----
**From:** Coyne, Brian
**Sent:** Wednesday, June 02, 1999 9:44 AM
**To:** Simpson, John
**Subject:** RE: MORE FRUSTRATION

John,
Owens&Minor are sending in incorrect ISA/GS information that is causing their 810's to bomb out. Don is working with them to get everything corrected. This is a problem at the Vendors end. Colonial is next, Don and Warren will look into this. United Medical's problem has been corrected. Again, the vendor was not sending in correct information in the CAD segment. We had to make an adjustment to the translator to correct this problem. Joe Kutza ran all their invoices through yesterday.

Brian

-----Original Message-----
**From:** Simpson, John
**Sent:** Wednesday, June 02, 1999 9:28 AM
**To:** Wellens, Bud
**Cc:** Coyne, Brian; Bruklewa, Ted; Boyle, John
**Subject:** RE: MORE FRUSTRATION
**Importance:** High

Brian: I suggest you get Warren working this issue immediately!

-----Original Message-----
**From:** Wellens, Bud
**Sent:** Wednesday, June 02, 1999 9:26 AM
**To:** Simpson, John
**Cc:** Coyne, Brian; Bruklewa, Ted; Boyle, John
**Subject:** FW:MORE FRUSTRATION

1627 MVS tranlator invioces picked up at 09:36:33 on 31 May 1999 did not process into SAMMS. Please let me know when you process. Who is minding the store. Also any satus on the united, Owens and Colonial issue. It is over 2 weeks since any of their invoices have processed.

-----Original Message-----
**From:** Wellens, Bud
**Sent:** Tuesday, June 01, 1999 8:56 AM
**To:** Simpson, John
**Cc:** Coyne, Brian; Boyle, John
**Subject:** FRUSTRATION

John: The MVS translator blew out on 12, 13, and 14 May do to space problems. It was resolved on 17 May. However, the Harbinger invoices from the 12 May pull and translator run at 10:43:56 did not get reprocessed. I found this out when a vendor called wanting to know why they were not pd, and spent 4 hourd researching the problem. Take action to reprocess these invoices and establish procedures to ensure that all invoices pulled are processed. I am the one who gets calls from upset vendors.Let me know when the invoices from the 12th are processed. Any resolutipon on Untited, Owens , and , Colonial. Bud

**Kennedy, Donna**

**From:** Flatley, Linda
**Sent:** Thursday, May 27, 1999 3:17 PM
**To:** Kennedy, Donna; Jennings, James
**Cc:** Steigerwalt, Nora; Dabrowski, Chester
**Subject:** FW: COLONIAL HEALTH MED SURG PV

OH TR

Info only

-----Original Message-----
From: Rees, Margaret [mailto:paa3050@exmail.dscp.dla.mil]
Sent: Thursday, May 27, 1999 9:20 AM
To: Garvin, Kathleen; Bruklewa, Ted; Christopher Falls; Donald LTCol Butterworth; Flatley, Linda; John Charalabidis; Margaret Rees; Ostermann, Len; Polini, Geneva; Ronald Carfagno; Roslyn Rogers; Wentzel, Gregory
Subject: FW: COLONIAL HEALTH MED SURG PV

> -----Original Message-----
> From:Bird, Sara
> Sent: Thursday, May 27, 1999 8:42 AM
> To: Cuorato, John; Maunz, Carl; McManus, Stephen; Pilla, Louis; Rees,
> Margaret
> Subject: FW: COLONIAL HEALTH MED SURG PV
>
> fyi
>
> -----Original Message-----
> From:Boyle, John
> Sent: Thursday, May 27, 1999 8:06 AM
> To: Allen, George
> Cc: Bird, Sara; Badame, Rose Marie
> Subject: FW: COLONIAL HEALTH MED SURG PV
>
> George: I'm going to make one last try at this because I really think it
> is important. This conversion will not be done on time. We will lose some
> of our large electronic vendors. We have backed up our new accessions for
> over three months and some significant potential partners have lost
> interest. We have contracts that require electronic means that we are not
> honoring our end (electronic orders) and the vendor can't do his end. We
> do not have a Y2K problem. Our mainframe translator program is not the
> problem; we have vendors using the same software who claim it is Y2K
> compliant. This means the DISA mainframe that is running on is not Y2K
> compliant. I don't see why we should jeopardize 5 years of work and
> further antagonize our business partners to declare a Y2K completion. The
> effect of this "victory" will the very disaster we started the Y2K effort
> to prevent. We're just causing it to occur earlier. We have a solution in
> place; we just badly underestimated the time and resources needed to
> accomplish it. We are in such a rush to make this date that we are making
> mistakes and not reaching important vendors. We have not installed the
> system oversight controls in the mid-tier translator neccessary to
> identify processing problems that made our initial effort so successful.
> We have the largest EDI program in DOD. I think our superiors would be
> interested in preserving it if they knew the real situation. jb
>
>
>



