Stipulations based on a telephone interview with Mr. Ralph Colavita on November 19, 2007. Frank Broyles, Karen-Lee Pollak and Kyle Chadwick participated remotely by phone while Mr. Mike McGlinchey was in the conference room with Mr. Colavita.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNITED MEDICAL SUPPLY COMPANY, INC., *Plaintiff*<br><br>v.<br><br>THE UNITED STATES, *Defendant* | CASE NO: 03-CV-289<br><br>Judge Allegra |

STIPULATIONS REGARDING THE MERCATOR TRANSLATOR ISSUE BASED ON NOVEMBER 19, 2007 INTERVIEW WITH MR. RALPH COLAVITA, CHIEF OF IT BUSINESS SOLUTIONS DIVISIONS WITH THE DEPARTMENT OF LOGISTICS IN PHILADELPHIA

On November 19, 2007 counsel for Plaintiff interviewed Defendant's representative, Mr. Ralph Colavita by telephone in lieu of deposition. Based on that interview, the parties, as evidenced by the signatures of their respective counsel, stipulate as follows:

1. Mr. Ralph Colavita currently is Chief of IT Business Solutions Divisions with the Department of Logistics in Philadelphia.

2. The background for the interview was a Mercator Translator problem described in various DSCP internal emails. A selection of the emails (copy attached) were provided to Mr. Colavita as background and for terminology explanation.

3. Sometime in the January 2000 to March 2000 time frame Mr. Colavita was part of a team ("the Colavita Team") that was called in to try and fix the Mercator Translator problem being experienced by DSCP. Prior to that time, the Colavita Team had not been involved in the DSCP Mercator Translator problem.

4. The Colavita Team was called in to assist DSCP because it had been responsible for the Mercator Translator conversion at the Defense Industrial Supply Center ("DISC") which had successfully converted.

5. When the Colavita Team began working on the Mercator Translator problem at DSCP it found the basic problem was lack of processor capacity. The Mercator Translator was internally processing so many files that it was not able to adequately transfer them to other computers for further processing. Transfers would be accomplished intermittently and not accomplished intermittently.

6. The Colavita Team also identified that the network connections among the Mercator Translator and other computers were inadequate, which resulted in various failures. These failures were failures to make any connection, failures to start transmissions once a connection was made, failures to complete transmissions after they were started, and failures to retry failed transmissions.

7. The Colavita Team was successfully able to resolve most of the Mercator Translator problems by the summer of 2000. It installed better network connections and replacedthe Mercator File Transfer Protocol ("FTP") program with one that was designed by the Colavita Team.

8. There had been a failure of Electronic Data Interchange ("EDI") files transfer process. Some of the lost files were recovered, but the Colavita Team was not able to determine what files had been recovered and what files had not been recovered. The Colavita Team had requested DSCP to have "missing" files resent, but the Colavita Team did not know what files had been the subject of such resend requests and what files had not been the subject to such requests. The Colavita Team would not be aware if DSCP had attempted to resolve unpaid invoices with hard copies.

9. As part of its 2000 problem resolution effort, the Colavita Team also implemented an automatic back-up system that backed-up all files before any attempt to process them occurred.

10. The translator process is a transfer from one form of computer data to another form of computer data, but the substantive data remains intact during the translation process. The translator process at issue was a change in the brand and type of translator. In 1999 DSCP changed from GenTran to a Mercator Translator. The GenTran translator worked with a mainframe computer platform while the Mercator translator worked with mid-tier computer platforms such as Windows and UNIX.

**Frank L. Broyles**

**From:** Chadwick, Kyle (CIV) [Kyle.Chadwick@usdoj.gov]
**Sent:** Thursday, November 29, 2007 9:32 AM
**To:** Frank L. Broyles
**Subject:** Re: dfas.pdf - Adobe Acrobat Standard

We agree with your proposed Colavita stips and I assume we agree with this (Yates) if it is as you say, but I haven't reviewed it yet.