DSCP-PV-5134

> -----Original Message-----
> From:Bird, Sara
> Sent: Wednesday, May 26, 1999 6:28 PM
> To: Wellens, Bud; Coyne, Brian; Galligan, Donna; Miraglia, Anthony;
> Simpson, John; Badame, Rose Marie; Liller, Phil Col
> Cc: Boyle, John; Cuorato, John; Maunz, Carl; McManus, Stephen; Pilla,
> Louis; Rees, Margaret
> Subject: RE: COLONIAL HEALTH MED SURG PV
>
> We really must get a handle on these invoices and the translator problems.
> I fear our frustrations will engender a lot of additional ill will with
> our prime vendors. We can't just keep pointing fingers or giving an
> exasperated shrug. No one in the Medical Directorate really knows what to
> tell these vendors. They must be losing confidence that our once reliable
> payment system is going into a tailspin and it's not even 1 January 2000.
> Our very favorable distribution fees are in large measure a result of our
> 15 day payments of invoices.
>
> Ops - please call a meeting, inviting the CBU personnel as well as
> Comptroller people to update everyone on the problem and the solution.
> thank you
>
> -----Original Message-----
> From:Wellens, Bud
> Sent: Wednesday, May 26, 1999 3:55 PM
> To: Coyne, Brian; Galligan, Donna; Miraglia, Anthony; Simpson, John
> Cc: Rees, Margaret; Boyle, John; Bird, Sara
> Subject: COLONIAL HEALTH MED SURG PV
>
> Anthony: Per your call. Invoices were not receiced from Colonial from 12
> May to 25 May. Last mvs translator invoice was received on 11 May, and
> first macater invoice was received today. Colonial invoice dates from 10
> May thru 20 May have not been received. Additionally, the last invoices
> processed from Owens and United was 17 May. The last invoice date for
> Owens was 14 May, and United 11 May. I have no idea what to tell Owens and
> United because it is almost impossible to identify the last ISA received.
> On the surface it appears the this a conversion problem . Do not have idea
> what else is missing because I no longer have the tools to monitor the
> process. This apparenntly has to be resolved by 'O'. It appears that DCSP
> has lost a huge measure of control and I am at a loss to do anything.
> Bud

**Kennedy, Donna**

**From:** Flatley, Linda [paa3209@exmail.dscp.dla.mil]
**Sent:** Monday, March 22, 1999 11:32 AM
**To:** Aarvig, Margie; Bonaccorso, Guiliana; Crescenzo, Marie; Darby, Diana; Gervasi, Steve; Hines, Claude, MAJ; Jennings, James; Jennings, Lou; Kennedy, Donna; Kitzinger, Michelle; LoCicero, Joseph; Martin, Nancy; Nash, Lenora; Perry, Lisa; Raab, Andrea; Thomas, Allen; Wilson, Sharon
**Subject:** FW: Serious Electronic Invoicing Problem

**Importance:** High

Off FTA person

Info only. LF

-----Original Message-----
From: Rees, Margaret [mailto:paa3050@exmail.dscp.dla.mil]
Sent: Monday, March 22, 1999 11:20 AM
To: 'Bird, Sally'; 'Lamy, Col'; 'Maunz, Carl'; Galvin, Kathleen; Matlack, Randy; Badame, Rose Marie
Cc: 'Gallo, Fran'; Galligan, Donna; McManus, Stephen; Parker, Hermon; Docimo, Joseph; Wellens, Bud; Christopher Falls; Donald LTCol Butterworth; Flatley, Linda; John Charalabidis; Margaret Rees; Ostermann, Len; Paul Bellino; Pollini, Geneva; Ronald Carfagno; Wentzel, Gregory
Subject: Serious Electronic Invoicing Problem
Importance: High