----- Original Message -----
From: Frank L. Broyles <flbroyles@gucl.com>
To: Chadwick, Kyle (CIV)
Sent: Wed Nov 28 17:48:43 2007
Subject: dfas.pdf - Adobe Acrobat Standard

Kyle, here is the attachment for the Yates stipulation. It is your spreadsheet with the columns Ms.Yates said were irrelevant hidden.

**Stipulations based on a telephone interview with TSgt Brian Halley on December 11, 2007. Frank Broyles, Karen-Lee Pollak for United Medical, Kyle Chadwick, Joe Meyer, Major John Terra and Mike McGlinchey for the United States participated remotely by telephone.**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **UNITED MEDICAL SUPPLY COMPANY, INC., Plaintiff** | **CASE NO: 03-CV-289** |
| **v.** | **Judge Allegra** |
| **THE UNITED STATES, Defendant** | |

**STIPULATIONS REGARDING BRIAN HALLEY'S USE OF CREDIT CARD TO PURCHASE MEDICAL SUPPLIES AT FORT SHEPPARD**

1. On December 11, 2007 counsel for Plaintiff interviewed Defendant's representative, TSgt. Brian Halley by telephone in lieu of deposition. Based on that interview, the parties, as evidenced by the signatures of their respective counsel, stipulate as follows:

2. TSgt. Halley acknowledged that he was being interviewed because he worked at Shepherd Air Force Base, Texas in the 1990's in logistics as an Airman First Class.

3. TSgt Halley just recently learned about this lawsuit between United Medical and the United States.

4. TSgt Halley recognized the name United Medical but cannot recall having any dealings with them.

5. TSgt Halley remembers the name United Medical as being a prime vendor for medical logistics, but was not involved personally with ordering supplies from the medical/surgical prime vendor. As such, he does not recall receiving any supplies from United Medical and cannot recall placing any orders with United Medical. He recalls having dealings with vendors from whom he received supplies in the course of his duties and has no such recollection involving United Medical.

6. TSgt Halley was issued a credit card with which to purchase medical supplies while he was stationed at Sheppard AFB and began purchasing medical supplies using the credit card sometime in 1998.

7. TSgt Halley was given instructions on what medical products to buy. He had no discretion on the quantity or type of product to buy or which vendor to order these supplies from.

8. TSgt Halley did not have any training in the prime vendor program while at Sheppard AFB.

9. All of TSgt Halley's instructions regarding quantity and product came from his supervisor Darren Adelman, who was TSgt Halley's supervisor the majority of the time.

10. When TSgt Halley ordered medical supplies by credit card, the supplies were expected to be received in 7 to 10 days.

11. Supplies TSgt Halley ordered and credit card charges for them were tracked on a database called Medlog.

**Frank L. Broyles**

**From:** Chadwick, Kyle (CIV) [Kyle.Chadwick@usdoj.gov]
**Sent:** Thursday, January 10, 2008 11:06 AM
**To:** Frank L. Broyles
**Cc:** McGlinchey, Michael (DSCP)
**Subject:** Stipulation of interview - with Suggested Changes

Halley stip-track 2.doc (40 KB...

Frank -- Attached is our mark-up in Word, showing the changes we request to the proposed stipulation concerning TSgt Halley. Most changes are typographical -- only para. 5 is really substantive, and it amounts to a clarifying change in emphasis.

Kyle Chadwick
Department of Justice
Civil Division
Commercial Litigation Branch
(202) 616-0476

Mail
1100 L St. N.W.
Attn: Classification, 8th Floor
Washington, D.C. 20530

Hand delivery
Room 7062 and ZIP 20005

LAW OFFICES
**GOINS, UNDERKOFLER, CRAWFORD & LANGDON**
A REGISTERED LIMITED LIABILITY PARTNERSHIP
RENAISSANCE TOWER
1201 ELM STREET, SUITE 4800
DALLAS, TEXAS 75270

**FRANK L. BROYLES**
BOARD CERTIFIED – BUSINESS BANKRUPTCY
TEXAS BOARD OF LEGAL SPECIALIZATION

(214) 969-5454
FAX (214) 969-5902
E-mail: frankb@gucl.com

October 6, 2007

***Via Email***
Mr. Kyle Chadwick
U.S. Department of Justice
8th Floor
1100 L. St., N.W.
Washington, D.C. 20530

RE: *United Medical Supply Company, Inc. v. The United States;*
Case No. 03-CV-289

Dear Kyle:

In an effort to avoid having to formally depose Debby Yates, here are my proposed stipulations regarding the ~~attached~~ document: sent to you by email on Nov. 28, 2007, the first page of which is attached.