Hi everybody- Fran Gallo also sent me an email on the situation and she also says it is out of control. Apparently our invoice facilitators cannot identify the paid invoices from the ones they have to work. Looks like all the invoices are showing up. I just spoke with Roe Badame. She is aware of the emergency and will be getting back to me with status. Please confer with your invoice facilitators and get a sense of how bad this is. I will keep you all informed. Maggie

> -----Original Message-----
> From:Wellens, Bud
> Sent: Monday, March 22, 1999 9:07 AM
> To: Badame, Rose Marie
> Cc: Boyle, John; Bird, Sara; McManus, Stephen; Rees, Margaret
> Subject: FW: EI INVOICES
>
> Roe: It has happened again today on 22 March 1999. It is getting bigger
> each day. This problem has resulted in a complete loss of control over
> Medical Prime Vendor invoices. PLEASE advise when this problem will be
> resolved.
>
> -----Original Message-----
> From:Wellens, Bud
> Sent: Friday, March 19, 1999 11:01 AM
> To: Badame, Rose Marie
> Cc: Boyle, John
> Subject: EI INVOICES
>
> On 17,18,19 March 1999 it apprears that all EI received since 1 February
> 1999 have recycled into C&T and Medical SAMMS. This has resulted in over
> 70 FEET (23.33 YARDS ) on paper being printed. Addionally, it is
> virtually impossible to identify the good invoices from the bad ones. At



DSCP-PV-5140

> this time I beleive that we have lost a large measure of control. Furhter,
> DFAS is also getting their copies of this paper, and are quite upset,
> because like us, they can not identify the good invoices from the bad.
> PLEASE, PLEASE do whatever is necessary to get this resolved. PLEASE. Bud
>

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff<br><br>v.<br><br>THE UNITED STATES, Defendant | MAIN CASE NO: 03-CV-289<br>Consolidated case no: 07-cv-187<br>Judge Allegra |

**EXHIBIT E TO SECOND AMENDED COMPLAINT**

DSCP INTERNAL CORRESPONDENCE RE: UNITED MEDICAL ACCOUNT

**From:** [illegible]
**Sent:** Friday, October 17, 2003 [illegible]
**To:** Galligan, Donna (DSCP); Hallam, Kathleen (DSCP)
**Cc:** Flatley, Linda (DSCP); Jennings, James (DSCP)
**Subject:** RE: United Medical Information

Thanks Donna! I know that was extremely difficult to put together.

-----Original Message-----
**From:** Galligan, Donna (DSCP)
**Sent:** Friday, October 17, 2003 11:25 AM
**To:** Hallam, Kathleen (DSCP)
**Cc:** Amendolia, Anthony (DSCP); Flatley, Linda (DSCP); Jennings, James (DSCP)
**Subject:** United Medical Information

Kathleen,

I have attached all of the lists that you sent me for each of the facilities. I have found in my research that there are call numbers where DSCP would still owe a balance to the vendor. Some of the histories I have show that the funds were/are available in our system for payment. These equate to approximately $37,000. I also have records that show some of the call numbers listed with balances owed have been paid in full. I have annotated each file with the information I could find. I have all of the paperwork that I was able to retrieve on each of these lists if you need it.

I was not aware that there was a requirement to preserve the payment history on this contract. I have saved a database of information available in our system. If there are any other records, I am not aware of them. If you have any questions, my number is listed below. Thank you.

<< File: UM INVOICES4DARNELL.doc >> << File: UMinvoices4ALBURQUERQUE.doc >> << File: UMInvoices4ALTUS.doc >> << File: UM-Invoices4BEAUMONT.doc >> << File: UMInvoices4BLISS.doc >> << File: UMinvoices4BROOKE.doc >> << File: UMinvoices4BROOKS-AFB.doc >> << File: UMinvoices4CANNON.doc >> << File: UMInvoices4CORPUSCHRISTI.doc >> << File: UMInvoices4FORTSILL.doc >> << File: UMInvoices4FORTWORTH.doc >> << File: UMinvoices4GALVESTON.doc >> << File: UMinvoices4HOLLOMAN.doc >> << File: UMinvoices4LAUGHLIN.doc >> << File: UMInvoices4RANDOLPH[1].doc >> << File: UMinvoices4SHEPPARD[1].doc >> << File: UMInvoices4TINKER[1].doc >> << File: UMinvoices4VANCE[1].doc >>