1. It is a portion of DFAS spreadsheets produced by the Government showing payment history to United Medical for the dates covered by the spreadsheets.
2. The Government did not retain the spreadsheets for dates earlier than those shown on the attached.
3. The spreadsheets concern a portion of the payment history by the Government to United Medical under the contract at issue in this case.
4. The last 4 digits and/or letters of column A refer to the Government's call number.
5. Column D refers to the electronic payment reference number.
6. Column G is the posting date of the transaction at issue (in Julian dates) and is the reference date used by DFAS for the transaction.
7. Column I refers to the types of transaction, it is a "fiscal indicator code." Q represents a payment transaction by DFAS, D is the DSCP obligation transaction, Ms. Yates did not know what the other letters referenced. Sometimes P may be used instead of Q for a payment transaction. The obligation transactions are obligations established by DSCP.
8. Column N is either the obligation amount established by DSCP or the payment amount paid by DFAS.

9. Column O is adjustments made to the DSCP obligation amount in making the DFAS payment.
10. The other columns are irrelevant to determining what DSCP has established as an obligation and the payments made to United Medical by DFAS.

Please let me know if these are agreeable.

Very truly yours,

Frank L. Broyles

**Frank L. Broyles**

**From:** Chadwick, Kyle (CIV) [Kyle.Chadwick@usdoj.gov]
**Sent:** Tuesday, January 08, 2008 1:12 PM
**To:** Frank L. Broyles
**Subject:** RE: dfas.pdf - Adobe Acrobat Standard

Yes, we agree to the Yates stipulations, provided they reference the spreadsheet you sent me on 11/28/07.

-----Original Message-----
From: Frank L. Broyles [mailto:flbroyles@gucl.com]
Sent: Monday, January 07, 2008 6:02 PM
To: Chadwick, Kyle (CIV)
Subject: RE: dfas.pdf - Adobe Acrobat Standard

Kyle, this is the last communication I have (I believe) regarding the Yates stipulation. Can you get me a solid agreement on these stipulations?  Frank

-----Original Message-----
From: Chadwick, Kyle (CIV) [mailto:Kyle.Chadwick@usdoj.gov]
Sent: Thursday, November 29, 2007 9:32 AM
To: Frank L. Broyles
Subject: Re: dfas.pdf - Adobe Acrobat Standard

We agree with your proposed Colavita stips and I assume we agree with this (Yates) if it is as you say, but I haven't reviewed it yet.

----- Original Message -----
From: Frank L. Broyles <flbroyles@gucl.com>
To: Chadwick, Kyle (CIV)
Sent: Wed Nov 28 17:48:43 2007
Subject: dfas.pdf - Adobe Acrobat Standard

Kyle, here is the attachment for the Yates stipulation.  It is your spreadsheet with the columns Ms.Yates said were irrelevant hidden.