*Donna Galligan*
Team Leader
Med/Surge Invoice Team
DSCP-RXM
(215) 737-2194 or DSN 444-2194
Fax: (215) 737-2058
New Email: Donna.Galligan@dla.mil

**Importance:** High

Bud,

This is to confirm our fonecon of this AM. Using historical sales data as a basis, the interruption in the 810
processing routine since 17 May has already delayed payments to United on the order of $375,000. This
firm (a small business) cannot absorb even a temporary loss of this magnitude without serious risk to its
financial viability. In the event that the systems issues are not resolved by 1 June, we will have no option
but to initiate requests for manual payments by DFAS. We understand that this is inefficient, resource intensive,
and costly, but we cannot be put in a position of contributing to the failure of United Medical due to issues
that currently appear to rest solely with the government.

If required, I would appreciate your supporting this action and coordinating with the appropriate DFAS
functionals to ensure immediate attention.

Thankyou for your assistance,

Greg Wentzel
Med/Surg PV Customer Support Section
Med/Surg Products CBU
Directorate of Medical Materiel

***Anthony Miraglia***
**DSCP MRIN**
**DSN 444-5537 COM (215) 737-5537**
**FAX 5780 / 5555**
**Email: amiraglia@dscp.dla.mil**

**From:** Rees, Margaret [paa3050@exmail.dscp.dla.mil]
**Sent:** Monday, June 21, 1999 1:18 PM
**To:** 'Flatley, Linda'; 'Polini, Geneva'; Garvin, Kathleen
**Subject:** FW: FYI

> -----Original Message-----
> From: Wellens, Bud
> Sent: Monday, June 21, 1999 1:08 PM
> To: Wentzel, Greg; Coyne, Brian
> Cc: Brukiewa, Ted; Rees, Margaret; Galligan, Donna; Amendolia, Anthony;
> Polini, Geneva; Boyle, John
> Subject: RE: FYI
>
> Greg: I revived the examples you provided. GU40 AND 49 are in cash mgmt
> waiting to be pd. GT57, GT67, GT78 show a transation date prior to
> mecater. I do not see these invoices in the segment listings. However, the
> MVS translator blew out on 12, 13, and 14 May 1999 and it is possiblbe
> that these invoices were there, but not restored by O. I suggest that you
> have United invoice these orders. I show no records in Mecater segment
> listing for GT78,GT95, and GO35. Brian please see if you can find these.
> Note that non of this is my doing. Prior to Mecater these type problems
> did not exist. Suggest letting Brian to his research, restore if he finds
> them, and wait to month end so we have an updated ULO list with June
> information. Then make a determination as to what to do. Bud
>
> -----Original Message-----
> From: Wentzel, Greg
> Sent: Wednesday, June 16, 1999 4:47 PM
> To: Wellens, Bud
> Cc: Brukiewa, Ted; Rees, Margaret; Galligan, Donna; Amendolia, Anthony;
> Polini, Geneva
> Subject: RE: FYI
>
> Bud,
>
> We do have almost 60 aging invoices from United Medical totaling over
> $108,000. We always seem to have
> that issue with United and the customers in the Lonestar Region. But that
> is not the issue that concerns us
> here. We still believe, despite claims to the contrary, that many of our
> PV 810s were not recovered and
> successfully processed thru the translator and into SAMMS. For example,
> we now have somewhere in the
> neighborhood of 300 customer ULOs awaiting United Invoices. That's an
> awful lot of customer receipts without
> accompanying invoices. I've listed below a small sample of customer
> obligations amounting to big money
> from the point of United Medical. I gather that the last 3 might still be
> in cash management, but the first 5?
> We just pulled out some of the big ones, there are plenty more.
>
>
> Inv. Trans. dte Inv. # Obl. date $
> Value Call #
> 5/10/99 71320913 5/13/99
> 16,947.46 GT57
> 5/14/99 71360512 5/21/99
> 28,114.57 GT67
> 5/14/99 71397075 5/22/99
> 17,067.55 GT78
> 5/20/99 71473540 5/26/99