SP020097D7133 UNITED MEDICAL (2).xls

| A | D | G | I | N | O |
|---|---|---|---|---|---|
| Oblig Docno | Vchr No | Proc Dt | Fic | Oblig Amt | Adj Amt |
| SP020097D7133A001 | | 2000314 | D | 2734.13 | 2734.13 |
| SP020097D7133A001 | | 2001117 | D | 201.65 | 201.65 |
| SP020097D7133A001 | E0250636 | 2000315 | Q | 2401.36 | -332.77 |
| SP020097D7133A001 | E2188303 | 2001242 | Q | 201.65 | 0 |
| SP020097D7133A002 | | 2000337 | D | 16.95 | 16.95 |
| SP020097D7133A002 | E0796219 | 2001045 | Q | 16.95 | 0 |
| SP020097D7133A003 | | 2001116 | K | 183.77 | 183.77 |
| SP020097D7133A003 | | 2000167 | D | 975.26 | 975.26 |
| SP020097D7133A003 | | 2000301 | D | 1169.41 | 1169.41 |
| SP020097D7133A003 | 256030TG | 2001117 | R | 183.77 | 0 |
| SP020097D7133A003 | E1585907 | 2000215 | Q | 975.26 | 0 |
| SP020097D7133A003 | E0250637 | 2000315 | Q | 985.64 | -183.77 |
| SP020097D7133A004 | | 2000300 | D | 201.97 | 201.97 |
| SP020097D7133A004 | E0250638 | 2000315 | Q | 201.97 | 0 |
| SP020097D7133A005 | | 2000209 | D | 112.1 | 112.1 |
| SP020097D7133A005 | E0064305 | 2000281 | Q | 112.1 | 0 |
| SP020097D7133A006 | | 2000318 | D | 542.18 | 542.18 |
| SP020097D7133A006 | E0266112 | 2000320 | Q | 542.18 | 0 |
| SP020097D7133A007 | | 2001116 | K | 19.49 | 19.49 |
| SP020097D7133A007 | | 2000333 | D | 2353.72 | 2353.72 |
| SP020097D7133A007 | 256031TG | 2001117 | R | 19.49 | 0 |
| SP020097D7133A007 | E0339301 | 2000333 | Q | 2334.23 | -19.49 |
| SP020097D7133A008 | | 2000234 | D | 106.22 | 106.22 |
| SP020097D7133A008 | E1776005 | 2000246 | Q | 106.22 | 0 |
| SP020097D7133A009 | | 2000333 | D | 261.47 | 261.47 |
| SP020097D7133A009 | E0339302 | 2000333 | Q | 261.47 | 0 |
| SP020097D7133A010 | | 2000308 | D | 431.96 | 431.96 |
| SP020097D7133A010 | E0250639 | 2000315 | Q | 431.96 | 0 |
| SP020097D7133A011 | | 2000323 | D | 388.78 | 388.78 |
| SP020097D7133A011 | | 2001022 | D | 1221.12 | 1221.12 |
| SP020097D7133A011 | E0295905 | 2000323 | Q | 388.78 | 0 |
| SP020097D7133A011 | E0661604 | 2001023 | Q | 1221.12 | 0 |
| SP020097D7133A012 | | 2000308 | D | 778.95 | 778.95 |
| SP020097D7133A012 | | 2001025 | D | 386.84 | 386.84 |
| SP020097D7133A012 | E0250640 | 2000315 | Q | 778.95 | 0 |
| SP020097D7133A012 | E0753501 | 2001038 | Q | 386.84 | 0 |
| SP020097D7133A013 | | 2000318 | D | 224.24 | 224.24 |
| SP020097D7133A013 | E0257501 | 2000319 | Q | 224.24 | 0 |
| SP020097D7133A015 | | 2000318 | D | 945.33 | 945.33 |
| SP020097D7133A015 | E0266113 | 2000320 | Q | 945.33 | 0 |
| SP020097D7133A016 | | 2000312 | D | 73.72 | 73.72 |
| SP020097D7133A016 | | 2001043 | D | 433.87 | 433.87 |
| SP020097D7133A016 | E0333905 | 2000330 | Q | 73.72 | 0 |
| SP020097D7133A016 | E0796220 | 2001045 | Q | 433.87 | 0 |
| SP020097D7133A018 | | 2000316 | D | 3262.09 | 3262.09 |
| SP020097D7133A018 | E0295906 | 2000323 | Q | 3129.89 | -132.2 |
| SP020097D7133A018 | 251857TG | 2000357 | Q | 132.2 | 132.2 |
| SP020097D7133A019 | | 2000323 | D | 9.62 | 9.62 |
| SP020097D7133A019 | E0333906 | 2000330 | Q | 9.62 | 0 |
| SP020097D7133A020 | | 2001022 | D | 292.65 | 292.65 |