> 16,637.60 GT95
> 5/27/99 71569702 5/31/99
> 17,331.44 GU18
> 6/3/99 71646975 6/9/99
> 21,211.38 GU35
> 6/4/99 71664549 6/10/99
> 16,171.50 GU40
> 6/8/99 71702125 6/12/99
> 17,829.63 GU49
>
> Bud and Ted, I'm not trying to beat a dead horse, but I don't think that
> all the evidence supports the
> contention that this issue is resolved.
>
> Greg
>
>
>
> -----Original Message-----
> From: Wellens, Bud
> Sent: Wednesday, June 16, 1999 11:45 AM
> To: Wentzel, Greg
> Cc: Brukiewa, Ted; Rees, Margaret
> Subject: FW: FYI
>
> Her is part of the problem. Bud
>
> -----Original Message-----
> From: Pringle, Toron
> Sent: Wednesday, June 16, 1999 10:51 AM
> To: Wellens, Bud
> Cc: Blais, Antoinette
> Subject: FYI
>
> Pacific Criticare United Medical Supply Co Inc
> SP020096D7116 SP020097D7133
> 1 invoice 51 INVOICES
> TOTAL- 110.00 TOTAL- 70,350.00
> TORON

**From:** Charalabidis, John
**Sent:** Friday, January 19, 2001 1:25 PM
**To:** Cuorato, John; Polimeni, Anne; Flatley, Linda
**Subject:** FW: United Medical

To all,

We are waiting for further documentation and will proceed accordingly when we get it.

John Ch.

-----Original Message-----
From: Galligan, Donna
Sent: Friday, January 19, 2001 10:55 AM
To: Charalabidis, John
Subject: RE: United Medical

John,

This is the information I have on United Medical. Anthony Amendolia has also been working with them. He may have some additional information to share.

We currently have invoices worth $284,000 in-house that we owe payments to United ($111,000 beyond 15 days). There is also an additional $6600 of unliquidated obligations that we have notified United about and asked them to re-invoice for this money. Anthony Amendolia sent Megan at United a listing, but so far I have not seen any re-invoicing for these. Anthony has also asked Megan on numerous occasions for them to provide us with a listing of call numbers that they show we owe them payments on so we can research, but they have not responded with any information.

-----Original Message-----
From: Cuorato, John
Sent: Friday, January 19, 2001 8:45 AM
To: Rogers, Roslyn; Charalabidis, John; Galligan, Donna
Subject: FW: United Medical
Importance: High

Please get me up to speed on any payment problems with United asap. Thanks.

John C.

-----Original Message-----
From: McManus, Stephen
Sent: Thursday, January 18, 2001 4:43 PM
To: Cuorato, John
Subject: FW: United Medical
Importance: High

John -

Anything you can tell me about United Medical bill paying? Also, if you have any more words on the $150K, obviously this is still open too. I was hoping COL Mervis had closed it. I think in the end we will have to give him the money, but I would like to make sure we get our money's worth.

Steve

-----Original Message-----
From: Magee, George, COL, OASD(HA)/TMA [mailto:George.Magee@tma.osd.mil]

the plan... but it is the right thing to do.

Here it is.....

Jim

As I am sitting here in my little EPP, I thought I could tell you about the interesting discussions I had with Mr. Bandy at United. We had two meetings both lasting 2-3 hours each. He was very friendly and seemed happy that "we" had dropped by.

Here is a recap of our discussions.

1. He is eager to make the transfer as soon as MEDCOM/Philly can arrange it. The dates in late April and early May are acceptable. He would be willing to move them up even faster if desired.

2. He will not, under ANY circumstances sign an extension to the existing contract. He is not being obstinate and he explained the reasons very soundly. Simply put: He would bankrupt his company. Let me try and explain it to you.

a. Each day he "borrows" funds from the bank to "pay" for his accounts payable. The bank will lend him 80% of the "Accounts Receivable" from the day before. He is slightly hampered from his MILITARY customers due to Accounts Receivables being UNPAID by the OPLOCs in a timely manner. WBAMC has the largest amounts of these above 60 days ($80K+). I will have Cpt Crockett-Lynn work on them hard, but the OPLOC is the problem. BAMC has the lowest Accounts Receivable backlog. Each time an OPLOC fails to pay him within the 10-30 days the contract specifies, he can borrow less from the bank to order and keep his shelves full. He says he has requested relief from Philly a number of times on his Accounts Receivable, but no solution to this problem has been made. Bottom line, THE US Government IS NOT HONORING THE CONTRACT. He mentioned no one besides me has ever visited him (this being my second trip) and he hopes to get these payments resolved before the conversions. I think we ought to find someone to honcho this for him and get him paid. I also think we ought to consider raising the DOS about 5 days at the MTF level 60 days prior to conversion to ensure we do not run out of stock as he attrites his levels. On the side, I also visited Bindley-Western. Actually it was nostalgic to actually see warehouses full of supplies like in the old days. One thing for sure, the US Army did transfer a lot of risk to the PVs for storage, but with only a 22 day supply I feel at risk for surge now.

b. He places his orders on a 42 day cycle. Twenty-two days for himself and 20 days per MTF. The problem with excessive DUE-OUTS at the MTFs seem to stem from erratic ordering patterns from hospital to hospital. For example, a hospital will set a pattern for months at 3 ea., then go two months without ordering the item at all and then order 2-3 times (of 4-6 each) in the same month. This of course will exhaust all of his stock on a single customer and thusly will impact everyone. As I look at the system, it seems the first customer will get his order filled and all the rest will get killed or due-out. There does not appear to be a automated break to stop this pattern breaking.... to limit the erratic customer. A couple of the smaller MTFs (AF/Navy incl) seem to also throw off the cycle far more than you'd expect. I will fax you the data he provided.

c. When he orders he "pays retail" for his purchases, but because of the contract that Linda manages is able to secure "DEEP DISCOUNTS" from hundreds of his manufacturers who have copies of the contract from "REBATES" or "DAPA pricing" built within the contract. The billing goes like this: He orders 1 ea. of something at $100.00. The manufacturer will bill him $100.00. He attaches the MED-SURG contract bill to the invoice that says; "30% off retail or DAPA" and he pays $70.00. Sometimes it works and the bill is invoiced at $70.00 and sometimes it doesn't which causes him to go to "CREDIT-HOLD" until the bill is paid or issue resolved. An interesting example is ALaris which gives him 70% off retail. The amount of Alaris

products the region uses will cause him MAJOR TRAUMA if Alaris fails to pay on the contract extension. The REAL ISSUE is he is dealing with hundreds of manufacturers and companies that all have the contract in their hand with an expiration date of 31 May 2001. To get mods out there to hundreds of activities and ensure he gets paid for the DAPA/rebates is TOO RISKY for him. He doesn't trust the government to pay him on-time (and we haven't) and knows he will not get relief after May (I agree). Frankly looking at his accounts receivable, I do not blame him at all.

d. I might note that he does more dollar volume and monthly business with the civilian University Hospital in San Antonio than with ALL MILITARY accounts combined. So he is really at no risk at conversion unless we do not pay him.

I am recommending that we adjust the changeover to make it easy to "CLEAN UP" this mess from both ends. As a result of my observations, I suggest we convert MTFS in the following order due to the risk of contract transfer.

a. WBAMC first. We are his second largest MTF and have the longest transport chain to fill orders. We also have the highest Accounts Receivable mess to fix so the "extra" time between conversion and contract termination will·help both the military and the contractor get their accounts squared away.

b. ALL NAVY & AF MTFs next. They seem to have the greatest need and although volume is low, their ordering patterns are the most erratic and they have a higher than normal intrasit rate.

c. Smaller Army MTFs with long transport times and then Ft Hood. Ft Hood with the third largest volume has the second lowest risk because they are dead center on both of his main DCs (warehouses).

d. BAMC last. His largest customer and he supports them directly from his warehouse in San Antonio. His transport cost is low. Their intrasits are under control. He can consolidate stock their that may be unusable to his civilian customers and they have a robust staff compared to other MTFs that will have to clean up their accounts with OPLOC in shortest time.

I will chat with you later... let me see how the power outage is coming along.

jim

-----Original Message-----
From; Flatley, Linda [mailto:paa3209@dscp.dla.mil]
Sent: Thursday, November 30, 2000 4:46 AM
To: 'Riley, James D LTC WBAMC'
Subject: United Visit

LTC Riley,

On a separate topic: COL Fletcher told me you were going to drop in unannounced to Mr. Bandy's office to discuss performance issues. I know Mr. Bandy has a lot of personal respect for you, as he has implied to me that you are one of the few Gov't persons that he really thinks is fair.

How did the meeting go? Anything you want to share?

Is there anything you want or need us to do as a follow-up?

Linda F.